FILED
00 JUL 27 AM 7: 29
CLERK US...
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER, an individual,

    Plaintiff,

Vs.                                CASE NO. 8:00CV1528-T-27C

URSULA CABERTA, an individual,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Hubert Heller, sues defendant, Ursula Caberta, and says:

### JURISDICTION, VENUE AND PARTIES

1.    Plaintiff, Hubert Heller, is a citizen of Germany, admitted to the United States for permanent residence, and domiciled in Clearwater, in the State of Florida.

2.    Defendant, Ursula Caberta, is a citizen of Germany, and is employed by the government of the City of Hamburg, Germany. The acts complained of herein occurred, in part, in Pinellas County, Florida. Caberta is present in Pinellas County, Florida.

3.    Jurisdiction is based upon the provisions of 28 U.S.C. §1332, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.



4.   Venue is proper in the Tampa Division of the Middle District of Florida pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and/or the defendant is subject to personal jurisdiction within this District at the time of the commencement of this action.

5.   Within the meaning of Florida Statutes, Section 48.193, and Rule 4, Fed.R.Civ.P., Caberta has caused injury to Heller within this State arising out of an act or omission outside this State at a time when Caberta was engaged in solicitation or service activities within this State; Caberta is engaged in substantial and not isolated activity within this State; and Caberta is operating, conducting, engaging in or carrying on a business or business venture in this State.

6.   All conditions precedent to the institution and maintenance of this action have been performed or have occurred.

## FACTS

7.   Caberta is the head of a German task force on the Scientology religion for the government of the City of Hamburg.

8.   As head of the task force, Caberta initiated a series of discriminatory and exclusionary measures designed to stigmatize, disenfranchise and ostracize Scientologists based solely on their association and beliefs.

9.   Caberta created and disseminates so-called "sect filters" both in the public and private sectors. These "sect filters" require individuals and companies to declare in writing:

(1) That they do not 'use the technology of L. Ron Hubbard;'

(2) That they are not trained and do not participate in the 'technology of L. Ron Hubbard;' and

(3) That they reject the 'technology of L. Ron Hubbard.'

An example with translation of Caberta's "sect filters" is attached as Exhibit A. L. Ron Hubbard is the founder of the Scientology religion and the author of all Scientology scripture, sometimes referred to as the "religious technology" or the "technology" of Scientology.

10.   Caberta's "sect filters" are designed to make employment and contractual relations conditional on an individual attesting that he or she and/or his or her company rejects the teachings of L. Ron Hubbard.  Individuals and companies who refuse to sign these declarations are subject to economic sanctions based solely on their association and belief.  The "sect filters" force corporations and businesses to adopt a discriminatory and exclusionary policy toward Scientologists or to suffer serious economic consequences.

11.   With knowledge that plaintiff and other Scientologists are doing business or attempting to do business with German companies, Caberta distributed copies of her "sect filter" to numerous companies and individuals throughout Germany, including governmental entities, businesses, chambers of commerce and banks.  In speeches, conferences and over the internet, Caberta advocates the systematic use of her "sect filters" to discriminate against Scientologists.  It is Caberta's intent to disrupt and destroy any business relationship that any Scientologist may have with any business, person or government in Germany, the United States and elsewhere.

12. Caberta pressures businesses and officials in Germany to use her "sect filters" in all their business endeavors and in hiring employees. Businesses that fail to do so face the prospect of losing government contracts, or being labeled as companies that are owned by or employ Scientologists, thereby resulting in the systematic boycotting of such businesses.

13. On July 25, 2000, Caberta was present in Clearwater, Pinellas County, Florida, and held a press conference in which she publicly promoted in the United States and the State of Florida her use and dissemination of her "sect filters" to blacklist Scientologists.

14. RTI is a computer software company in Sacramento, California. RTI's clients are large and small retail companies and manufacturers of retail products in the United States and abroad. RTI has customers in 58 countries with over 18,000 installations of it's point-of-sale inventory control software. The software controls ordering, receiving and distribution of products in stores, it monitors how well individual merchandise and products are selling, and it controls inventory of products essentially monitoring and controlling the flow of merchandise through a retail system. RTI is the market leader in this type of inventory control software, with installations in clothing stores, specialty shops, gift shops, sporting goods stores and many other types of businesses. A large market exists for RTI's products in Europe, and particularly in Germany.

15. Plaintiff, Hurbert Heller, is "Vice-President, International, of RTI, who is paid in large part on commission. Heller negotiated with the German firm, POSPartner G.M.B.H. (POS) to establish a distribution agreement whereby POS

would distribute RTI's software products in Germany. Heller would realize substantial commissions from such sale to POS as well as other sales in Germany exceeding $75,000. The negotiations occurred in part between Heller and representatives of POS in Orlando, Florida, in the Middle District of Florida.

