**UNITED STATES DISTRICT COURT**
Middle District of Florida

HUBERT HELLER,

              Plaintiff

vs

URSULA CABERTA,

              Defendant

Case No. 8:00CV-1528-T-27C

## DEFENDANT'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM

DEFENDANT, URSULA CABERTA, by and through her undersigned attorney, appears specially for the purposes of contesting jurisdiction and seeking dismissal of the complaint filed herein, and for no other purpose, and prays entry of an order dismissing the complaint filed herein, and says:

1. Plaintiff's Complaint establishes as a matter of law that Defendant is immune from the jurisdiction of this Court under the provisions of 28 U.S.C. Section 1603, *et seq.*

2. The Court does not have "longarm" jurisdiction over Defendant, who is a foreign national covered by no portion of the applicable statute.

3. Defendant does not have sufficient "minimum contacts" with the forum state to allow the Court to exercise jurisdiction over her.

4. Plaintiff is not alleged to have been a party to the business relationship claimed in Count I of the Complaint to have been disrupted by Defendant, and therefore lacks standing to brig this action.

5. Plaintiff fails to state in his Complaint a *prima facie* case for tortious

-1-



interference with an advantageous business relationship.

6. Plaintiff fails to state in his Complaint a *prima facie* case for violation of the Florida Deceptive and Unfair Trade Practices Act, and cannot successfully re-plead without admitting falsehood in his initial complaint.

## MEMORANDUM OF LAW

**A. IMMUNITY.** Plaintiff pleads a conclusive case for sovereign immunity on behalf of Defendant. In his complaint, Plaintiff states that Defendant is the head of an anti-cult task force for the government of Hamburg, Germany; (Complaint, paragraph 7) that in her capacity as head of the anti-cult task force, she promulgated certain anti-Scientology measures; (paragraph 8) that among the anti-Scientology measures promulgated by Defendant in connection with her office was a "sect filter;" (paragraph 9) and that Plaintiff was injured as a result of the promulgation of the "sect filter" (paragraphs 17-19 and 20-27). In sum, Plaintiff pleads with admirable clarity that Defendant is an official of a foreign government who, acting in her official capacity, caused some injury to Plaintiff.

28 USC Section 1604 provides that foreign states are immune from the jurisdiction of the courts of the United States except as otherwise specifically provided. 28 USC Section 1603 defines "foreign state" to include "agencies or instrumentalities of a foreign state" and "a political subdivision of a foreign state." Hamburg, a subdivision of the German Republic, is a "foreign state." Individuals acting in their capacities as employees of a foreign state are considered "agencies or instrumentalities of a foreign state" under

-2-

28 USC Section 1603(b). *Junquist vs Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997). See also *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, *671* (D.C. Cir. 1996); *Chuidian v. Philippine Nat. Bank, 912 F.2d 1095, 1099-1103* (9th Cir. 1990).

Because Plaintiff admits that Defendant acted at all times material hereto in her capacity as an official of the government of Hamburg, Defendant is immune from the jurisdiction of this Court.

**B. LACK OF STATUTORY PERSONAL JURISDICTION.** Plaintiff's complaint fails to set forth a sufficient factual basis for a finding of personal jurisdiction over Defendant. Attempting to plead longarm jurisdiction under Section 48.193, Fla. Stat., Plaintiff actually succeeds in demonstrating a lack of any basis for the exercise of jurisdiction.

Plaintiff alleges that Defendant is "operating, conducting, engaging in, or carrying on a business or business venture in this state" under Section 48.193(1)(a), Fla. Stat. This claim cannot be squared with Plaintiff's assertion that Defendant acted as an official of the government of Hamburg in creating and promoting the use of the "sect filter." A finding that a defendant is "doing business" for purposes of Section 48.193, Fla. Stat., requires that the defendant's activities be considered collectively, and that they constitute a "general course of business activity in the state *for pecuniary gain.*"[e.s.] *Skurnick vs Ainsworth*, 591 So.2d 904 (Fla. 1991); *Dinsmore vs Martin Blumenthal Assoc., Inc.*, 314 So.2d 561, 564 (Fla. 1975). Obviously, the conduct of governmental affairs does not meet

-3-

that definition.

