UNITED STATES DISTRICT COURT
Middle District of Florida

FILED

Case No. 8:00CV-1528-T-27C

HUBERT HELLER,

          Plaintiff,

vs

URSULA CABERTA,

          Defendant.

_____

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT
## AND SUPPORTING MEMORANDUM

DEFENDANT, URSULA CABERTA, by and through her undersigned attorney, appears specially for the purposes of contesting jurisdiction, seeking dismissal of the amended complaint filed herein, and recouping her fees and expenses herein, and for no other purpose, and prays entry of an order dismissing the complaint filed herein and taxing her attorney fees and costs against Plaintiff, and says:

    1. Plaintiff is immune from the jurisdiction of this Court under the provisions of 28 U.S.C. Section 1603, *et seq.* (the Foreign Sovereign Immunities Act, or FSIA).

    2. The Court does not have "longarm" jurisdiction over Defendant, who is a foreign national covered by no portion of the applicable statute.

    3. Defendant does not have sufficient "minimum contacts" with the forum state to establish that the Court has jurisdiction over her.

    4. Plaintiff is not alleged to have been a party to the business relationship claimed to have been disrupted by Defendant, and therefore lacks standing to bring this action.

    5. Plaintiff fails to state in his amended Complaint a *prima facie* case for tortious



interference with an advantageous business relationship.

6. Plaintiff fails to state in his amended Complaint a *prima facie* case for violation of the Florida Deceptive and Unfair Trade Practices Act.

7. Plaintiff fails to state in his amended Complaint a prima facie case for relief under 42 USC Section      (1985).

8. Should this action be dismissed, Plaintiff will be entitled to taxation of her costs and fees against Defendant pursuant to the provisions of Section 501.2105, Fla. Stat.

## MEMORANDUM OF LAW

**A. IMMUNITY.**  In his initial complaint, Plaintiff pled a conclusive case for sovereign immunity on behalf of Defendant.  Plaintiff stated that Defendant is the head of an anti-cult task force for the government of Hamburg, Germany; [Complaint, paragraph 7] that in her capacity as head of the anti-cult task force, she promulgated certain anti-Scientology measures; [paragraph 8] that among the anti-Scientology measures promulgated by Defendant in connection with her office was a "sect filter;" [paragraph 9] and that Plaintiff was injured as a result of the promulgation of the "sect filter" [paragraphs 17-19 and 20-27].

Rather brazenly, Plaintiff alleges in his amended Complaint that Defendant "is sued as an individual for acts she claimed to have undertaken in an official capacity, but which were undertaken outside the scope of her official duties, and which were illegal . ." and alternatively that she is sued for acts which, if in the scope of her official duties, are "tortious commercial acts." [amended Complaint, paragraph 2]  No new facts are offered

to refute the plain allegation of the initial complaint that Defendant acted at all material times within the scope of her official duties.

28 USC Section 1604 provides that foreign states are immune from the jurisdiction of the courts of the United States except as otherwise specifically provided. 28 USC Section 1603 defines "foreign state" to include "agencies or instrumentalities of a foreign state" and "a political subdivision of a foreign state."  Hamburg, a subdivision of the German Republic, is a "foreign state."  Individuals acting in their capacities as employees of a foreign state are considered "agencies or instrumentalities of a foreign state" under 28 USC Section 1603(b). *Junquist vs Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997).  See also *El-Fadl v. Central Bank of Jordan,*  75 F.3d 668, 671 (D.C. Cir. 1996)*; Chuidian v. Philippine Nat. Bank, 912 F.2d 1095,* 1099-1103 (9th Cir. 1990).

Because Plaintiff's initial complaint[1] and Defendant's attached affidavit establish that Defendant acted at all material times in her capacity as an official of the government of Hamburg, Defendant is immune from the jurisdiction of this Court under the FSIA.

