IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER, an individual,

       Plaintiff,

    v.                                Case No. 8:00 CV-1528-T-27C

URSULA CABERTA, an individual,

       Defendant.
_____/

**PLAINTIFF'S OPPOSITION TO MOTION TO SUSPEND DISCOVERY**

**AND**

**PLAINTIFF'S MOTION AND MEMORANDUM TO STAY RESPONSE
TO DEFENDANT'S MOTION TO DISMISS PENDING COMPLETION
OF JURISDICTIONAL DISCOVERY; MOTION TO STRIKE**

**·I  - INTRODUCTION**

Plaintiff, Hubert Heller submits the instant Opposition to defendant Ursula

Caberta's motion to suspend discovery.  Plaintiff also submits his own motion to stay the

filing of his opposition to defendant's motion to dismiss, because identical facts and law

are raised in each motion.

Defendant's central position, absorbing over half of her motion, is that Mr.

Heller's membership in the religion of Scientology warrants that Mr. Heller not be

permitted discovery allowed under the federal rules to all other litigants.  Defendant's

bias against plaintiff's religion notwithstanding, substituting the name of any other

religion for "Scientology" in the foregoing sentence, reveals this argument as frivolous.



Defendant's primary legal position is that discovery must be suspended when a motion to dismiss on jurisdictional grounds is pending. The only authority cited by plaintiff is mischaracterized. In fact, the 11th Circuit and every other circuit, holds that jurisdictional discovery is appropriate where a defendant raises a jurisdictional defense to the complaint – particularly where facts are asserted and evidence is submitted by a defendant in support of the motion, as has been done here. Indeed, many circuit courts have held that denial of jurisdictional discovery to challenge a defendant's factual assertions constitutes an abuse of discretion warranting reversal, as addressed below.

Moreover, defendant's counsel previously requested and plaintiff *agreed* to initial discovery on jurisdictional issues. Indeed, Ms. Caberta's counsel just filed an objection to a document request to a business associate of Ms. Caberta in this district, who her attorney also represents, asserting that some unspecified part of the "production requests exceed the agreed-upon scope of discovery pending resolution of the jurisdictional issues pending herein." Despite this "agreement," defendant's counsel filed the motion to suspend all discovery without any communication with Mr. Heller's counsel, and has therefore not filed a certification of a good faith effort to resolve the matter as required by the Local Rules -- because there was no such effort. Counsel for plaintiff however attempted resolution of this matter before filing the instant motion, but was rebuffed. (Declaration of Kendrick Moxon and certyification under Rule 3.01(g).

The limited discovery propounded by plaintiff is entirely appropriate and as a matter of law, must go forward prior to the litigation of defendant's motion to dismiss. Plaintiff's time for the filing of his Opposition to defendant's motion to dismiss should accordingly be stayed pending completion of limited jurisdictional discovery.

## II – STATEMENT OF FACTS

Plaintiff, Hubert Heller is a citizen of Germany domiciled in Clearwater, Florida. As set forth in detail in the Amended Complaint, Mr. Heller has been injured by the intentional acts of defendant, Ursula Caberta, through interference with his software distribution business activities.

The amended complaint alleges that Ms. Caberta's conduct arose out of her biased "anti-Scientology" activities and prejudices targeting persons who conduct business in Germany, solely because they are members of the Scientology religion. A substantial contract negotiated by Mr. Heller in Florida with a German firm was destroyed by the efforts of Ms. Caberta to enforce a so-called "sect filter" upon the German company, requiring that it refuse to do business with any person who espouses beliefs and undertakes practices of the Scientology religion, founded by L. Ron Hubbard. With respect to her business dealings in Florida and her efforts with co-conspirators, the Amended Complaint also generally alleges that:

