

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| HUBERT HELLER, | x |
| Plaintiff, | Case No. 8:00-CV-1528-T-27C |
| vs. |  |
| URSULA CABERTA, |  |
| Defendant. | x |

### PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

### I - INTRODUCTION

On October 12, 2000, this court issued a *sua sponte* order to show cause to address this court's "subject matter jurisdiction in light of 28 U.S.C. § 1332(a)(1988); *Singh* v. *Daimler-Benz, AG*, 9 F.3d 303 (3rd Cir. 1993) and *Banci* v. *Wright*, 44 F. Supp. 2d 1272 (S.D. Fla. 1999)." The court, however, need not address this question, because the court clearly has federal question and supplemental jurisdiction. Thus, an opinion construing § 1332(a) would be purely advisory. Defendant also asserts that this court has original jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), a position with which plaintiff disagrees. Furthermore, under the plain language of the statute, the court has diversity jurisdiction over the two state law claims. It is important to note that the original complaint did not contain a federal question claim for relief, but the *amended complaint* now before the court asserts in Count III a federal question.

First, Count III of plaintiff's amended complaint alleges a conspiracy to deprive plaintiff of his civil rights in violation of 42 U.S.C. § 1985(3). *See* amended complaint ¶¶

1



37-43. Indisputably, the court has federal question jurisdiction over this cause of action under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's related state law causes of action under 28 U.S.C. § 1367(a). Thus, there is no need to examine other bases for the court's jurisdiction. This court should be particularly cautious in rendering an advisory opinion regarding the diversity jurisdiction statute because, as examined in Point V below, that question potentially raises complex questions of statutory interpretation and constitutional law.

Second, defendant has asserted that she is a "foreign state" within the meaning of FSIA, 28 U.S.C. § 1602, *et seq.* See defendant's motion to dismiss complaint and supporting memorandum. In a separate filing, plaintiff will argue that defendant is not a foreign state and, if she is a "foreign state" under FSIA, the commercial and tort exceptions to FSIA apply to this case. See 28 U.S.C. § 1605(a)(2), (5). If this court determines that FSIA applies to this action, and that one of the exceptions to FSIA applies, 28 U.S.C. § 1330(a) provides this court with original jurisdiction; indeed, it would be the exclusive basis for subject matter jurisdiction over this action. At a minimum, this court has jurisdiction to determine whether defendant is a "foreign state" and whether one of FSIA's exceptions to immunity applies.

Third, assuming the court examines diversity as a basis for its jurisdiction over the state law claims, the court should determine that it has diversity jurisdiction over those claims under 28 U.S.C. § 1332(a)(2). Defendant is a citizen of Germany, and plaintiff is a German citizen admitted to the United States for permanent residence and domiciled in Clearwater, Florida. Section 1332(a) provides that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Plaintiff, a lawful permanent resident alien in Florida, is therefore "a citizen of the State of Florida" for diversity purposes. Thus, the court has

jurisdiction over this suit under 28 U.S.C. § 1332(a)(2), which grants for diversity jurisdiction in cases involving "citizens of a State and citizens or subjects of a foreign state."

## II. THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER PLAINTIFF'S SECTION 1985 CONSPIRACY CLAIM.

Section 1331, U.S.C. vests subject matter jurisdiction in the federal courts for "all civil actions arising under the Constitution, laws, or treaties of the United States." Count III of plaintiff's amended complaint alleges a conspiracy to deprive plaintiff of his civil rights in violation of a federal statute, 42 U.S.C. § 1985(3). See amended complaint ¶¶ 37-43. Because plaintiff's section 1985(3) claim is an action "arising under the . . . laws . . . of the United States," this court has subject matter jurisdiction over this claim. See, e.g., Lucero v. Operation Rescue of Birmingham, 954 F.2d 624, 627 (11th Cir. 1992); Grant v. Bullock County Bd. of Educ., 895 F.Supp. 1494, 1497 (M.D. Ala. 1995).[1]

## III. THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.

28 U.S.C. § 1367(a) provides that "in any civil action of which the district court has original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see United Mine Workers v. Gibbs, 383 U.S. 715 (1966). Plaintiff's amended complaint raises two state law causes of action: count I is a

---

[1] This court also has jurisdiction over plaintiff's section 1985 claim under 28 U.S.C. § 1343(a)(1), which provides for "original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o recover damages for injury to his person or property by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42." See, e.g., Grant, 895 F. Supp. at 1497.

