FILED

01 FEB -8 PH 4: 04

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

```
_____x
HUBERT HELLER,                   :
                                 :
                   Plaintiff,    :        Case No. 8:00-CV-1528-T-27C
                                 :
         vs.                     :
                                 :
URSULA CABERTA,                  :
                                 :
                   Defendant.    :
_____x
```

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S
# SECOND MOTION TO DISMISS FOR LACK OF FSIA JURISDICTION

45

# TABLE OF CONTENTS

I.    THIS REHASHED MOTION IS AN IMPROPER EFFORT
      TO HAVE THIS COURT RECONSIDER ITS PRIOR DECISION . . . . . . . . 2

II.   PLAINTIFF IS ENTITLED TO DISCOVERY ON THE FSIA ISSUE  . . . . . 5

III.  DEFENDANT IS NOT ENTITLED TO IMMUNITY
      UNDER THE FSIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   IF THE FSIA APPLIES, CABERTA'S CONDUCT FALLS
      WITHIN THE "COMMERCIAL ACTIVITY" EXCEPTION  . . . . . . . . . . 11

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Bigio* v. *Coca-Cola Co.*,
235 F.3d 63 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Byrd* v. *Corporation Forestal y Industrial de Olancho*,
182 F.3d 380 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cabiri* v. *Assasie-Gyimah*,
921 F. Supp. 1189 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Chiudian* v. *Philippine National Bank*,
912 F.2d 1095 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Doe* v. *Bolkiah*,
74 F. Supp. 2d 969 (D.Haw. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Kellogg*,
197 F.3d 1116 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jungquist* v. *Sheikh Sultan Bin Khalifa Al Nahyan*,
115 F.3d 1020 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Monell* v. *Dept. of Soc. Serv. of City of New York*,
436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moran* v. *The Kingdom of Saudi Arabia*,
27 F.3d 169 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Republic of Argentina* v. *Weltover*,
504 U.S. 607 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Royal Ins. Co.* v. *Latin American Aviation Serv., Inc.*,
210 F.3d 1348 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## **STATUTES**

Fed.R.Civ.P. 12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed.R.Civ.P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1603(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1605(a)(2), FSIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1350, Alien Tort Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. §§ 1602, *et seq.*, Foreign Sovereign Immunities Act, . . . . . . . . . . . . . . . . . . . 2-3

Rule 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Tort Claims Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Plaintiff, Hubert Heller respectfully submits this Memorandum of Law in opposition to defendant Ursula Caberta's Rule 12(b)(6) "Second Motion to Dismiss for Lack of Jurisdiction Under the Federal [sic] Sovereign Immunities Act" ("Second Motion"). Defendant's Second Motion ignores the fact that this Court has already denied a virtually identical motion, remarkably failing to mention even once this Court's prior Order of December 16, 2000. Yet, Caberta does little more than rehash the prior arguments rejected by this Court, in response to plaintiff's Second Amended Complaint, which in fact contained *no* changes to any allegations relating to the sovereign immunity issue. Most astonishing, however, is that defendant has submitted "evidence" purportedly in support of its motion – two vague, conclusory affidavits, and two letters – and yet at the same time has moved to stay *any* discovery against defendant, by which her assertions can be cross-examined or challenged.

Defendant's rehashed motion should be denied, as it is in reality nothing more than a belated and meritless motion for reconsideration. Moreover, plaintiff is entitled to challenge this "evidence" through discovery, and thereafter submission of contrary evidence including expert testimony on German law. Even if considered, nothing in Caberta's arguments or documents supports a claim of immunity, and her vague, conclusory assertions are expressly refuted in the Declaration of Anthony Petz, dated February 8, 2001, and filed herewith.

## I.    THIS REHASHED MOTION IS AN IMPROPER EFFORT TO HAVE THIS COURT RECONSIDER ITS PRIOR DECISION

On October 5, 2000, defendant Caberta moved to dismiss plaintiff's First Amended Complaint on grounds, *inter alia*, of sovereign immunity under the Foreign

2

Sovereign Immunities Act, 28 U.S.C. §§ 1602, *et seq.* ("FSIA") ("First Motion").

