IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER, an individual,

    Plaintiff,

v.                              Case No. 8:00 CV-1528-T-27C

URSULA CABERTA, an individual,

    Defendant.

_____/

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM PLAINTIFF

### I - INTRODUCTION

Defendant, Hubert Heller, requests an order from this Court compelling defendant Ursula Caberta to appear for deposition and to produce her affiant, Willi Beib, at a reasonable time and place convenient to the defendant. Plaintiff further requests an order requiring defendant to respond forthwith to plaintiff's First Request for Production of Documents, served on September 25, 2000.

The District Court established a very short time period within which to take discovery in this case relating to the issue of jurisdiction and purported official immunity of defendant, a low level official of the City of Hamburg, Germany. However, notwithstanding several informal attempts to resolve this matter, defendant is stalling as to the setting of depositions, and has failed to respond to plaintiff's Document Request.



## II – STATEMENT OF FACTS

Plaintiff, Hubert Heller, is a citizen of Germany domiciled in Clearwater, Florida. As set forth in detail in the Second Amended Complaint (Ex. 1), Mr. Heller has been injured by the intentional acts of defendant, Ursula Caberta, through interference in his software distribution business activities.

The amended complaint alleges that Ms. Caberta's conduct arose out of her biased "anti-Scientology" activities and prejudices targeting persons who conduct business in Germany, solely because they are members of the Scientology religion, such as Mr. Heller. A substantial contract negotiated by Mr. Heller in Florida with a German firm, was destroyed by the efforts of Ms. Caberta to enforce a so-called "sect filter" upon the German company, requiring that it refuse to do business with any person who espouses beliefs and undertakes practices of the Scientology religion, Founded by L. Ron Hubbard. With respect to her business contacts in the jurisdiction and her efforts with co-conspirators, the amended complaint also generally alleges that:

> Caberta is also engaged in continuous and systematic business contacts in the State of Florida. She is a silent partner or joint venturer with Robert Minton, Stacy Brooks, Jesse Prince, and the Lisa McPherson Trust, Inc. ("LMT, Inc."), a Florida for-profit corporation engaged in the activity of attempting to damage or destroy the Scientology religion. Caberta regularly communicates with LMT, Inc., and Minton, Young and Prince, for the purpose of contriving, creating, planning and disseminating false, deceptive and disparaging assertions regarding Scientologists, such as plaintiff.
>
> \*   \*   \*   \*
>
> In her personal capacity, Caberta has been paid an unspecified amount of money by Florida businessman, Robert Minton, in return for which, in part, she has traveled to Clearwater, Florida for the purpose of ... disseminating and requiring use of her sect filters, encouraging boycotts of businesses owned by Scientologists and continuing the general conspiracies alleged herein. Minton and LMT, Inc. have also paid Caberta to engage in propaganda in Clearwater, Florida, in Germany, in Washington, D.C., and in International publications, to bolster investments made by Minton in

2

> litigation in Florida. This payoff to Caberta ... was a private and unlawful payment for favors to Minton and LMT, Inc. in the furtherance of their joint co-conspiracy ... She has discussed and planned with Minton, the Chairman of the Board of LMT, Inc., of expanding LMT, Inc., to Germany where she would become a principal in exchange for money received from Minton and LMT, Inc.

(Ex. 1, Second Amended Complaint, ¶¶ 15-16.)

> While purportedly carrying out her activities as an employee of the City of Hamburg, in fact, Caberta acted entirely outside the scope of her lawful authority. Her conduct specifically violated German constitutional law by persecuting members of the Scientology religion; calling for, organizing and instituting an unlawful commercial boycott of adherents to the Scientology religion; acting with private business persons who were secretly paying her for favors and assistance to harm Scientologists like Heller; and as part of an illegal conspiracy in which she and her city government was involved. To the extent that Caberta acted within the scope of her duties, those duties were nevertheless unlawful and unconstitutional in both the United States and Germany. Alternatively, if Caberta's activities described herein are deemed to be lawful in Germany, those activities are tortious commercial acts. Caberta is paid by Minton and LMT, Inc., to carry out the activities alleged herein, in part, to increase the value of his American investments, to harass Scientologists, and to cause Scientologists to realize monetary losses.

(*Id.*, Second Amended Complaint, ¶ 23.)

