FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

01 MAR 30 AM 11:18

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

HUBERT HELLER,

      Plaintiff

vs.

URSULA CABERTA,

      Defendant

Case No.: 8:00CV-1528-T-27C

## AFFIDAVIT OF PRISCILLA COATES IN SUPPORT OF NON-PARTIES ROBERT S. MINTON AND THE LISA MCPHERSON TRUSTS' MOTION FOR A PROTECTIVE ORDER

I Priscilla Coates, depose and state as follows:

1.    I am a former chairman of the Cult Awareness Network Los Angeles, (CAN-LA) and was a member of the Cult Awareness Network, (CAN). I make this affidavit based on personal knowledge.

2.    While I was chairman of CAN-LA, its purpose was to educate the public about the harmful effects of mind control as practiced by destructive cults and about the unethical or illegal practices they employ.

3.    Beginning in July 1991, I began to receive a total of 486 letters from self proclaimed Scientologists requesting to be admitted as members of CAN-LA, purportedly to engage in religious dialogue with other members; the letters were remarkably similar in composition. I also received a sample letter telling Scientologists what to write to me.

4.    I believed then and I know now that the campaign of letters from Scientologists professing their desire to join CAN-LA was designed as a harassment measure against CAN and CAN-LA. As in February 1991, the Church of Scientology identified CAN as a suppressive

1



group, which church literature defines as "one that actively seeks to suppress or damage Scientology or a Scientologist by Suppressive Acts." According to church literature, a suppressive person or group becomes "fair game," and a person or group, which is fair game "May be deprived of property or injured by any means by any Scientologist without any discipline of the Scientologist. May be tricked, sued or lied to or destroyed."

5. I was personally afraid of the retributive nature of the Church of Scientology's Fair Game practice and endorsed the denial of membership to the Scientologists solely on that basis.

6. As a result of my refusal and CAN-LA's refusal to allow the group to be swamped and taken over by Scientology, I was personally sued twenty-two times. I did not lose one of those lawsuits, although I did settle one for nuisance value in order to escape the continuing costs of defense. Even in that suit, most of the claims made by the plaintiff had already been disposed of by summary judgment.

7. Each time I was sued, there was an individual Scientologist who was the named plaintiff. In each of the twenty-two lawsuits, no matter which law firm initially represented the Scientology plaintiff either attorney Kendrick Moxon or Mr. Moxon's law firm eventually appeared in the case and was the primary force in prosecuting the action.

8. In each of the twenty-two lawsuits that were brought against me, the plaintiffs and their attorneys, including Mr. Moxon and his law firm, consistently claimed that the Scientology organization had nothing to do with the lawsuits and were not sponsoring the litigation and any allegation that they were, was simply an example of my religious hatred and bigotry.

9. In all, approximately 50, of these lawsuits were brought against CAN including the twenty-two in which I was named, it was obvious that these lawsuits were coordinated and

meant to drain the resources from the defendants until they could no longer afford to defend themselves and would collapse under the weight of the litigation.

10. On December 28, 1997, after CAN had collapsed from the weight of the coordinated litigation against it, Mr. Moxon appeared on the Television News Magazine, *60 Minutes*. Despite the obvious overwhelming evidence of a coordinated pattern of litigation against CAN & CAN-LA, Mr. Moxon continued to maintain that the lawsuits had not been sponsored and run by the Scientology Organization, but rather were as a result of many individual Scientology Members simply having the same idea at the same time and all coming to his office for representation. A true and correct copy of the *60 Minutes* interview of Mr. Moxon is attached hereto as Exhibit "A".

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS __ DAY OF MARCH, 2001.

*Priscilla Coates*
Priscilla Coates, Affiant

# PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 960-A West Seventeenth Street, Santa Ana, CA 92706.

On March 29, 2001 I served the foregoing document described as: **AFFIDAVIT OF PRISCILLA COATES IN SUPPORT OF NON-PARTIES, ROBERT S. MINTON AND THE LISA McPHERSON TRUSTS' MOTION FOR PROTECTIVE ORDER** on the parties in this action.

[] by placing the true copies thereof enclosed in sealed envelopes addressed as stated in the attached mailing list.

[X] by placing [] the original [X] a true copy thereof enclosed in sealed envelopes addressed as follows:

Kendrick Moxon, Esq.
MOXON & KOBRIN
1100 Cleveland Street, Ste. 900
Clearwater, FL  33755

John M. Merrett, Esq.
2716 Hersche Street
Jacksonville, FL  32205

[X] BY FEDERAL EXPRESS

I am readily familiar with the firm's practice of collection and processing correspondence for Federal Express. Under that practice it would be deposited in a Federal Express Drop Box on that same day thereon fully prepaid at Santa Ana, California.

[]   PERSONAL SERVICE

I delivered such envelope by hand to the addressee at the address noted above.

Executed on March 29, 2001 at Santa Ana, California.

[]   (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

MICHELE L. DILLARD                    */s/ Michele L. Dillard*