IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER, an individual,

        Plaintiff,

v.                            Case No. 8:00 CV-1528-T-27

URSULA CABERTA, an individual,

        Defendant.

_____/

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS;
REQUEST FOR SANCTIONS**

## TABLE OF CONTENTS

**PAGES**

I   –   INTRODUCTION ............................................... 1

II  –   STATEMENT OF FACTS ........................................ 1

     A.  First Request for Production of Documents ......................... 2

     B.  Second Request for Production of Documents ....................... 4

III –   DEFENDANT'S OBJECTIONS TO THE FIRST REQUEST FOR
     PRODUCTION ARE WITHOUT MERIT ........................... 5

          1.   Communications with any Chambers of Commerce
               regarding Scientology, L. Ron Hubbard, Scientology
               and/or the sect filter. ................................... 6

IV  –   DEFENDANT'S OBJECTIONS TO THE SECOND REQUEST FOR
     PRODUCTION ARE WITHOUT MERIT ........................... 13

V   –   CONCLUSION ............................................... 20

i

# TABLE OF AUTHORITIES

## CASES                                                                PAGES

*Baxter v. Palmigiano,*
425 U.S. 308, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976) . . . . . . . . . . . . . . . . . . .  11-12

*Byrd v. Corporation Forestal y Industrial de Olancho, S.A.,*
182 F.3d 380 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Cabiri v. Assasie-Gyimah,*
921 F. Supp. 1189 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 12

*Chuidan v. Phillipine National Bank,*
912 F.2d 1095 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8, 12

*El-Fadl v. Central Bank of Jordan,*
75 F.3d 668 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Hilao v. Marcos,*
25 F.3d 1467 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 12

*Phaneuf v. Republic of Indonesia,*
106 F.3d 302 (9th Cir. 1997), *citing, Republic of Argentina*
*v. Weltover, Inc.,* 504 U.S. 607, 112 S. Ct. 2160,
119 L. Ed. 2d 394 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8, 12

*Societe Nationale Industrielle Aerospatiale v.*
*U. S. District Court for the Southern District of Iowa,*
482 U.S. 522, 107 S. Ct. 2542 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Trajano v. Marcos,*
978 F.2d 493 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*United States v. Ianniello,*
824 F.2d 203 (2nd Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*United States v. Local 560 of International*
*Brotherhood of Teamsters, Etc.,*
780 F.2d 267 (3rd Cir.1985), *cert. denied,* 476 U.S. 1140,
106 S.Ct. 2247, 90 L.Ed.2d 693 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Xuncax v. Gramajo,*
886 F. Supp. 162 (D.Mass. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8, 12

ii

**STATUTES**

28 U.S.C. § 1605(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

42 U.S.C. §1985(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Federal Rules of Civil Procedure 34(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Foreign Corrupt Practices Act, 15 U.S.C. §78dd-1 *et seq.* . . . . . . . . . . . . . . . . . .  10

Florida's Little FTC Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Alien Tort Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# I - INTRODUCTION

The District Court established a very short time period within which to take discovery in this case relating to the issue of jurisdiction and purported official immunity of defendant. However, defendant, Ursula Caberta, is completely stonewalling plaintiff's discovery efforts. Defendant has literally refused to provide any discovery in this case. She has refused to appear for deposition; she has refused to produce her affiant for deposition; she has refused to produce a single document.

The instant motion accordingly requests an order from this Court compelling Ms. Caberta to produce records responsive to plaintiff's First Request For Production of Documents; and an Order requiring production of documents responsive to plaintiff's Second Request for Production of Documents, for the reasons set forth below. Plaintiff also requests the imposition of reasonable fees and costs.

# II – STATEMENT OF FACTS

Plaintiff, Hubert Heller, is a citizen of Germany domiciled in Clearwater, Florida. As alleged in detail in the Second Amended Complaint (Ex. 1), Mr. Heller has been injured by the intentional acts of defendant, Ursula Caberta, a low level official of the City of Hamburg, Germany, through interference in his software distribution business activities. Ms. Caberta designates herself the "sect commissioner" of Hamburg. The amended complaint alleges that Ms. Caberta's conduct arose out of her activities targeting persons who conduct business in Germany, solely because they are members of the Scientology religion, such as Mr. Heller. A substantial contract negotiated by Mr. Heller in Florida with a German firm was destroyed by the efforts of Ms. Caberta to enforce a so-called "sect filter" upon

1

the German company, requiring that it refuse to do business with any person who espouses beliefs and undertakes practices of the Scientology religion, founded by L. Ron Hubbard.

