FILED

01 APR 30 PM 12: 22

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

HUBERT HELLER, an individual,

      Plaintiff,

v.                            Case No. 8:00 CV-1528-T-27C

URSULA CABERTA, an individual,

      Defendant.

_____/

**PLAINTIFF'S OPPOSITION TO "MOTION FOR PROTECTIVE
ORDER, TO VACATE ORDER OF MARCH 29, 2001, OR
TO DETERMINE COMPLIANCE AND FOR SANCTIONS"; COUNTER
MOTION FOR EVIDENTIARY PRECLUSION OR OTHER SANCTIONS**



## **TABLE OF CONTENTS**

I  –   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II  –   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    The District Court's Discovery Order . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.    Plaintiff's Attempts to Acquire Deposition Discovery . . . . . . . . . . . . 3

III –   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.    The Motion to Compel Was Not Mooted . . . . . . . . . . . . . . . . . . . . . 13

        B.    Plaintiff Is Entitled to the Discovery Sought and is Not Required
              to Proceed under the Hague Convention or Other Diplomatic
              Channels to Acquire Defendant's Deposition . . . . . . . . . . . . . . . . . . 14

IV –   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

## TABLE OF AUTHORITIES

<u>**CASES**</u>                                                               <u>**PAGE**</u>

*Byrd v. Corporacion Forestal y Industrial de Olancho, S.A.,*
182 F.3d 380 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Chuidian v. Philippine National Bank,*
912 F.2d 1095 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Doster v. Schenk,*
141 F.R.D. 50 (M.D.N.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*El-Fadl v. Central Bank of Jordan,*
75 F.3d 668 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hepperle v. Johnston,*
590 F.2d 609 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hudson v. Hermann Pfauter* GmbH & Co.,
117 F.R.D. 33 (N.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Aircrash Disaster Near Roselawn, Indiana Oct. 31, 1994,*
172 F.R.D. 295 (N.D.Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*Ins. Corp of Ireland, Ltd. v.*
*Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Mingo v. Sugar Cane Growers Co-op. of Florida,*
864 F.2d 101 (11th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Phaneuf v. Republic of Indonesia,*
106 F.3d 302 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pioche Mines Consol., Inc. v. Dolman,*
333 F.2d 257 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rachis v. Maschinenfaprik Hehl & Soehne,*
1986 WL 9274 (E.D.Pa. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Richmark Corp. v. Timber Falling Consultants,*
959 F.2d 1468 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Societe Nationale Industrielle Aerospatiale v.*
*U. S. District Court for Southern District of Iowa,*
482 U.S. 522, 107 S. Ct. 2542 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*State Exchange Bank v. Hartline*,
693 F.2d 1350 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Trajano v. Marcos*,
978 F.2d 493 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Xuncax v. Gramajo*,
886 F. Supp. 162 (D.Mass. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## **STATUTES**

Local Rule 3.04(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

F.R.Civ.P. Rule 37(b)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

F.R. Civ. P. Rule 37(b)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I - INTRODUCTION

The gist of defendant Ursula Caberta's motion is that she once allegedly agreed to appear for her deposition in Germany and asserts that the prior agreement to appear, 1) should have mooted plaintiff's then-pending motion to compel her deposition, 2) should result in the vacation of the Court's March 29th Order that she appear for deposition, and 3) should end plaintiff's efforts to take *any* deposition discovery from her or her affiant in this case.

Defendant has now clarified that the terms of the alleged "agreement" upon which Ms. Caberta bases her motion, were actually that she would *physically appear*, but would refuse to testify about any issue in this case.

Ms. Caberta's offer to "appear" – but not testify – hardly constitutes compliance with the federal rules, much less this Court's discovery Order. And, Ms. Caberta's assertion that the alleged offer to appear mooted the pending motion to compel her deposition, is extremely frivolous. Defendant manifestly never intended to testify as demonstrated by the evidence addressed below. Rather, defendant's counsel created an expensive game of obstruction and delay, resulting in the production of literally zero oral and documentary discovery. Defendant's motion to vacate the Court's Order should therefore be denied.

Plaintiff counter-moves for an Order that Caberta be required to come to the United States where she frequently travels, and testify regarding the issues she has raised in her defense to jurisdiction, including cross examination of her affidavits filed in support of her motion to dismiss. Plaintiff requests that Ms. Caberta be warned that failure to comply will result in an order precluding the introduction of any evidence by

defendant as to her purported official immunity or to jurisdictional issues which are the subject of pending discovery.

Plaintiff also requests reasonable sanctions for the reasons addressed below and for Caberta's failure to appear at her deposition noticed in this district.

## II – STATEMENT OF FACTS

In the context of efforts to dismiss this case, Ms. Caberta has submitted two affidavits of her own and one from her superior, Willi Beiss, in support of a "sovereign immunity defense." For months, plaintiff has endeavored to acquire some discovery relating to this defense, yet Ms. Caberta refuses any cross examination of her own sworn statements and asserts an inability to make her affiant available.

