**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

HUBERT HELLER,

                Plaintiff,

vs                                    Case No.: 8:00 CV-1528-T-27C

URSULA CABERTA,

                Defendant.

_____

## DEFENDANT'S OBJECTION TO MAGISTRATE'S ORDER OF MAY 8, 2001

DEFENDANT, through her undersigned attorney, objects to the order entered in this cause by the Magistrate Judge on May 8, 2001 to the extent that the said order requires her to appear for deposition in the Middle District of Florida on the issue of jurisdiction under the Foreign Sovereign Immunities Act, and says:

1. In correspondence, the parties agreed that Defendant, an employee of the government of Hamburg, Germany, would be produced on March 20, 2001 for deposition in Hamburg, Germany, subject to any limits imposed by the governments of Hamburg and the German Republic. (Exhibits 1-4)

2. Plaintiff unilaterally canceled that deposition. (Exhibit 5)

3. Defendant was thereafter ordered by her government not to give evidence concerning her employment except pursuant to the Hague Convention ("the Convention") as set forth at 28 USC Section 1781 and the commentary thereto, and Defendant invoked her right under German law to provide evidence only subject to the Convention. Exhibit (Exhibit 6).

4. While Defendant's counsel was unavailable (Exhibit 7), and after unilaterally canceling Defendant's deposition, Plaintiff represented to the Magistrate that Plaintiff's Motion to Compel was "ripe" for determination, having never notified the Magistrate that the Motion had been mooted by the parties' agreement concerning Defendant's deposition in Hamburg on March 20, 2001 (Exhibits 3 & 4). Furthermore, while making those misrepresentations to the Magistrate Judge and demanding that Defendant appear in this country for deposition, Plaintiff's counsel was also unilaterally working through the U.S. Embassy in Berlin to schedule depositions of Defendant and her superior, Willi Beiss *in Germany* in the month of April. (Exhibit 6)

5. Based on Plaintiff's representations, the Magistrate Judge entered an order granting the relief sought by Plaintiff. (Exhibit 8)

6. Defendant promptly sought vacation of the order. (Exhibit 9 without exhibits)

7. The Magistrate Judge entered the order here objected to.

## Memorandum

The Magistrate Judge's order requiring Defendant to appear in this district for deposition is predicated on two principles: first, the general rule in this District that a party may be deposed once in the District regardless of his place of residence; and second, the holding of *Societe Nationale Aerospatiale vs U.S. Dist. Ct.*, 482 U.S. 522 (1987) that the Hague Convention is not the sole means for obtaining discovery form a foreign party. Neither of these authorities applies to the situation at hand, because neither involves a claim of immunity or the policy considerations attending claims of immunity.

-2-

The opinion of the Supreme Court in *Societe Nationale Aerospatiale* specifically adverts to the fact that "Petitioners [the foreign entity] answered the complaints, apparently without questioning the jurisdiction of the District Court." *Id.*, 482 U.S. at 525. "[Petitioners'] motion alleged that because petitioners are 'French corporations, and the discovery sought can only be found in a foreign state, namely France,' the Hague Convention dictated the exclusive procedures that must be followed for pretrial discovery." *Id.*, 525 - 526. *Societe Nationale Aerospatiale* stands only for the proposition that the Hague Convention is not the sole means for obtaining discovery from parties who are foreign nationals, and does not address discovery from parties claiming immunity as foreign sovereigns. In fact, the Court specifically enjoined trial courts to give particular consideration and weight to the interests of foreign sovereigns, as well as issues of cost and convenience:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration. In addition, we have long recognized the demands of comity in suits

-3-

involving foreign states, either as parties or as sovereigns with
a coordinate interest in the litigation. See *Hilton v. Guyot*, 159
U.S. 113 (1895). American courts should therefore take care
to demonstrate due respect for any special problem
confronted by the foreign litigant on account of its nationality
or the location of its operations, and for any sovereign interest
expressed by a foreign state. We do not articulate specific
rules to guide this delicate task of adjudication.

482 U.S. 522 at 547. The order objected to observes none of these principals.

The record before this Court contains the affidavits of Defendant and her superior

stating that Defendant acted within the course and scope of her employment by the

government of Hamburg to the extent she performed the actions described in the

operative complaint. The purpose of discovery at this point is to determine whether that

claim is accurate. Depositions, and the substantial expense of transportation which attend

them whether they are to be taken in this country or in Germany, are not necessary to that

inquiry. The Hague Convention in fact provides a significantly less costly means of

conducting the inquiry, because it presumes that no one will bear the cost of transatlantic

airfare. The order objected to does not "minimize [the] costs and inconvenience" of this

discovery, but instead creates and lopsidedly imposes unnecessary expense. This occurs

because the order makes the unsupported leap from the premise that the provisions of the

Hague Convention are not mandatory to the conclusion that transatlantic travel and

deposition in this district *are* mandatory. There is nothing in the record to support even

the proposition that deposition is in any way preferable to proceeding under the

Convention.

Defendant's claim of sovereign immunity is supported by the declaration of her

government, speaking through her supervisor.  The order appealed gives no consideration

to issues of comity, instead treating Defendant purely as an individual foreign national

party.  If Defendant's immunity claim is legitimate, the Magistrate's demand that she

appear in this district is obviously an affront to the concepts of sovereignty and comity.