16. POS and Heller negotiated to the point that POS offered to enter into an agreement with RTI. During the process of the negotiation, POS learned that Heller is a Scientologist. Heller has been a devoted member of the Church of Scientology since 1971. Upon learning that Heller is a Scientologist, POS, as a result of Caberta's inducement, demanded that Heller sign one of Caberta's "sect filters." Heller refused to sign Caberta's "sect filter," and POS refused to enter into the agreement unless Heller signed Caberta's "sect filters", thereby causing substantial damage to Heller.

## COUNT I – (TORTIOUS INTERFERENCE)

17. This is a count for tortious interference with an advantageous business relationship and a business expectancy.

18. Plaintiff adopts and realleges the allegations of paragraphs 1 through 16 above.

19. Defendant's actions constitute a willful, wanton and malicious interference with plaintiff's advantageous business relationship and prospective economic advantage with POS, and defendant's actions have damaged plaintiff.

WHEREFORE, plaintiff demands judgment against defendant for damages, including, but not limited to, loss of profits, loss of business reputation, costs, expenses, increased overhead, prejudgment interest and such exemplary

damages as may later be allowed by court on motion, and such other and further relief as to the court may appear just and proper.

## COUNT II (UNFAIR AND DECEPTIVE TRADE PRACTICES)

20. This is a count for unfair and deceptive trade practices pursuant to Florida's Little FTC Act, Florida Statutes Section, §§501.201, et seq. (1999).

21. Plaintiff adopts and realleges the allegations of paragraphs 1 through 16 above.

22. Florida Statutes, §501.204 declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce ...." Florida Statutes, §501.202 provides that Florida Deceptive and Unfair Trade Practices Act shall be construed liberally to promote the following policy:

> To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

Plaintiff's business activities constitute a legitimate business enterprise within the meaning of Section 501.202(2).

23. Florida Statutes, §501.202(8), defines trade or commerce to include "the advertising, soliciting, providing, offering or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value wherever situated. 'Trade or commerce' shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity."

6

Plaintiff is engaged in trade or commerce within the meaning of Section 501.202(8), and is a "consumer" within the meaning of Section 501.202(7).

24. Florida Statutes, Section 501.211(1) provides that "without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."

25. Florida Statutes, §501.211(2) provides that "in any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such consumer may recover actual damages, plus attorneys fees and court costs ...."

26. Targeting plaintiff with Caberta's so-called "sect filter" both in the State of Florida and in Germany and the introduction of Caberta's "sect filters" into the United States and the State of Florida for the purpose of using a person's religious beliefs to harm the person in their business activities constitutes an unfair method of competition, and/or an unconscionable act or practice, and/or an unfair or deceptive act or practice within the meaning of Chapter 501, Florida Statutes.

27. To protect his rights, plaintiff has been required to retain the services of the undersigned attorneys and has agreed to pay them a fee for their services herein.

WHEREFORE, plaintiff demands:

  1. An award of compensatory damages exceeding the sum of $75,000, exclusive of interest and costs;

  2. An award of plaintiff's reasonable attorneys fees pursuant to Florida Statutes, Section 501.2105;

  3. An award of prejudgment interest, plus court costs;

  4. A permanent injunction prohibiting defendant from engaging in the unfair, deceptive and unconscionable trade practices alleged herein; and

  5. Such other and further relief as to the court may appear just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

            JOHNSON, BLAKELY, POPE, BOKOR,
            RUPPEL & BURNS, P.A.

            BY: _____
            F. WALLACE POPE, JR.
            P.O. Box 1368
            Clearwater, Fla. 33757
            (727) 461-1818
            Attorneys for Plaintiff
            FBN #: 124449

            and

MOXON & KOBRIN
Kendrick Moxon
Helena Kobrin
FBN #: 0259713
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
(727) 443-5620

218425

# ERKLÄRUNG

Ich, die/der Unterzeichnende

erkläre,

1) daß ich bzw. mein Unternehmen nicht nach der Technologie von L. Ron Hubbard arbeite/arbeitet,

2) daß weder ich noch meine Mitarbeiter nach der Technologie von L. Ron Hubbard geschult werde/werden bzw. keine Kurse und/oder Seminare nach der Technologie von L. Ron Hubbard besuche/besuchen und

3) daß ich die Technologie von L. Ron Hubbard zur Führung meines Unternehmens (zur Durchführung meiner Seminare) ablehne.

_____          _____
Datum                              Unterschrift

31.02.1996

EXHIBIT A

## DECLARATION

I, the signer,

    declare,

1) that I i.e. my company do not work with the technologies of L. Ron Hubbard,

2) that neither I or my fellow workers are trained in the technologies of L. Ron Hubbard, i.e. I do not attend any courses and/or seminars on the technologies of L. Ron Hubbard, and

3) that I reject the technologies of L. Ron Hubbard for the running of my company (and the conduct of my seminars.)

218461