Plaintiff also alleges that this Court has jurisdiction over Defendant pursuant to the provisions of Section 48.193(1)(f), Fla. Stat. This allegation is unsupported. In his complaint, Plaintiff claims only economic injury. Section 48.193(1)(f) contemplates only personal injury or physical property damage, and will not serve as a basis for the exercise of longarm jurisdiction where the injury alleged is purely economic. *Aetna Life & Casualty Co. vs Therm-O-Disc, Inc.*, 511 So.2d 992 (Fla. 1987).

**C. MINIMUM CONTACTS.** Without regard to the requisites of Florida's longarm statute, Plaintiff fails to allege in his complaint sufficient contacts between Defendant and the State of Florida to warrant the exercise of jurisdiction over Defendant. Each alleged act of Defendant set forth in the complaint filed herein occurred in Germany. (Complaint, paragraphs 7, 10, 11, and 12.) The only connection alleged between Defendant and this jurisdiction is as follows: "On July 25, 2000, Caberta was present in Clearwater, Pinellas County, Florida, and held a press conference in which she publicly promoted in the United States and the State of Florida *her* use and dissemination of her 'sect filters' to blacklist Scientologists." (Complaint, paragraph 13). [e.s.] *"Her"* use and dissemination of the "sect filter" was accomplished entirely in Germany. (paragraphs 7 through 12.)

Thus, Plaintiff claims that Defendant may properly be haled into court in the Middle District of Florida because Defendant has spoken within this district about things she has done overseas. It is not alleged that Defendant did anything in Florida other than

-4-

talk about what she had done in Germany.

In *Freedom S&L Ass'n vs Ormandy & Assoc., Inc.,* 479 So.2d 316 (Fla.5th DCA 1985), a Pennsylvania resident assisted an individual in obtaining a loan from a Florida savings and loan by offering as collateral an "irrevocable" letter of credit issued by a Pennsylvania bank. The Pennsylvanian thereafter directed the Pennsylvania bank to withdraw the letter of credit. It did so and the Pennsylvanian thereafter called the Florida S&L to confirm that the revocation of the letter of credit had been effected.

The court held that the Pennsylvanian's allegedly tortious acts occurred entirely in Pennsylvania, not Florida. The followup call after revocation of the letter of credit was "analogous to checking to see if a pulse is detectable on a dead body." Because no part of the alleged tortious conduct occurred in Florida, Florida courts were without jurisdiction. Indistinguishably, Defendant in the instant action is alleged to have done nothing in Florida but "promote" her overseas use and dissemination of the "sect filter." This Court has no jurisdiction over her.

**D. STANDING.** The complaint fails to make a prima facie case for Plaintiff's standing to bring this action. The complaint alleges that Defendant's activities caused a German firm, POSPartner G.M.B.H.(POS) to decline to enter into a contract with RTI, Inc.(RTI). Plaintiff does not allege that he was a party to the relationship between POS and RTI, but rather that he has a relationship with RTI which would have permitted him to profit had the POS - RTI relationship come to fruition. Plaintiff has pled no facts which would, if true, establish that he enjoys identity of person with, or the right to sue

-5-

on behalf of, RTI.

Tortious interference with a contract and tortious interference with a business relationship are the same cause of action, distinguishable only by the fact that one involves a contract and the other does not. *Smith vs Ocean State Bank*, 335 So.2d 641 (Fla. 1st DCA 1976). Actions for tortious interference with a contract are available to persons who are *parties* to contracts. *East Bay L.P. vs American Gen'l.*, 744 F.Supp. 1118 (M.D. Fla. 1990); *McKinney-Green, Inc. vs Davis*, 606 So.2d 393, 397 (Fla. 1st DCA 1992). It follows inevitably that only persons who are parties to a relationship have standing to pursue an action for interference with that relationship. Plaintiff has not alleged that he was such a party. He therefore lacks standing to proceed.

**E. FAILURE TO STATE A CAUSE OF ACTION (Count I).** Plaintiff demands judgment on a claim of tortious interference with a business relationship ("tortious interference"), but fails to adequately plead his claim.

> The elements of tortious interference with a business relationship are '(1) the existence of a business relationship. . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.' *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). A protected business relationship need not be evidenced by an enforceable contract. Id. However, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Register v. Pierce, 530 So. 2d 990, 993* (Fla. 1st DCA 1988).

*Ethan Allen, Inc. vs Georgetown Manor, Inc.*, 647 So.2d 812 (Fla. 1994). Plaintiff's

complaint falls short in several material respects.