**B. LACK OF STATUTORY PERSONAL JURISDICTION.**  Plaintiff's amended complaint attempts but fails to set forth a sufficient factual basis for a finding of personal jurisdiction under Section 48.193, Fla. Stat.

Plaintiff alleges that Defendant is "has committed tortious acts against plaintiff

_____

[1]The initial complaint is an admission of fact by Defendant. *Andrews vs Metro North Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989).

within the State of Florida; has caused injury to [plaintiff] within this State arising out of an act or omission outside the state at a time when [Defendant] was engaged in commercial activity, solicitation or service activities within this State; is engaged in substantial and not isolated activity within this state; is operating, conducting, engaging in, or carrying on commercial activities or business ventures in this state" under Section 48.193, Fla. Stat.

A finding that a defendant is "doing business" for purposes of Section 48.193, Fla. Stat., requires that the defendant's activities be considered collectively, and that they constitute a "general course of business activity in the state *for pecuniary gain*."[e.s.] *Skurnick vs Ainsworth*, 591 So.2d 904 (Fla. 1991); *Dinsmore vs Martin Blumenthal Assoc., Inc.*, 314 So.2d 561, 564 (Fla. 1975).  As previously noted, Plaintiff asserted in his initial complaint that Defendant was being sued only for official governmental activities, which obviously do not meet that definition.  Even Plaintiff's frantic backpedaling in his amended complaint fails to set forth any *facts* in support of the naked conclusory assertion that Defendant is engaged in business activities in this state.  The total inadequacy of these allegations is readily demonstrated by the fact that one cannot determine from the amended Complaint what business Defendant is supposed to pursue in the State of Florida.

Defendant's affidavit establishes that she acted at all material times in a governmental capacity, and that she has never carried on any activity in this country for profit.

-4-

Plaintiff presumably retains through the imprecisions of his amended Complaint the allegation that this Court has jurisdiction over Defendant pursuant to the provisions of Section 48.193(1)(f), Fla. Stat. This allegation is unsupported. In his complaint, Plaintiff claims only economic injury. Section 48.193(1)(f) contemplates only personal injury or physical property damage, and will not serve as a basis for the exercise of longarm jurisdiction where the injury alleged is purely economic. *Aetna Life & Casualty Co. vs Therm-O-Disc, Inc.*, 511 So.2d 992 (Fla. 1987).

**C. MINIMUM CONTACTS.** Plaintiff fails to allege sufficient contacts between Defendant and the State of Florida to warrant the exercise of jurisdiction over Defendant, without regard to the requisites of any longarm statute. Defendant is alleged to have effected only this act outside of Germany: "On July 25, 2000, Caberta was present in Clearwater, Pinellas County, Florida, and held a press conference paid by Minton and LMT, Inc. in which she publicly promoted in the United States and the State of Florida the use and dissemination of her 'sect filters' to blacklist Scientologists." Amended Complaint, paragraph 17. In addition to being false (see Affidavit of Stacy Brooks/Transcript of Press Conference), the making of a speech is scarcely a sufficient predicate for the exercise of longarm jurisdiction over a foreign national. At no point in the Amended Complaint is it alleged that the "sect filter" was disseminated outside Germany.

Plaintiff alleges, falsely, that Defendant is a "silent partner or joint venturer" with a number of Americans and the Lisa McPherson Trust, Inc. [amended Complaint,

paragraph 15].  However, even in doing so, Plaintiff does not claim any activity in the

State of Florida sufficient to establish jurisdiction; he alleges only "contacts," which are

disclosed to be only communications with persons in the United States.  In other words,

Plaintiff claims that communicating with persons in Florida for the purpose of making up

falsehoods about Scientologists brings a foreign citizen within the reach of American

courts, regardless of any lack of actual activity or presence of the foreigner in this

country.  Plaintiff also offers no assistance in identifying the commercial nature of these

purported contacts.