> Caberta is also engaged in continuous and systematic business contacts in the State of Florida. She is a silent partner or joint venturer with Robert Minton, Stacy Brooks, Jesse Prince, and the Lisa McPherson Trust, Inc. ("LMT, Inc."), a Florida for-profit corporation engaged in the activity of attempting to damage or destroy the Scientology religion. Caberta regularly communicates with LMT, Inc., and Minton, Young and Prince, for the purpose of contriving, creating, planning and disseminating false, deceptive and disparaging assertions regarding Scientologists, such as plaintiff.
>
> *     *     *     *
>
> In her personal capacity, Caberta has been paid an unspecified amount of money by Florida businessman, Robert Minton, in return for which, in part, she has traveled to Clearwater, Florida for the purpose of ... disseminating and requiring use of her sect filters, encouraging boycotts of businesses owned by Scientologists and continuing the general conspiracies alleged herein. Minton and LMT, Inc. have also paid Caberta to engage in propaganda in Clearwater, Florida, in Germany, in Washington, D.C., and in International publications, to bolster investments made by Minton in

3

litigation in Florida. This payoff to Caberta ... was a private and unlawful payment for favors to Minton and LMT, Inc. in the furtherance of their joint co-conspiracy ... She has discussed and planned with Minton, the Chairman of the Board of LMT, Inc., of expanding LMT, Inc., to Germany where she would become a principal in exchange for money received from Minton and LMT, Inc.

(Amended Complaint, ¶¶ 15-16.)

The Amended Complaint also alleges that:

While purportedly carrying out her activities as an employee of the City of Hamburg, in fact, Caberta acted entirely outside the scope of her lawful authority. Her conduct specifically violated German constitutional law by persecuting members of the Scientology religion; calling for, organizing and instituting an unlawful commercial boycott of adherents to the Scientology religion; acting with private business persons who were secretly paying her for favors and assistance to harm Scientologists like Heller; and as part of an illegal conspiracy in which she and her city government was involved. ... Caberta is paid by Minton and LMT, Inc., to carry out the activities alleged herein, in part, to increase the value of his American investments, to harass Scientologists, and to cause Scientologists to realize monetary losses.

(Amended Complaint, ¶ 23.)

Based on these and many other facts set forth in the Amended Complaint, plaintiff pleads three causes of action: tortious interference with an advantageous business relationship; unfair and deceptive trade practices pursuant to Florida's Little FTC Act; and conspiracy to interfere with and deprive plaintiff of the equal protection of the laws and equal privileges and immunities under the laws, by interfering with and depriving him of the opportunity to engage in interstate and international commerce based upon his religious beliefs and practices.

Consistent with Local Rule 3.05, M.D.Fl. and Rule 26(f), F.R.Civ.P., counsel for plaintiff endeavored to arrange a case management conference prior to undertaking

4

discovery. Starting on September 4, 2000, plaintiff's counsel sent several letters to John Merrett, counsel for Ms. Caberta, seeking to arrange such conference. Only after plaintiff's counsel threatened to file a motion to require him to meet, did Mr. Merrett agree, near the very end of the time required under the rules. (Ex. A, letter.)

In the context of these communications, plaintiff's counsel agreed that initial discovery would be limited to facts intended to be utilized to address jurisdictional issues, which agreement was formalized in the Case Management Report. (Ex. B, Case Management Report, p. 3.) On September 25th, plaintiff served a document production demand on Ms. Caberta, (Ex. C), and on September 28th and October 4th, served subpoenas and notices of deposition and document requests on the LMT, Inc. (Ex. D), and Robert Minton (Ex. E), the alleged co-conspirators and Florida business contacts of Ms. Caberta.

The discovery sought in the document request to defendant was manifestly addressed to issues of jurisdiction, including Caberta's business dealings in the district with Minton and his company to effect the harms suffered by plaintiff. It sought:

- correspondence with Robert Minton and the principals of LMT, Inc., Stacy Brooks and Jesse Prince, and "any officer, director, agent or employee of the Lisa McPherson Trust, Inc." (Request to Produce, Nos. 9-13.)

- bank records or other documents reflecting or concerning the receipt of funds by Ms. Caberta from Robert Minton, or LMT, Inc. (Request to Produce, Nos. 15-17.)

- documents reflecting communications with any United States entity regarding the use or purpose of the sect filter and regarding "the technology of L. Ron Hubbard" in the United States. (Request to Produce, Nos. 21, 23, 26.)

The document requests appended to the subpoena served upon LMT, Inc. and upon Robert Minton were similarly focused on jurisdictional issues relating to Ms. Caberta's business activities in the United States and with her alleged U.S. co-conspirators, Minton

and LMT, Inc.  The LMT, Inc. request sought, *inter alia*:

- records which concern the sect filter and its dissemination. (Request to Produce, Nos. 1-3.)