3

state law claim of tortious interference and count II is a state law claim for unfair and deceptive trade practices. See amended complaint ¶¶ 24-26, 27-36. The facts underlying plaintiff's two state law claims are virtually identical to those underlying the section 1985 federal conspiracy claim. All three claims relate to the activities of defendant, Ursula Caberta, in concert with other individuals and businesses in using the religiously discriminatory "sect filter" to impose a boycott on businesses that employ members of the Scientology religion to deprive plaintiff of valuable business opportunities. The federal and state claims clearly "form part of the same case or controversy" under § 1367(a). Accordingly, this court has supplemental jurisdiction over plaintiff's state law claims.[2]

### IV. IF THE FOREIGN SOVEREIGN IMMUNITIES ACT APPLIES TO THIS ACTION, THIS COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO 28 U.S.C. § 1330.

Defendant has alleged that she is a "foreign state" within the meaning of the FSIA, 28 U.S.C. § 1602, et seq. See defendant's motion to dismiss amended complaint and supporting memorandum. If Caberta is a foreign state, this court has original jurisdiction over all the claims in this action under 28 U.S.C. § 1330(a). In a separate filing in opposition to the motion to dismiss, plaintiff will argue that Caberta is not a "foreign state" as that term is defined in 28 U.S.C. § 1603(a). If Caberta is not a "foreign state," FSIA does not apply and 28 U.S.C. § 1330(a) does not provide an independent basis for this court's jurisdiction. This court, however, certainly has jurisdiction to determine whether FSIA applies to this case. See, e.g., Taiwan v. U.S. Dist. Ct. for N.D., 128 F.3d 712, 717 (9th Cir. 1997); 28 U.S.C. § 1330(a).

---

[2] None of the factors that might support an exercise of discretion under 28 U.S.C. § 1367(c) to decline jurisdiction even arguably apply here. Moreover, the order to show cause does not raise or suggest this issue.

4

If, contrary to plaintiff's argument, this court determines that FSIA applies to this action, the court would then necessarily examine whether one of the exceptions to foreign sovereign immunity permits this action to go forward. See 28 U.S.C. § 1605(a). In its separate filing, plaintiff will argue that, assuming FSIA applies to this case, the commercial and tort exceptions preserve this court's jurisdiction. See 28 U.S.C. § 1605(a)(2), (5). If this Court determines that one of these exceptions applies, this court has jurisdiction over this action, pursuant to 28 U.S.C. § 1330(a), independent and exclusive of other possible bases of jurisdiction. Argentine Republic v. Amerada Hess Shipping Corp., 109 S.Ct. 683, 692 (1989); Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480 (1983).

Whatever this court rules on whether Caberta is a "foreign state" or whether any of the exceptions to FSIA immunity apply to this case, defendant's contention that FSIA applies to this action makes any decision on diversity jurisdiction premature and advisory. If FSIA does not apply, this court nevertheless has jurisdiction under its federal question and supplemental jurisdiction, addressed in points II and III above.

### V. THIS COURT HAS DIVERSITY JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.

As noted, any decision regarding this court's diversity jurisdiction would be purely advisory, given the court's clear federal question and supplemental jurisdiction, and arguable FSIA jurisdiction. Nevertheless, under the plain language of 28 U.S.C. §1332(a), this court has jurisdiction over the two state law claims.

Section 1332, 28 U.S.C. provides that:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . .

> (2) citizens of a State and citizens or subjects of a foreign state. . . .