Caberta's primary arguments were that, in carrying out her economic boycott of

Scientologists in the United States through her "sect filter," she was acting as an

official of the government of the City of Hamburg, Germany, and that "Plaintiff pled a

conclusive case for sovereign immunity on behalf of Defendant." First Motion, at 2-3.

Although the motion was directed to the pleadings, defendant submitted an affidavit

that purported to support her motion on FSIA grounds. By Order dated December 16,

2000, this Court denied the motion to dismiss, and held, "At this stage, viewing the

allegations in the Complaint in a light most favorable to Plaintiff, Defendant is not

entitled to sovereign immunity under the FSIA." Order, at 3.

Pursuant to the Court's order granting leave to amend, plaintiff filed a Second

Amended Complaint on January 8, 2001. The Second Amended Complaint made *no*

changes from the First Amended Complaint regarding allegations supporting FSIA

jurisdiction.[1] Nevertheless, defendant has now moved to dismiss the Second

Amended Complaint, essentially rehashing the arguments previously rejected by this

Court. The primary argument is verbatim identical: "Plaintiff pled a conclusive case

for sovereign immunity on behalf of Defendant." Second Motion at 1; *see also id.* at

2, 4 (making identical argument, using identical language, and relying on identical

cases as in First Motion).

This Court rejected the identical argument in its prior ruling. That decision is

---

[1]  **The Second Amended Complaint amended the Tortious Interference and
Florida Deceptive and Unfair Trade Practices Act claims in light of the December 16
Order, and added a claim under the Alien Tort Claims Act, 28 U.S.C. § 1350.**

3

clearly "law of the case" for purposes of the issue of the adequacy of Heller's pleading. "'Under the law of the case doctrine, an issue decided at one stage of a case is binding at later stages of the same case.'" *Royal Ins. Co.* v. *Latin American Aviation Serv., Inc.*, 210 F.3d 1348, 1350 (11th Cir. 2000) (quoting *United States* v. *Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997). Thus, under the "law of the case" doctrine, defendant cannot revisit the adequacy of Heller's pleadings (here, completely unchanged on the FSIA issue), unless defendant can establish she has discovered "new evidence," there is a change in the law, or "clear error" or "manifest injustice" in this Court's prior rulings. *Id.* (internal quotations omitted). Defendant neither does, nor can, make such a showing. Indeed, the only "evidence" Caberta has submitted is two letters dated prior to commencement of the lawsuit and two affidavits alleging information known to defendant prior to the lawsuit.

Plaintiff recognizes that this Court did not hold that the issue of FSIA immunity is foreclosed at stages of this proceeding, and recognizes that defendant may raise the issue *after* discovery, by way of summary judgment or pre-trial evidentiary hearing. *See* Fed.R.Civ.P. 12(d) (providing for preliminary hearing and determination of subject matter jurisdiction defense, unless the court orders that the issue be deferred to trial); 56(f) (providing for discovery before determining summary judgment motion). However, nothing in the Court's December 16 Order or the "law of the case" doctrine authorizes *seriatim* identical motions to dismiss on FSIA grounds.

In reality, if not in name, this motion is nothing more than a belated and meritless attempt to obtain reconsideration of its prior rejected motion. Yet, "'where a

4

party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available.'" *In re Kellogg*, 197 F.3d 1116, 1120 (11th Cir. 1999) (quoting *Mays* v. *United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997)). Nor did this Court make a "manifest error" of law or fact in its decision. *See id*. This Court should reject without further consideration Caberta's improper attempt to reargue the FSIA issue on the pleadings.