Based on these and many other facts set forth in the Amended Complaint, plaintiff plead three causes of action for tortious interference with an advantageous business relationship, unfair and deceptive trade practices pursuant to Florida's Little FTC Act, and conspiracy to interfere with and deprive plaintiff of the equal protection of the laws and equal privileges and immunities under the laws, by interfering with and depriving him of the opportunity to engage in interstate and international commerce based upon his religious beliefs and practices.

Plaintiff contends that Caberta's acts violated several provisions of the

3

Constitution of the Federal Republic of Germany, and international human rights treaties, to which Germany is a signatory. Indeed, both the U.S. State Department and the U.S. Trade Representative have condemned the sect filters created by Ms. Caberta as an abuse of human rights and international treaties. (Ex. 2.)

After the filing of the Complaint, plaintiff's counsel sought to arrange an early meeting of counsel, but the meeting was delayed for several weeks by Ms. Caberta's counsel, John Merrett, thus preventing discovery. (Ex. 3, Declaration of Kendrick L. Moxon.) On September 25, 2000, plaintiff served a request for production of documents (Ex. 4) and sought informally to schedule the deposition of Ms. Caberta. Plaintiff offered to conduct the deposition either in this jurisdiction or in Germany, whatever was convenient to the defendant. (Ex. 5.)

Defendant's response was to simultaneously file a motion to dismiss and a motion to suspend discovery pending resolution of the motion to dismiss. On October 12, 2000, the District Court stayed discovery pending determination of the motion to dismiss.

Ms. Caberta filed her own declaration as well as the declaration of one of the alleged co-conspirators, Stacy Brooks, in support of her motion to dismiss. Ms. Caberta's declaration addressed issues relating to allegations concerning the local co-conspirators, Brooks, LMT, Inc. and Robert Minton. She stated that she had received a "loan" from Robert Minton, the owner and Chairman of the Board of LMT, Inc., but does not state that the alleged "loan" was repaid. (Ex. 6, Caberta Affidavit, ¶ 6.) Ms. Caberta also claims she paid her own expenses in traveling to Clearwater recently (*Id.*, ¶ 8), for the purpose of "visiting friends" (*id.*, ¶ 3), at which time she "publicly discussed her activities in Germany." (*Id.*, ¶ 8.) The Affidavit of LMT, Inc.'s President, Stacy Brooks, revealed that this "public discussion" was in fact a "press conference given at the office of the

LMT by Ursula Caberta." (Ex. 7, Brooks Affidavit, ¶ 2.) While Ms. Caberta purportedly came only to "visit friends," Ms. Brooks admits that LMT, Inc. paid her hotel expenses while in Florida. (*Id.*, ¶ 4.) Ms. Brooks also admits to engaging in discussions with Caberta about opening an office of the for-profit company in Germany. All of these issues relate to the legality and authorization of Ms. Caberta's activities addressed in the complaint – and thus whether or not the FSIA applies to provide immunity to the defendant.

By Order dated December 16, 2000, the District Court thereafter granted in part and denied in part defendant's motion to dismiss the First Amended Complaint, finding that the defendant's claims of immunity under the Foreign Sovereign Immunities Act were overcome by the allegations in the Complaint. (Ex. 8.) The Court dismissed the state law claims without prejudice, giving leave to amend. The Court also specifically denied Ms. Caberta's motion to stay discovery.

Plaintiff filed a Second Amended Complaint, re-pleading the state law claims. Ms. Caberta thereafter filed a further motion to dismiss, addressing only the immunity and jurisdictional issues, and submitting affidavits of both the defendant and her direct superior, Willi Beib. (Exs. 9 and 10.) The affidavits addressed the alleged scope of Ms. Caberta's employment and duties by the Hamburg City government, including astounding concessions that Caberta's job included, "the protection of legitimate businesses and lawful entities" from "infiltration by Scientology and Scientologists." (*Id.*, par. 3.) In other words, the affidavits of Caberta and Beib asserted that Caberta was engaged in a commercial boycott of Scientologists, and dissemination of a "sect filter" to identify and discriminate against members of the Scientology religion to stem the propagation of the religion in Germany – acts in violation of German Constitutional law, treaties with the

United States and human rights law and conventions. These are the very types of activities which would fall within the scope of exceptions to the general immunity provisions of the FSIA. *See, e.g., Chuidian v. Philippine National Bank*, 912 F.2d 1095, 1099 (9th Cir. 1990); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996); *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 306 (9th Cir. 1992); *Trajano v. Marcos*, 978 F.2d 493, 497 (9th Cir. 1992); *Xuncax v. Gramajo*, 886 F. Supp. 162, 175 (D. Mass. 1995).