Plaintiff pled four causes of action for: tortious interference with an advantageous business relationship; unfair and deceptive trade practices pursuant to Florida's Little FTC Act; a 42 U.S.C. §1985(3) conspiracy to deprive him of the opportunity to engage in interstate and international commerce based upon his religious beliefs and practices; and under the Alien Tort Claims Act.

Plaintiff contends that Ms. Caberta's conduct violated several provisions of the Constitution of the Federal Republic of Germany, and international human rights treaties, to which Germany is a signatory. Indeed, both the U.S. State Department and the U.S. Trade Representative have condemned the sect filters created by Ms. Caberta as an abuse of human rights and international treaties. (Exs. 2 and 3.) The State Department Report specifically identifies the sect commissioner of Hamburg as the perpetrator of abuses against Scientologists. (Ex. 3.) In her two motions to dismiss denied by the District Court, Ms. Caberta argued that she acted at all material times in her capacity as an official of the government of Hamburg, and within the scope of her delegated authority in performing the acts alleged in the Complaint, and is therefore immune from suit pursuant to the Foreign Sovereign Immunities Act.

## A. First Request for Production of Documents

On September 25, 2000, plaintiff served a request for production addressed primarily to the issues of Caberta's dissemination of the sect filter, policies regarding dissemination and use of the sect filter, communications with co-conspirators in the United States demonstrating conduct outside the scope of her alleged job functions,

financial records concerning the receipt of pay-offs from private parties in the United States, and communications with any Hamburg and/or German governmental entity or official regarding the instant lawsuit and the sect filter. (Ex. 4.)

By Order dated December 16, 2000, the District Court granted in part and denied in part defendant's motion to dismiss the First Amended Complaint, finding that the defendant's claims of immunity under the Foreign Sovereign Immunities Act were overcome by the allegations in the Complaint. (Ex. 5.) The Court dismissed the state law claims without prejudice, giving leave to amend.

Plaintiff filed a Second Amended Complaint, re-pleading the state law claims. Ms. Caberta filed a further motion to dismiss, addressing only the immunity and jurisdictional issues, and submitting affidavits of both herself and her direct superior in Hamburg, Willi Beiss. (Exs. 6 and 7.) The affidavits addressed the alleged scope of Ms. Caberta's employment and duties in the Hamburg City government.

Ms. Caberta also filed a second motion to stay discovery, notwithstanding the district court's denial of the prior motion. Although more than 30 days had passed after the Order of December 17, 2000, denying the stay, defendant failed to respond to the First Document Request. By Order dated February 15, 2001, the Court denied the defendant's second motion to dismiss, and at the same time denied the defendant's second motion to stay discovery, giving leave to plaintiff to conduct discovery, "limited to the FSIA issues and this Court's exercise of jurisdiction over Defendant for a period of 90 days from the date of this Order." (Ex. 8.)

On February 23, 2001, counsel for plaintiff wrote to defendant's attorney, John Merrett, and requested responses to the long overdue First Request for Production, however, specifically excluding all requests which did not concern jurisdiction and

3

sovereign immunity issues. (Ex. 9.)  Mr. Merrett ignored the letter.  Plaintiff's counsel also attempted to call Mr. Merrett, but he would not return the call.  (Ex. 10, Declaration of Kendrick Moxon).

Because Caberta filed no response to the First Document Request, plaintiff filed a motion to compel as to these records on March 6, 2001.  Caberta did not respond to the motion, thus a notice of no-opposition was filed on March 26, 2001. Caberta also did not respond to plaintiff's notice of no-opposition to the Motion to Compel, and this Court issued an Order dated March 29, 2001 compelling Caberta to respond to the First Request for Production.