Ms. Caberta has also refused to provide a single document in response to plaintiff's document requests, which refusal is addressed in a simultaneous motion to compel pending with this Court. Because the background of the case is set forth in that motion, and this Court is now familiar with the issues in this case, plaintiff will not repeat such background here.

However, the accurate sequence of events resulting in the obstruction of deposition discovery is set forth below in detail, that the Court may evaluate the conduct of Ms. Caberta and her attorney, John Merrett, and resolve this impasse to the discovery ordered by this Court and by the District Court.

### A. The District Court's Discovery Order

In her two motions to dismiss denied by the District Court, Ms. Caberta argued that she acted at all material times in her capacity as the official so-called "sect commissioner" of the city of Hamburg, Germany and within the scope of her

2

delegated authority in performing the torts alleged in the Complaint, and is therefore immune from suit pursuant to the Foreign Sovereign Immunities Act.

By Order dated December 16, 2000, the District Court granted in part and denied in part defendant's motion to dismiss the First Amended Complaint, finding that the defendant's claims of immunity under the Foreign Sovereign Immunities Act were overcome by the allegations in the Complaint. (Ex. 1.)  The Court dismissed the state law claims without prejudice, giving leave to amend.

Plaintiff filed a Second Amended Complaint, re-pleading the state law claims. Ms. Caberta filed a further motion to dismiss, addressing only the immunity and jurisdictional issues, and submitting affidavits of both herself and her direct superior in Hamburg, Willi Beiss. (Exs. 2 and 3.)  The affidavits addressed the alleged scope of Ms. Caberta's employment and duties in the Hamburg City government.  By Order dated February 15, 2001, the Court denied the defendant's second motion to dismiss, and at the same time denied the defendant's second motion to stay discovery, giving leave to plaintiff to conduct discovery, "limited to the FSIA issues and this Court's exercise of jurisdiction over Defendant."  (Ex. 4.)

## B.  Plaintiff's Attempts to Acquire Deposition Discovery

After months of informal attempts to acquire Ms. Caberta's deposition, plaintiff filed a motion to compel the depositions of defendant Caberta and her superior, Willi Beiss, both of whom filed affidavits in this case in support of Caberta's motions to dismiss on FSIA grounds.  By Order dated March 29, 2001, this Court granted plaintiff's motion to compel.  Defendant now asserts that such Order should be vacated, because she never really refused to attend her deposition, and that her alleged

3

agreement to appear for deposition in Hamburg should have mooted plaintiff's motion to compel, and should satisfy her obligation to appear for deposition. These assertions are most disingenuous. The simplest means of refuting these misrepresentations is with an accurate chronology of all events set forth below – not the inaccurate and incomplete rendition provided by defendant. "Moxon" refers to the undersigned counsel for plaintiff, Hubert Heller, and "Merrett" refers to John Merrett, counsel to defendant Ursula Caberta.

- January 3rd letter from Moxon to Merrett: "You have failed to respond to my informal attempt to set the depositions of the defendant... Absent your cooperation, I will have no choice but to unilaterally set the depositions...." (Ex. 5.)

- January 8th letter from Moxon to Merrett: "... you have not responded to my letters seeking dates for Ms. Caberta's deposition or a convenient location for [the] deposition.... I am willing to conduct the deposition at the American Embassy in Germany as a courtesy to the defendant. However, absent agreement, the deposition will take place in Florida." (Ex. 6.)

- January 30th letter from Moxon to Merrett: "You still have not responded to my letters seeking dates for Ms. Caberta's deposition or a convenient location for Ms. Caberta's deposition. As I previously offered, I am willing to conduct the deposition at the American Embassy in Germany as a courtesy to the defendant. ... Please accordingly contact your client to see if she wants to attend the deposition in Germany or Florida. Unless I hear back from you, ... I will notice her deposition for Florida at a time fitting my own convenience." (Ex. 7.)

- February 22nd letter from Moxon to Merrett: "We will also need dates for Ms. Caberta's deposition, as well as that of your other affiant, Willi Beib. As I previously offered, I am willing to conduct the depositions at the American Embassy in Germany or at the Consular Office in Hamburg if we can arrange space, as a courtesy to the defendant and her witness. Alternatively, we can hold the depositions in Florida within the district. ... please provide several alternative 2-day slots prior to April 20th ... let me know your schedule and I will try to work around it. I expect both Ms. Caberta and Mr. Beib to be

4

produced voluntarily. ... If you do not intend to produce these witnesses voluntarily, please let me know your position within 3 days that I may seek appropriate relief." (Ex. 8.)

- March 1st fax note from Merrett to Moxon: "I expect to speak with Ms. Caberta next week and will check with her regarding possible deposition dates and location." (Ex. 9.)

- March 1st letter from Moxon to Merrett: "Regarding your cursory note faxed to my office this afternoon: your 'expectation' that you will speak with your client next week and check for 'possible' dates is insufficient. She is readily accessible to you. ... Either provide me with available dates for Ms. Caberta and Mr. Beib by tomorrow or I will file a motion to compel." (Ex. 10.)