 The order objected to also overlooks the principle that

> One of the purposes of immunity, absolute or qualified, is to
> spare a defendant not only unwarranted liability, but
> unwarranted demands customarily imposed upon those
> defending a long drawn out lawsuit. [cit. om.] * * * *
> "*Harlow* [*Harlow v. Fitzgerald, 457 U.S. 800*] thus
> recognized an entitlement not to stand trial or face the other
> burdens of litigation, conditioned on the resolution  of the
> essentially legal question whether  the conduct of which the
> plaintiff complains violated clearly established law.  The
> entitlement is an *immunity from suit* rather than a mere
> defense to liability; and like an absolute immunity, it is
> effectively lost if a case is erroneously permitted to go to
> trial."

*Siegert vs Gilley,* 500 U.S. 226, 232-233 (1991).  While *Siegert* and the opinions upon

which it is based dealt with the immunity of American officials, the principle covers the

instant case; the immunity claimed by Defendant is absolute, unless an exception is

shown to exist.

 Although the order here objected to states that Plaintiff claims that Defendant

regularly travels to this country, there is no competent record support for that contention.

The only record evidence on that point is in Defendant's previously filed affidavit

(Exhibit 10) in which she states under oath that she has been in the United States on only

three occasions, one of them including a trip to Florida.

Last, Plaintiff's attempt to reset the deposition in Germany makes it clear that the effort to require Defendant to come to this country was simply a matter of opportunistic dishonesty and not a matter of any right or need to avoid other means of obtaining the information in question.

In summary, comity, common sense, and every conceivable notion of economy suggest that Plaintiff should be required to proceed under the Hague Convention, rather than imposing upon Defendant the expense and inconvenience of international travel. Imposing such a condition is not even a reallocation or shifting of burdens; it is an elimination of the burden altogether. Because the order appealed made no accommodation for the principles of immunity, comity, and economy enunciated in the cited authorities, it constitutes an abuse of discretion and a departure from clearly enunciated principles of law. It manufactures, rather than limits, expense and travail.

Defendant seeks entry of an order sustaining this objection and directing that Plaintiff proceed in accordance with the provisions of the Convention, and allowing Plaintiff sufficient additional time to do so.

JOHN M. MERRETT, ESQUIRE
2716 Herschel Street
Jacksonville, Florida 32205

-6-

Telephone: 904.388.8891

Florida Bar No.: 0742848

Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to F.W. Pope, Esq., 911 Chestnut Street, Clearwater, Florida 33756 and K. Moxon, Esq., 1100 Cleveland Street - Suite 900, Clearwater, Florida 33755 by United States mail this 17 day of May, 2001.

John M. Merrett

-7-

**EXHIBIT 1**

# John M. Merrett
## Attorney & Counselor at Law

March 8, 2001

**VIA FACSIMILE: 727.443.5640**

Kendrick L. Moxon, Esquire
Moxon & Kobrin
1100 Cleveland Street – Suite 900
Clearwater, Florida 33755

RE:    *Heller v. Caberta*

Dear Mr. Moxon:

As you know (and as I advised you last week), I have spoken to Ms. Caberta this week regarding scheduling of depositions. I have previously reminded you of the potential difficulties posed by the policies of the German government(s) concerning testimony about her employment-related activities, and of the uncertainties of engaging in what are often regarded as sovereign activities in a foreign country. Her supervisor is not my client, and I am not able to make any representation regarding his availability for or amenability to deposition. I will, however, make reasonable efforts to be available if you are able to arrange his deposition at or about the time reserved for Ms. Caberta's deposition.

Ms. Caberta will be available for deposition in Hamburg beginning at 9:00 AM local time on Wednesday, March 21.

You are responsible for selecting and providing a "neutral" place for deposition in Hamburg. You are responsible for all other matters concerning the depositions, including providing a neutral, non-Scientologist translator. You are responsible for confining your inquiries to the jurisdictional issues authorized by the Court. You bear the risk that Ms. Caberta may be prevented by her employer and/or by law from answering some or all your questions. You bear the risk that her supervisor may be prevented by his employer and/or by law from answering some or all your questions, or may be unwilling or unable to attend a deposition. You bear all other risks attendant upon your decision to sue an official and citizen of a foreign nation in a U.S. court, and upon your insistence on the use of depositions rather than other means of attempting discovery from persons who are in sovereign territories outside the jurisdiction of the Court.

Very truly yours,

John M. Merrett
(signed in his absence to avoid delay)