**The existence of a business relationship.** First, as noted in the discussion of
Plaintiff's lack of standing, Plaintiff has not adequately pled the existence of a cognizable
business relationship to which he was a party and which was the object of Defendant's
alleged interference. Plaintiff has alleged only that, had POS entered into an agreement
with RTI, RTI would have paid a commission to Plaintiff. In order to support an action
for tortious interference, the relationship must have some substance. The law is settled
that such an action may be "predicated on an unenforceable *agreement,* if * * * an
understanding between the parties would have been completed had the defendant not
interfered. * * * A mere offer to sell, however, does not, by itself, give rise to sufficient
legal rights to support a claim of intentional interference with a business relationship."
*Ethan Allen, Inc. vs Georgetown Manor, Inc.,* 647 So.2d 812, 814 - 815 (Fla. 1994) [e.s.],
and cases cited therein. The operative word is, of course "agreement." Plaintiff alleges
only that "POS offered to enter into an agreement with RTI." (Complaint, paragraph 16.)
A protected business relationship exists when the participants' dealings have "progressed
beyond the stage of a mere offer, to an understanding...." *Landry vs Hornstein,* 462 So.2d
844 (Fla. 3d DCA 1985). However, an "agreement to agree" is a nullity. *East Kendall
Investments, Inc. vs Bankers Real Estate Partners, Inc.,* 742 So.2d 302 (Fla. 3d DCA
1999); *May vs Sessums & Mason, P.A.,* 700 So.2d 22 (Fla. 2d DCA 1997) A mere offer
to agree must be something less than that. It is clear from the Complaint that whatever
existed between POS and RTI had not matured sufficiently to support an action (even an

-7-

action brought by RTI) based on its demise.

**Knowledge of the relationship on the part of the defendant.** Plaintiff makes no allegation that Defendant had knowledge of any relationship between POS on one side and Plaintiff and/or RTI on the other. Therefore, the cause of action has not been pled.

**Intentional interference with the relationship.** Having failed to allege that Defendant had any knowledge of the relationship between Plaintiff and RTI or between RTI and POS, Plaintiff predictably fails to allege that any act of Defendant's was done with intent to interfere in Plaintiff's (or RTI's) affairs. "In Florida, a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers, but no cause of action exists for tortious interference with a business's relationship to the community at large." *Southern Alliance Corp. v. Winter Haven, 505 So. 2d 489, 496 (Fla. 2d DCA 1987)*, cited in *Ethan Allen, Inc. vs Georgetown Manor, Inc., supra*. Because the cause of action advanced by Plaintiff does not protect his (or anyone's) business relationship with the world at large, his failure to plead Defendant's knowledge of the specific relationship allegedly interfered with is fatal to his claim; Defendant cannot have "intentionally" interfered with a relationship of which she was ignorant.

**Unjustified interference with the relationship.** Plaintiff fails to allege that the actions attributed to Defendant were unjustified; indeed, as explained above, Plaintiff effectively pled a privilege on Defendant's behalf by noting that she acted at all pertinent

-8-

times in her capacity as an official of a foreign government. Although he states in paragraph 19 of the Complaint his conclusion that Defendant's actions amount to "willful, wanton, and malicious interference...," that language is conclusory rather than factual, does not negate any justification Defendant may have, and does not affirmatively postulate a lack of justification for Defendant's actions.

**Resulting damage to Plaintiff.** Of all the shortcomings of Plaintiff's complaint, this is perhaps the most intriguing. In the first place, Plaintiff's allegations put him at a remove from the benefit of the alleged relationship between RTI and POS, thus taking his purported injuries out of the category of things proximately caused by Defendant's alleged misconduct. Granting him the benefit of every ambiguity, *he was not injured by Defendant's conduct; if anyone was, it was RTI.*

Second, and more to the point, the sad story related by Plaintiff does not paint Defendant as the malefactor, but rather alleges that Plaintiff was hoist on his own Scientological petard: it was not POS's demand for execution of the "sect filter" that killed the negotiations, but Plaintiff's refusal to comply. "POS, as a result of Caberta's inducement, demanded that [Plaintiff] sign one of Caberta's 'sect filters.' *Heller refused to sign Caberta's 'sect filter,'* and POS [therefore] refused to enter into the agreement...." [e.s.] (Complaint, paragraph 16).