Thus, Plaintiff claims that Defendant may properly be haled into court in the

Middle District of Florida because Defendant has spoken within this district about things

she has done overseas.  It is not alleged that Defendant did anything in Florida other than

talk about what she had done or might do in Germany.

In *Freedom S&L Ass'n vs Ormandy & Assoc., Inc.,* 479 So.2d 316 (Fla.5th DCA

1985), a Pennsylvania resident assisted an individual in obtaining a loan from a Florida

savings and loan by offering as collateral an "irrevocable" letter of credit issued by a

Pennsylvania bank.  The Pennsylvanian thereafter directed the Pennsylvania bank to

withdraw the letter of credit.  It did so and the Pennsylvanian thereafter called the Florida

S&L to confirm that the revocation of the letter of credit had been effected.

The court held that the Pennsylvanian's allegedly tortious  acts occurred entirely in

Pennsylvania, not Florida.  The  followup call after revocation of the letter of credit was

"analogous to checking to see if a pulse is detectable on a dead body."  Because no part

-6-

of the alleged tortious conduct occurred in Florida, Florida courts were without jurisdiction. Indistinguishably, Defendant in the instant action is alleged to have done nothing in Florida but "promote" her overseas use and dissemination of the "sect filter." This Court has no jurisdiction over her.

**D. STANDING.** The complaint fails to make a *prima facie* case for Plaintiff's standing to bring this action. The complaint alleges that Defendant's activities caused a German firm, POSPartner G.M.B.H.(POS) to decline to enter into a contract with RTI, Inc.(RTI). Plaintiff does not allege that he was a party to the relationship between POS and RTI, but rather that he has a relationship with RTI which would have permitted him to profit had the POS - RTI relationship come to fruition. Although Plaintiff casually drops at page 10 of the amended Complaint a reference to the subject contract as "his contract with POS," the claim for tortious interference is plainly predicated relationship between RTI and POS, to which Plaintiff was not a party. Plaintiff has pled no facts which would, if true, establish that he enjoys identity of person with, or the right to sue on behalf of, RTI.

Tortious interference with a contract and tortious interference with a business relationship are the same cause of action, distinguishable only by the fact that one involves a contract and the other does not. *Smith vs Ocean State Bank*, 335 So.2d 641 (Fla. 1st DCA 1976). Actions for tortious interference with a contract are available to persons who are *parties* to contracts. *East Bay L.P. vs American Gen'l.*, 744 F.Supp. 1118 (M.D. Fla. 1990); *McKinney-Green, Inc. vs Davis*, 606 So.2d 393, 397 (Fla. 1st

DCA 1992). It follows inevitably that only persons who are parties to a relationship have

standing to pursue an action for interference with that relationship. Plaintiff has not

alleged that he was such a party. He therefore lacks standing to proceed.

**E. FAILURE TO STATE A CAUSE OF ACTION (Count I).** Plaintiff demands

judgment on a claim of tortious interference with a business relationship ("tortious

interference"), but fails to adequately plead his claim.

> The elements of tortious interference with a business
> relationship are '(1) the existence of a business relationship. .
> . (2) knowledge of the relationship on the part of the
> defendant; (3) an intentional and unjustified interference with
> the relationship by the defendant; and (4) damage to the
> plaintiff as a result of the breach of the relationship.' *Tamiami
> Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla.
> 1985). A protected business relationship need not be
> evidenced by an enforceable contract. Id. However, "the
> alleged business relationship must afford the plaintiff existing
> or prospective legal or contractual rights." *Register v. Pierce,
> 530 So. 2d 990, 993* (Fla. 1st DCA 1988).

*Ethan Allen, Inc. vs Georgetown Manor, Inc.*, 647 So.2d 812 (Fla. 1994). Plaintiff's

complaint falls short in several material respects.