- documents which reflect any expenses paid or payments to or on behalf of Ms. Caberta. (Request to Produce, Nos. 4, 5, 11, 12, 21-23.)

- communications between Minton and his employees with Caberta. (Request to Produce, Nos. 7-9.)

- records concerning the establishment of an office of LMT, Inc. in Germany. (Request to Produce, No. 10.)

- communications with the media regarding Ms. Caberta or her work. (Request to Produce, Nos. 13-14.)

- communications with any Hamburg governmental entity regarding the instant lawsuit and the sect filter. (Request to Produce, Nos. 18-19.)

(Ex. D.)

The Requests appended to Mr. Minton's subpoena were nearly identical. (Ex. E.)

The LMT, Inc. deposition is set for October 13th, the Minton deposition for October 17th, and Ms. Caberta's document production is due on October 27th.

Although this Court Ordered that the defendant's response to the Amended Complaint was not due until October 16th, and although Ms. Caberta's counsel procrastinated on the Case Management meeting as long as possible, he quickly filed a motion to dismiss on October 6th, 10 days before it was due, along with a motion to suspend discovery.

No prior communication mandated by Local Rule 3.01(g) was made to plaintiff's counsel pursuant to the filing of the motion to suspend discovery. (Ex. F, Declaration of Kendrick Moxon.)  Thus, the mandatory certification required by that rule that a good faith effort was made to resolve the discovery dispute, has also not been filed by Mr. Merrett.

Indeed, Mr. Merrett consistently refuses to take counsel's calls, asserting that he fears he will be misrepresented, even though plaintiff's counsel offered to permit Mr. Merrett to tape record all telephone conversations. (*Id.*)

LMT, Inc. was served with a subpoena on September 28th (and a second subpoena served on another LMT employee on October 3rd), however it was not until October 11th that Ms. Caberta's counsel faxed an "Objection" to the document request appended to the LMT, Inc. subpoena. In the Objection, defendant's counsel admitted that there was a prior agreement that plaintiff take discovery as to jurisdictional issues, by asserting that the document request, in his opinion, "exceeds the agreed-upon scope of discovery pending resolution of the jurisdictional issues pending herein." What records LMT, Inc. will produce at the deposition on October 13th, is therefore not known.

## IV – DEFENDANT'S ASSERTIONS OF STRENGTH ON THE MERITS OF HER CASE ARE IRRELEVANT TO WHETHER DISCOVERY PROCEEDS PENDING THE MOTION TO DISMISS

Ms. Caberta makes passing argument that she believes her legal position as to the 42 U.S.C. § 1985(3) civil rights claim is meritorious, based on an assertion that there can be no claim for a conspiracy to violate First Amendment rights which does not also allege state action. (Motion at 5.) That may or may not be, but it is irrelevant, since plaintiff did not allege a conspiracy to violate plaintiff's First Amendment rights. The Amended Complaint alleges a conspiracy to deprive him "of the opportunity to engage in interstate and international commerce based upon [his] religious beliefs and practices." (Amended Complaint, ¶ 38.) The right infringed is Mr. Heller's right to engage in interstate and international commerce. Where such infringement is predicated upon a class based animus – in this case, plaintiff's religious beliefs – it constitutes a violation of §1985(3).

Defendant also asserts that discrimination based on religious bias will not support

7

an action under §1985(3), citing *Word of Faith Outreach Center Church, Inc. v. Sawyer*,
90 F.3d 118 (5th Cir. 1996.)  This single case is, however, an aberration as every other
circuit to have considered the issue is to the contrary. *Compare Life Insurance Co. of N.A.
v. Reichart*, 591 F.2d 499, 505, n.15 (9th Cir. 1979); *Columbrito v. Kelly*, 764 F.2d 122,
130 (2d Cir. 1985); *Taylor v. Gilmartin*, 686 F.2d 1346, 1357-61 (10th Cir. 1982), *cert
denied*, 459 U.S. 447; *Ward v. Connor*, 657 F.2d 45, 48 (4th Cir. 1981), *cert denied*, 455
U.S. 907 (1982).  Defendant's bald statement of the law is disingenuous, and the issue has
not yet been decided by the 11th Circuit.