Section 1332(a) further provides that:

> For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

Defendant, Caberta, is a citizen of Germany. (amended complaint ¶ 2). Plaintiff, Hubert Heller, is a German citizen, admitted to the United States for permanent residence and is domiciled in Clearwater, Florida. (amended complaint ¶ 1). Under section 1332, plaintiff, a lawful permanent resident alien in Florida, is a "citizen of the State" of Florida. Under the unambiguous, plain language of the statute, this court has diversity jurisdiction over plaintiff's state law claims under section 1332(a)(2), which provides for jurisdiction in suits between "citizens of a State [Heller] and citizens or subjects of a foreign state [Caberta]." 28 U.S.C. 1332(a)(2); *Singh v. Daimler-Benz, A.G.*, 9 F.3d 303 (3d Cir. 1993).

This court's order to show cause directed plaintiff to address this court's jurisdiction in light of *Singh v. Daimler Benz, A.G., supra*, and *Banci v. Wright*, 44 F. Supp. 2d 1272 (S.D. Fla. 1999). In *Singh*, plaintiff was a citizen of India, admitted for permanent residence in the United States and domiciled in the State of Virginia. Defendants were Daimler Benz, A.G., a German corporation, and its American distributor, Mercedes-Benz of North America, Inc., a Delaware corporation with its principal place of business in New Jersey. The sole basis for federal court jurisdiction over Singh's state law action was diversity under § 1332(a)(2).

The Third Circuit held that the plain language of the diversity statute provided jurisdiction over the action. *Singh, supra* at 312. The court noted that pursuant to the

1988 amendments to the diversity statute, a resident alien was "deemed a citizen of the State in which such alien is domiciled." *Id.*, at 304. Thus, Singh, a resident alien domiciled in Virginia, was a citizen of the State of Virginia for diversity purposes. *Id.* at 305. The court, after a lengthy analysis, expressly rejected defendant's argument that the legislative history overrode the clear meaning of the diversity statute. The court wrote: "There is no ambiguity in the emphasized language." *Id.* In amending the diversity statute, "Congress directed that permanent resident aliens, who heretofore were considered 'citizens or subjects of a foreign state' for purposes of diversity jurisdiction, are now considered 'citizen[s] of the State in which [they are] domiciled." *Id.* The amended statute "represents a straightforward congressional direction." *Id.*[3]

In *Banci* v. *Wright*, 44 F. Supp. 2d 1272 (S.D. Fla. 1999), the court rejected the plain language of section 1332(a) in favor of the court's construction of what the congressional intent underlying the deeming provision must have been. The court acknowledged that "[p]ursuant to § 1332(a), permanent resident aliens are deemed to be citizens of the State in which they reside." *Banci, supra* at 1275. Nevertheless, the court concluded that "[t]his deeming provision . . . was not intended to extend the reach of the Court's diversity jurisdiction beyond its traditional bounds and thereby permit a foreign alien to sue another alien living in another state." *Id.* In reaching this conclusion, the *Banci* court, with little independent analysis, followed the argument of the Court of Appeals for the District of Columbia, which likewise recognized that the *plain language* of § 1332(a) provides for diversity jurisdiction between a permanent resident alien and a citizen of a foreign state, but concluded that, despite this plain

---

[3] The court engaged in a lengthy and careful analysis of the legislative history, and concluded that the legislative history was unclear and ambivalent as to congressional "intent." *Singh, supra* at 306-10.

7

language, it would interpret § 1332(a) as failing to confer jurisdiction over such a suit. See Saadeh v. Farouki, 107 F.3d 52 (D.C. Cir. 1997). See generally 15 Moore's Federal Practice § 102.78, at 102-146 to 148.4 (3d ed. 2000)(collecting cases); Singh, supra at 310-11 (collecting cases following plain language of resident alien provision).

Assuming this court chooses to address its diversity jurisdiction, this court should follow the Third Circuit's decision in Singh, which correctly applies the plain language of § 1332(a), and should reject the Saadeh approach, which overrides clear statutory language based on a strained and inaccurate reading of the legislative history of the 1988 Amendments to section 1332.