## II. PLAINTIFF IS ENTITLED TO DISCOVERY ON THE FSIA ISSUE

Assuming the Court is not prepared to dismiss this repetitive motion outright, plaintiff is entitled to discovery before the Court can address the merits or consider the evidence submitted. Astonishingly, on the same day that defendant filed her motion, and submitted evidence purportedly in support thereof, she also filed a motion *to stay discovery* until the Court ruled on her motion.[2] In other words, Caberta wants this Court to consider *her* conclusory affidavits and the hearsay letters, at the same time that she wants to bar any testing of her submissions through depositions or document discovery.

Heller has already demonstrated in his opposition to the motion to stay discovery, filed February 1, 2001, that he is entitled to discovery on the FSIA issue

---

[2] This is Caberta's *second* attempt to stay discovery, and is another example of her abusive litigation tactics of rearguing previously rejected motions. This Court has already ruled that discovery may go forward, December 16 Order, at 8, and defendant has offered no new argument or evidence to support its second request for a stay. Instead, defendant has simply refused to abide by the December 16 Order and has refused to submit to discovery.

before the Court can consider the evidence submitted by defendant.  Rather than further burden the Court, plaintiff incorporates that argument herein by reference. (*See also* Plaintiff's Memorandum in Opposition to Defendant's First Motion to Dismiss, filed November 20 ("Pl. Mem.") at 7 (citing cases establishing right to discovery on FSIA issue; and Plaintiff's Opposition to Defendant's Second Motion to Suspend Discovery; Counter Motion to Compel, filed on February 1, 2001.)

Through document and deposition discovery, plaintiff intends to test the conclusory allegations in the affidavits and further expects to show that defendant is not in fact acting pursuant to *lawful* authority in promoting the commercial boycott of Scientologists in the United States; that there is no statutory or other lawful act of the Hamburg government authorizing her activities here; that her acts have not been authorized or permitted by the German Federal government; and that her acts are contrary to German law, including the German Constitution.  *See* Petz Declaration, which establishes these points.  Further, in addition to the Petz Declaration, plaintiff intends to designate and to proffer an expert or experts on German law who will testify that Ms. Caberta's actions were outside both the relevant authorizing laws of the government of Hamburg and the federal government, as well as prohibited by the German Constitution.  In addition, plaintiff continues to collect German case law, in addition to that cited in the Petz Declaration, that refutes portions of her affidavits and that further demonstrates that Caberta's actions are outside her lawful authority and in violation of the German Constitution.  Through expert testimony and documentary evidence, plaintiff further expects to show that Caberta's actions are violative of

6

international human rights law, and that her anti-Scientology acts directed against plaintiff and other persons lawfully resident in the United States were not and could not have been authorized by the German State within the meaning of the FSIA. *See also* Petz Declaration, ¶¶ 2-8.

### III.    DEFENDANT IS NOT ENTITLED TO IMMUNITY UNDER THE FSIA

Even if the Court were to consider Caberta's submissions, she fails to establish FSIA immunity. As in her previous motion, Caberta continues to misunderstand the nature and scope of the FSIA immunity defense, which does not protect a foreign official who "acts beyond the scope of his authority." *Chiudian* v. *Philippine National Bank*, 912 F.2d 1095, 1106 (9th Cir. 1990); December 16 Order at 2-3; Plaintiff's Opp. Mem. at 5-6. This misunderstanding of FSIA jurisdiction is most clearly revealed in Caberta's blatantly erroneous statement, "Even if Defendant's actions were violative of German or international law, the exclusive nature of the grant of jurisdiction under the FSIA would forbid any effort to bring Defendant before this Court." In fact, the very opposite is the case, as plaintiff demonstrated, and as this Court recognized. Although plaintiff contends that the Court should not consider any submissions beyond the pleadings on this Rule 12(b)(1) motion to dismiss, until discovery has been completed, if the Court does consider Caberta's evidence, then the Petz Declaration refutes the vague conclusory allegations in the two declarations that Caberta submitted. Even if Caberta's activities fell within the FSIA, she engaged in "commercial activities" within the meaning of 28 U.S.C. § 1605(a)(2), and therefore is not entitled to immunity. Pl. Mem. at 8-12.