Ms. Caberta also filed a second motion to stay discovery, notwithstanding the district court's denial of the prior motion to stay discovery. Although more than 30 days had passed after the Court's Order of December 17, 2000, denying the stay of discovery, defendant failed to respond to the Document Request or to produce deposition dates. By Order dated February 15, 2001, the Court denied the defendant's second motion to dismiss, and at the same time denied the defendant's second motion to stay discovery, giving leave to plaintiff to conduct discovery, "limited to the FSIA issues and this Court's exercise of jurisdiction over Defendant for a period of 90 days from the date of this Order." (Ex. 11.)

On February 23, 2001, counsel for plaintiff wrote to Mr. Merrett, and requested responses to the long overdue document requests propounded in September, however, specifically excluding all requests which were not manifestly related to jurisdiction and sovereign immunity issues. (Ex. 12.) The letter also sought convenient dates for the depositions of defendant's affiants Ms. Caberta and Mr. Beib, and again offered to conduct the depositions either in this district, at the American Embassy in Berlin or at the consular offices in Hamburg. Mr. Merrett ignored the letter.

Plaintiff's counsel also attempted to call Mr. Merrett, but he would not return the

call. However, Mr. Merrett sent a cursory note that he had an "expectation" that he would speak to his client the next week and check for "possible" dates. (Ex. 13.) Plaintiff's counsel wrote again asking that the dates be provided immediately. The letter was ignored. Two further calls were placed to Mr. Merrett's office informing him that plaintiff was seeking to avoid filing a motion to compel but in light of short time provided for discovery, needed to set the depositions. The calls were ignored. (Ex. 3, Moxon Declaration, ¶¶ 4 & 5.)

Notwithstanding the matters addressed in the affidavits warranting elucidation through cross-examination and other discovery, and notwithstanding the fact that Ms. Caberta has raised a jurisdictional defense warranting discovery, the very fact that defendant has filed the declarations in support of her motion makes jurisdictional discovery mandatory. *Fraley v. Chesapeake & Ohio Railway Co.,* 397 F.2d 1, 9 (3rd Cir. 1968); *Blanco v. Carigulf Lines,* 632 F.2d 656, 657 (5th Cir. 1980).

Plaintiff provides here no other substantive argument to justify the document requests or depositions of Ms. Caberta and Mr. Beib – as no substantive objection has been lodged, and would, in any event, be out of time. Rather, it appears that defendant is simply stalling producing the long overdue records responsive to the September 25, 2000 Request for Production, and stalling setting any dates for the depositions of herself and her affiant, Willi Beib.

### III - CONCLUSION

For the foregoing reasons, defendant should be required to appear for deposition, and to produce for deposition her affiant Willi Beib, no later than April 4, 2001. Defendant should also be required to produce records responsive to plaintiff's First

document request, no later than March 20, 2001, in accordance with the proposed order filed herewith.

Dated: March 6, 2001                    Respectfully submitted,

*/s/ Kendrick Moxon*

Kendrick Moxon
Helena Kobrin
FBN #: 0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
(727) 443-5620

F. Wallace Pope, Jr.
FBN #: 124449
JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818

Attorneys for Plaintiff

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

I hereby certify that I have attempted to confer with defendant's counsel, John Merrett, to informally resolve the discovery disputes set forth in the motion to compel. Mr. Merrett declines to talk with me, however, and declines to provide dates for the depositions of dependant and defendant's declarant, or to provide long overdue responses to written discovery, as addressed in the accompanying Declaration of Kendrick L. Moxon.

_____
Kendrick Moxon

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS FOR LACK OF FSIA JURISDICTION** to be served on this 6th day of March, 2001, by Telefax (without exhibits) and U.S. Mail, to the person on the below Service List.

_____
Attorney

## SERVICE LIST

John Merrett
2716 Herschel St.
Jacksonville, FL 32205

Due to the physical nature of exhibit, it is not scanned; please see case file.