In response to the Order, Caberta's counsel mailed what he purported to be a response to the First Request for Production, dated October 16, 2000. (Ex. 11, Letter of April 5.)  However, that alleged "response" is no such thing.  It was a general "Objection to Production of Documents" which made no reference to the First Request For Production. (Ex. 12, Objection.)   Rather, it said, "Defendant, joined by Robert Minton, Stacy Brooks and the Lisa McPherson Trust, objects to the production of documents requested by Plaintiff in connection with the depositions set by plaintiff in this action." (*Id.*)  The reference therein to "documents requested by Plaintiff in connection with the depositions set by plaintiff" is to document requests accompanying subpoenas to the third party witnesses Robert Minton and Lisa McPherson Trust, Inc., who were subpoenaed for deposition in this case. (Exs. 13 and 14.)  The Objection then made three boilerplate objections without specificity to any one of the specific numbered document requests. (Ex. 12.)

**B.  Second Request for Production of Documents**

On March 6, 2001, plaintiff served a Second Request for Production of

4

Documents on Caberta's counsel, directed primarily to the production of records, instructions or regulations relating to plaintiff's job functions, duties and responsibilities; records setting forth the scope of Caberta's official duties and responsibilities; and any records evidencing that Caberta's acts are regulatory or enforcement functions of a governmental entity. (Ex. 15.)

Caberta's Response to the Second Request for Production, provided no records. Rather, the Response either objected to each request as "outside the scope of discovery" or else asserted that the records sought were not in Caberta's control, but rather, if they existed, were "controlled by the government of Hamburg and/or the German Republic." (Ex. 16.)

Counsel for plaintiff attempted to resolve the dispute informally, however, Ms. Caberta held to her position and declined to produce a single document. (Ex. 10, Declaration of Kendrick Moxon and attachments.)

### III -  DEFENDANT'S OBJECTIONS TO THE FIRST REQUEST FOR PRODUCTION ARE WITHOUT MERIT

First, defendant has waived any objection to any of the document requests, as no response was timely filed to the First Request for Production of Documents. F.R.Civ.P. 34(b).  The purported "objection" filed by Caberta in October of 2000 is not a legitimate response, as on its face it deals with requests relating to other document productions from third parties.  Moreover, the "objection" does not address the Requests individually as required by Rule 34(b), but rather, makes a generalized objection – just as one would expect regarding a document request to third party.

Despite this Court's Order of March 29, 2001, defendant has asserted that the

October objection was its Response, apparently to avoid the effect of waiver caused by the late filing. Plaintiff knows how to formulate a proper response, as evidenced by her ability to do so in response to the Second Request for Production. Manifestly, Ms. Caberta's Objection was never intended to be the Response to plaintiff's First Request for Production. Thus, the "objection" should be disregarded for procedural reasons alone.

As to the merits of the First Request for Production, plaintiff sets forth each pending Request and reasons why it each be compelled: [1]

> **1.    Communications with any Chambers of Commerce regarding Scientology, L. Ron Hubbard, Scientology and/or the sect filter.**

Plaintiff has alleged that Caberta disseminated the sect filter to German businesses, in part, through local Chambers of Commerce to destroy the businesses of Scientologists, including to the company that breached its agreement with Heller giving rise to this lawsuit, and to assist business owned or operated by persons who were not members of the Scientology religion. Request No. 1 seeks evidence going to acts which will help to demonstrate the "commercial exception" to the FSIA, whereby a purported governmental entity loses tort immunity because it is engaging in commercial activity. *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 306 (9th Cir.

---

[1] In accordance with Judge Whittemore's Order limiting discovery to jurisdictional issues, plaintiff's counsel sent a letter to Caberta's counsel indicating that the Document Requests for which responses would be required, was limited to numbers 1, 6-17, 25, and 31-34. It is only those numbered requests which plaintiff seeks to compel.