- March 6th letter from Merrett: "Herewith please find a motion which I intend to file tomorrow if I do not receive a suitable written response from you by 10:00 a.m.... I have no objection to your proceeding in accordance with the procedure established by international law for the formulation, transmission, and propounding of discovery inquiries; alternatively, I am agreeable to you proceeding by whatever means you deem appropriate to secure the agreement of my client's employer to the depositions you request. However, as you know, it is not possible to proceed through the customary practice of informal coordination of the depositions." (Ex. 11.)

- March 6th letter from Moxon to Merrett, accompanying a motion to compel the depositions of Caberta and Willi Beiss: "I am in receipt of your letter of today's date. The 'appropriate procedure' for the depositions for the witnesses you have already submitted via affidavit, is to produce them for cross examination. You may moot the motion to compel I have filed [today] by agreeing to produce the witnesses, Caberta and Beib, ...." (Ex. 12.)

- March 8th letter from Merrett to Moxon: "I have spoken to Ms. Caberta this week regarding scheduling of depositions. I have previously reminded you of the potential difficulties posed by the policies of the German government(s) concerning testimony about her employment-related activities... Ms. Caberta will be available for deposition in Hamburg beginning at 9:00 AM local time on Wednesday, March 21. ... *You bear the risk that Ms. Caberta may be prevented by her employer and/or by law from answering some or all your questions.*" (Ex. 13.) (emphasis added.)

- March 8th letter from Moxon to Merrett: "I accept your offer to produce Mrs.

5

Caberta in Hamburg on March 21st.  Since you have filed two affidavits on her behalf, you can hardly take the position that she possesses the authority to make the assertions set forth in those affidavits, yet lacks the authority to be cross-examined on those statements.  Her affidavits constitute testimony, under either expressed or implied authority she found necessary for her written testimony already provided in this case. *It is defendant's obligation to get whatever authority you believe she needs for any factual issue you wish to have adjudicated.*  If she fails to be examined as to the issues the court has ordered are subject to discovery, we assert our rights under Rule 37(b).... *I propose we stipulate for the court that you will produce Caberta for deposition and thus moot that part of my motion to compel....*  Please contact me no later than this afternoon as to each of the issues above." (Ex. 14.) (emphasis added.)

• Mr. Merrett failed to respond to the offer to stipulate that Caberta would appear with authority to testify and thus moot the motion.  The Motion to compel accordingly remained on calendar.

• March 12th letter from Moxon to Merrett:  "In attempting to arrange the depositions of Ms. Caberta and Mr. Beib at the consular offices in Hamburg for March 20, 2001 as you requested, we have run into a procedural stumbling block.  The consul, or other embassy office in Germany, is happy to make space available.  However, because of treaty requirements, they cannot make the space available or swear in the witness unless the German Ministry of Justice first approves the taking of the deposition.   This process takes about three weeks... Thus, we must either reschedule the depositions for approximately one month from now, or else hold the depositions in the United States...  I leave the choice to you, but I am proceeding to execute the necessary steps to take the depositions in Hamburg as soon as possible. The deposition of Ms. Caberta on March 20th and the deposition of Mr. Beib on March 21st, must therefore be postponed. Please let me know if you want to have the depositions in Germany next month or at a convenient time in the States." (Ex. 15.)

• March 13th  Moxon speaks to Merrett in Paris at the trial of Merrett's client Robert Minton which both counsel attended and tells him the deposition set for March 20th must be rescheduled. (Ex. 16, Declaration of Kendrick Moxon.)

• March 19th Moxon calls to Merrett's office, and speaks to paralegal Jeff Wittig to get dates.  Mr. Wittig says he will contact Merrett and indicates the week of April 16th looks OK on Merrett's calendar and he would call back.  There was no return call from either Merrett or Wittig. (Ex. 16, Moxon Declaration.)

- March 19th letter from Moxon to Merrett: "I have been in communication with the consular offices in Hamburg, interpreters and court reporters to arrange for the deposition of Ms. Caberta and Mr. Beib. However, I need the dates of availability for you and your client. ... I ... suggest that we schedule the Hamburg depositions for two days during the week of the 16th of April, at days of convenience to you and the witnesses. Let me know the dates as soon as possible so that the information may be provided to the consulate." (Ex. 17.)

- March 20th note from paralegal Wittig to Moxon, stating that he spoke to Merrett and that Merrett will check with Caberta to get dates for her deposition. (Ex. 18.)

- March 20th: Plaintiff requests American embassy in Germany to acquire approval of German Ministry of Justice for depositions, tentatively scheduling them for April 18th and 19th at the American Consul Hamburg. (Ex. 19.)

- March 21st letter from Moxon to Merrett: "I have received confirmation from the American Consulate in Hamburg that they have reserved a conference room for April 18th and 19th for the depositions. Because you have not communicated with me, I have requested the consulate to get approval from the German authorities for these dates, because without a schedule we cannot even begin the process. Your paralegal informed me that those dates were open on your calendar, but could not confirm your availability without hearing from you directly. Please confirm availability." (Ex. 20.)