2716 Herschel Street
Jacksonville, Florida 32205
Telephone: 904-388-8891    Telefax: 904-388-8409

**EXHIBIT 2**

```
*********************
***    TX REPORT    ***
*********************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO | 1207 |
| CONNECTION TEL | 17274435640 |
| CONNECTION ID | |
| ST. TIME | 03/08 12:53 |
| USAGE T | 01'06 |
| PGS. SENT | 1 |
| RESULT | OK |

# John M. Merrett
## Attorney & Counselor at Law

March 8, 2001

**VIA FACSIMILE: 727.443.5640**

Kendrick L. Moxon, Esquire
Moxon & Kobrin
1100 Cleveland Street - Suite 900
Clearwater, Florida 33755

    RE:   *Heller v. Caberta*

Dear Mr. Moxon:

    My previous letter to you of this morning was incorrect in one respect. That is, Ms. Caberta is not available to be deposed on March 21, but rather on March 20.

             Very truly yours,

             John M. Merrett
             (signed in his absence to avoid delay)

**EXHIBIT 3**

## MOXON & KOBRIN
### ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

KENDRICK L. MOXON*
HELENA K. KOBRIN *
AVA PAQUETTE+

*ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

*ALSO ADMITTED IN
CALIFORNIA

+ADMITTED ONLY IN
CALIFORNIA

OF COUNSEL

JEANNE M. GAVIGAN +

March 8, 2001

### VIA TELEFAX & US MAIL

John Merrett
2716 Herschel St.
Jacksonville, FL 32205

Re: *Heller v. Caberta*

Dear Mr. Merrett:

I am in receipt of your letter dated today in the above referenced case. I accept your offer to produce Mrs. Caberta in Hamburg on March 21st . Since you have filed two affidavits on her behalf, you can hardly take the position that she possesses the authority to make the assertions set forth in those affidavits, yet lacks the authority to be cross-examined on those statements. Her affidavits constitute testimony, under either expressed or implied authority she found necessary for her written testimony already provided in this case.

It is defendant's obligation to get whatever authority you believe she needs for any factual issue you wish to have adjudicated. If she fails to be examined as to the issues the court has ordered are subject to discovery, we assert our rights under Rule 37(b).

As to Mr. Beib, defendant has also filed an affidavit containing specific factual allegations and factual conclusions for the purpose of seeking a ruling from the court regarding the scope of her authority. A party cannot file an affidavit of a person under her control sufficient to present the affidavit and refuse to produce the affiant for testimony - particularly one as antagonist to plaintiff as Mr. Beib.

March 8, 2001
Page 2

I will notice his deposition either the day before, or the day after Mrs. Caberta's deposition. Please consult with your client and let me know which is better for her associate. I will not attempt to assert legal process for Mr. Beib's deposition because there is no compulsory deposition law in Germany. So there is no question on this issue, I expect you to produce Mr. Beib for deposition, and I will notice his deposition for that purpose unless you positively state that Caberta cannot and will not produce him.

I propose we stipulate for the court that you will produce Caberta for deposition and thus moot that part of my motion to compel. If you agree to produce the documents by March 15, we can also moot that portion of the motion to compel. Please contact me no later than this afternoon as to each of the issues above.

Sincerely,

Kendrick L. Moxon

KLM:jj

**EXHIBIT 4**

## JOHN M. MERRETT
**Attorney & Counselor at Law**

March 8, 2001

**VIA FACSIMILE: 727.443.5640**

Kendrick L. Moxon, Esquire
Moxon & Kobrin
1100 Cleveland Street - Suite 900
Clearwater, Florida 33755

  RE: *Heller v. Caberta*

Dear Mr. Moxon:

  In view of your remarkable history, you are in no position to dictate what assertions any other person is entitled to make.

  Please read both letters you received from me today.  **MS. CABERTA IS NOT AVAILABLE TO BE DEPOSED ON MARCH 21, BUT RATHER ON MARCH 20.**

  I am not able to respond today with respect to your request for production, but will have some response for your Friday morning.

  As to all other matters, the facts and the risks are exactly as stated in my first letter of today.  Ms. Caberta and I will be available on March 20th.  I will be available on March 21st and I will certainly not interfere with any attempt to depose Ms. Caberta's supervisor on that date, within the constructs outlined in my first letter of today.

     Very truly yours,

     John M. Merrett
     (signed in his absence to avoid delay)

**EXHIBIT 5**

## MOXON & KOBRIN
### ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON *
HELENA K. KOBRIN #
AVA PAQUETTE +

* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

# ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4466
TELECOPIER (213) 487-5385

OF COUNSEL

JEANNE M. GAVIGAN +

March 12, 2001

### VIA TELEFAX

John Merrett
2716 Herschel Street
Jacksonville, Florida 32205

Re:  *Heller v. Caberta*

Dear Mr. Merrett:

In attempting to arrange the depositions of Ms. Caberta and Mr. Beib at the consular offices in Hamburg for March 20, 2001 as you requested, we have run into a procedural stumbling block. The consul, or other embassy office in Germany, is happy to make space available. However, because of treaty requirements, they cannot make the space available or swear in the witness unless the German Ministry of Justice first approves the taking of the deposition. This process takes about three weeks. For your reference, you can examine the State Department website at www.usembassy.de., which sets forth this procedure.

Thus, we must either reschedule the depositions for approximately one month from now, or else hold the depositions in the United States. I suggest New York or Boston as the easiest venue for the witnesses. I leave the choice to you, but I am proceeding to execute the necessary steps to take the depositions in Hamburg as soon as possible.