As to this last element of Count I, the facts alleged do not demonstrate that *Plaintiff* was the victim of interference with the relationship, nor do they show that *Defendant* is the author of the precipitating event.

-9-

**F. FAILURE TO STATE A CAUSE OF ACTION (Count II).** Plaintiff brings Count II of the Complaint alleging entitlement to monetary and injunctive relief under the Florida Deceptive and Unfair Trade Practices Act.

The Act prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices *in the conduct of any trade or commerce*."[e.s.] Section 501.204, Fla. Stat. "Trade or commerce" is "advertising, soliciting, providing, offering, or distributing...any good or service, or any property...or thing of value." "'Thing of value' may include, without limitation, any moneys, donation, membership, credential, certificate, prize, award, benefit, license, interest, professional opportunity, or chance of winning." Section 501.203(8), (9), Fla. Stat.

Plaintiff identifies himself as a party covered under the Act: "Plaintiff's business activities constitute a legitimate business enterprise...." (Complaint, paragraph 22); "Plaintiff is engaged in trade or commerce...and is a 'consumer'...." (paragraph 23). Plaintiff does not, however, allege facts sufficient to establish that Defendant is covered by the Act.

Defendant is alleged to have engaged in none of the activities defined by statute as action in trade or commerce. She is not said to have offered any thing of value to anyone. Her activities are not alleged to have been undertaken for gain, and she is clearly not alleged to have been in competition with Plaintiff or RTI. She is not alleged to have uttered a single deceitful word; indeed, what she is accused of doing is giving POS the means to ferret out the truth of Plaintiff's theretofore hidden association with

-10-

Scientology.

As on the issue of sovereign immunity, Plaintiff has done much of the heavy lifting required to absolve Defendant of liability under the Florida Deceptive and Unfair Trade Practices Act. Plaintiff has pled unequivocally that, but for the July 25 press conference (Complaint, paragraph 13), each act performed by Defendant was a governmental act. It is apodictic that governmental activity *cannot* be "trade or commerce." That distinction is, in fact, an important one in an analysis under 28 USC Section 1603, *et seq.*; that act provides immunity for foreign governmental acts, but not for commercial activities of foreign governments. See, e.g., *Transaero Inc., vs La Fuerza Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994). The July press conference is alleged to have included only promotion by Defendant of "*her* use and dissemination" of the "sect filter" (Complaint, paragraph 13), which consisted entirely of governmental acts on foreign soil.

It is simply bizarre to suggest that there is a "trade or commerce" component to the actions ascribed to Defendant by the terms of the complaint.

**G. GENERAL VAGUENESS.** Plaintiff fails to give even an approximation of the time of occurrence of the events in his Complaint. Only the July 25 press conference is assigned a date, and it is not placed in sequence with the other events alleged.

The Complaint is riddled with chronological black holes and haphazard shifts in verb tense which, by concealing the temporal relationship between events, make an analysis of the claim impossible.

-11-

It is impossible to tell from the Complaint whether the July 25 press conference occurred before or after Plaintiff was confronted with the "sect filter." This information is necessary because, depending on the sequence of events, the press conference may well be *per se* unconnected to Plaintiff's claimed injury. It is impossible to tell whether Defendant's alleged contact with POS occurred before, during, or after the negotiations between POS and RTI. Comparison of the dates of those two events may well establish a complete bar to Plaintiff's tortious interference claim, because such a comparison may demonstrate that Defendant could not have known of the alleged Plaintiff/RTI – POS relationship at the time of the alleged interference.

For the foregoing reasons, Defendant prays entry of a judgment dismissing this action with prejudice, and/or granting such other, lesser, greater, or further relief as the Court may deem appropriate.

JOHN M. MERRETT, ESQUIRE
2716 Herschel Street
Jacksonville, Florida 32205
Telephone: 904.388.8891
Florida Bar No.: 0742848

I hereby certify that a copy of the foregoing was furnished to F.W. Pope, Esquire-911 Chestnut Street - Clearwater, Florida 33756(727-462-0365) and to the firm of Moxon & Kobrin -1100 Cleveland Street - Suite 900- Clearwater, FL 33755 (727-443-5640), by facsimile and US Mail this /4N day of August, 2000.

John M. Merrett

-12-