**The existence of a business relationship.** First, as noted in the discussion of

Plaintiff's lack of standing, Plaintiff has not adequately pled the existence of a cognizable

business relationship to which he was a party and which was the object of Defendant's

alleged interference. Plaintiff has alleged only that, had POS entered into an agreement

with RTI, RTI would have paid a commission to Plaintiff. In order to support an action

for tortious interference, the relationship must have some substance. The law is settled

that such an action may be maintained "even though it is predicated on an unenforceable *agreement*, if * * * an understanding between the parties would have been completed had the defendant not interfered. * * * A mere offer to sell, however, does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship." *Ethan Allen, Inc. vs Georgetown Manor, Inc.,* 647 So.2d 812, 814 - 815 (Fla. 1994) [e.s.], and cases cited therein. The operative word is, of course "agreement." Plaintiff alleges only that "POS offered to enter into an agreement with RTI." Amended Complaint, paragraph 21. A protected business relationship exists when the participants' dealings have "progressed beyond the stage of a mere offer, to an understanding...." *Landry vs Hornstein*, 462 So.2d 844 (Fla. 3d DCA 1985). An "agreement to agree" is a nullity. *East Kendall Investments, Inc. vs Bankers Real Estate Partners, Inc.*, 742 So.2d 302 (Fla. 3d DCA 1999); *May vs Sessums & Mason, P.A.*, 700 So.2d 22 (Fla. 2d DCA 1997). A mere offer to agree must be something less than that It is clear from the Complaint that whatever existed between POS and RTI had not matured sufficiently to support an action (even an action brought by RTI) based on its demise.

**Knowledge of the relationship on the part of the defendant.** Plaintiff makes no allegation that Defendant had knowledge of any relationship between POS on one side and Plaintiff and/or RTI on the other. Therefore, the cause of action has not been pled.

**Intentional interference with the relationship.** Having failed to allege that Defendant had any knowledge of the relationship between Plaintiff and RTI or between RTI and POS, Plaintiff predictably fails to allege that any act of Defendant's was done

with specific intent to interfere in Plaintiff's (or RTI's) affairs. "In Florida, a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." *Southern Alliance Corp. v. Winter Haven, 505 So. 2d 489, 496 (Fla. 2d DCA 1987)*, cited in *Ethan Allen, Inc. vs Georgetown Manor, Inc., supra*. Because the cause of action advanced by Plaintiff does not protect his (or anyone's) business relationship with the world at large, his failure to plead Defendant's knowledge of the specific relationship allegedly interfered with is fatal to his claim.

**Unjustified interference with the relationship.** Plaintiff fails to allege that the actions attributed to Defendant were unjustified; indeed, as explained above, Plaintiff effectively pled a privilege on Defendant's behalf by noting that she acted at all pertinent times in her capacity as an official of a foreign government. Although he states in paragraph 26 of the Complaint his conclusion that Defendant's actions amount to "willful, wanton, and malicious interference...," that language is conclusory rather than factual, does not negate any justification Defendant may have, and does not affirmatively postulate a lack of justification for Defendant's actions.

**Resulting damage to Plaintiff.** Of all the shortcomings of Plaintiff's complaint, this is perhaps the most intriguing. In the first place, Plaintiff's allegations put him at a remove from the benefit of the alleged relationship between RTI and POS, thus taking his purported injuries out of the category of things proximately caused by Defendant's

-10-

alleged misconduct.  Granting him the benefit of every ambiguity, *he* was not injured by Defendant's conduct; if anyone was, it was RTI.

Second, and more to the point, the sad story related by Plaintiff does not paint Defendant as the malefactor, but rather alleges that Plaintiff was hoist on his own Scientological petard: it was not  POS's demand for execution of the "sect filter" that killed the negotiations, but Plaintiff's refusal to comply.  "POS, as a result of Caberta's inducement, demanded that [Plaintiff] sign one of Caberta's 'sect filters.' *Heller refused to sign Caberta's 'sect filter,'* and POS [therefore] refused to enter into the agreement...." [e.s.]  Complaint, paragraph 16; Amended Complaint, paragraph 21.