Regardless, we are not yet at the stage of addressing the merits of each claim, and
plaintiff is only seeking discovery with respect to the issue of jurisdiction at this point.
Defendant's cursory (and inaccurate) argument on the merits of one claim is hardly reason
to prohibit discovery, particularly as to the issue of jurisdiction as addressed below.

## V –    DISCOVERY IS UNIFORMLY PERMITTED WHERE
## JURISDICTION IS CHALLENGED

Beyond the irrelevant commentary seeking to tar Mr. Heller with incorrect and
prejudicial assertions regarding his religion, only a small part of defendant's argument
addresses stays of discovery.  Defendant cites two First Circuit cases for the proposition
that "[i]t is appropriate for a court to stay or suspend discovery in an action pending
resolution of jurisdictional issues, particularly when discovery is not likely to be useful in
elucidating the essential jurisdictional facts. *Dynamic Image Technologies, Inc. v. U.S.*,
2221 F.3d 34 (1st Cir. 2000); *Noonan v. Winston Co.*, 135 F.3d 85, 94 (1st Cir. 1998)."
(Motion at 5.)

In *Dynamic Image*, the court found that the argument of the plaintiff that it was
error not to permit discovery during the pendency of a motion to dismiss on jurisdictional
grounds was not made in the district court and could not therefore be raised on appeal. 221

8

F.3d at 38.  The Court also stated that the plaintiff/appellant never explained how, if the discovery were allowed, it would bear upon the narrow jurisdictional issue presented. 221 F.3d at 39.  In *Noonan*, the discovery sought by the plaintiff below was found to be irrelevant, as it sought information on an issue already adjudicated against the plaintiff and thus "would not assist plaintiff's cause." 135 F.3d at 94.  Both cases are inapposite to the circumstances of this case.

Ms. Caberta disingenuously ignores the unequivocal rulings of the Supreme Court and every circuit, which require that jurisdictional discovery be permitted. *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13, 57 L.Ed.2d 253 (1978) ("discovery is available to ascertain the facts bearing on [jurisdictional] issues"); *Crane v. Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987) (denial of opportunity for discovery on issue of personal jurisdiction required reversal); *Fraley v. Chesapeake & Ohio Railway Co.,* 397 F.2d 1 9 (3rd Cir. 1968); *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255-56 (1st Cir.1966) (vacating district court's dismissal for lack of personal jurisdiction; diligent plaintiff entitled to "reasonably necessary" discovery in attempting to establish jurisdiction); *Wells Fargo & Company v. Wells Fargo Express Company*, 556 F.2d 406 (9th Cir. 1977).

The Eleventh Circuit has also addressed the issue, finding a right to discovery where jurisdiction defenses are raised. *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 729-31 (11th Cir.1982) (reversing district court's dismissal for lack of subject matter jurisdiction and remanding for discovery on jurisdictional facts because "[p]laintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction").  The Eleventh Circuit has recently referred to this as a "qualified right to conduct jurisdictional discovery," which is activated by the timely promulgation of

discovery relating to relevant jurisdictional issues.  *Posner v. Essex Insurance Co.,* 178 F.3d 1209, 1214 n.7 (11th Cir. 1999).

      The entitlement to discovery is even greater here than in the run-of-the-mill circumstance of a jurisdictional challenge, as Ms. Caberta has now filed *her own* declaration as well as the declaration of one of the alleged co-conspirators in support of her motion to dismiss.  Ms. Caberta's declaration purports to refute allegations of the complaint, but does so in vague and conclusory fashion, while raising other issues that tend to *confirm* allegations of the Amended Complaint.  She states that she has received a "loan" from Robert Minton, the owner and Chairman of the Board of LMT, Inc., but does not state whether the alleged "loan" was repaid. (Ex. G, Caberta Affidavit, ¶ 6.)  Ms. Caberta also claims she paid her own expenses in traveling to Clearwater recently, (*Id.,* ¶ 8), for the purpose of "visiting friends" (*Id.,* ¶ 3), at which time she "publicly discussed her activities in Germany." (*Id.,* ¶ 8.)