Where the statutory language is plain, the court's inquiry is ordinarily complete. Burlington N.R.R. v. Oklahoma Tax Comm'n, 481 U.S. 454, 461 (1987); Boca Ciega Hotel, Inc. v. Bouchard Transportation Company, Inc., 51 F.3d 235, 236 (11th Cir. 1995) ("It is axiomatic that the interpretation of a statute must begin, and usually ends, with the text of the statute."). "Unless the statutory language is ambiguous or would lead to absurd results, the plain meaning of the statute must control." U.S. ex rel. Williams v. NEC Corp., 931 F.2d 1493 (11th Cir. 1991); see also Blue Cross & Blue Shield v. Weitz, 913 F.2d 1544, 1548 (11th Cir. 1990); U.S. v. Kattan-Kassin, 696 F.2d 893, 895 (11th Cir. 1983). The Eleventh Circuit has repeatedly rejected claims that legislative history should override clear statutory language. See, e.g., Boca Ciega Hotel, supra at 237 (rejecting argument that plaintiffs' case was not subject to claims presentation procedure of Oil Pollution Act; "vague notions about a statute's overall purpose cannot be allowed to overcome the words of its text regarding the specific issue under consideration") (internal quotations omitted); Williams, supra at 1504 (holding that False Claims Act does not bar government employee from filing a qui tam action based upon information acquired in the course of government employment given

that the "False Claims Act is devoid of any statutory language that indicates a jurisdictional bar"). *See also U.S.* v. *Kirkland*, 12 F.3d 199 (11th Cir. 1994); *U.S.* v. *Rockman*, 993 F.2d 881 (11th Cir. 1993).

Only if statutory language is ambiguous or the plain meaning of the statute would lead to absurd results, may a court look to legislative history in an effort to determine Congressional intent. *Williams, supra* at 1498; *Kattan-Kassin, supra* at 895. "The plainer the statutory language, however, the more convincing contrary legislative history must be . . . to support a reading of the statute which departs from the plain language." *Williams, supra* at 1498; *see also Garcia* v. *United States*, 469 U.S. at 75 ("only the most extraordinary showing of contrary intentions . . . would justify a limitation on the 'plain meaning' of the statutory language"). "Thus, the party who seeks to convince a court to adopt a reading of a statute that is at odds with its plain meaning labors under a heavy burden." *Williams, supra* at 1498.

The Third Circuit correctly concluded in *Singh* that the legislative history of the 1988 amendments to the diversity statute do not reveal "the most extraordinary showing of contrary intentions . . . [which] would justify a limitation on the 'plain meaning' of the statutory language." *Garcia, supra* at 75; *Singh, supra* at 306-10. Even those courts refusing to apply the plain meaning of § 1332(a) concede that the statute is plain on its face. *See, e.g., Saadeh, supra* at 58; *Banci, supra* at 1275. Thus, the legislative record must be overwhelming to support the contention that §1332(a) does not include suits between a permanent resident alien and a citizen of a foreign state.

As *Singh* demonstrates, the legislative history behind the 1988 amendments to the diversity statute is silent about suits between permanent resident aliens and citizens of foreign states. The legislation deeming permanent resident aliens to be citizens of

9

the state in which they were domiciled for the purposes of diversity jurisdiction was adopted as part of the Judicial Improvements and Access to Justice Act (the "1988 Act"), Pub.L. No. 100-702, 102 Stat. 4642 (1988). The general intent of the 1988 Act, in the words of Senator Heflin, the Senate floor sponsor, was to make "modest adjustments to the scope of diversity jurisdiction." Singh, supra at 307 (quoting 134 Cong. Rec. 31,050). Title II of S. 1482, which contained the specific provision at issue in this case, received almost no commentary, other than an expressed desire to eliminate the anomalous situation of a permanent resident alien resident in a state being able to sue in diversity another resident of that state who was a United States citizen. See Singh, supra at 308 (quoting 134 Cong.Rec. 31,055 (1988)) ("[t]here is no apparent reason why actions between persons who are permanent residents of the same State should be heard by Federal courts merely because one of them remains a citizen or subject of a foreign state").