7

Nothing in the Second Affidavit of Ursula Caberta demonstrates that she is entitled to FSIA immunity.   All she does is assert a series of legal conclusions, but provides no evidentiary or legal support for her conclusions.   For example, in paragraph 3, she asserts that her "duties" include the development and distribution of the sect filter, but she points to no authorizing legislation, no official document, no order or instruction, either written or oral, supporting this assertion.   Similarly, she parrots the words that all her anti-Scientology activities have been within the "course, scope and authority of her employment by the government of Hamburg, Germany," Second Caberta Aff. ¶¶ 4-5, without providing a shred of evidentiary or legal authority for her assertions.   Moreover, no where does she even allege that she has been authorized to carry out her religiously discriminatory economic boycott in the United States.

Caberta's allegations simply ignore the extensive body of FSIA law that requires individual officials asserting sovereign immunity to demonstrate that their challenged acts – although conducted in their official capacity – were in fact authorized by the foreign State.[3]  Indeed, in many of the FSIA cases previously cited by plaintiff, the foreign official claimed sovereign immunity, yet the courts denied immunity because there was no showing that these acts had been or could have been

_____

[3]  Contrary to Caberta's assertion, "The party claiming FSIA immunity, in this case appellants, or ... ha[s] the initial burden of proof of establishing a prima facie case that [she] satisfies the definition of a 'foreign state' within the meaning of the FSIA." *Byrd* v. *Corporation Forestal y Industrial de Olancho*, 182 F.3d 380, 388 (5th Cir. 1999).  Moreover, "the party claiming FSIA immunity retains the ultimate burden of persuasion throughout." *Id.* (citing *Moran* v. *The Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)).  *See* Pl. Mem. at 4-5.

authorized by the foreign state. *See* Pl. Mem. at 5-6, citing cases, *e.g.*, *Jungquist* v. *Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1028 (D.C. Cir. 1997) (where government official entered "into a corrupt bargain" that "could not have been authorized" by the government, official has no FSIA immunity); *Doe* v. *Bolkiah*, 74 F. Supp. 2d 969, 974 (D.Haw. 1998) (FSIA inapplicable where high-level government official and member of Royal Family of Brunei failed to show that "the Government of Brunei empowered him to run the alleged prostitution ring or harem"); *Cabiri* v. *Assasie-Gyimah*, 921 F. Supp. 1189, 1198 (S.D.N.Y. 1996) (acts of torture allegedly committed by Deputy Chief of National Security of Ghana acting in that capacity not authorized by laws of Ghana, nor could they be); *see also Bigio* v. *Coca-Cola Co.*, 235 F.3d 63, 71 (2d Cir. 2000) (recognizing that "racial or religious discrimination" is "conduct that violates international law when undertaken by a state actor," citing *Restatement (Third) of Foreign Relations Law of the United States* § 702 & cmts j & m), *amended on unrelated grounds*, 2000 WL 33152060, at 6 (Jan. 2, 2001)).  Here, not only has Caberta not identified the source of her claimed authority under Hamburg law, she has not even attempted to show that her acts were either authorized by German federal law, including the German Constitution, or not prohibited by the German Constitution or international human rights law binding on the German State. In light of its tragic history of religious and ethic discrimination, the German Constitution is especially protective of religious minorities. *See* Petz Declaration, ¶¶ 5-7. Thus, it is understandable that Caberta is unable to identify any authority for her actions, or to show that the German Constitution does not prohibit her conduct.