1997), *citing, Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 612-617, 112 S.Ct. 2160, 2165-68, 119 L.Ed.2d 394 (1992).   Such evidence also goes to the issue of Caberta's violation of law by the institution of a commercial boycott, and thereby again falls within an exception to the FSIA for unlawful acts outside the scope of legitimate and legal governmental conduct.  See, 28 U.S.C. § 1605(a)(2); *Chuidan v. Phillipine National Bank*, 912 F.2d 1095 (9th Cir. 1990);  *Xuncax v. Gramajo*, 886 F.Supp. 162, 175 (D.Mass. 1995); *Hilao v. Marcos*, 25 F.3d 1467, 1470 (9th Cir. 1994); *Cabiri v. Assasie-Gyimah*, 921 F.Supp. 1189, 1198-99 (S.D.N.Y. 1996).

> **6.  Written policies regarding dissemination and use of the sect filter.**

> **7.  Written policies regarding the treatment or handling of businesses known to be run, organized or owned by Scientologists.**

> **8.  Written policies regarding the treatment or handling of businesses believed to utilize methods or procedures developed by L. Ron Hubbard.**

Ms. Caberta argued in her motion to dismiss that she was immune from tort litigation under the FSIA for instituting commercial boycotts of Scientologists, and forcing businesses to do so through the use of her "sect filter," or "Hubbard Declaration" as she sometimes refers to it, because her activities fell within the scope of her official job duties, functions and responsibilities.

The affidavits of Ms. Caberta and Willi Beiss, asserted that Ms. Caberta was essentially engaged in enforcement of a commercial boycott of Scientologists, and dissemination of a "sect filter" to identify and discriminate against members of the Scientology religion to stem the propagation of the religion in Germany – acts plaintiff

7

contends violate German Constitutional law, treaties with the United States and
international human rights law. These are the very types of activities which would fall
within the scope of exceptions to the general immunity provisions of the FSIA. *See*,
e.g., *Byrd v. Corporation Forestal y Industrial de Olancho, S.A.*, 182 F.3d 380, 388
(5th Cir. 1999); *Chuidian; El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C.
Cir. 1996); *Trajano v. Marcos*, 978 F.2d 493, 497 (9th Cir. 1992); *Phaneuf; Xuncax*.

Plaintiff thus reasonably requested production of the policies relating to
dissemination and use of the sect filter to evidence that Caberta's activities fell outside
such policies and procedures.

**9.    All correspondence with Robert Minton.**

**10.   All correspondence with Stacy Brooks.**

**11.   All correspondence with Jesse Prince.**

**12.   All correspondence with Robert Vaughn Young.**

**13.   All correspondence with any officer, director, agent or employee of the Lisa McPherson Trust, Inc.**

**14.   All bank records reflecting or concerning the receipt of funds from Robert Minton.**

**15.   All bank records reflecting or concerning the receipt of funds from any agent of Robert Minton.**

**16.   All bank records reflecting or concerning the receipt of funds from the Lisa McPherson Trust, Inc.**

**32.   All records regarding the establishment or potential establishment of an office or branch of the Lisa McPherson Trust, Inc. in Germany.**

8

   33.   All records regarding the receipts, payments,
arrangements of travel and travel expenses for your trip to Florida
in August of 2000.

   34.   All records regarding the source of funds utilized for the
payment of any airfare or expenses for your trip to Florida in
August of 2000.

The persons and entity identified in Requests 9-16 and 32-34, are named in the

Second Amended Complaint as co-conspirators of Caberta, and persons who acted

with her with respect to the underlying torts by paying her or working with her

concerning the alleged torts.   The Second Amended Complaint alleges:

> Caberta is also engaged in continuous and systematic business contacts
> in the State of Florida.  She is a silent partner or joint venturer with
> Robert Minton, Stacy Brooks, Jesse Prince, and the Lisa McPherson
> Trust, Inc. ("LMT, Inc."), a Florida for-profit corporation engaged in the
> activity of attempting to damage or destroy the Scientology religion.
> Caberta regularly communicates with LMT, Inc., and Minton, Young
> and Prince, for the purpose of contriving, creating, planning and
> disseminating false, deceptive and disparaging assertions regarding
> Scientologists, such as plaintiff.
>
>     *        *        *        *
>
> In her personal capacity, Caberta has been paid an unspecified
> amount of money by Florida businessman, Robert Minton, in return for
> which, in part, she has traveled to Clearwater, Florida for the purpose of
> ... disseminating and requiring use of her sect filters, encouraging
> boycotts of businesses owned by Scientologists and continuing the
> general conspiracies alleged herein.  Minton and LMT, Inc. have also
> paid Caberta to engage in propaganda in Clearwater, Florida, in
> Germany, in Washington, D.C., and in International publications, to
> bolster investments made by Minton in litigation in Florida.  This payoff
> to Caberta ... was a private and unlawful payment for favors to Minton
> and LMT, Inc. in the furtherance of their joint co-conspiracy ... She has
> discussed and planned with Minton, the Chairman of the Board of LMT,
> Inc., of expanding LMT, Inc., to Germany where she would become a
> principal in exchange for money received from Minton and LMT, Inc.