- March 22nd letter from Moxon to Merrett: "Would you please respond to my letters of March 19 and 21 regarding the overdue production of documents and scheduling of depositions in Germany. Let us show the court that we can resolve something without the need for recrimination and motion practice." (Ex. 21.)

- Merrett does not respond to request for confirmation of deposition dates.

- March 26th: Plaintiff files notice of no-opposition to motion to compel depositions. Merrett does not respond.

- March 27th: Merrett's paralegal calls Moxon, stating that Caberta and Beiss refuse to appear for deposition. (Ex. 16, Moxon Declaration.)

- March 27th letter from Moxon to Merrett: "[T]his is to confirm my conversation with your paralegal, Jeff Wittig, who today told me, that you told

7

him, that you spoke to Ms. Caberta and that she refuses to appear for her deposition – allegedly because her superior won't let her. Based on your prior representation that Ms. Caberta *would* appear, I have expended a great deal of time and energy making necessary arrangements in Germany. Please clarify your position regarding the deposition." (Ex. 22.)

•    March 28th letter from Merrett to Moxon: "As to your pretended shock at the decision of Ms. Caberta's superiors, *please review our earlier correspondence regarding your desire to take Ms. Caberta's deposition. You will see that I have never represented that Ms. Caberta would be giving a deposition,* and have been at pains to point out that you courted significant disappointment in electing to proceed outside the established procedures for obtaining sworn testimony in foreign countries. *What I agreed was that Ms. Caberta would be available in Hamburg on a specified date in March and would testify to whatever extent her superiors permitted.* You unilaterally canceled that session. I learned on March 27 that Ms. Caberta's superiors have informed her that they will not, and she will not be permitted to, engage in discovery absent an obligation to do so under German law." (Ex. 23.) (emphasis added.)

•    March 29th, the Court grants plaintiff's motion to compel, Ordering Caberta and Beiss to appear for deposition within 20 days.

•    April 2nd letter from Moxon to Merrett: "I am in receipt of your letter of March 28, 2001, refusing to produce Ms. Caberta or Mr. Beiss for deposition in Germany. Please be advised that Judge Jenkins has entered an order requiring Ms. Caberta and Mr. Beiss to appear for deposition within 20 days of March 29th. A copy of the order is here provided.
        ... Plaintiff has accordingly noticed the depositions of Ms. Caberta and Mr. Beiss in this district, as is plaintiff's right under Rule 30, which notices are also herewith provided. Since you refuse to speak with me, I have necessarily set the deposition for April 16th – a time of my own convenience which date your paralegal previously told me you were available. If this date is not convenient to the witness, I am willing to consider rescheduling but in light of your persistent delays, refusals to communicate, reneging on your prior agreement to produce the defendant and the impending discovery cut off, I will not delay absent a firm guarantee, signed by you and your client, that she will appear on a date certain in Florida or some other mutually agreeable location, such as Washington or New York. As for the Willi Beiss deposition, I have scheduled him for April 17th in Florida. He is your affiant and I expect you to produce him in this district, since I have no ability to enforce compulsory service upon him in Germany." (Ex. 24.)

•  April 2nd:  Notices are served for the depositions of Caberta for April 16th and Beiss for April 17th in Florida. (Ex. 25.)

•  Plaintiff continued to attempt to acquire approval through diplomatic channels for the deposition to be held in Germany, in the event that Caberta reversed her position and determined that the option of appearing in Florida was more cumbersome than agreeing to appear in Germany.

•  April 5th letter from Merrett to Moxon: "This letter will also place you on notice that if you have not, by the close of business on Monday, 1) notified the Court of the facts surrounding our setting depositions and your unilateral cancellation of them after I traveled to Europe, and 2) taken whatever steps are necessary to cause the Order you secured by chicanery to be withdrawn, I will take appropriate action." (Ex. 26.)

•  April 5th letter from Moxon to Merrett: "As to the depositions of Ms. Caberta and Mr. Beiss ... Your inference that you traveled to Europe to attend Caberta's deposition is hogwash.  You were in Paris on March 10th to attend a trial on March 13th in the case of your client Robert Minton.  You were informed by letter on March 12th that the depositions could not go forward on the 20th in Germany because the United States Consular offices demanded more time and indicated that they would not make their offices available without prior approval, and I told you the same in person on the 13th at Minton's trial in Paris. I filed and served the motion to compel the depositions on March 6th because you refused to give me dates for the depositions for your witnesses Caberta and Beiss.  After I filed the motion, you then altered your stance and said that at least Caberta would appear in Hamburg, offering the 20th.  You have since reversed yourself and told me that she will *not* appear in Germany – thus necessitating my notice for her appearance in Florida.  Are you now saying that you *will* produce Caberta and Beiss for deposition in Germany?" (Ex. 27.)

•  Merrett ignores the letter.

•  April 12th:  Moxon places call to Merrett's office to attempt to confirm that Caberta will appear for her deposition on April 16th in Florida.  A message is left on Merrett's answering machine but no return call is made by Merrett. (Ex. 16, Declaration of Kendrick Moxon.)