The deposition of Ms. Caberta on March 20th and the deposition of Mr. Beib on March 21st, must therefore be postponed.

Please let me know if you want to have the depositions in Germany next month or at a convenient time in the States.

March 12, 2001
Page 2

In the meantime, I accept your agreement to produce the documents on March 20th in Hamburg.  Please advise of the location where the documents will be produced, and I will arrange to have a courier pick them up.

Sincerely,

Kendrick L. Moxon

KLM:jj

c.c.  Wallace Pope

**EXHIBIT 6**



*Embassy of the United States of America*



Bundesministerium der Justiz

02. APR 01  10  39

gehsitet  fach                    Dopel.

Konsularabteilung
Clayallee 170

*14195 BERLIN*

Bundesministerium der Justiz
Referat I A 4
z.Hd. Herrn MR Schrock
Jerusalemer Straße 27
*10117 BERLIN*

den 21. März 2001

Sehr geehrter Herr Schrock,

ich möchte Sie von einer in nächster Zukunft geplanten konsularischen Befragung von
Zeugen, die nicht die amerikanische Staatsbürgerschaft besitzen, in Kenntnis setzen. Ich
darf Ihnen die für diesen Vorgang notwendigen Einzelheiten wie folgt bekanntgeben:

(A) Bezeichnung des Rechtsstreits mit Aktenzeichen:

Hubert Heller v. Ursula Caberta
(Case No. 8:00 CV-1528-T-27C)

(B) Gericht, wo der Rechtsstreit anhängig ist:

*United States District Court for the Middle District of Florida*

(C) Namen und Anschrift des Zeugens:

Ursula Caberta &
Willi Baies
c/o Bundesministerium des Innern
Hamburg

9341 A 5 - 13  717/2001

-2-

(D) Datum und Ort der Zeugenbefragung:

18-19 April 2001
in den Räumlichkeiten des
Amerikanische Generalkonsulat
Alsterufer 27-28

*20354 Hamburg*

In der Hoffnung, Ihnen mit diesen Hinweisen gedient zu haben, verbleibe ich

mit freundlichen Grüßen

Dr. Brian M. Flora
Gesandter-Botschaftsrat
für konsularische Angelegenheiten

Embassy of the United States of America
Consulate Department
170 Clayallee
14195 Berlin
March 21, 2001

Federal Ministry of Justice
Department IA4
ATTN: Mr. Schrock
27 Jerusalem Street
10117 Berlin

Dear Mr. Schrock,

I would like to make you aware of a consular interrogation planned in
the near future for witnesses who do not possess American citizenship.
I am permitted to communicate to you the details necessary for these
proceedings as follows:

(A) Description of the legal dispute with record number:

   Hubert Heller vs. Ursula Caberta
   (Case No. 8:00 CV-1528-T-27C)

(B) Court where the legal dispute is pending:

   United States District Court for the Middle District of Florida

(C) Name and Address of the witnesses:

   Ursula Caberta &
   Willi Beiss
   c/o Federal Ministry of the Interior
   Hamburg

-2-

(D) Date and place of the witnesses' interrogation:

   18-19 April 2001
   in the offices of the
   American Central Consulate
   27-28 Alsterufer
   20354 Hamburg

In the hopes of having served you with these directions, I remain

cordially yours,

Dr. Brian M. Flora
Embassy Counsel
for Consular Affairs

*Translation of previous* (handwritten)



# Freie und Hansestadt Hamburg
## Behörde für Inneres

Behörde für Inneres, Johanniswall 4, D-20095 Hamburg

Amt für innere Verwaltung und Planung
Allgemeine Grundsatz- und Rechtsangelegenheiten

An das

Bundesministerium der Justiz
- Referat I A 4 -
z.Hd. Herrn MR Schrock
Jerusalemer Straße 27

10117 Berlin

Johanniswall 4
D - 20095 Hamburg
Telefon    040 - 4 28 39 - 4620
Telefax    040 - 4 28 39 - 5735
Ansprechpartner: Willi Beiß
Zimmer: 429

eMail  willi.beiss@bfi-e.hamburg.de
Geschäftszeichen (bei Antworten bitte angeben)
A 20/

Hamburg, 12. April 2001

**Rechtshilfeverkehr in Zivilsachen mit den USA
hier: Rechtsstreit Hubert Heller v. Ursula Caberta wg. Scientology Organisation**

Sehr geehrter Herr Schrock,

in obiger Angelegenheit hatte die Konsularabteilung der Botschaft der Vereinigten Staaten von Amerika Sie mit Schreiben vom 21.03.2001 über eine geplante konsularische Zeugenanhörung von Frau Caberta und mir im Generalkonsulat in Hamburg in Kenntnis gesetzt.

Zu Ihrer Information übersende ich in obiger Angelegenheit mein Antwortschreiben auf diese Mitteilung, von der ich durch die Justizbehörde Hamburg mit Fax vom 11.04.2001 unterrichtet wurde

Mit freundlichen Grüßen

Willi Beiß

MAY-14-2001 12:17P FROM:JOECI    5328705    TO:17274679345    P.2/3

Free and Hanseatic City of Hamburg
Interior Agency

Hamburg, 12 April 2001

To the:

Federal Ministry of Justice
Department RA4
Attn: Mr. Schrock
27 Jerusalem Street
10117 Berlin

Legal assistance traffic in the civil matter with the USA in the case of
the legal dispute of Hubert Heller vs. Ursula Caberta on account of the
Scientology Organization

Dear Mr. Schrock,

In the above matter the consular department of the Embassy of the United
States of American has written you a letter of 21 March 2001, making you
aware of a planned consular interrogation of Mrs. Caberta and of me in
the General Consulate in Hamburg.

For your information, in the above matter I am transmitting you my
answer to the communication of which I was informed by the Hamburg
Justice Agency by fax on April 11, 2001.

Cordially,

Willi Beiss

*Translation of previous*



# Freie und Hansestadt Hamburg
## Behörde für Inneres

Behörde für Inneres, Johanniswall 4, D-20095 Hamburg

An die

Botschaft der Vereinigten Staaten von Amerika
Konsularabteilung
z.Hd. Herrn Dr. Brian M. Flora
Clayallee 170

14195 Berlin

Amt für innere Verwaltung und Planung
Allgemein- Grundsatz- und Rechtsangelegen-
heiten

Johanniswall 4
D - 20095 Hamburg
Telefon    040 - 4 28 39 - 4820
Telefax   040 - 4 28 39 - 3735
Ansprechpartner: Willi Beiß
Zimmer: 435

eMail: willi.beiss@bfi-a.hamburg.de
Geschäftszeichen (bei Antworten bitte angeben)
A 204

Hamburg, 12. April 2001