As to this last element of Count I, the facts alleged do not demonstrate that *Plaintiff* was the victim of interference with the relationship, nor do they show that *Defendant* is the author of the precipitating event.

Plaintiff attempts in this count to obtain from POS's failure to enter into a contract benefits which would clearly have been unavailable to him had the contract been concluded and then breached.  The purpose of the contemplated agreement was not to benefit Plaintiff; it was a strictly bilateral matter between POS and RTI.  Plaintiff would therefore have been only an incidental beneficiary of the contract, and could not have maintained an action against POS for breach of a POS/RTI contract.  See, *e.g.*, *Metropolitan Life Ins. Co. vs McCarson*, 467 So. 2d 277 (Fla. 1985) ("It is axiomatic in contract law that an incidental beneficiary cannot enforce the contract.")  Because Plaintiff would not have had an enforceable interest had a contract been concluded, he

cannot claim such an interest where no contract ever came into being.

**No possibility of interference or of conclusion of the contract.** Plaintiff alleges in paragraph 20 of the amended Complaint that POS was at the material times a member of a conspiracy with Defendant for the use of the "sect filter." It is axiomatic that conspirators are alter egos, that each acts on behalf of all. It is likewise axiomatic that one cannot be held liable for interference with one's own business relationships. For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship. *Salit vs Ruden*, 742 So.2d 381, 386 (Fla. 4th DCA 1999) and authorities cited. Because Plaintiff has alleged unequivocally that POS insisted on execution of the "sect filter," and that POS was at the time a member of a conspiracy with Defendant, there is, *prima facie*, sufficient identity of person between POS and Defendant to preclude a finding that Defendant was a stranger to the business relationship subject to liability for tortious interference.

Furthermore, it is clear from the allegations of paragraph 20 of the Amended Complaint that execution of the "sect filter" was at all material times a condition of doing business with POS. Given Plaintiff's disinclination to execute the "sect filter," this means that there was never a point at which there was any chance for conclusion of an agreement.

**F. FAILURE TO STATE A CAUSE OF ACTION (Count II).** Plaintiff brings Count II of the Complaint alleging entitlement to monetary and injunctive relief under the Florida Deceptive and Unfair Trade Practices Act.

-12-

The Act prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices *in the conduct of any trade or commerce.*"[e.s.] Section 501.204, Fla. Stat. "Trade or commerce" is "advertising, soliciting, providing, offering, or distributing...any good or service, or any property...or thing of value." "'Thing of value' may include, without limitation, any moneys, donation, membership, credential, certificate, prize, award, benefit, license, interest, professional opportunity, or chance of winning." Section 501.203(8), (9), Fla. Stat.

Plaintiff attempts to identify himself as a party covered under the Act: "Plaintiff's business activities constitute a legitimate business enterprise...." Amended Complaint, paragraph 29; "Plaintiff is a 'consumer'...." Amended Complaint, paragraph 31. Plaintiff fails. A claim under the Florida Unfair and Deceptive Trade Practices Act may be brought by a "consumer" *only* when the claimant acted as a purchaser of goods or services in the transaction underlying the claim. *N.G.L Travel Associates vs Celebrity Cruises, Inc.*, 2000 Fla. App. LEXIS 6544; 25 Fla. Law W. D 1311 (Fla. 3d DCA, May 31, 2000), and cases cited therein. The Florida Unfair and Deceptive Trade Practices Act "create[s] a simplified statutory cause of action which bestows additional substantive remedies on the citizens of this state to recover economic damages *related solely to a product or service purchased in a consumer transaction* infected with unfair or deceptive trade practices or acts." *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.,* 693 So. 2d 602 (Fla. 2d DCA 1997) *[e.s.]*

Plaintiff alleges no facts sufficient to establish that Defendant is covered by the

-13-

Act.