      However, as revealed in the Affidavit of LMT, Inc.'s President, Stacy Brooks, this "public discussion" was in fact a "press conference given at the office of the LMT by Ursula Caberta." (Ex. H, Brooks Affidavit, ¶ 2.)  While Ms. Caberta purportedly came only to "visit friends," Ms. Brooks admits that LMT, Inc. paid her hotel expenses while in Florida. (*Id.,* ¶ 4.)   Ms. Brooks also admits to engaging in discussions with Caberta about opening an office of the for-profit company, LMT, Inc. in Germany, although she denies the negotiations came to fruition.

      Further, while Ms. Brooks purports to provide a transcript of the press conference of the statements of Ms. Caberta and swearing that "[t]here are no significant omissions from the translation," in fact, the transcript has been compared to the Internet version of the press conference on the LMT web site, and there are more than a few *very* significant

omissions. For example, omitted from Ms. Brook's version, the Internet version has Ms. Caberta discussing her creation and promulgation of the "sect filter" at length, as well as the fact that she was considering opening a branch office of the LMT, Inc. business owned by Minton, in Germany. (Ex. I, Declaration of Hubert Heller.)

Notwithstanding the matters addressed in the affidavits warranting elucidation through cross-examination and other discovery, and notwithstanding that Ms. Caberta has raised a jurisdictional defense warranting discovery, the very fact that defendant has filed the declarations in support of her motion makes jurisdictional discovery mandatory, as the Court may not rely only on the affidavits of the defendant to determine lack of jurisdiction. *Fraley v. Chesapeake & Ohio Railway Co.,* 397 F.2d 1, 9 (3rd Cir. 1968); *Blanco v. Carigulf Lines,* 632 F.2d 656, 657 (5th Cir. 1980).

## VI – DEFENDANT'S PREJUDICES TOWARD SCIENTOLOGY AND INFLAMMATORY ASSERTIONS SHOULD BE STRICKEN AND COUNSEL SANCTIONED

The offensive and inaccurate commentary by Ms. Caberta's counsel forwarding his own ill-will or that of his client towards the Scientology religion has no place in this action, or in defendant's papers. Plaintiff's counsel's Mr. Merrett's endeavor to attribute to Herbert Heller, his own twisted "interpretation" of alleged writings of the Founder of the Scientology religion 45 years ago in the context of seeking to stop all discovery in this case, is without logical justification.

Mr. Merrett also personally represents both alleged co-conspirator Robert Minton and co-conspirator LMT, Inc., in addition to Ursula Caberta. Mr. Merrett was sanctioned several weeks ago by U.S. Magistrate Judge Elizabeth Jenkins for discovery misconduct when he obstructed the deposition of LMT, Inc. and its President, Stacy Brooks, in a unrelated case. Magistrate Jenkins found, in part, that Mr. Merrett made many improper

instructions to the witness not to answer questions, (Ex. J, pp. 4-5), and that "it is difficult to imagine that this was anything but an attempt to obstruct discovery." (*Id.* at 11.) Judge Jenkins found the following quote to be "applicable" to Mr. Merrett: "Advocacy does not include 'game playing.' Conduct such as that engaged in here must not, and can not be tolerated." (*Id.*, at 12.)

Judge Jenkins' admonition was apparently lost on Mr. Merrett. Plaintiff requests a further admonition to Mr. Merrett, or if the Court believes it appropriate, sanctions.

## VII - CONCLUSION

For the foregoing reasons, plaintiff's response to defendant's motion to dismiss should be stayed pending completion of the outstanding discovery of LMT, Inc., Robert Minton and the document request to Ms. Caberta.

Dated: October 12, 2000                    Respectfully submitted,

F. Wallace Pope, Jr.
FBN #: 124449
JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818

Kendrick Moxon
FBN #: 0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
(727) 443-5620

Attorneys for Plaintiff
HUBERT HELLER

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing to be served on this 12th day of October, as indicated by the below service list.

_____
Attorney

## **SERVICE LIST**

John Merrett          **VIA U.S. MAIL**
2716 Herschel Street
Jacksonville, Florida 32205

13

# Due to the physical nature of exhibit, it is not scanned; please see case file.