The Saadeh court erred in reading this sparse legislative record to override the clear statutory language of § 1332(a). Saadeh makes repeated reference to House Report 100-889 to supplement this legislative history. See Saadeh, supra at 59-60 (citing H.R. Rep. 100-889 reprinted in 1988 U.S.C.C.A.N. 5982). This House Report manifests an evident hostility toward diversity jurisdiction in general. However, as the Third Circuit correctly observed, this House Report was directed toward earlier versions of the bill that proposed the virtual elimination of diversity jurisdiction, a proposal that was not adopted in the final legislation, and that did not even contain the deeming provision or any similar provision. Singh, supra at 307. Saadeh erred in using this House Report about a different version of the bill to override § 1332(a)'s clear language.

Saadeh's strained reading of § 1332(a) results at least partly from purported

10

constitutional concerns about congressional authorization of diversity jurisdiction in cases involving no U.S. citizens. See Saadeh, supra at 61; Banci, 44 F. Supp. 2d at 1276. The Third Circuit in Singh did not reach this constitutional issue because the presence of an American distributor of the German defendant created "minimal diversity," satisfying any potential constitutional concerns. See Singh, supra at 311. The purported constitutional difficulty addressed in Saadeh and Banci arises under the diversity clause of Article III, § 2, which provides that the "judicial Power shall extend to all Cases . . . between citizens of different States . . . and between a State, or the Citizens thereof, and foreign States, Citizens, or Subjects."

In Hodgson v. Bowerbank, 9 U.S. (5 Cranch) 303 (1809), the Supreme Court construed an ambiguous provision of the First Judiciary Act as not authorizing the exercise of jurisdiction solely on the basis of the alienage of one of the parties. Although Hodgson v. Bowerbank makes clear that to satisfy Article III diversity requirements in a suit involving an alien, at least one party must be a citizen of a state, it leaves open the question of defining state citizenship and Congress' authority in that regard. No one questions Congress' power to define state citizenship for statutory diversity purposes, and the courts have not explained why Congress does not have that power for constitutional purposes under Article III. If Congress has this power, as seems clear, the 1988 Act poses no constitutional problem. If, by contrast, Congress cannot define a permanent resident alien to be a state citizen for constitutional purposes, then the deeming provision of § 1332(a) in all its applications is unconstitutional, and not simply applications under § 1332(a)(2). Such an interpretation would also call into serious question Congress' authority to define "states" for diversity

purpose as it has done under §1332(d).[4]

However, this court need not, and should not, consider these constitutional questions at this juncture. Given the clear presence of federal question, and supplemental jurisdiction over this suit, and the possibility of FSIA jurisdiction, it would be advisory for this court to render any decision with respect to its diversity jurisdiction or the constitutionality of the 1988 revisions to the diversity statute. Therefore, there is no reason to consider the proper interpretation of the deeming provision of § 1332(b) or the outer limits of this court's Article III power to hear diversity suits and whether the 1988 Act violates these limits.

## VI - CONCLUSION

For the reasons stated herein, this Court has subject matter jurisdiction over this action.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by regular U.S. mail to John M. Merrett, Esq., 2716 Herschel Street, Jacksonville, FL 32205 this 20 day of October, 2000.

JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.

BY: _____
F. WALLACE POPE, JR.
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818
SPN #: 00002797
FBN #: 124449

---

[4] *Singh, supra* at 310-11; 28 U.S.C. § 1332(d) (defining "states" to include "the Territories, the District of Columbia, and the Commonwealth of Puerto Rico").

and

Kendrick Moxon
Helena Kobrin
(FBN #0259713)
MOXON & KOBRIN
Helena Kobrin
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
(727) 443-5620

Attorneys for Plaintiff
HUBERT HELLER

224765