9

In an effort to avoid the facially unlawful character of her activities under German law, Caberta falsely asserts that Scientology "is not recognized as a religion in Germany, but is characterized as a totalitarian political and/or profitmaking enterprise." Caberta Aff. ¶ 3. While this may be Caberta's *personal* opinion, which she believes justifies her violation of plaintiff's civil and human rights, in fact, numerous German courts have recognized that Scientology is indeed a religion, engaged in religious activities protected by the German Constitution. Petz Declaration, ¶¶ 9-13. Further, the Federal Government has recently explicitly disavowed the legality of the sect filters promoted by Caberta. Petz Declaration, *Id.*

The only "authorization" Caberta provides for her discriminatory activities within the United States is an affidavit from one "Willi Beiss" (handwritten), who purports to be Ms. Caberta's supervisor. Remarkably, he never identifies his own government position, the nature or scope of his authority or the legal grounds for his assertions of power and authority. His affidavit mostly parrots Ms. Caberta's, and like her's, is silent on the statutory authorization for her discriminatory activities, or how her conduct is authorized by the Hamburg or federal government, and how it is consistent with the German federal Constitution. Like Caberta's, this affidavit is silent on any authorization to extend the sect filter to persons residing in the United States. *See* Petz Declaration, ¶¶ 13. Caberta cites to no case in which the defense of "I was just following orders" from some undefined supervisor provided FSIA immunity, and to plaintiff's knowledge, no such authority exists.

10

Caberta's reliance on two pre-litigation letters from an attorney acting on behalf of the Church of Scientology, who also represents Heller, is difficult to understand. Even assuming the hearsay letters are admissible against Heller, they are probative of nothing, other than an effort to protect a client from Caberta's unlawful acts, which *she claims* were pursuant to the authority of the government for whom she works. It is more than reasonable to notify the City of her assertions, in order to inform the City that it too could be responsible for her violation of civil and human rights in the United States. Again, her reliance on these letters appears to be based on Caberta's failure to understand the FSIA. Under the FSIA, there is no reason that Caberta cannot be liable for her *ultra vires* official acts, *even if* Hamburg officials have authorized those illegal acts, in the same way that local and state governments or officials in the United States can engage in or *authorize* activities that are *ultra vires* of both local, state and national law, subjecting both the individual officers and the government entities to liability, pursuant, for example, to 42 U.S.C. § 1983, *see, e.g., Monell* v. *Dept. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978), or the Federal Tort Claims Act.

## IV.   IF THE FSIA APPLIES, CABERTA'S CONDUCT FALLS WITHIN THE "COMMERCIAL ACTIVITY" EXCEPTION

Caberta concedes, as she must, that whether a state engages in "commercial activity" under the FSIA is determined by the *nature* of the activity, not its *purpose*. Second Motion, at 6; *see* Pl. Mem. at 8-9; 28 U.S.C. § 1603(d); *Republic of Argentina v. Weltover*, 504 U.S. 607, 612-17 (1992). Yet, in the next breath, defendant argues that the "*purpose*" of Caberta's actions, and not their *nature* – "the suppression and

11

embarrassment of Scientology and its exponents" – renders her actions sovereign, not commercial. Second Motion at 6 (emphasis added). This reliance on sovereign *purpose* for otherwise commercial activities is precisely the argument urged by Argentina and rejected in *Weltover*, 504 U.S. at 615-17; *see* Pl. Mem. at 9. As plaintiff has previously explained, Pl. Mem. at 9-12, the *nature* of Caberta's activities are commercial – an economic boycott of Scientologists carried out through Hamburg's economic power in the marketplace – within the meaning of the FSIA, 28 U.S.C. § 1605(a)(2). Thus, even if Caberta acted within her lawful authority as a Hamburg government employee, her conduct falls within the commercial activity exception to foreign sovereign immunity.

## CONCLUSION

For the reasons stated herein, and in plaintiff's prior memorandum of law in opposition to Defendant's prior motion to dismiss, defendant's motion to dismiss should be denied.