(Ex. 1, Second Amended Complaint, ¶¶ 15-16.)

> While purportedly carrying out her activities as an employee of the City of Hamburg, in fact, Caberta acted entirely outside the scope of her lawful authority. Her conduct specifically violated German constitutional law by persecuting members of the Scientology religion; calling for, organizing and instituting an unlawful commercial boycott of adherents to the Scientology religion; acting with private business persons who were secretly paying her for favors and assistance to harm Scientologists like Heller; and as part of an illegal conspiracy in which she and her city government was involved.... Caberta is paid by Minton and LMT, Inc., to carry out the activities alleged herein, in part, to increase the value of his American investments, to harass Scientologists, and to cause Scientologists to realize monetary losses.

(*Id.*, Second Amended Complaint, ¶ 23.)

Discovery regarding these allegations, including dealings with these persons – and particularly the receipt of money from these private parties in the United States – goes both to the commercial activity exception and the "outside the scope of lawful duties" exception of the FSIA.

Third party discovery of co-conspirator Robert Minton has already provided evidence supporting these allegations. The deposition of Mr. Minton was taken in this case on April 10th, at which time he was questioned concerning bribes to Caberta; providing money to Caberta to establish an office of LMT, Inc. in Germany; and related questions. However, Mr. Minton asserted his Fifth Amendment right to refuse to provide any records or testimony relating to issues in this case. (Ex. 17, Minton Depo., pp. 11-14, 40-41, 47.) His asserted basis for the Fifth Amendment claim, is the existence of a criminal investigation in Germany and the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-1 *et seq.* (*id.*, pp. 13-14, 16-17), which law makes it a crime to bribe a foreign official for a business benefit.

10

Minton also asserted a Fifth Amendment refusal to testify as to issues central to this case, including the following questions, among others:

- Have you provided any money to Ursula Caberta? (*Id.*, p. 18.)

- What has Ursula Caberta done for you in exchange for the money that you have given to her? (*Id.*, pp. 18-20.)

- Do you know who paid for Ms. Caberta to give that press conference [at Minton's company, LMT, Inc.]. (*Id.*, p. 33.)

- Did you pay for Ms. Caberta's expenses when she was in Florida giving that press conference? (*Id.*, p. 34.)

- How many of Ursula Caberta's trips to the United States did you pay for? (*Id.*, p. 35.)

- Did you, in fact, loan money to Ms. Caberta as an individual? (*Id.*, p. 36.)

- Did Ms. Caberta pay back any of the alleged loan? (*Id.*, p. 37.)

- Have you provided funds to Mr. Merrett [her counsel in this case] for the purpose of defending Ms. Caberta? (*Id.*, p. 38.)

- Is there any contract between you and Ursula Caberta with respect to setting up an LMT, Inc. office in Germany? (*Id.*, p. 42.)

- Has Ms. Caberta assisted your business endeavors in any fashion? (*Id.*, p. 55.)

- At your request, has Ms. Caberta directed any business away from anyone? (*Id.*, p. 56.)

- Did you transfer any interest in LMT to Caberta? (*Id.*, p. 58.)

- Did you give any money to Willi Beiss [Caberta's superior and affiant]? (*Id.*, p. 66.)

Adverse inferences may be drawn from the invocation of the Fifth Amendment by Caberta's alleged co-conspirator in this civil case. *Baxter v. Palmigiano*, 425 U.S.