•  April 13th:  Moxon places two calls to Merrett's office to attempt to confirm that Caberta will appear for her deposition.  The answering machine identifies

9

an emergency pager number for Merrett. A message was left on his answering machine and no return call is made by Merrett. A page is made to the pager number identified on the answering machine, but Merrett does not respond. (Ex. 16, Declaration of Kendrick Moxon.)

- April 13th: Defendant files a motion for protective order regarding Caberta and Beiss depositions. [1]

- April 16th: Circa 9:00 a.m., Moxon calls Merrett's office to confirm the deposition that day. A message is left on the answering machine to call back immediately. There is no return call. (Ex. 16, Declaration of Kendrick Moxon.)

- April 16th, Caberta fails to appear at her deposition and Merrett fails to communicate that she will not appear. (Ex. 16, Declaration of Kendrick Moxon; Ex. 28, "no show" transcript.)

- April 16th Moxon letter to Merrett: "Neither you nor your client appeared for her lawfully noticed deposition today in Tampa. I called your office three times prior to the deposition and left messages, but you declined to return the call. I even paged you as the instructions on your answering machine indicated, but you did not return the page. I accordingly intend to file a motion to compel and/or for sanctions, including precluding defendant from offering any evidence in this case for her refusal to attend her deposition.... If you will produce the witness and pay the no show expenses, I will not file a motion. Please let me know by tomorrow.
    Finally, I have asked you in writing to inform me if you are producing Willi Beiss for his noticed deposition tomorrow, because I do not wish to incur the expense of a no-show. You have ignored the request. Are you producing him or not?" (Ex. 29.)

- April 16th letter from Merrett to Moxon: "The Court required that the depositions be set at a time and place determined by mutual agreement. Your unilateral announcement of place and time and your sham offer of compromise in favor of other dates in the US were as fraudulent as the means by which you secured the March 29 order."

---

[1] The filing of a motion for protective order does not stay the taking of a noticed deposition. *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964); *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979).

Furthermore, you are fully aware that the requirements of the March 29 order were fulfilled before it was entered, when we agreed that the deposition of Defendant would be held in Hamburg on March 20, and she and I were present on that date.... Provided that your client advances the funds for my travel, I am willing to attempt to reset the depositions in Hamburg, subject to the same caveats which applied to the sessions you aborted." (Ex. 30.)

- April 16th letter from Moxon to Merrett: "I am tired of your games. You previously informed me that Caberta *would not* testify in Germany, then you later 'agreed' to appear in Germany on the 20th. When that date fell through because of the U.S. Consul, you wrote to me and stated that you never meant that Caberta would actually testify – only that she would speak to the extent her superiors allowed. State plainly and without equivocation if you wish to avoid a motion to compel: will Caberta appear in Germany and actually *testify*? I certainly have no interest in spending thousands of dollars to go to Germany, have Caberta 'appear' and say she is not permitted to testify because her superiors would not let her do so.

  And, I will certainly not pay for you to fly to Germany. You and I both know you went there on other business for which you spent a week in France and were paid by Robert Minton to go there and attended his trial at counsel's bench. You met with Minton's attorney in Berlin. You then went to Rome. You knew a week before the 20th that Caberta's deposition was not happening. But that may be moot. My question, again, is simply this: **will Caberta now appear in Germany and actually *testify*?**" (Ex. 31.) (emphasis in original.)

- April 17th letter from Merrett to Moxon: "There should be no confusion regarding the deposition of the Defendant. She has always been willing to provide whatever her government will allow her to provide. *I have repeatedly warned you that that may be nothing at all.*... However, as I said, if the Plaintiff will advance the costs involved, I will meet you along with my client in Hamburg at an agreed time *and we will find out together the state of inquiry permitted* by her government." (Ex. 32.) (emphasis added.)

- April 17th letter from Moxon to Merrett: "I want to be certain this is no misunderstanding or intentional blurring of facts by defendant. If I travel to Germany for the purpose of taking Caberta's deposition, I would question her regarding jurisdictional issues concerning the scope of her duties and responsibilities, the existence of documents setting forth her alleged official duties, and the assertions made in her affidavit and the affidavit of her superior, Willi Beiss. Please respond without equivocation that I may evaluate the relief which I must seek: if I travel to Germany, will Caberta appear and testify as to

11

these matters?" (Ex. 33.)

- Merrett ignores the letter.

- April 17th letter from Caberta's German lawyer, Mr. Hintze, to American Embassy in Berlin on behalf of Caberta [as translated]: "I am referring to the letter sent to you by the Managing Government Director of the Ministry of the Interior, Mr. Willi Beiss, of 12. April 2001. For the reasons mentioned therein I will not appear for the planned witness deposition at the American General Consulate in Hamburg." (Ex. 34.)