**Rechtsstreit Hubert Heller v. Ursula Caberta wg. Scientology-Organisation**

Sehr geehrter Herr Dr. Flora,

von der Justizbehörde der Freien und Hansestadt Hamburg bin ich am 11. April 2001 über Ihr Schreiben vom 21. März 2001 in obiger Angelegenheit an das Bundesministerium der Justiz - Herrn Ministerialrat Schrock - informiert worden. Sie setzen in diesem Schreiben das Bundesministerium von einer in nächster Zukunft geplanten konsularischen Befragung von Zeugen, die nicht die amerikanische Staatsbürgerschaft besitzen, in Kenntnis, und zwar soll in obigem Rechtsstreit eine Befragung von Frau Ursula Caberta und mir als Zeugen in den Räumlichkeiten des amerikanischen Generalkonsulats in Hamburg am 18. - 19. April 2001 erfolgen.

Die Leistung von Rechtshilfe richtet sich im Verhältnis zwischen der Bundesrepublik Deutschland und den Vereinigten Staaten von Amerika nach den Vorschriften des Haager Übereinkommens vom 18. März 1970 über die Beweisaufnahme im Ausland in Zivil- und Handelssachen (Bundesgesetzblatt 1977 II, S. 1452) in Verbindung mit dem Ausführungsgesetz hierzu vom 22. Dezember 1977 (Bundesgesetzblatt I, S. 3105). Eine Beweisaufnahme durch diplomatische oder konsularische Vertreter ist im Rahmen des Artikels 16 des Übereinkommens in Verbindung mit § 11 des Ausführungsgesetzes vorgesehen. Die Beweisaufnahme im Inland ist zwar grundsätzlich nicht zulässig, wenn sie deutsche Staatsangehörige betrifft, jedoch wurde durch deutsch-amerikanischen Notenwechsel über die Anhörung von Zeugen durch amerikanische Konsuln in der Bundesrepublik Deutschland eine Ausnahme von dieser Einschränkung vereinbart. Für die Befragung wurden schon vor Jahren einige Voraussetzungen präzisiert, an deren Einhaltung die deutsche Seite anlässlich der erst in letzter Zeit geführten Gespräche mit Vertretern der amerikanischen Botschaft erinnert hat. Dazu zählt u.a. die folgende:

Auf die zu befragende Person wird keinerlei Zwang, weder zum Erscheinen, noch zur Aussage, noch zur Eidesleistung ausgeübt.

Unter Berufung auf diese Rechtslage teile ich Ihnen hierdurch auch im Namen von Frau Caberta mit, dass weder Frau Caberta noch ich selbst zu der geplanten Zeugenbefragung im amerikanischen Generalkonsulat in Hamburg erscheinen werden.

Wegen der zeitlichen Nähe zu dem von Ihnen geplanten Befragungstermin sende ich eine Kopie dieses Schreibens direkt an das hiesige Generalkonsulat. Eine Durchschrift meines Schreibens habe ich mir erlaubt, an das Bundesministerium der Justiz - z. Hd. Herrn Ministerialrat Schrock - zu richten.

Mit freundlichen Grüßen

Willi Beiß

MAR-14-2001 12:17P FROM:JDECI' 5329785                    TO: 24679345          P:1 3

Free and Hanseatic City of Hamburg
Interior Agency

Hamburg, 12 April 2001

To the:

Embassy of the United States of America
Consular Department
Attn: Mr. Dr. Brian M. Flora
Clayallee 170

14195 Berlin

Legal dispute of Hubert Heller v. Ursula Caberta on account of the
Scientology Organization

Dear Mr. Dr. Flora,

On 11 April 2001, I was informed by the Justice Agency of the Free and
Hanseatic City of Hamburg about your letter of 21 March 2001 in the
above matter at the Federal Ministry of Justice - Mr. (senior civil
servant) Schrock. In your letter you made the Federal Ministry aware of
a consular interrogation planned in the near future of witnesses who do
not possess American citizenship, and indeed a deposition is planned in
the above legal dispute with Mrs. Ursula Caberta and me as witnesses in
the rooms of the American General Consulate in Hamburg on 18-19 April.

The performance of legal assistance is directed in relations between the
Federal Republic of Germany and the United States of America by the
regulations of the Hague Treaty of 18 March 1970 on the hearing of
evidence in foreign countries in civil and trade matters (Federal legal
sheet 1977 II, p. 1452) in conjunction with the execution (enforcement)
law of 22 December 1977 (Federal legal sheet I, p 3105). Hearings of
evidence are provided for through diplomatic or consular representatives
in the scope of Article 16 of the Treaty in conjunction with sect. 11 of
the execution (enforcement) law. The hearing of evidence within Germany
is basically not permitted when it concerns members of the German state,
however an exception has been made to this restriction through a German-
American exchange of notes in the hearing of witnesses by the American
Consulate in the Federal Republic of Germany. Precise provisions for
this sort of deposition were worked out, in the observance of which
representatives of American Embassy have reminded their German
counterparts in a recently held conversation  Among other things, those
provisions include:

    No duress will be used upon the person being questioned, not to
    appear nor to testify nor to speak under oath.

Invoking the above legal position I hereby impart to you, also in the
name of Mrs  Caberta, that neither Mrs. Caberta nor I will appear at the
scheduled deposition in the American General Consulate in Hamburg.

Due to the nearness of the deposition date which you planned I will send
a copy of this letter directly to the current General Consulate. I've
also taken the liberty of sending a copy to the Federal Ministry of
Justice, attn: Mr. (senior civil servant) Schrock).

Cordially,

Willi Beiss

Translation of
previous

**EXHIBIT 7**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

HUBERT HELLER,                                Case No.: 8:00CV-1528-T-27C

           Plaintiff

vs

URSULA CABERTA,

           Defendant

_____

## NOTICE OF UNAVAILABILITY

PLEASE TAKE NOTICE that the undersigned attorney will be traveling out of the country and therefore unavailable from Friday, March 9, 2001 until approximately Sunday, March 25, 2001.  The undersigned will be in an evidentiary hearing in Liberty County Florida, on Monday, March 26, 2001, and will return to his office on or about March 27, 2001.