Defendant is alleged to have engaged in none of the activities constituting action in trade or commerce. She is not said to have offered any thing of value to anyone. Her activities are not alleged to have been undertaken for gain, and she is clearly not alleged to have been in competition with Plaintiff or RTI. She is not alleged to have uttered a single deceitful word; indeed, what she is accused of doing is giving POS the means to ferret out the truth of Plaintiff's theretofore hidden association with Scientology.

It is simply bizarre to suggest that there is a "trade or commerce" component to the actions ascribed to Defendant by the terms of the complaint.

**G. FAILURE TO STATE A CAUSE OF ACTION (Count III)**. In Count III, Plaintiff seeks damages pursuant to 42 USC Section 1985(3) based upon an allegation that Defendant and others conspired to deprive him of "equal protection...equal privileges and immunities...[and] the opportunity to engage in interstate and international commerce *based upon their religious beliefs and practices*." [e.s.]

The right to free exercise of religion is guaranteed by the First Amendment to the U.S. Constitution. "[A]n alleged conspiracy to infringe First Amendment rights is not a violation of §1985(3) unless it is proved that the State is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the State." *United Bro'hood of Carpenters & Joiners vs Scott*, 463 U.S. 825; 103 S. Ct. 3352; 77 L. Ed. 2d 1049 (1983)  Plaintiff has made no allegation of state involvement or of influence of the state as an object of the purported conspiracy.

-14-

Whoever Plaintiff imagines to be conspiring against him, he is not entitled to relief under 42 USC Section 1985(3). That statute does not comprehend animus based on religious[2] affiliation. It is essential to a claim under that Section that the conspiracy be motivated by racial animus. A conspiracy which is motivated by religious animus is not cognizable under 42 USC Section 1985(3). *Word of Faith World Outreach Center Church, Inc. vs Sawyer*, 90 F.3d 118 (5th Cir. 1996), *Kinniburgh vs Burlington Northern R.R. Co.*, 568 F.Supp. 655 (D.C. D. Mont. 1983).

**H. GENERAL VAGUENESS.** Plaintiff fails to give even an approximation of the time of occurrence of the events in his Complaint. Only the July 25 press conference is assigned a date, and it is not placed in sequence with the other events alleged.

The Complaint is riddled with chronological black holes and haphazard shifts in verb tense which, by concealing the temporal relationship between events, make an analysis of the claim impossible.

It is impossible to tell from the Complaint whether the July 25 press conference occurred before or after Plaintiff was confronted with the "sect filter." This information is necessary because, depending on the sequence of events, the press conference may well be *per se* unconnected to Plaintiff's claimed injury. It is impossible to tell whether Defendant's alleged contact with POS occurred before, during, or after the negotiations between POS and RTI. Comparison of the dates of those two events may well establish a

---

[2]All references to Scientology as "religion" are strictly *arguendo*; Scientology is in fact a totalitarian crime syndicate masquerading as religion.

complete bar to Plaintiff's tortious interference claim, because such a comparison may demonstrate that Defendant could not have known of the alleged Plaintiff/RTI – POS relationship at the time of the alleged interference.

**H. ATTORNEY FEES AND COSTS.** Section 501.2105, Fla. Stat. provides for an award of attorney fees and costs to the prevailing party in an action brought under the Florida Deceptive and Unfair Trade Practices Act.  Defendant seeks fees under that provision.

For the foregoing reasons, Defendant prays entry of a judgment dismissing this action with prejudice, and/or granting such other, lesser, greater, or further relief as the Court may deem appropriate.

JOHN M. MERRETT, ESQUIRE
2716 Herschel Street
Jacksonville, Florida 32205
Telephone: 904.388.8891
Florida Bar No.: 0742848

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to F.W. Pope, Esquire, 911 Chestnut Street, Clearwater, FL 33756 and to the firm of Moxon & Kobrin, 1100 Cleveland Street, Suite 900, Clearwater, FL 33755 by United States mail this 5 day of October, 2000.

John M. Merrett

-16-