Dated:  February 8, 2001                       Respectfully submitted,

_____

Kendrick Moxon
Helena Kobrin (FBN #0259713)
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL  33755
(727) 443-5620

F. Wallace Pope, Jr.
FBN #: 124449

JOHNSON, BLAKELY, POPE,
BOKOR, RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818

Attorneys for Plaintiff
HUBERT HELLER

13

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

```
--------------------------------------  x
HUBERT HELLER,                          :
                                        :
                         Plaintiff,     :      Case No. 8:00-CV-1528-T-27C
                                        :
            vs.                         :
                                        :
URSULA CABERTA,                         :
                                        :
                         Defendant.     :
--------------------------------------  x
```

## DECLARATION OF ALEXANDER PETZ

ALEXANDER PETZ, an attorney duly admitted to the practice of law in the
Federal Republic of Germany, declares that the following is true and correct:

1.     I am an attorney licensed to practice law in the Federal Republic of
Germany since 1995. I am a partner in the law firm of Bluemel and colleagues. For
the past 5 years I have been retained by the Church of Scientology of Germany and
local Churches and Missions to help protect the rights of Scientologists in Germany.
In that capacity, I have become extremely familiar with legal issues concerning the
rights of Scientologists in Germany, including judicial decisions, activities of the
German Federal government, the government of the Free Hanseatic State of Hamburg,
the Hamburg Working Group Scientology ("Working Group"), as well as activities of
certain Hamburg officials, including Ursula Caberta and her activities concerning the
anti-Scientology sect filter.

2.      The Working Group, which Caberta heads, was created in 1992.
According to the Hamburg government, the Working Group is authorized especially to
engage in public relations work and "information events." See Exhibit A, annexed
hereto. The distribution and promotion of the sect filter is not covered by the
description of the tasks/functions of the Working Group. Thus, the distribution and
promotion of sect filters for the purpose of excluding individual Scientologists or their
enterprises from the commercial life of Hamburg and Germany exceeds the lawful
authority granted the Working Group. To my knowledge and research, there is no
official authorization by the Hamburg government to the Working Group, Caberta, or
any other official or department of the Hamburg government to distribute, promote, or
mandate the use of the sect filter.

3.      According to the general principle of legal proviso, in Germany the
administration is allowed to act only if authorized by law. Even if an administrative
act of the executive administration would be within the scope of the functions or duties
of the administrative body, nevertheless, a definite and clear legal authorization
describing the content, the subject, the purpose and the extent of its possible acts is
required nonetheless. The stronger the lasting effect on the constitutional rights might
be, the more precise and narrow the law has to be (See e.g., Federal Supreme
Administrative Court No. 7 C 21/90, March 27, 1992, *Osho-Rajneesh vs. Federal
Republic of Germany*). The term "law" means either a formal parliamentary law or at
least a statutory order based on such a formal law. To my knowledge, no such

2

authorization for the promotion and distribution of the sect filter by the Working

Group Scientology exits.  Thus, Caberta – in the distribution and promotion of the sect

filter to encourage boycotts of businesses and to attack Scientologists – necessarily

must be acting outside the scope of her legal authority under both, German and

Hamburg law.

      4.     In Germany, a government official or employee in the public service is

legally obliged to follow the Constitution of the Federal Republic of Germany (known

as the "Basic Law") and the General Laws regarding the rights of its citizens.  In

addition, government officials and employees, in relation to their employer, also are

charged with the official duty of conducting their tasks/functions in compliance with

the legal obligations that are imposed on the government/state.  Thus, a violation of the

state legal order by the official/employee also violates his official duties at the same

time.

      5.     Caberta, as an employee in the public service, is subject to the

regulations of the Federal Tariff Treaty for Employees ("Tariff").  According to Art. 6

of the Tariff, she must vow as follows:

> "I vow: I will fulfill my service obligations conscientiously and will
> safeguard the Constitution as well as the Laws of the Federal Republic of
> Germany."

Caberta presumably gave this vow, as otherwise she would not be employed as an

employee in the public service.

      6.     Caberta is thereby bound to follow the Basic Law.  In particular, Art. 1,

3

sect. 3 of the Basic Law provides, "The following basic rights bind the legislature, the

executive and the judiciary as directly enforceable law," and Art. 20, sect. 3 provides,

"Legislation is subject to the constitutional order; the executive and the judiciary are

bound by the law."