11

308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) ("our conclusion is consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."); *United States v. Ianniello*, 824 F.2d 203, 208 (2nd Cir.1987); *United States v. Local 560 of International Brotherhood of Teamsters, Etc.*, 780 F.2d 267, 292, n.32 (3rd Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986).

The reasonable inference is that Minton bribed Caberta to undertake acts against a class of persons that included Heller – and obviously the acceptance of bribes cannot be within the scope of her lawful functions and duties, notwithstanding the human rights violations inherent in her acts. *See, Chuidan; Xuncax; Hilao; Cabiri; Phaneuf supra,* and evidence thereof would substantially support plaintiff's position that Ms. Caberta does not possess immunity.

Moreover, Minton's invocation of the Fifth Amendment to prevent discovery relating to allegations of the complaint going to proving exceptions to the FSIA, demonstrates the pressing need for plaintiff to acquire the discovery sought from the defendant, including and especially, documentary evidence.

**25. All communications with any Hamburg and/or German governmental entity or official regarding the use of the sect filter.**

See arguments addressing Requests 1 and 6-8 above.

Defendant's assertion that she "Responded" to the First Request for Production is specious. She didn't respond when it was timely for her to do so, she didn't respond when this Court ordered her to do so and she hasn't done so yet. Each of the requests

12

set forth above are material to the issues of this case and within the parameters of Judge Whittemore's ruling regarding the scope of discovery.

## IV - DEFENDANT'S OBJECTIONS TO THE SECOND REQUEST FOR PRODUCTION ARE WITHOUT MERIT

The Second Request for Production, served on March 6, 2001 (Ex. 15), was specifically focused to address FSIA immunity issues which were the subject of the District Court's Order of February 16, 2001. Each of the categories of records sought go to the issues of the scope of Caberta's job functions, responsibilities and duties; and to her relationship with private parties benefitting from her activities for which she received payoffs.

Ms. Caberta objected to most of the requests, asserting that responsive records were not within her control, but were under the control of the Hamburg government. The Requests for which she asserted an inability to produce the materials are:

      **1.  All orders and instructions from the government of the City of Hamburg relating to your job functions, responsibilities and duties.**

      **2.  All orders and instructions from the Ministry of the Interior of Hamburg  relating to your job functions, responsibilities and duties.**

      **3.  All orders and instructions from the City of Hamburg relating to the functions, responsibilities and duties of the Working Group Scientology (Arbeitsgruppe Scientology).**

      **4.  All records setting forth the scope of your official duties and responsibilities.**

      **5.  All records addressing your day-to-day activities with respect to distribution of the sect filter, boycotts of Scientologists or**

businesses owned by Scientologists, and distribution of information relating to Scientology and alleged conduct and intentions of Scientologists.

6.  All records addressing distribution of the sect filter.

7.  All records of receipt of funds for any work relating to Scientology, except your official salary.

8.  Correspondence and communications with or from any person, business, company, or entity regarding the use of the sect filter.

9.  All records which reflect what recipients of the sect filter are expected to do with it.

10.  All correspondence with any business, entity and Chamber of Commerce relating to use of the sect filter.

11.  All records regarding governmental expenditures of any aspect of the Alternate Charlemagne Award, or the trips to Leipzig by any member of your office regarding the ceremony.[2]

13.  All records or correspondence which reflect benefits to German companies or entities arising out of their use or potential use of the sect filter.

14.  All records evidencing or suggesting that your acts relating to the sect filter and Working Group Scientology (Arbeitsgruppe Scientology) are regulatory acts of a governmental entity.

15.  All records evidencing or suggesting that your acts relating to the sect filter and Working Group Scientology (Arbeitsgruppe Scientology) are law enforcement acts of a governmental entity.

_____

[2]  Caberta gave Robert Minton a public award in Germany, called the "Alternative Carlemagne Award" for his purported humanitarian work in attacking Scientology.