- The Hintze letter also attaches a letter from Willi Beiss, dated April 12, 2001, which [as translated] states in part:

  "I was informed by the Justice Department of the Free- and Hanse-Stadt Hamburg about your letter of the 21. March 2001 on the above mentioned matter to the Federal Ministry of Justice ... In that letter you informed the Federal Ministry about a soon planned deposition of witnesses, which do not have an American citizenship, and in the above-mentioned legal case an interrogation of Mrs Ursula Caberta and myself as witness is supposed to occur in the building of the American General Consulate in Hamburg on the 18-19. April 2001.

  The performance of Rechtshilfe [legal aid] is governed in the relationship of the Federal Republic of Germany and the United States of America according to the Rules of the Agreement of The Hague of 18 March 1970 about depositions abroad in civil and trade matters ... In conjunction with the execution-law to this of 22 December 1977 ... A deposition through diplomatic or consular representatives is provided in the framework of Article 16 of the Agreement in conjunction with Paragraph 11 of the execution-law. The deposition in the country is basically not allowed, when it relates to German nationals, but through German-American exchange of notes about the hearing of witnesses through American consuls in the Federal Republic of Germany an exception to this restriction was agreed. For the hearing some prerequisites were defined already years ago. The German side reminded representatives of the American embassy during recent discussions to follow these prerequisites. Amongst others they are:

  > There is no enforcement to the persons to be questioned of any kind, neither to appear, nor to make statements, no[r] to make an oath.

12

Referring to this legal basis I am letting you know also on behalf of Mrs Caberta that neither Mrs Caberta nor myself will appear at the planned witness deposition in the American Consulate in Hamburg." (Ex. 35.)

- April 20th, e-mail from U.S. Embassy in Berlin to Moxon, stating that the depositions cannot go forward, "as the witnesses have categorically refused to attend.... I am in possession of two letters on headed paper from the Interior Ministry Hamburg stating that Herr Willi Beiss and Frau Ursula Caberta refuse to attend." (Ex. 36.)

## III. ARGUMENT

### A. The Motion to Compel Was Not Mooted

As these letters and events demonstrate, there was no reason for plaintiff to withdraw the motion to compel filed on March 6, 2001, for Ms. Caberta's and Mr. Beiss' depositions and every reason why the motion should have remained on calendar. Defendant's arguments that the motion was mooted by an "agreement" to produce Ms. Caberta for a deposition in which she would refuse to testify is ridiculous. Indeed, plaintiff offered to stipulate to withdraw the motion if Caberta was produced to actually testify, and that offer was ignored.

When it was clear that defendant was pretending to cooperate while actually playing a game of delay and providing no discovery, plaintiff filed and served a notice of no-opposition to the motion to compel. That notice was also ignored by Ms. Caberta and the Court accordingly granted the motion several days later.[2]

The argument of mootness should be rejected and Ms. Caberta and her counsel admonished for this games-playing and less than forthright presentation of the history

---

[2] Defendant's counsel asserts that he was out of the country from March 10th to 27th and that this justified his failure to respond to plaintiff's letters. However, Mr. Merrett prepared letters and signed and filed other papers in other actions during this time period. (Ex. 37, Letter of March 20th; Ex. 38, Appeal Brief, March 20th; Ex. 39, Appeal Brief, March 14th.)

of attempts to resolve the dispute defendant and her attorney have created.

**B.    Plaintiff Is Entitled to the Discovery Sought and is Not Required to Proceed under the Hague Convention or Other Diplomatic Channels to Acquire Defendant's Deposition**

The affidavits of Ms. Caberta and Willi Beiss (Exs. 2 & 3), asserted that Ms. Caberta was essentially engaged in enforcement of a commercial boycott of Scientologists, and dissemination of a "sect filter" to identify and discriminate against members of the Scientology religion to stem the expansion of the religion in Germany – acts plaintiff contends violate German Constitutional law, treaties with the United States and international human rights law. These are the very types of activities which would fall within the scope of exceptions to the general immunity provisions of the FSIA. *See*, e.g., *Byrd v. Corporacion Forestal y Industrial de Olancho, S.A.*, 182 F.3d 380, 388 (5th Cir. 1999); *Chuidian v. Philippine National Bank*, 912 F.2d 1095 (9th Cir. 1990); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996); *Trajano v. Marcos*, 978 F.2d 493, 497 (9th Cir. 1992); *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 306 (9th Cir. 1997); *Xuncax v. Gramajo*, 886 F.Supp. 162, 175 (D.Mass. 1995).

To support her FSIA jurisdictional position, arguments were made in Ms. Caberta's motions to dismiss, and in her affidavits, asserting that she acted within the scope of her allegedly official duties and job functions. Her arguments and affidavits gave rise to the District Court's Order that discovery proceed on this issue alone.