_____
JOHN M. MERRETT, ESQUIRE
2716 Herschel Street
Jacksonville, Florida 32205
Telephone: 904.388.8891
Florida Bar No.: 0742848

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to F.W. Pope, Esq., 911 Chestnut Street, Clearwater, Florida 33756 and K. Mpxon, Esq., 1100 Cleveland Street - Suite 900, Clearwater, Florida 33755 by United States mail this 9

day of ~~January~~, 2001.

_____

John M. Merrett

**EXHIBIT 8**

.FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

01 MAR 29 PM 2:36

⋯⋯⋯ ⋯⋯RICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

HUBERT HELLER,

    Plaintiff,

v.                                    Case No. 8:00-CIV-1528-T-27C

URSULA CABERTA,

    Defendant.

_____/

### ORDER

Before the court is **Plaintiff's Motion to Compel Discovery** (Dkt. 50), which was filed on March 7, 2001. Plaintiff seeks an order requiring defendant to appear for deposition and to produce affiant Willi Beiss for deposition no later than April 4, 2001. Plaintiff also asks that defendant be required to produce records responsive to plaintiff's First Request For Production of Documents, which was served on September 25, 2000 and is attached to the motion as attachment 4.

On February 15, 2001 the district judge entered an order permitting plaintiff to conduct discovery, limited to the Federal Sovereign Immunities Act (FSIA) and the Court's exercise of jurisdiction over defendant, for a period of 90 days from the date of the order. (Dkt. 46).

As defendant has not responded within the time permitted by the Local Rules, defendant is deemed to have no objection to the

relief requested.[1]  See Local Rule 3.01(b), M.D. Fla.  Accordingly, and upon consideration, it is **ORDERED**:

(1)   Plaintiff's motion to compel discovery (Dkt. 50) is **GRANTED** to the extent that defendant and Willi Beiss shall appear for deposition at a date, time, and place agreeable to all parties within twenty (20) days from the date of this order.  Defendant shall respond to plaintiff's First Request For Production of Documents To Plaintiff within eleven (11) days from the date of this order.

   **DONE AND ORDERED** in Tampa, Florida on this _29th_ day of March, 2001.

                                   _____
                                   ELIZABETH A. JENKINS
                                   United States Magistrate Judge

Copies to:

Counsel of Record

---

   [1]  Plaintiff also filed a notice on March 26, 2001 that defendant did not filed a timely opposition.  (Dkt. 55).

**EXHIBIT 9**

## UNITED STATES DISTRICT COURT
Middle District of Florida

HUBERT HELLER,

 Plaintiff,

Case No. 8:00CV-1528-T-27C

vs

URSULA CABERTA,

 Defendant

---

## MOTION FOR PROTECTIVE ORDER, TO VACATE ORDER OF MARCH 29, 2001, OR TO DETERMINE COMPLIANCE, AND FOR SANCTIONS

DEFENDANT, Ursula Caberta, by and through her undersigned attorney, prays entry of a protective order concerning the taking of discovery from Defendant, an order vacating the order entered on March 29, 2001, and/or an order determining that Defendant has complied with the order of March 29, 2001, and imposing sanctions against plaintiff and/or his counsel, and says:

1. On March 29, 2001, Magistrate Judge Elizabeth Jenkins entered an order requiring Defendant and Willi Beiss to appear for deposition at a date, time, and place agreeable to all parties within twenty days of the date of the said order.

2. The said order made note of the fact that Defendant filed nothing in opposition to Plaintiff's Motion to Compel, and that Plaintiff filed a notice to that effect on March 26, 2001.

3. The Court's order of March 29 was based upon omission and/or misrepresentation by Plaintiff's counsel of material facts concerning the issues addressed in the order, to-wit:

a. At the time Plaintiff's Motion to compel was filed, the parties were in the process of scheduling the deposition of Defendant. Defendant had advised Plaintiff that unless an agreement could be reached concerning the taking of discovery, a motion would be filed by Defendant seeking guidance from the Court. Plaintiff was specifically warned that the cooperation of German authorities might be required in order to proceed, and it was suggested that Plaintiff make use of the normal procedures for the taking of testimony in foreign countries. Exhibit 1, Merrett Letter of March 6 with attachment.

b. In response, Plaintiff drafted his Motion to Compel and on March 6, 2001, Plaintiff's wrote that Defendant could "moot the motion to compel I have filed by agreeing to produce the witnesses, Caberta and Beib [sic], . . . ." Exhibit 2, Moxon Letter of March 6.

c. On March 8, Defendant wrote to Plaintiff, agreeing to produce Defendant in Hamburg Germany on March 20, 2001, subject to whatever limitations might be imposed by the governments of Hamburg and of the German Republic. Defendant advised Plaintiff that, although Defendant has no control over Willi Beiss, defense counsel would make himself available to attend any deposition of Beiss arranged by Plaintiff at or near the date of Defendant's deposition. Exhibits 3, 4, and 6, Merrett letters of March 8.

d. On March 8, 2001, counsel for Plaintiff wrote "I accept your offer to produce Mrs. Caberta in Hamburg on March 21st." Plaintiff's counsel went on to state that he would notice and attempt to take the deposition of Mr. Beiss on the 20th or the 22d of March. Exhibit 5, Moxon Letter of March 8. The conclusion of this agreement, as

specified in Plaintiff's letter of March 6, (Exhibit 2) mooted the Motion to Compel as to

Defendant's deposition. Plaintiff further agreed that the issue of document production

was resolved by the parties' agreement that any available responsive documents would be

produced at Defendant's deposition. Exhibit 7, Moxon Letter of March 12.