      7.    Through her conduct with respect to the distribution and promotion of

the anti-Scientology sect filters, Caberta's conduct appears to violate several

provisions of the Basic Law, including:

> Art. 1, sect. 1:
> "The dignity of man is inviolable. To respect and protect it is the duty of all
> state authority."
>
> Art. 2, sect. 1:
> "Everyone has the right to the free development of his personality insofar as he
> does not violate the rights of others or offend against the constitutional order or
> the moral code."
>
> Art. 3, sect. 1:
> "All persons are equal before the law."
>
> Art. 3, sect.3:
> "No one may be prejudiced or favored because of his sex, his parentage, his
> race, his language, his homeland and origin, his faith or his religious or political
> opinions."
>
> Art. 4, sect. 1:
> "Freedom of faith and of conscience, and freedom of creed, religious or
> ideological, are inviolable."
>
> Art. 4, sect. 2:
> "The undisturbed practice of religion is guaranteed."
>
> Art. 12, sect 1:
> "All Germans have the right  freely to choose their trade or profession, their
> place of work and their place of training. The practice of trades and professions

4

may be regulated by law."

8.      To the extent that Caberta's promoting and distributing the sect filter has violated the Basic Law, she has thereby violated her vow under Art. 6 of the Tariff in relation to her employer, namely to safeguard the Basic Law and the Laws of the Federal Republic of Germany.  Such a violation of her vowed obligations towards her employer, therefore, cannot at the same time have been committed in the accomplishment of her legal authority.

9.      Contrary to Caberta's assertion that Scientology is not recognized as a religion in Germany, over the last two decades, numerous court decisions in Germany have held that Scientology is a religion and/or that its members hold sincere religious convictions.  A sampling follows:

10.     In a decision of the Federal Supreme Administrative Court in *Mission Neue Bruecke Stuttgart vs State of Baden-Wuerrtemberg,* (November 6, 1997), the Court recognized the religious nature of Scientology beliefs, and that the Church's purpose is the practice and dissemination of the Scientology religion and its teachings. The practice of the religion is accomplished through spiritual counseling, known as "auditing" in Scientology, and the study of the Scientology scriptures through courses and seminars ordinarily offered for monetary remuneration to members.  Based upon the lower court's findings that the Mission's services reflect the philosophy and ideals of the Church of Scientology, that such services are only made available to members by Scientology organizations, and that members recognize the religious nature of these

5

services, the Supreme Administrative Court determined that the value of the services and courses offered by the Mission for the attainment of a "higher level of existence" are based upon a common conviction of the members. These services and courses cannot be separated from the underlying beliefs of Scientology without losing their value for the recipient. Under these circumstances, the Court determined that the services offered by the Mission are not commercial in nature.

11.    A three-judge court in Hamburg, where Caberta is employed, has also recognized the religious nature of Scientology. In *Hoppe vs. Church of Scientology of Hamburg* (Regional Court of Hamburg, No. 330 O 169/97, January 5, 1998), the court stated: "[The Church of Scientology] is recognized as a religious community, and its financing through contributions in the form of donations does not constitute commercial activity according to the general view (see Federal Supreme Administrative Court press release of November 6, 1997). In evaluating the religious services offered to members – in light of the guarantee of religious freedom pursuant to Article 4 of the Constitution – one must consider that [the Church] must fund itself exclusively through donations from members, contrary to church communities that fund themselves, inter alia, through tax revenue. The services offered by [the Church] therefore cannot be viewed from the position of a normal price-service relationship."

12.    Other recent decisions include:

• "One cannot leave unconsidered that the practice of [Scientology] services is part of the religious and philosophical denomination, which thereby is excluded from

6

any scientific evaluation based on the principal of free practice of religion and the principal of state neutrality." (Regional Court of Frankfurt/Main, No. 2/4 0 234/92, February 24, 1993, *Koch* v. *Church of Scientology of Frankfurt*.)