14

Defendant's response, (Ex. 16), to each of these requests was, **"None"**, but

explained by an introductory statement that,

> Defendant notes that Plaintiff has requested many documents which, if
> extant, are the property of and are controlled by one of more
> governmental entities.  Defendant responds only for herself and says ...
> **None.**

Plaintiff does not assert lack of relevance for these categories, nor does she

assert that they are outside the scope of the Court's discovery Order.  Rather, thwarting

all attempts to refute her assertions in the motion to dismiss and in her own affidavits,

she claims an inability to acquire the various policies, laws, regulations, instructions

and communications regarding the very matters about which she has previously argued

support her position.  Yet, she and her superior, Willi Beiss, both made sworn

statements concerning matters which can be refuted with records she claims are outside

her control.  For example, in the Second Affidavit of Ursula Caberta she said:

> 3.  Her duties are focused on the protection of legitimate
> businesses and other lawful entities from infiltration or other attack by
> Scientology and Scientologists and her duties include, A) the
> development and distribution of the Hubbard Declaration [3]; and B) the
> distribution of information concerning the character, nature, and
> activities of Scientology...
> 4.  All her activity concerning the Hubbard Declaration, including
> development and distribution of the Declaration, has been in her capacity
> as an employee of the government of Hamburg, Germany, and has been
> within the course, scope and authority of her employment by the
> government of Hamburg Germany.
> 5.  All her activity, communication and pronouncements
> concerning Scientology and Scientologists, directed to businesses and
> other entities headquartered in or doing business in Germany, including

---

[3] Her affidavit footnotes that this is also described as a "sect filter."

the dissemination of the Hubbard Declaration, has been within the course, scope and authority of her employment of the government of Hamburg, Germany.

(Ex. 6.)

The declaration of her superior, Willi Beiss, was filed by Caberta in a motion to stay all discovery in this case. Like her own affidavit, it makes various assertions of fact respecting the scope of Caberta's job functions and duties:

> 2. Ursula Caberta is employed under my supervision by the government of Hamburg, Germany.
>
>     *        *        *        *
>
> 4. Ursula Caberta's activity concerning the Hubbard Declaration, including development and distribution of the Declaration, has been in her capacity as an employee of the government of Hamburg, Germany, and has been within the course, scope and authority of her employment of the government of Hamburg, Germany.
>
> 5. Activities including but not limited to communication and pronouncements concerning Scientology and Scientologists, directed to businesses and other entities headquartered in or doing business in Germany, including the dissemination of the Hubbard Declaration, is within the course, scope and authority of Ursula Caberta's employment by the government of Hamburg, Germany.
>
>     *        *        *        *
>
> 7. It is Ursula Caberta's job with the government of Hamburg, Germany to make the Hubbard Declaration available to businesses and other entities headquartered in or operating in Germany.
>
> 8. It is Ursula Caberta's job with the government of Hamburg, Germany to take such other actions as appear to her to be necessary to assist businesses and other entities headquartered in or operating in Germany to avoiding infiltration of themselves or harm to their employees by Scientology or Scientologists.

(Ex. 7, Beiss Affidavit.)

To support her FSIA jurisdictional arguments, numerous other arguments were

made in Ms. Caberta's two motions to dismiss, asserting that she always acted within the scope of her allegedly official duties.

Thus, defendant's objections to the document requests cannot stand. A party may not provide testimonial statements regarding alleged policies and duties of her position that she *and* her superior have seen fit to place in the sworn affidavits, and then when asked to provide documentation setting forth evidence of those duties, assert that the documents upon which they apparently relied are not within their "control" to produce, but are in control of her employer, the City of Hamburg. United States courts are not obligated to give up their jurisdiction over a party over whom personal jurisdiction has already been found, by virtue of a foreign statute behind which the party seeks to hide. As stated by the Supreme Court in *Societe Nationale Industrielle Aerospatiale v. U. S. District Court for the Southern District of Iowa,* 482 U.S. 522, 107 S.Ct. 2542, 2555-56, fn. 29 (1987), with respect to a French discovery blocking statute:

> It is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-206, 78 S.Ct. 1087, 1091-1092, 2 L.Ed.2d 1255 (1958). Nor can the enactment of such a statute by a foreign nation require American courts to engraft a rule of first resort onto the Hague Convention, or otherwise to provide the nationals of such a country with a preferred status in our courts. It is clear that American courts are not required to adhere blindly to the directives of such a statute. Indeed, the language of the statute, if taken literally, would appear to represent an extraordinary exercise of legislative jurisdiction by the Republic of France over a United States district judge, forbidding him or her to order any discovery from a party of French nationality, even simple requests for admissions or interrogatories that the party could respond to on the

17

basis of personal knowledge.