Defendant cannot assert factual conclusions – particularly in testimonial form – and then refuse to be cross examined as to such matters by asserting that her employer will permit her to provide conclusions to get rid of a case but not allow further inquiry to attack those conclusions. United States courts are not obligated to give up their

14

jurisdiction over a party over whom personal jurisdiction has already been found, by virtue of a foreign statute behind which the party seeks to hide. The Supreme Court has made it clear that the Hague Convention does not supplant the Federal Rules of Civil Procedure, but is "a permissive supplement ... for other means of obtaining evidence abroad." *Societe Nationale Industrielle Aerospatiale v. U. S. District Court for Southern District of Iowa,* 482 U.S. 522, 536, 107 S.Ct. 2542, (1987). The Court also ruled, with respect to a French discovery blocking statute intended to stop American depositions:

> It is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 204-206, 78 S.Ct. 1087, 1091-1092, 2 L.Ed.2d 1255 (1958). Nor can the enactment of such a statute by a foreign nation require American courts to engraft a rule of first resort onto the Hague Convention, or otherwise to provide the nationals of such a country with a preferred status in our courts. It is clear that American courts are not required to adhere blindly to the directives of such a statute. Indeed, the language of the statute, if taken literally, would appear to represent an extraordinary exercise of legislative jurisdiction by the Republic of France over a United States district judge, forbidding him or her to order any discovery from a party of French nationality, even simple requests for admissions or interrogatories that the party could respond to on the basis of personal knowledge.

482 U.S. 522, 107 S.Ct. 2542 at 2555-56, fn. 29.

A number of cases following *Societe Nationale Industrielle Aerospatiale* have held that litigants need not attempt to utilize Hague Convention procedures before utilizing other discovery methods. *Hudson v. Hermann Pfauter GmbH & Co.*, 117 F.R.D. 33, 36 (N.D.N.Y. 1987); *Doster v. Schenk*, 141 F.R.D. 50 (M.D.N.C. 1991); *In re Aircrash Disaster Near Roselawn, Indiana Oct. 31, 1994*, 172 F.R.D. 295, 310

(N.D.Ill. 1997) (refusing to apply Convention instead of Federal Rules to request for document production because "[t]he overriding interest of our court system is the just, speedy, and inexpensive determination of litigation. We find use of the Convention Letters of Rogatory to be an unnecessary, complicated, time consuming and expensive means of discovery, thus thwarting the interests of our court system.")

Thus, Ms. Caberta's endeavor to force plaintiff to use Convention procedures at the exclusion of the Federal Rules, must fail. Indeed, it is Caberta's intention that plaintiff's efforts to undertake discovery in Germany fail, as evidenced by her refusal to testify and her acquisition of a statement from her superior instructing her not to testify.

Moreover, the Hague Convention does not permit depositions as we know them. Rather, discovery is undertaken through the submission of specific questions through diplomatic channels to judicial authorities in Germany, where a judge may consider them and may ask the questions of a witness he considers appropriate. Given the animosity of the defendant[3] as well as the continued animosity of her government toward the plaintiff's religion generated largely by Ms. Caberta's campaign,[4] and the

---

[3] Ms. Caberta, as the Hamburg "sect commissioner," has been identified by the U.S. State Department as having violated human rights of Scientologists in Germany. (Ex. 40.) Ms. Caberta's commentary about Scientology (or if made regarding nearly any religion) would be shocking to the American conscience and our attitudes toward religious liberties, and harkens back to a less enlightened period of German history. Indeed, Ms. Caberta is quoted in the media as being proud to be referred to as the "new Goebbels" – the former Nazi minister of Propaganda. (See, e.g., Ex. 41.)

[4] A member of the Scientology religion received political asylum in the United States from a Florida federal court, arising out of official persecution against members of her religion in Germany. (Ex. 42.)

extremely constrained method of acquiring evidence via a German judge in which no verbatim record is made, it is unlikely that such a procedure would result in the production of useful or adequate testimony.  In any event, Caberta's motion concedes that "it was decided by the government of Hamburg and/or the German Republic that Defendant will not be permitted to give a deposition concerning her duties and activities with the government of Hamburg, including the declaration which is the subject of this action ..."  Thus, she and her superiors can easily hamstring any official attempts to acquire discovery.

While pretending plaintiff need go through the laborious and useless Hague Convention route to arrive exactly nowhere, Caberta also refuses to testify pursuant to the alternative letter agreement between Germany and the United States.  As indicated both in the letter of Willi Beiss (Ex. 35), and the printed instructions from the American Embassy in Germany (Ex. 43), there exists a supplemental agreement between Germany and the United States permitting depositions to be set informally and taken at the American Embassy or consular offices in Germany.  But, that agreement permits only wholly *voluntary* depositions.  As succinctly stated by Mr. Beiss:

> "There is no enforcement to the persons to be questioned of any kind, neither to appear, nor to make statements, no[r] to make an oath."
> Referring to this legal basis I am letting you know also on behalf of Mrs Caberta that neither Mrs Caberta nor myself will appear at the planned witness deposition in the American Consulate in Hamburg.

(Ex. 35.)

Thus, Caberta is free to utilize the normal route for civil litigation involving Germans and Americans – but chooses not to do so.