e. Plaintiff's counsel failed to advise the Court that counsel had reached

agreements mooting the Motion to Compel, despite his representations and his knowledge

that Defendant's counsel was in Europe anticipating the scheduled depositions, and was

unable to file pleadings with the Court.

f. On March 9, 2001, counsel for Defendant notified Plaintiff and the Court that he

would be traveling and unavailable until March 27, 2001. Exhibit 8, Notice of

Unavailability.

f. During the week of March 12, Plaintiff's counsel was present in Europe.

g. From March 9, 2001 until March 23, 2001, the undersigned was in Europe, and

was with Defendant in Hamburg on March 20, 2001.

h. On or about March 12, 2001, Plaintiff unilaterally canceled the depositions of

Ms. Caberta and Mr. Beiss. Exhibit 7, Moxon Letter of March 12; Exhibit 7A, Merrett

Letter of March 20.

i. Plaintiff's counsel did not notify Defendant of any intent or effort to abrogate

the understanding reached between counsel that the Motion to Compel had been mooted,

and in fact continued correspondence regarding rescheduling the depositions. Exhibit 9,

Moxon Letter of March 19; Exhibit 10, Wittig Memorandum of March 20.

j. On March 26, 2001, during the period of defense counsel's unavailability, Plaintiff's counsel, knowing that an agreement mooting the Motion to Compel had been reached, and having given no notice to Defendant of any intention to proceed on the Motion to Compel, filed with the Court a "notice of no opposition" affirmatively and falsely asserting that the issues raised on the Motion were "ripe for adjudication." That Notice was intended to, and apparently did, prompt the Court to enter an order compelling discovery. Exhibit 11, Notice of No-Opposition.

l. After March 20, 2001, it was decided by the government of Hamburg and/or the German Republic that Defendant will not be permitted to give a deposition concerning her duties and activities with the government of Hamburg, including the declaration which is the subject of this action and her or her office's dealings with POSpartner G.M.B.H. She will, however, be permitted to provide evidence in accordance with the procedures laid out in German law and international treaties.

4. Defendant does not have the means to travel to the United States.

5. Defendant has responded to Plaintiff's requests for production of documents. Exhibit 12, Objection to Production; Exhibit 13, Response to Second Request for Production; Exhibit 14, Merrett Letter of April 5.

### Memorandum

Defendant seeks entry of orders, however characterized, which relieve Defendant of any responsibility to appear for a deposition in the United States or to incur any costs or expenses for travel of counsel to Europe for purposes of deposition, and requires

Plaintiff to take whatever foreign discovery he seeks, if any is permitted, using the procedures established by law for the taking of evidence in foreign countries. Those procedures are set forth at 28 U.S.C. Section 1781 and in the annotations to that section in West's *Federal Civil Judicial Procedure and Rules*.

The law is as available to Plaintiff as to Defendant. Defendant specifically alerted Plaintiff to the potential difficulties of informal discovery procedures in an international context, but agreed to cooperate, and did cooperate in Plaintiff's efforts. Plaintiff was clearly on notice that something other than the agreement of the parties might be necessary to engage in the contemplated activities on foreign soil. All failures of the process are the sole responsibility of Plaintiff. Whatever other steps the Court may take in response to the conduct of Plaintiff's counsel, the Court should, at a minimum, enter an order determining that Defendant's discovery obligations concerning the jurisdictional issues were entirely fulfilled when Defendant agreed to, and did make herself available for deposition in Hamburg on March 20.

It appears that Plaintiff's purpose in dealing duplicitously with the Court and counsel for Defendant was to avoid the predictable (and predicted) complications which attended Plaintiff's insistence on deposing Defendant and Mr. Beiss by means of informal agreement rather than proceeding according to established law for such international endeavors. Whatever his motives, the failure of Plaintiff's counsel to inform the Court that his Motion to Compel had been superceded by an agreement between counsel, or to inform opposing counsel that he was pursuing the Motion despite the agreement, is

inexcusable.   Plaintiff should certainly not be permitted to put Defendant to any expense or inconvenience because of his attorney's dishonesty and lack of foresight. Defendant and her counsel were present and available for the deposition on the appointed date, subject to the potential limitations of which Plaintiff had been advised. Plaintiff concluded an agreement regarding discovery, declined to exercise the discovery rights afforded by the agreement, and then, by chicanery, secured a court order providing discovery on terms more favorable than those provided by the agreement or by law. Plaintiff's counsel represented that no opposition had been made to the Motion to Compel, but misled the Court by omitting the facts that 1) the lack of opposition was due to the parties' resolution of the dispute by agreement, and 2) Plaintiff had unilaterally elected not to proceed in accordance with the agreement. The Court was duped.