   • There is no evidence of profiteering by the Church and the value of the services cannot be measured by market value as they are spiritual services intended by the plaintiffs to fulfill their own personal spiritual needs. (Regional Court of Frankfurt, No. 2/4 076/92, 27 May 1992, *Gebauer* v. *Church of Scientology of Frankfurt*).

   • The Church of Scientology fulfills the requirements of a religious and ideological association; thus, the promotion, dissemination and propagation of the Scientology religion is protected by the Constitution. (Administrative Court of Frankfurt/Main, No. IV/2 E 2234/86, September 4, 1990, *Scientology Mission of Frankfurt v. City of Frankfurt*.)

   • "If gifts of voluntary contributions are paid by the members, on the occasion of the concrete use of ecclesiastical services [as is the case with Scientology] this is only one imaginable form of financing of a religious community, which can possibly be regarded as fairer than the demand of a flat-rate percentage of the member's income [as is practiced by the Catholic and Lutheran Churches]. It is quite obvious that the aims of the defendant can only be achieved by a financially strong organization, the way and manner of financing of a religious community being again part of the self-administration of a church. Small religious/philosophical communities, such as the

7

defendant, which, contrary to the great established churches, do not have considerable

tax receipts, have to arrange for a different financing." (Regional Court of Frankfurt,

No. 2/4 0 471/88, June 7, 1989, *Emiliano Padin v. [Scientology] Mission of*

*Frankfurt.*)

- "According to its own understanding, this Church is a salvation religion

which deals with the human soul and the riddles of life and which sees its roots and

historical tradition in Buddhism, Hinduism and other religions. Its purpose in this

world is considered to help man in his strive for spiritual freedom and to completely

free him from problems and burdens to reach total freedom in order to recognize

himself as a spiritual being and experience the existence of a Supreme Being to be able

to be more aware and to reach satisfaction and happiness. In the course of this one

also reaches an understanding of God as the Supreme Being and the spiritual goals as

per the understanding of this religious community." (Stuttgart District Court, No. B33

Owi 9306/84, January 30, 1985, *The People v. Karl Friedrich Munz*).

- "The offered courses and aims of the [Church of Scientology of Germany] are

evidently not governed by general scientific knowledge but are 'heightened' by the

belief in the supernatural. Thus, the remark 'Scientology is an applied religious

philosophy' is contained in the enrollment forms." The Court also found that the

Church beliefs in the spirit and the achievement of its spiritual goals are based wholly

upon and can only be achieved through a system of belief. (Regional Court of Munich

I, 6th Chamber for Civil Matters, No. 6 0 5709/82, 6 0 6 6895/82, January 7, 1983,

8

*Kager* v. *Church of Scientology of Germany, Ertl* v. *Church of Scientology of Germany*).

• The Church of Scientology is a religious community which offers teachings based on religious tenets.  (Stuttgart District Court, No. 13 C 3687/76, December 8, 1976, *Hans Peter Fuger* v. *Stuttgart Church.*)

13.    Further, in the case of *Christian Winkler* (Munich Labor Court, No. 21 Ca 13754/99, October 24, 2000), the court found the requirement that a government employee answer a questionnaire concerning his involvement with Scientology to be unlawful, as a violation of plaintiff's right not "to answer questions about his private sphere," in the absence of facts showing that the employee — an adherent of the Scientology religion, and a former employee of a local Scientology Church -- was engaged in "anti-constitutional activities."

Executed this 8th day of February, 2001, in Munich, Germany.

_____
ALEXANDER PETZ

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS FOR LACK OF FSIA JURISDICTION** to be served on this 8th day of February, 2001, by U.S. Mail, to the person on the below Service List.

_____
Attorney

## **SERVICE LIST**

John Merrett
2716 Herschel St.
Jacksonville, FL 32205