These circumstances warrant that the defendant either produce the materials demanded, or face the consequences of her refusal to do so:  striking of her own evidence and preclusion from the provision of any other evidence on the same issues.

Caberta asserted that each of the remaining requests from the Second Request for Production was beyond the scope of jurisdictional discovery authorized by the District Court:

> **12.  All records concerning any response you made or which was made on your behalf responding to criminal allegations that you accepted a bribe or loan from Robert Minton.**

> **16.  Records of receipt of funds or receipt of donations or loans from any entity other than the City of Hamburg.**

> **17.  All records reflecting any agreement to pay your attorney in this case.**

> **18.  All records reflecting payments to your attorney in this case.**

> **19.  All communications between you and any governmental entity or official regarding Robert Minton.**

> **20.  All communications between anyone acting on your behalf or as your agent, and any governmental entity or official regarding Robert Minton.**

Defendant responded to each of these Requests and Requests 21 and 22 below, by stating (with minor variation):

> Defendant objects to this request as it is beyond the scope of discovery authorized by the Court and is irrelevant to any issue raised on the

18

pleadings in this case. [4]

Arguments relating to the relevance of these matters is addressed above as to other requests, and therefore will not be repeated in this section. Suffice to say that plaintiff by these requests seeks evidence demonstrating that Ms. Caberta is acting outside the scope of any lawful government activity by accepting money from a foreign businessman to take the actions upon which the complaint is based. Such conduct could no more constitute a lawful act of a government official than would a bribe to any official to perform some activity.

**21. All communications between you an any governmental entity concerning the legality and constitutionality of the acts of Working Group Scientology (Arbeitsgruppe Scientology).**

**22. All communications and records concerning criticism by the United States government of your activities, and the activities of Working Group Scientology (Arbeitsgruppe Scientology).**

These last two requests seek evidence going both to the legality of Ms. Caberta's acts under German and International law, and knowledge of both defendant and other German officials relating to the legality of her acts. Since her conduct has been officially condemned by the U.S. State Department and by the United States Trade Representative, surely such condemnation must have generated discussions in Germany. Such written discussions are likely to show that Caberta acted outside the scope of her authority, and if so, would be powerful evidence refuting her claim of official immunity. The requests are therefore quite relevant, and clearly within the

---

[4] Defendant added to request number 12, "furthermore, the matters sought, if they exist, are confidential under German law."

scope of the District Court's discovery Order.

## V - CONCLUSION

Ms. Caberta should be ordered to produce, within 7 days, all records responsive both to the First and Second Requests for Production, and sanctioned in an amount deemed reasonable by the Court, in light of the declaration of counsel concerning the time expended in the preparation and filing of this motion. (Ex. 10, Declaration of Kendrick L. Moxon.)

Dated: April 17, 2001                    Respectfully submitted,

Kendrick Moxon
Helena Kobrin
FBN #:  0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL  33755
Phone: (727) 443-5620
Fax: (727) 443-5640

F. Wallace Pope, Jr.
FBN #:  124449
JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla.  33757
(727) 461-1818

Attorneys for Plaintiff

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

I hereby certify that I have attempted to confer with defendant's counsel, John Merrett, to informally resolve the discovery disputes set forth in the motion to compel. Mr. Merrett declines to talk with me, however, and has refused to provide any records responsive to the document requests, despite my written requests that he do so, as addressed in the accompanying Declaration of Kendrick L. Moxon and the attachments thereto.

Kendrick L. Moxon

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S**

**MOTION TO COMPEL PRODUCTION OF DOCUMENTS; REQUEST FOR**

**SANCTIONS** to be served on this 17th day of April, 2001, by U.S. Mail, to John

Merrett, 2716 Herschel St., Jacksonville, FL 32205.

_____
Attorney

Due to the physical nature of exhibit, it is not scanned; please see case file.