17

Moreover, it appears that the Hague route has also been effectively exhausted by Caberta's and Beiss' refusals to appear.  The U.S. Embassy legal staff attempting to facilitate the deposition have concurred that given these refusals, "that is all we can do as far as Hague Convention goes."  (Ex. 44.)  Thus, even a Hague Convention method would be useless and illusory at this point.

These circumstances warrant monetary sanctions against Caberta and her counsel for failure to appear at her Florida deposition and her counsel's refusal even to inform plaintiff's attorney that she was not appearing – despite three phone calls, messages left on his answering machine, and even a page to his personal pager.

These circumstances also warrant the issuance of an evidentiary preclusion order pursuant to F.R.Civ.P. Rule 37(b)(2)(B), for Caberta's failure to comply with the Court's Order to appear within 20 days for her deposition to address the issues which the District Court ordered may be the subject of discovery – and which Caberta herself placed at issue with the filing of the affidavit of Willi Beiss and two of her own affidavits.  Indeed, even more serious sanctions, including striking an answer or default could be assessed for Caberta's refusal to provide discovery herein.  *State Exchange Bank v. Hartline,* 693 F.2d 1350, 1352 (11th Cir. 1982); *Mingo v. Sugar Cane Growers Co-op. of Florida,* 864 F.2d 101, 102 (11th Cir.1989).

Under *Aerospatiale* and the line of cases it endorsed, it is clear that the court is empowered to impose appropriate sanctions upon a foreign plaintiff over whom personal jurisdiction has been acquired, as in this case, including judgment for the plaintiff, if the defendant refuses to comply with a discovery order. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474 (9th Cir. 1992); *Rachis v. Maschinenfaprik Hehl & Soehne*, 1986 WL 9274 (E.D.Pa. 1986); *Ins. Corp. of*

18

*Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705-06 (1982) (failure to abide by discovery order subjects a party to Rule 37 sanctions, including a finding of jurisdiction pursuant to Rule 37(b)(2)(A), allowing designated facts to be established).

Plaintiff is not here seeking a discovery sanction windfall, but rather, is simply seeking discovery. Thus, plaintiff proposes an appropriate order is first, a monetary sanction for the tactics described above and for defendant's failure to attend her noticed deposition in this district. Second, plaintiff requests an Order that the defendant make herself available for deposition in the United States and to actually *testify* regarding the factual issues she has raised by her own affidavits and arguments and the Willi Beiss affidavit she has filed, or suffer an appropriate evidentiary preclusion order if she fails to comply.[5]  Plaintiff finally requests a further Order requiring plaintiff to produce Mr. Beiss for deposition, or equally suffer an appropriate evidentiary preclusion order.

While plaintiff's counsel has repeatedly indicated that he was ready to travel to Germany for the convenience of the witnesses, defendant has apparently closed that door by refusing, on official channels, to testify, thereby removing herself from the possibility of informal deposition contemplated by the German/American supplemental agreement to the Hague Convention. Ms. Caberta should therefore be required to travel to the United States for her deposition, where the District Court found she was properly and personally served with process to acquire personal jurisdiction. In the unlikely event that Caberta cures the problem she has created in

_____

[5]  Local Rule 3.04(b) states the general policy of this district, that a non-resident defendant who intends to be present at trial may reasonably be deposed at least once in this district.

19

Germany by agreeing in writing to voluntarily testify and acquiring whatever approval she needs, plaintiff still stands willing to travel to Germany to take her deposition and the deposition of her affiant, Mr. Beiss.

## IV - CONCLUSION

For the reasons stated above, defendant's motion for protective order should be denied, and Ms. Caberta and Mr. Beiss ordered to appear for deposition on pain of evidentiary preclusive sanctions.   Ms. Caberta and Mr. Merrett should also be sanctioned in the amount of $2,955.00 as set forth in the accompanying declaration of counsel.  (Ex. 16.)

Dated: April 30, 2001                          Respectfully submitted,

Kendrick Moxon
Helena Kobrin
FBN #:  0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL  33755
(727) 443-5620

F. Wallace Pope, Jr.
FBN #:  124449
JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla.  33757
(727) 461-1818

Attorneys for Plaintiff

20

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

I hereby certify that I have attempted to confer with defendant's counsel, John Merrett, to informally resolve the discovery disputes set forth in the motion to compel. Mr. Merrett declines to talk with me, however, and has refused to produce Ms. Caberta or Ms. Beiss, despite my written requests that he do so, as addressed in the accompanying Declaration of Kendrick L. Moxon and the exhibits attached hereto.

_____
Kendrick L. Moxon

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S**

**OPPOSITION TO "MOTION FOR PROTECTIVE ORDER, TO VACATE**

**ORDER OF MARCH 29, 2001, OR TO DETERMINE COMPLIANCE AND**

**FOR SANCTIONS"; COUNTER MOTION FOR EVIDENTIARY**

**PRECLUSION OR OTHER SANCTIONS** to be served on this 30th day of April,

2001, by U.S. Mail, to John Merrett, 2716 Herschel St., Jacksonville, FL 32205.

_____
                    Attorney

Due to the physical nature of
exhibit, it is not scanned;
please see case file.