Defendant further seeks imposition of sanctions as deemed appropriate by the Court, including but not limited to taxation of fees and costs, a prohibition on further discovery from Defendant, or dismissal of the action. Counsel for Plaintiff engaged in an appallingly dishonest maneuver. That conduct should not go unpunished, and certainly, Defendant and her counsel should be put to no expense or inconvenience in proceeding further. If the Court deems dismissal too harsh a sanction, a prohibition on further discovery from Defendant would not prohibit Plaintiff from responding to the immunity argument, because Plaintiff is conclusively presumed to possess "evidentiary support" for the jurisdictional allegations of the current operative complaint. Rule 11(b)(3), F.R.Civ.P. Plaintiff can rely for opposition to the Motion to Dismiss on the evidence upon which he

based his complaint.

In summary, Plaintiff filed his Motion to Compel in bad faith, while efforts to coordinate depositions overseas were under way; he entered into an agreement which mooted the Motion to Compel, but failed to advise the Court of that agreement; he unilaterally abrogated the agreement, and then falsely represented to the Court that the Motion to Compel was viable and "ripe for adjudication." By this duplicity he secured an order which relieves him of the consequences of his own lack of foresight, and places Plaintiff in a position more advantageous than that to which he had agreed. Having induced such a ruling from the Court, Plaintiff has unilaterally noticed Defendant's deposition for April 16th in Florida. Defendant should be protected, and Plaintiff should be punished.

_____
JOHN M. MERRETT, ESQUIRE
2716 Herschel Street
Jacksonville, Florida 32205
Telephone: 904.388.8891
Florida Bar No.: 0742848


I hereby certify that a copy of the foregoing was furnished, without attachments, to F.W. Pope and K.L. Moxon by facsimile transmission, and with attachments by US Mail, this 13th day of April, 2001.

_____
John M. Merrett

**EXHIBIT 10**

John N. Merre

## UNITED STATES DISTRICT COURT
### Middle District of Florida

HUBERT HELLER,                                        Case No.: 8:00CV-1528-T-27C

                Plaintiff,

vs

URSULA CABERTA,

                Defendant.

---

### AFFIDAVIT OF URSULA CABERTA

COMES NOW Ursula Caberta, appearing for the purpose of contesting jurisdiction and seeking dismissal of this action and no other, and says:

1. She is the named defendant in the above-styled action.

2. She is a citizen and resident of Germany.

3. She has visited the United States of America on only three occasions, to-wit: Spring 1998, Fall 1998, and July 2000. Her visit in the Spring of 1998 was on official government business. The other two visits were personal in nature, for the purpose of visiting friends.

4. She has entered the State of Florida on only one occasion, to-wit: July, 2000.

5. She has never engaged in any business activity in the United States, and has not engaged in any activity in the United States for the purpose of gaining profit, and has never had any employment or business or property interests in the United States.

6. She is, as an individual, indebted to Robert S. Minton, as an individual, for a sum of money loaned to her by Mr. Minton. The loan proceeds were received by her in

Germany, and were obtained in connection with the retirement of an earlier debt which was incurred and satisfied in Germany.

7. She has never promoted the use of the Hubbard Declaration[1] in the United States. During her July, 2000 visit to the United States she discussed the services the government of Hamburg provides to German firms seeking to avoid infiltration by Scientologists, including the availability in Germany of the Hubbard Declaration, and the fact that the Declaration is distributed on request to companies which fear infiltration by Scientology.

8. In July, 2000, she traveled at her own expense to Clearwater, Florida to publically discuss her activities in Germany.

9. All her activity concerning the Hubbard Declaration, including distribution of the Declaration, has been in her capacity as an employee of the government of Hamburg, Germany.

10. The Hubbard Declaration was developed in response to requests from businesses concerned about infiltration and subversion by Scientologists.

11. No business is required or urged by Defendant or her employer to make use of the Hubbard Declaration. The Hubbard Declaration is made available to individuals and businesses who request some means to avoid infiltration and subversion by Scientologists.

---

[1] This is the document described by Plaintiff as a "sect filter."

-2-

12. She has never, to her knowledge, had any dealings with the entity identified in the amended complaint as "POSPartner G.M.B.H.."

13. To a certainty she has never had any dealings with the entity identified in the amended complaint as "POSPartner G.M.B.H " outside her function as an official of the government of Hamburg, Germany.

14. The Lisa McPherson Trust, Inc. paid her hotel expense while she was in Clearwater in July 2000, but she received no other thing of value in connection with her trip.

15. She has no financial, employment or business arrangements with the Lisa McPherson Trust, Inc. except as set forth in Paragraph 14 above.

16. She owns no interest in the Lisa McPherson Trust, Inc.

17. Although she has in the past discussed with persons affiliated with the Lisa McPherson Trust, Inc. the possibility of opening a German office of the Lisa McPherson Trust, Inc., she was never offered remuneration or any position with such an organization.

18. To the best of her knowledge and belief, there are presently no plans to open such an office. To a certainty, she is not involved in and has no knowledge of any such plans.

_____

URSULA CABERTA

BEFORE ME, the undersigned authority, personally appeared URSULA

-3-

CABERTA, who presented PASSPORT 1320284 US as identification, and who did

take an oath and said that the foregoing statements true and correct,

_____

OFFICER ADMINISTERING OATH

Freie und Hansestadt Hamburg
Behörde für Inneres
Amt für Innere Verwaltung und Planung
Johanniswall 4, 20095 Hamburg

09. Okt. 00

-4-