FILED

IN THE UNITED STATES DISTRICT COURT IN -4 PM 4:26
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

HUBERT HELLER, an individual,

        Plaintiff,

    v.                          Case No. 8:00 CV-1528-T-27C

URSULA CABERTA, an individual,

        Defendant.
_____/

## PLAINTIFF'S MOTION TO CLARIFY AND/OR AMEND ORDER REGARDING PRODUCTION OF DOCUMENTS

### I - INTRODUCTION

The Court's discovery Order dated May 8, 2001, concerning plaintiff's request for production of documents, granted in part and denied in part the relief requested. The instant motion concerns requests 9 through 17 of plaintiff's First Request for Production.

While for most of the requests addressed in the First Request for Production, defendant asserted she had no responsive records, as to Requests 9 through 17, her counsel responded in a more equivocal fashion, stating only by letter that "there are no records pertaining to the allegations of the complaint." Such a response gives cause to wonder whether, 1) no such records exist, or 2) that defendant's counsel believes that the existing records are not responsive to the issues of the complaint as such issues are interpreted on behalf of his client.

The Court's Order did not discuss or state any conclusion regarding this category of records. In the final paragraph of the Court's Order of May 8, 2001, the Court granted the request as to one category of documents requested and indicated that the motion was otherwise denied.

Plaintiff thus requests clarification of the May 8, 2001 Order, to the extent the Court understood defendant's response to state that she unequivocally possessed *no records* and denied the motion for that reason. Such clarification is important because evidence exists indicating that responsive records do indeed exist in defendant's possession, custody and control, notwithstanding the misleading wording of the informal letter response from defendant's counsel. [1]

Plaintiff therefore requests clarification or modification of the Order to read that to the extent no responsive records exist, they obviously need not be produced, but to the extent records exist which defendant merely claimed to be irrelevant, the records are ordered to be produced forthwith.

## II – STATEMENT OF FACTS

On September 25, 2000, plaintiff served a request for production which addressed Ms. Caberta's communications with co-conspirators in the United States demonstrating conduct outside the scope of her alleged job functions, and financial records concerning the receipt of pay-offs from private parties in the United States. (Ex. 1.)

On February 23, 2001, counsel for plaintiff wrote to defendant's attorney, John

---

[1] Defendant herself did not sign any response indicating that she did not possess the records requested.

Merrett, and requested responses to the long overdue First Request for Production. Mr. Merrett ignored the letter.

Because Caberta filed no response to the First Document Request, plaintiff filed a motion to compel as to these records on March 6, 2001. Caberta did not respond to the motion, thus a notice of no-opposition was filed on March 26, 2001. Caberta also did not respond to plaintiff's notice of no-opposition to the Motion to Compel, and this Court issued an Order dated March 29, 2001 compelling Caberta to respond to the First Request for Production.

In response to the Order, Caberta's counsel mailed what he purported to be a response to the First Request for Production, and "supplemented" his answers several months out of time. (Ex. 2, Letter of April 5, 2001.) The general "Objection to Production of Documents" made no reference to the First Request For Production or to any other specific document request, and appeared rather, to address only "documents requested by Plaintiff in connection with the depositions set by plaintiff" in subpoenas to the third party witnesses Robert Minton and Lisa McPherson Trust, Inc., who were subpoenaed for deposition in this case. (Exs. 3 and 4.)

Defendant's counsel's letter "supplementing" the requests was months late and was not a formal response required by Rule 34, thus, while plaintiff attached the letter to his further motion to compel responses to the document requests, he did not consider it a response to the Request. Plaintiff thus limited his argument to why the records were relevant to the issues in this case and should be compelled. This Court did consider the April 5th letter a Response and ruled with respect to the denials made therein.

As to most of the records requested – Requests 1 to 8 and 18 to 30 – defendant

asserted through the informal letter of counsel that Caberta had no possession, custody or control of the records. As to records 31 to 36, the response was "none." While the informal letter is not a "response" per se, these answers were plain enough, and hopefully plain enough to bind the defendant in light of the Court's subsequent Order of May 8, 2001, denying production.

However, as to categories 9 to 17 of the Requests, the April 5, 2001 letter made a far more equivocal statement, as follows: "as to requests 9 through 17, there are no records pertaining to the allegations of the complaint." In comparison to the other denials, this response suggests that there are indeed responsive records – just not records which defendant's counsel considers "pertain" to the allegations of the complaint. These categories are:

9. All correspondence with Robert Minton.

10. All correspondence with Stacy Brooks.

11. All correspondence with Jesse Prince.

12. All correspondence with Robert Vaughn Young.

13. All correspondence with any officer, director, agent or employee of the Lisa McPherson Trust, Inc.

14. All bank records reflecting or concerning the receipt of funds from Robert Minton.

15. All bank records reflecting or concerning the receipt of funds from any agent of Robert Minton.

16. All bank records reflecting or concerning the receipt of funds from the Lisa McPherson Trust, Inc.

17. All records of any type, reflecting or concerning the receipt of

4

money or valuable from Robert Minton, any agent of Robert Minton, or
the Lisa McPherson Trust, Inc.

(Ex. 1.)

The court's May 8, 2001 general denial of the motion to compel as to all of the

categories of records for which defendant made general denials of possession of

records, suggests the Court understood that there were no responsive records as to

categories 9 to 17. However, other evidence indicates that documents do indeed exist

relevant to these categories.

First, Ms. Caberta's declaration of October 9, 2000, states that she received a

"loan" from Minton. (Ex. 5.) The deposition of the Stacy Brooks, President of the

Lisa McPherson Trust, Inc., also indicated that Caberta's expenses were paid while

she was in Florida working with Robert Minton. (Ex. 6, pp. 30-31.) LMT, Inc. also

produced a receipt for Caberta's hotel expenses while she was in Florida assisting

Minton and LMT, Inc. (Ex. 7.) And, at the deposition of co-conspirator Robert

Minton, he asserted a Fifth Amendment privilege to refuse to reveal evidence relating

to his payment of bribes to Caberta; providing money to Caberta to establish an office

of LMT, Inc. in Germany; whether Caberta assisted his business endeavors in any

fashion; and related questions. (Ex. 8, Minton Depo., pp. 11-14, 18, 34-37,40-41, 47,

55.) His asserted basis for the Fifth Amendment claim, is the existence of a criminal

investigation in Germany and the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-1 *et*

*seq.* (*id.*, pp. 13-14, 16-17), which law makes it a crime to bribe a foreign official for a

business benefit.

Adverse inferences may be drawn from the invocation of the Fifth Amendment

by Caberta's alleged co-conspirator in this civil case. *Baxter v. Palmigiano*, 425 U.S. 308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976); *United States v. Ianniello*, 824 F.2d 203, 208 (2nd Cir.1987); *United States v. Local 560 of International Brotherhood of Teamsters, Etc.*, 780 F.2d 267, 292, n.32 (3rd Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986).

The reasonable inference is that Minton bribed Caberta to undertake acts against a class of persons that included Heller – and obviously the acceptance of bribes cannot be within the scope of her lawful functions and duties, notwithstanding the human rights violations inherent in her acts. *Chuidan v. Phillipine National Bank*, 912 F.2d 1095 (9th Cir. 1990); *Xuncax v. Gramajo*, 886 F.Supp. 162, 175 (D.Mass. 1995); *Hilao v. Marcos*, 25 F.3d 1467, 1470 (9th Cir. 1994); *Cabiri v. Assasie-Gyimah*, 921 F.Supp. 1189, 1198-99 (S.D.N.Y. 1996). Evidence thereof would substantially support plaintiff's position that Ms. Caberta does not possess sovereign immunity relating to such acts. The other evidence of the provision of funds and expenses to Caberta indicates that records relating to these events *must* exist.

Moreover, Minton's invocation of the Fifth Amendment to prevent discovery relating to allegations of the complaint going to proving exceptions to the FSIA, demonstrates the pressing need for plaintiff to acquire the discovery sought from the defendant, including and especially, documentary evidence regarding the "loans", expenses and other funds provided by Minton and LMT, Inc. to Caberta.

### III - CONCLUSION

It is simply not clear if this Court understood defendant's responses to indicate

6

that plaintiff possessed no records responsive to Requests 9-17 of the First Request to

Produce, and denied plaintiff's motion based upon that understanding. If so, in light of

the subsequent discovery that indicates that such documents *would* exist, plaintiff

requests that the Court modify its Order of May 8, 2001, to Order that all records

which exist responsive to Requests 9-17, be produced – whether plaintiff considers

them relevant to the case or not.

Dated: June 1, 2001                    Respectfully submitted,

                                       Kendrick Moxon
                                       Helena Kobrin
                                       FBN #:  0259713
                                       MOXON & KOBRIN
                                       1100 Cleveland Street, Suite 900
                                       Clearwater, FL  33755
                                       Phone: (727) 443-5620
                                       Fax: (727) 443-5640

                                       F. Wallace Pope, Jr.
                                       FBN #:  124449
                                       JOHNSON, BLAKELY, POPE, BOKOR,
                                       RUPPEL & BURNS, P.A.
                                       P.O. Box 1368
                                       Clearwater, Fla.  33757
                                       (727) 461-1818

                                       Attorneys for Plaintiff

7

**CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)**

I hereby certify that I have attempted to confer with defendant's counsel, John Merrett, to informally resolve the discovery disputes set forth in the motion to compel. Mr. Merrett failed to return my calls, making informal resolution impossible.

_____
Kendrick L. Moxon

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S**

**MOTION TO CLARIFY AND/OR AMEND ORDER REGARDING**

**PRODUCTION OF DOCUMENTS** to be served on this 1st day of June 2001, by

U.S. Mail, to John Merrett, 2716 Herschel St., Jacksonville, FL 32205.

_____
Attorney

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER, an individual,

        Plaintiff,

    v.                                Case No. 8:00 CV-1528-T-27C

URSULA CABERTA, an individual,

        Defendant.

_____/

**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
TO DEFENDANT**

Plaintiff, Hubert Heller, through his undersigned attorneys, requests that

defendant, Ursula Caberta, pursuant to Rule 34, Federal Rules of Civil Procedure,

produce for inspection and copying at the offices of Johnson, Blakely, Pope, Bokor,

Ruppel & Burns, P.A., 911, Chestnut St, Clearwater, FL, 33757, the documents hereafter

described within thirty (30) days.

**I.**    **DEFINITIONS**

The following definitions apply to this Request for Production:

1.    The words "you," "your," or "Defendant" shall mean Ursula Caberta, her agents or

representatives, or any of them, as well as all other persons or entities acting or

purporting to act at their direction or on their behalf, including, but not limited to,

your agents, accountants, attorneys, investigators, representatives and consultants.

1

2.    "Document" means every writing or record of every type and description (including those stored electronically or on a computer) that is or has been in your possession, control or custody or of which you have knowledge, including but not limited to, correspondence, memoranda, e-mails, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, drawings and photographs, films, microfilms, voice recordings, maps, reports, surveys, minutes or statistical computations.

3.    "Person" shall mean any person and includes natural persons, corporations, partnerships, associations, joint venturers, firms and other enterprises or entities and includes both the singular and plural.

4.    The word "communication" shall mean any oral statement, dialogue, colloquy, discussion, correspondence or conversation and also means a transfer of thoughts or ideas between persons by means of documents and includes any transfer of data from one location or person to another by electronic or similar means.

5.    The words "relating to," "in connection with" or equivalent language means, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in any document request.

6.    The term "sect filter" refers to the document attached hereto as Exhibit A, any reasonable facsimile thereof, or any prior version thereof created by and/or utilized by defendant and/or defendant's office or subordinates.

## II.    **DOCUMENTS TO BE PRODUCED**

1.    Communications with any Chambers of Commerce regarding Scientology, L. Ron Hubbard, Scientology and/or the sect filter.

2.  All letters, emails, or documents of any type which send or provide a copy of the sect filter to any Chamber of Commerce .

3.  All letters, emails, or documents of any type which send or provide a copy of the sect filter to any business.

4.  All letters, emails, or documents of any type which send or provide a copy of the sect filter to any person.

5.  All letters, emails, or documents of any type which send or provide a copy of the sect filter to any governmental entity.

6.  Written policies regarding dissemination and use of the sect filter.

7.  Written policies regarding the treatment or handling of businesses known to be run, organized or owned by Scientologists.

8.  Written policies regarding the treatment or handling of businesses believed to utilize methods or procedures developed by L. Ron Hubbard.

9.  All correspondence with Robert Minton.

10. All correspondence with Stacy Brooks.

11. All correspondence with Jesse Prince.

12. All correspondence with Robert Vaughn Young.

13. All correspondence with any officer, director, agent or employee of the Lisa McPherson Trust, Inc.

14. All bank records reflecting or concerning the receipt of funds from Robert Minton.

15. All bank records reflecting or concerning the receipt of funds from any agent of Robert Minton.

16. All bank records reflecting or concerning the receipt of funds from the Lisa McPherson Trust, Inc.

17. All records of any type, reflecting or concerning the receipt of money or valuable

3

from Robert Minton, any agent of Robert Minton, or the Lisa McPherson Trust, Inc.

18.     All documents reflecting communications with any United States business.

19.     All documents reflecting communications with any United States media entity or person.

20.     All documents reflecting communications with any United States person or entity regarding Scientology.

21.     All documents reflecting communications with any United States person or entity regarding the use or purpose of the sect filter.

22.     All documents reflecting communications with any United States person or entity regarding L. Ron Hubbard.

23.     All documents reflecting communications with any United States person or entity regarding the technology of L. Ron Hubbard.

24.     All communications with any Hamburg and/or German governmental entity or official regarding the instant lawsuit.

25.     All communications with any Hamburg and/or German governmental entity or official regarding the use of the sect filter.

26.     All communications with any person or entity regarding any business owned or operated from the United States and believed to utilize technology or procedures developed by L. Ron Hubbard.

27.     Any writing, thesis, tract, essay, article or similar work for publication or potential publication, regarding Scientology, sect filters, the "technology of L. Ron Hubbard," and the administrative technology of L. Ron Hubbard.

28.     All writings of any nature concerning or mentioning the Lisa McPherson Trust, Inc.

29.     All writings of any nature concerning or mentioning Robert Minton.

30.     All documents concerning or relating to POS Partners.

4

31.     All agreements, contracts or retainers relating to the payment of fees and costs in this case.

32.     All records regarding the establishment or potential establishment of an office or branch of the Lisa McPherson Trust, Inc. in Germany.

33.     All records regarding the receipts, payments, arrangements of travel and travel expenses for your trip to Florida in August of 2000.

34.     All records regarding the source of funds utilized for the payment of any airfare or expenses for your trip to Florida in August of 2000.

35.     All records concerning any press conference in which Robert Minton spoke.

36.     All communications with any member of the media in Germany regarding Robert Minton and/or the Lisa McPherson Trust, Inc.

Dated: September 25, 2000                    Respectfully submitted,

                                             Kendrick Moxon
                                             MOXON & KOBRIN
                                             1100 Cleveland Street, Suite 900
                                             Clearwater, Florida, 33755
                                             Telephone: (727) 443-5620
                                             Facsimile: (727) 443-5640

                                             Wally Pope
                                             JOHNSON, BLAKELY, POPE,
                                             BOKOR, RUPPEL & BURNS, P.A.
                                             P.O. Box 1368
                                             Clearwater, Fla. 33757
                                             (727) 461-1818

                                             Counsel for plaintiff
                                             Hubert Heller

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing to be served on this 25th

day of September, 2000, by Telefax and U.S. Mail, First Class, postage prepaid, to John

Merrett , 716 Herschel Street, Jacksonville, Florida 32205.

_____
                                                Attorney

6

# EXHIBIT 2

p. 1

Apr 05 01 01:04p

# John M. Merrett
## Attorney & Counselor at Law

April 5, 2001

K.L. Moxon
Via Facsimile 727.443.5640

Re: Scientology vs Caberta

Mr. Moxon:

I write in response to your letter of April 3, and forward with this letter another copy of the response to the First Request for Production, which you claim never to have received.

You seem to misunderstand the response to the Second Request for Production in some significant respects. You have deliberately mischaracterized the response as a refusal to produce. Allow me to make it perfectly plain for you: As to requests 1 through 6, 8 through 11, 13 through 15, and 19 through 22, Ms. Caberta has neither possession nor control of any responsive documents. Such documents, if they exist, are the property of and are controlled by the governments of Hamburg and/or the German Republic. As to request number 7, the response is "None."

As to the response to request number 12, the allegations in question are not connected to the incidents described in the complaint. As you are well aware, the investigation (which has not resulted in the filing of any charges) was engendered by your deliberate violation and/or manipulation of the confidentiality of a deposition taken in an unrelated case. It is a matter of run of the mill Scientology "dead agenting," and even the allegations themselves are not related to the creation and distribution of the Hubbard Declaration, which antedates both the events outlined in the complaint and Ms. Caberta's acquaintance with Mr. Minton.

Since you have (to my utter amazement) narrowed the scope of request number 16 to cover only records of receipt of funds for or in connection with the activities described in the complaint, the response is "None."

As to requests 17 and 18, there are no unlawful acts described in the complaint; however, since you have in a rare display of good faith narrowed the request to cover only records showing that a private party rather than the government of Hamburg is paying for the defense of this case, the response is "None."

In supplement to the objection to the First Request for Production, and without waiving or withdrawing the objections previously lodged: as to requests 1 through 8, and 18 through 30, Ms. Caberta has neither possession nor control of any responsive documents. Such documents, if they exist, are the property of and are controlled by the governments of Hamburg and/or the German Republic; as to requests 9 through 17, there are no records pertaining to the allegations of the complaint; as to requests 31 through 36, the response is "None."

This letter will also place you on notice that if you have not, by the close of business on Monday, 1) notified the Court of the facts surrounding our setting depositions and your unilateral cancellation of them after I traveled to Europe, and 2) taken whatever steps are necessary to cause the Order you secured by chicanery to be withdrawn, I will take appropriate action.

Very truly yours,

John M. Merrett

# EXHIBIT 3

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

## UNITED STATES DISTRICT COURT

_MIDDLE_ _____ DISTRICT OF _FLORIDA_

HUBERT HELLER, an individual,

                        Plaintiff,

           **V.**

URSULA CABERTA, an individual,

                        Defendant.

### SUBPOENA IN A CIVIL CASE

CASE NUMBER: ¹ 8:00 CV-1528-T-27C

TO:   ROBERT MINTON

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. 911 Chestnut Street, Clearwater, Florida 33755 (727) 461-1818 | January 19, 2001 10:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**Please see attached document**

| PLACE | DATE AND TIME |
|---|---|
| Johnson, Blakeley, Pope, Bokor, Ruppel & Burns, P.A. 911 Chestnut Street, Clearwater, Florida 33755 | January 19, 2001 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _attorney for plaintiff_ | January 5, 2001 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Kendrick L. Moxon, Moxon & Kobrin, 1100 Cleveland Street, Suite 900, Clearwater, Florida 33755 (727) 443-5600

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 01/05/01 | 33 North Fort Harrison Avenue Clearwater, Florida |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Robert Minton | Personal |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Lindsay Colton | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___01/05/01___
                DATE

SIGNATURE OF SERVER
Lindsay Colton
Colton & Associates, Inc.
2194 Main Street
ADDRESS OF SERVER
Dunedin, Florida 34698

## Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## I.   DEFINITIONS

The following definitions apply to this Request for Production:

1.   The words "you," "your," shall mean you, your agents, employees, as well as all other persons or entities acting or purporting to act at your direction or on your behalf, including, but not limited to, your accountants, attorneys, investigators, representatives, advisory board, officers, and consultants.

2.   "Document" means every writing or record of every type and description (including those stored electronically or on a computer) that is or has been in your possession, control or custody or of which you have knowledge, including but not limited to, correspondence, memoranda, e-mails, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, drawings and photographs, films, microfilms, voice recordings, maps, reports, surveys, minutes or statistical computations.

3.   "Person" shall mean any person and includes both the singular and plural.

4.   "Entity" shall include natural persons, corporations, partnerships, associations, joint venturers, firms and other enterprises or entities.

5.   The word "communication" shall mean any oral statement, dialogue, colloquy, discussion, correspondence or conversation and also means a transfer of thoughts or ideas between persons by means of documents and includes any transfer of data from one location or person to another by electronic or similar means.

6.   The words "relating to," "in connection with" or equivalent language means, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in any document request.

7.   The term "sect filter" refers to the document attached hereto as Exhibit A, any reasonable facsimile thereof, or any prior version thereof created by and/or utilized by defendant and/or defendant's office or subordinates.

## DOCUMENTS TO BE PRODUCED

1.   All communications with Ursula Caberta, including all letters, emails, or documents of any type.

2.    All records regarding the payment of monies or valuables to Ursula Caberta.

3.    All records regarding the payment of funds, loans, or credit to Ursula Caberta or for the benefit of Ursula Caberta.

4.    All records which address, mention or concern the sect filter.

5.    All letters, emails, or documents of any type which send or provide a copy of the sect filter to any person or entity.

6.    All documents which reflect any expense, bill, receipt and/or payment concerning the press conference of Ursula Caberta at LMT, Inc. on July 25, 2000.

7.    All documents which reflect any expense, bill, receipt and/or payment to or on behalf of Ursula Caberta.

8.    All documents concerning the "Alternate Charlemagne Award."

9.    All communication between you and Ursula Caberta, including phone notes.

10.    All communication between Stacy Brooks and Ursula Caberta, including phone notes.

11.    All communication between Jesse Prince and Ursula Caberta, including phone notes.

12.    All records concerning or mentioning the establishment of an office or branch of the Lisa McPherson Trust, Inc. in Germany.

13.    All records, including bank records, reflecting the payment of expenses or fees to Ursula Caberta.

14.    All records reflecting the payment of fees to any translator to translate the words of Ursula Caberta.

15.    All communications with any member of the media, media outlet, or media entity regarding or mentioning Ursula Caberta and/or her work.

16.    All press releases concerning or mentioning Ursula Caberta, her work or allegations made by her.

17.  All communications with any governmental entity, including legislators, regarding Germany and/or Scientology in Germany.

18.  All documents reflecting communications with any United States government employee or entity regarding L. Ron Hubbard.

19.  All documents reflecting communications with any United States government employee or entity regarding technology created by L. Ron Hubbard or regarding Scientology.

20.  All communications with any Hamburg and/or German governmental entity or official regarding the instant lawsuit.

21.  All communications with any Hamburg and/or German governmental entity or official regarding the use of the sect filter.

22.  Any writing, thesis, tract, essay, article or similar work for publication or potential publication, regarding Scientology, sect filters, the "technology of L. Ron Hubbard," and the administrative technology of L. Ron Hubbard.

23.  All agreements, contracts or retainers relating to the payment of fees and costs for counsel to represent Ursula Caberta.

24.  All records regarding the source of funds utilized for the payment of any airfare or expenses for Ursula Caberta's trip to Florida in July/August of 2000.

25.  All records regarding the source of funds utilized for the payment of any airfare or expenses for any person to come to Florida who attended the press conference at LMT regarding Ursula Caberta.

26.  All communications with any member of the media in Germany regarding you and/or the Lisa McPherson Trust, Inc.

5

# EXHIBIT 4

AO 98 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

_MIDDLE_ _____ DISTRICT OF _FLORIDA_

HUBERT HELLER, an individual,

                    Plaintiff,

            V.

URSULA CABERTA, an individual,

                    Defendant.

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1] 8:00 CV-1528-T-27C

TO:   LISA MCPHERSON TRUST, INC.

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. 911 Chestnut Street, Clearwater, Florida  33755 (727) 461-1818 | January 22, 2001 10:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### Please see attached document

| PLACE | DATE AND TIME |
|---|---|
| Johnson, Blakeley, Pope, Bokor, Ruppel & Burns, P.A. 911 Chestnut Street, Clearwater, Florida  33755 | January 22, 2001 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _attorney for plaintiff_ | January 5, 2001 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Kendrick L. Moxon, Moxon & Kobrin, 1100 Cleveland Street, Suite 900,
Clearwater, Florida 33755 (727) 443-8600

AO 88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 01/05/01 | 33 North Fort Harrison Avenue Clearwater, Florida |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Robert Minton | Personal |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Lindsay Colton | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   01/05/01
DATE

_Lindsay Colton_
SIGNATURE OF SERVER

_2194 Main Street_
ADDRESS OF SERVER

_Dunedin Florida 34698_

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## I.   DEFINITIONS

The following definitions apply to this Request for Production:

1.    The words "you," "your," or "Defendant" shall mean the Lisa McPherson Trust, its agents, employees, board of directors or representatives, or any of them, as well as all other persons or entities acting or purporting to act at their direction or on their behalf, including, but not limited to, your accountants, attorneys, investigators, representatives, advisory board, officers, and consultants.

2.    "Document" means every writing or record of every type and description (including those stored electronically or on a computer) that is or has been in your possession, control or custody or of which you have knowledge, including but not limited to, correspondence, memoranda, e-mails, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, drawings and photographs, films, microfilms, voice recordings, maps, reports, surveys, minutes or statistical computations.

3.    "Person" shall mean any person and includes both the singular and plural.

4.    "Entity" shall include natural persons, corporations, partnerships, associations, joint venturers, firms and other enterprises or entities.

5.    The word "communication" shall mean any oral statement, dialogue, colloquy, discussion, correspondence or conversation and also means a transfer of thoughts or ideas between persons by means of documents and includes any transfer of data from one location or person to another by electronic or similar means.

6.    The words "relating to," "in connection with" or equivalent language means, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in any document request.

7.    The term "sect filter" refers to the document attached hereto as Exhibit A, any reasonable facsimile thereof, or any prior version thereof created by and/or utilized by defendant and/or defendant's office or subordinates.

## DOCUMENTS TO BE PRODUCED

1.    All communications with Ursula Caberta, including all letters, emails, or documents of any type.

1

2.      All records which address, mention or concern the sect filter.

3.      All letters, emails, or documents of any type which send or provide a copy of the sect filter to any person or entity.

4.      All documents which reflect any expense, bill, receipt and/or payment concerning the press conference of Ursula Caberta at LMT, Inc. on July 25, 2000.

5.      All documents which reflect any expense, bill, receipt and/or payment to or on behalf of Ursula Caberta.

6.      All documents concerning the "Alternate Charlemagne Award."

7.      All communication between Robert Minton and Ursula Caberta, including phone notes.

8.      All communication between Stacy Brooks and Ursula Caberta, including phone notes.

9.      All communication between Jesse Prince and Ursula Caberta, including phone notes.

10.      All records concerning or mentioning the establishment of an office or branch of the Lisa McPherson Trust, Inc. in Germany.

11.      All records, including bank records reflecting the payment of expenses or fees to Ursula Caberta.

12.      All records reflecting the payment of fees to any translator to translate the words of Ursula Caberta.

13.      All communications with any member of the media, media outlet, or media entity regarding or mentioning Ursula Caberta and/or her work.

14.      All press releases concerning or mentioning Ursula Caberta, her work or allegations made by her.

15.      All communications with any governmental entity, including legislators, regarding Germany and/or Scientology in Germany.

2

16.    All documents reflecting communications with any United States government employee or entity regarding L. Ron Hubbard.

17.    All documents reflecting communications with any United States government employee or entity regarding technology created by L. Ron Hubbard or regarding Scientology.

18.    All communications with any Hamburg and/or German governmental entity or official regarding the instant lawsuit.

19.    All communications with any Hamburg and/or German governmental entity or official regarding the use of the sect filter.

20.    Any writing, thesis, tract, essay, article or similar work for publication or potential publication, regarding Scientology, sect filters, the "technology of L. Ron Hubbard," and the administrative technology of L. Ron Hubbard.

21.    All agreements, contracts or retainers relating to the payment of fees and costs for counsel to represent Ursula Caberta.

22.    All records regarding the source of funds utilized for the payment of any airfare or expenses for Ursula Caberta's trip to Florida in July/August of 2000.

23.    All records regarding the source of funds utilized for the payment of any airfare or expenses for any person to come to Florida who attended the press conference at LMT regarding Ursula Caberta.

24.    All communications with any member of the media in Germany regarding Robert Minton and/or the Lisa McPherson Trust, Inc.

# EXHIBIT 5

John H. Merrett

# UNITED STATES DISTRICT COURT
## Middle District of Florida

HUBERT HELLER,                                    Case No.: 8:00CV-1528-T-27C

                       Plaintiff,

vs

URSULA CABERTA,

                       Defendant.

_____

## AFFIDAVIT OF URSULA CABERTA

COMES NOW Ursula Caberta, appearing for the purpose of contesting jurisdiction and seeking dismissal of this action and no other, and says:

1. She is the named defendant in the above-styled action.

2. She is a citizen and resident of Germany.

3. She has visited the United States of America on only three occasions, to-wit: Spring 1998, Fall 1998, and July 2000. Her visit in the Spring of 1998 was on official government business. The other two visits were personal in nature, for the purpose of visiting friends.

4. She has entered the State of Florida on only one occasion, to-wit: July, 2000.

5. She has never engaged in any business activity in the United States, and has not engaged in any activity in the United States for the purpose of gaining profit, and has never had any employment or business or property interests in the United States.

6. She is, as an individual, indebted to Robert S. Minton, as an individual, for a sum of money loaned to her by Mr. Minton. The loan proceeds were received by her in

Germany, and were obtained in connection with the retirement of an earlier debt which was incurred and satisfied in Germany.

7. She has never promoted the use of the Hubbard Declaration[1] in the United States. During her July, 2000 visit to the United States she discussed the services the government of Hamburg provides to German firms seeking to avoid infiltration by Scientologists, including the availability in Germany of the Hubbard Declaration, and the fact that the Declaration is distributed on request to companies which fear infiltration by Scientology.

8. In July, 2000, she traveled at her own expense to Clearwater, Florida to publically discuss her activities in Germany.

9. All her activity concerning the Hubbard Declaration, including distribution of the Declaration, has been in her capacity as an employee of the government of Hamburg, Germany.

10. The Hubbard Declaration was developed in response to requests from businesses concerned about infiltration and subversion by Scientologists.

11. No business is required or urged by Defendant or her employer to make use of the Hubbard Declaration. The Hubbard Declaration is made available to individuals and businesses who request some means to avoid infiltration and subversion by Scientologists.

---

[1] This is the document described by Plaintiff as a "sect filter."

John M. Merrett

12. She has never, to her knowledge, had any dealings with the entity identified in the amended complaint as "POSPartner G.M.B.H.."

13. To a certainty she has never had any dealings with the entity identified in the amended complaint as "POSPartner G.M.B.H " outside her function as an official of the government of Hamburg, Germany.

14. The Lisa McPherson Trust, Inc. paid her hotel expense while she was in Clearwater in July 2000, but she received no other thing of value in connection with her trip.

15. She has no financial, employment or business arrangements with the Lisa McPherson Trust, Inc. except as set forth in Paragraph 14 above.

16. She owns no interest in the Lisa McPherson Trust, Inc.

17. Although she has in the past discussed with persons affiliated with the Lisa McPherson Trust, Inc. the possibility of opening a German office of the Lisa McPherson Trust, Inc., she was never offered remuneration or any position with such an organization.

18. To the best of her knowledge and belief, there are presently no plans to open such an office. To a certainty, she is not involved in and has no knowledge of any such plans.

URSULA CABERTA

BEFORE ME, the undersigned authority, personally appeared URSULA

-3-

CABERTA, who presented *PASSPORT 1320284 STX* as identification, and who did

take an oath and said that the foregoing statements true and correct.

_____

**OFFICER ADMINISTERING OATH**

Freie und Hansestadt Hamburg
Behörde für Inneres
Amt für Innere Verwaltung und Planung
Johanniswall 4, 20095 Hamburg

09. Okt. 00

-4-

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


------------------------------X
HUBERT HELLER, an Individual,
                    Plaintiff,          Case No.
   Vs.                                  8:00 CV-1528-T-27C

URSULA CABERTA,
                    Defendant.
------------------------------X


        DEPOSITION of STACY BROOKS, a witness

called by and on behalf of the Plaintiff, pursuant to

the Massachusetts Rules of Civil Procedure, before

Evelyn M. Slicius, Registered Professional Reporter,

CSR No. 127193, and Notary Public in and for the

Commonwealth of Massachusetts, at the offices of

Cooley Manion Jones, LLP, 21 Custom House Street,

Boston, Massachusetts, on Tuesday, April 10, 2001,

commencing at 1:15 p.m.

K.L. GOOD & ASSOCIATES
Registered Professional Reporters
P.O. Box 6094
Boston, Massachusetts 02209
Tel (781) 598-6405  *  Fax (781) 598-0815

30

1    Q.    Who is Lisa Poutre?

2    A.    She is apparently someone who brought the coffee

3          and doughnuts.

4    Q.    Did you pay any airfares for anyone to attend the

5          press conference?

6    A.    No.

7    Q.    How did Ms. Caberta come to be in Florida for the

8          press conference?

9    A.    Well, in fact, she was -- she came to Florida

10         and then it was decided to do the press

11         conference.

12   Q.    So you decided to do the press conference after

13         she came to Florida?

14   A.    Yes, as I recall.

15   Q.    You didn't send out press releases before she

16         arrived?

17   A.    I don't recall.  If you do, you can refresh my

18         memory.

19   Q.    Did you talk to Caberta about coming to Florida

20         to do a press conference?

21   A.    No.  That wasn't the reason she came to Florida.

22   Q.    Did LMT pay for any of her expenses while she was

23         in Florida?

24   A.    Yes.

K.L. Good & Associates

31

1    Q.    What expenses?

2    A.    Her hotel.

3    Q.    How was that paid for?

4    A.    Credit card.

5    Q.    Do you have a credit card receipt?

6    A.    I'm sorry?

7    Q.    Do you have the receipt or the bill?

8    A.    No.

9    Q.    Why didn't you produce that?

10   A.    It doesn't exist any longer.

11   Q.    You destroyed it?

12   A.    We don't keep itemizations of the credit card

13         bills for this long.

14   Q.    Has LMT already filed its tax return for the year

15         2000?

16   A.    Yes.

17   Q.    And you destroyed all your receipts for the year

18         2000 already of your expenses?

19              MR. LEIPOLD:  All receipts or the

20         receipts she was talking about?

21              MR. MOXON:  All receipts.

22   A.    Sorry?

23   Q.    Did you destroy all your company's receipts of

24         expenses for the year 2000?

K.L. Good & Associates

182

<u>**CERTIFICATE**</u>

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK, SS

        I, Evelyn M. Slicius, Registered

Professional Reporter, CSR No. 127193 and

Notary Public in and for the Commonwealth of

Massachusetts, do hereby certify:

        That STACY BROOKS, the witness whose

deposition is hereinbefore set forth, was duly

sworn by me, and that the foregoing transcript is

a true record of the testimony given by the

witness.

        I further certify that I am not related

to any of the parties in this matter by blood or

marriage, and that I am in no way interested in

the outcome of this matter.

        IN WITNESS WHEREOF, I have hereunto

set my hand and affixed my notarial seal this

17th day of April, 2001.

                        Evelyn M. Slicius
                        Notary Public

My commission expires:
May 15, 2003

K.L. Good & Associates

# EXHIBIT 7

# LEIPOLD, DONOHUE & SHIPE, LLP

960-A WEST SEVENTEENTH STREET ▪ SANTA ANA, CA 92706
TELEPHONE (714) 796-1555
FAX (714) 796-1550
EMAIL DLEIPOLD@LDS-LAW.COM

May 9, 2001

**VIA FACSIMILE & MAIL**
Kendrick Moxon, Esq.
**MOXON & KOBRIN**
1100 Cleveland Street
Suite 900
Clearwater, FL 33755

Dear Mr. Moxon:

Enclosed please find the American Express bill pertaining to Ms. Caberta's stay at the Belleview Biltmore in Clearwater.

Very truly yours,

LEIPOLD, DONOHUE & SHIPE, LLP

Daniel A. Leipold

DAL/tym
Enclosures: As stated



Sent By: LEIPOLD DONOHUE SHIPE;    7147961550;    May-9-01  6:09;    Page 2/2

Page 2 of 9
Closing Date
08-19-00

EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


---------------------------------X
HUBERT HELLER, an Individual,
                  Plaintiff,          Case No.
   Vs.                          8:00 CV-1528-T-27C

URSULA CABERTA,
                  Defendant.
---------------------------------X


             DEPOSITION of ROBERT MINTON, a witness

called by and on behalf of the Plaintiff, pursuant to

the Massachusetts Rules of Civil Procedure, before

Evelyn M. Slicius, Registered Professional Reporter,

CSR No. 127193, and Notary Public in and for the

Commonwealth of Massachusetts, at the offices of

Cooley Manion Jones, LLP, 21 Custom House Street,

Boston, Massachusetts, on Tuesday, April 10, 2001,

commencing at 10:25 a.m.


**K.L. GOOD & ASSOCIATES**
**Registered Professional Reporters**
**P.O. Box 6094**
**Boston, Massachusetts 02209**
**Tel (781) 598-6405  *  Fax (781) 598-0815**

11

1    A.    Frequently.

2    Q.    Does it have any effect on your ability to think?

3    A.    We'll find out.

4    Q.    The Claritin?

5    A.    I don't think it has any effect.

6    Q.    Have you taken any other drugs or medication in

7          the last 48 hours?

8    A.    No.

9    Q.    Have you had any alcohol today?

10   A.    Not yet.

11   Q.    You are not on any psychotropic medication at the

12         present time, correct?

13   A.    No.

14   Q.    Did you bring any documents with you today in

15         response to your subpoena?

16   A.    No.

17              MR. MOXON:  For the record, the witness

18         looked at Mr. Leipold, Mr. Leipold shook his

19         head, and the witness answered "No."

20   Q.    Did you conduct any search for any records

21         responsive to your subpoena?

22   A.    No.

23   Q.    Were you provided a copy of the revised document

24         request which I sent to Mr. Leipold?

12

1    A.    Yes.

2    Q.    And you conducted no search for any of those

3          records?

4    A.    I didn't need to.

5    Q.    Well, I've marked as Exhibit 1 -- marked as

6          Exhibit 1 a Second Amended Notice of Deposition

7          of Robert Minton which sets forth the documents

8          I'm seeking in this case.  This is a cut down

9          version of what was in the subpoena, cut down

10         after the magistrate's ruling limiting the scope

11         of discovery at present.  Let me go through this

12         list with you.  okay.

13              Have you ever had -- document request

14         No. 1 seeks "All the communications with Ursula

15         Caberta, including all the letters, e-mails or

16         documents of any type."

17              MR. LEIPOLD:  At this point, I want to

18         go on the record and make a statement and that

19         statement is I believe that this particular

20         lawsuit and the way it is framed, has forced us

21         into a situation in which I must advise my client

22         to take the Fifth Amendment on a blanket basis

23         due to the framing of this lawsuit, so as to

24         potentially expose my client to criminal

1    prosecution; and the fact that your offices had

2    used deposition testimony already of Ursula

3    Caberta to initiate a criminal prosecution in

4    Germany.

5            However, I'm not relying on that

6    criminal prosecution in Germany.  The allegations

7    in your complaint are so vastly broad that they

8    come within the potential for criminal

9    prosecution of my client in this country, and so

10   I'm going to instruct him not to answer based on

11   the Fifth Amendment.

12   Q.   Are you following that instruction, Mr. Minton?

13   A.   I am.

14           MR. MOXON:  Mr. Leipold, I'd like to

15   get some clarification of what you're asserting

16   with respect to the Fifth Amendment here.

17           MR. LEIPOLD:  I bet you would.  You

18   know what the Fifth Amendment is?  I'm asserting

19   it.  That is the clarification.

20           What else would you like?

21           MR. MOXON:  What alleged law is it --

22   well, let me ask the witness.

23   Q.   What alleged law is it, Mr. Minton, for which you

24   are -- in violation of what alleged law are you

1    asserting the Fifth Amendment for?

2              MR. LEIPOLD:  I'm instructing my client

3    not to answer.  But I will respond to you that

4    that is the Foreign Corrupt Practices Act.

5              The breadth of your complaint, and the

6    fact that I had been advised that there is a

7    criminal prosecution in Germany, which the real

8    parties in interest, the Church of Scientology,

9    has initiated against my client, leaves me no

10   choice but to make sure that there is a blanket

11   Fifth Amendment assertion here so that there is

12   no waiver.

13             Your co-counsel -- excuse me -- handed

14   you a note.  Would you like to read that into the

15   record?

16             MR. MOXON:  Do you have any other

17   comments with respect to the Fifth Amendment

18   issue?

19             MR. LEIPOLD:  Pardon?

20             MR. MOXON:  I'm going to ask Mr. Minton

21   some specific questions on these Fifth Amendment

22   issues, and if he is going to assert the claim,

23   fine.  I don't know what you mean by a blanket

24   claim as to everything.  I don't think we can

1       any Fifth Amendment claim?

2               MR. LEIPOLD:  Well, I'm going to

3       instruct my client not to answer both on the

4       basis of the Fifth Amendment and on the basis

5       that it asks for a legal conclusion of my client

6       as to what is clearly outside the scope of the

7       Fifth Amendment.

8               Perhaps you can't -- perhaps you can

9       phrase that question in a more lawyer-like

10      manner.

11   Q.  Are you following that instruction?

12   A.  I'm following my attorney's instruction in

13      asserting the Fifth Amendment.

14              MR. MOXON:  Let's take a break for a

15      moment.

16              THE VIDEOGRAPHER:  10:35, going off the

17      record.

18              (Off the record.)

19              MR. MOXON:  Back on the record.

20              THE VIDEOGRAPHER:  10:42, back on the

21      record.

22   BY MR. MOXON:

23   Q.  Mr. Minton, what is the -- what basis are you

24      asserting for making this Fifth Amendment

1    assertion under the Foreign Corrupt Practices

2    Act?

3              MR. LEIPOLD:  I'm not going to allow my

4    client to answer a question that calls for a

5    legal opinion.

6              Further, I am instructing him not to

7    answer based on the Fifth Amendment.  I've told

8    you the exact basis that we are making the Fifth

9    Amendment.

10             MR. MOXON:  There is no other basis

11   than what you've stated?

12             MR. LEIPOLD:  No.  We've compared the

13   elements to what you've alleged in the complaint.

14   Q.   Do you believe, Mr. Minton, that you can be

15        prosecuted in the United States based on facts in

16        your possession?

17   A.   My counsel has advised me not to answer any

18        questions.

19   Q.   Are you pleading the Fifth as to that question?

20   A.   I'm pleading the Fifth Amendment.

21   Q.   Not to answer any questions in the entirety of

22        this deposition?

23   A.   That's correct.

24             MR. LEIPOLD:  No, that is not correct.

1    He has already answered questions in this

2    deposition, sir.  We are just not going to answer

3    questions that substantive to the allegations in

4    the complaint.

5  Q.  Have you provided any money to Ursula Caberta?

6         MR. LEIPOLD:  I'm going to instruct him

7    not to answer based on the Fifth Amendment.

8  A.  I'm following my attorney's advice in not

9    answering questions on the basis of the Fifth

10   Amendment.

11 Q.  What has Ursula Caberta done for you in exchange

12   for the money that you've given to her?

13         MR. LEIPOLD:  I'm going to instruct my

14   client not to answer based on the Fifth

15   Amendment.

16 A.  I'm following my attorney's advice in not

17   answering based on the Fifth Amendment.

18 Q.  You are concerned that a response to that

19   question could incriminate you?

20         MR. LEIPOLD:  Counsel, that is an

21   improper question.  I'm going to instruct my

22   client not to answer based on the Fifth

23   Amendment.

24         MR. MOXON:  I want to make sure I know

34

```
 1        press conference?

 2                    MR. LEIPOLD:  I'm going to instruct my

 3        client not to answer based on the Fifth

 4        Amendment.

 5   A.   I'm following my attorney's advice.

 6   Q.   Did any of the employees at LMT speak, to your

 7        knowledge, speak to Ms. Caberta before she came

 8        to Florida for the press conference?

 9                    MR. LEIPOLD:  I'm going to instruct my

10        client not to respond based on the Fifth

11        Amendment

12   A.   I'm following my attorney's advice.

13   Q.   Did you pay for Ms. Caberta's expenses when she

14        was in Florida giving the press conference?

15                    MR. LEIPOLD:  I'm going to instruct my

16        client not to respond based on the Fifth

17        Amendment.

18   A.   I'm following my attorney's advice.

19   Q.   Had you met Ms. Caberta prior to her

20        participation in the press conference in July of

21        2000?

22                    MR. LEIPOLD:  I'm going to instruct my

23        client not to respond based on the Fifth

24        Amendment.
```

35

1    A.    I'm following my attorney's vice.

2    Q.    How many of Ursula Caberta's trips to the United

3          States did you pay for?

4                MR. LEIPOLD:   I'm going to instruct my

5          client not to respond based on the Fifth

6          Amendment.

7    A.    I'm following my attorney's advice.

8    Q.    Are you aware of a declaration that Ms. Caberta

9          filed in which she indicated that you had given

10         her a loan?

11               MR. LEIPOLD:   You can respond to that.

12   A.    No.

13               MR. MOXON:   I'm marking as Exhibit

14         No. 3 the Affidavit of Ursula Caberta, undated.

15               **(Exhibit No. 3 was marked for**

16         **identification.)**

17   Q.    I'm representing that this was an affidavit which

18         was filed in this case.   It appears to be --

19         actually, it appears to be 9 October 2000 is the

20         date on it.

21               Would you please look at paragraph 6 of

22         that affidavit.

23   A.    Just let me look at the whole thing to see if

24         I've ever seen this.   I've never seen it.

```
 1                    Did you say look at paragraph six?

 2   Q.   Yes, sir.

 3   A.   Yes, I'm looking.

 4   Q.   Paragraph 6 states, quote, "She is, as an

 5        individual, indebted to Robert S. Minton, as an

 6        individual, for a some of money loaned to her by

 7        Mr. Minton."

 8                    Did I correctly read that?

 9   A.   That's the first sentence, correct.

10   Q.   Is that correct, did you --

11                    MR. LEIPOLD:  I'm going to --

12                    MR. MOXON:  Let me finish the sentence.

13   Q.   Did you, in fact, loan money to Ms. Caberta as an

14        individual?

15                    MR. LEIPOLD:  Just for the record, that

16        is correct, it was a sentence, but I will

17        instruct my client not to respond based on the

18        Fifth Amendment.

19   A.   I'm following my attorney's advice.

20   Q.   The next sentence states, "The loan proceeds were

21        received by her in Germany, and were obtained in

22        connection with a retirement of an earlier debt

23        which was incurred and satisfied in Germany."

24   A.   That is the second sentence.
```

1    Q.    Do you have any knowledge with respect to that

2          sentence?

3                    MR. LEIPOLD:  I'm going to instruct my

4          client not to respond based on the Fifth

5          Amendment.

6    A.    I'm following my attorney's advice.

7.   Q.    Has Ms. Caberta given any money to you?

8                    MR. LEIPOLD:  I'm going to instruct my

9          client not to respond based on the Fifth

10         Amendment.

11   A.    I'm following my attorney's advice.

12   Q.    Did Ms. Caberta pay back any of this alleged

13         loan?

14                   MR. LEIPOLD:  I'm sorry, who?

15   Q.    Did Ms. Caberta pay back any of this alleged

16         loan?

17                   MR. LEIPOLD:  I'm going to instruct my

18         client not to respond based on the Fifth

19         Amendment.

20   A.    I'm following my attorney's advice.

21   Q.    Did you pay for any airfare of Ms. Caberta ever

22         to come to the United States?

23                   MR. LEIPOLD:  That's been asked and

24         answered.  I'm going to instruct my client not to

```
 1   Q.   Do you have any documents that would be

 2        responsive to category request No. 1?

 3             MR. LEIPOLD:  I'm going to instruct my

 4        client not to respond on the basis of the Fifth

 5        Amendment.

 6   A.   I'm following my attorney's advice.

 7   Q.   Do you have any documents that would be

 8        responsive to category request No. 2, which I'll

 9        quote, "All records regarding the payment of

10        monies or valuables to Ursula Caberta."

11             MR. LEIPOLD:  I'm going to instruct my

12        client not to respond based on the Fifth

13        Amendment

14   A.   I'm following my attorney's advice.

15   Q.   Do you have any documents that would be

16        responsive to document request No. 3, quote, "All

17        records regarding the payment of funds, loans or

18        credit to Ursula Caberta or for the benefit

19        Ursula Caberta"?

20             MR. LEIPOLD:  I'm going to instruct my

21        client not to respond based on the Fifth

22        Amendment

23   A.   I'm following my attorney's advice.

24   Q.   Do you have any documents that would be
```

41

```
 1         responsive to category request No. 4, "All

 2         documents which reflect any expense, bill,

 3         receipt and/or payment concerning the press

 4         conference of Ursula Caberta at LMT, Inc., on

 5         July 25, 2000"?

 6                   MR. LEIPOLD:  I'm going to instruct my

 7         client not to respond based on the Fifth

 8         Amendment.

 9    A.   I'm following my attorney's advice.

10    Q.   Which of these categories of documents that I've

11         requested from you do you have records which

12         would be responsive?

13                   MR. LEIPOLD:  I'm going to instruct my

14         client not to respond based on the Fifth

15         Amendment.

16    A.   I'm following my attorney's advice.

17    Q.   LMT has also posted information concerning the

18         Alternate Charlemagne Award; isn't that correct?

19    A.   Yes.

20    Q.   And the Alternate Charlemagne Award was given to

21         you in Leipzig by Ursula Caberta; isn't that

22         right?

23    A.   No.

24    Q.   Was it handed to you by Ursula Caberta?
```

47

```
 1    Q.    Did Caberta place any calls to you in New
 2          Hampshire?
 3    A.    Yes.
 4    Q.    Did she ever call you at LMT?
 5    A.    I don't think so.
 6    Q.    Did she ever call you at Brooks' home?
 7    A.    No.
 8    Q.    Where do you live when you are in Florida, in
 9          Clearwater?
10    A.    A variety of places.
11    Q.    Where?
12    A.    Hotels, LMT, sometimes I hang out over at Stacy
13          Brooks' house.
14    Q.    Did you search any of your phone records for
15          phone calls made to Ursula Caberta?
16               MR. LEIPOLD:  I'm going to instruct my
17          client not to respond based on the Fifth
18          Amendment.
19    A.    I'm following my attorney's advice.
20               However, I would like to go back to the
21          previous question.
22    Q.    Sure.  You want to clarify the prior question as
23          to where you stay when you are in Clearwater?
24    A.    I've stayed at Jesse Prince's house also.
```

55

1    Q.    Are you following that instruction?

2    A.    I am following that instruction.

3    Q.    Have you called Ms. Caberta at her home?

4              MR. LEIPOLD:  You can respond to that,

5         if you know.

6    A.    I don't know.

7    Q.    You may have?

8    A.    I don't think so.

9    Q.    Do you have her home number?

10   A.    I don't know.

11   Q.    Does Ms. Brooks have her home number?

12             MR. LEIPOLD:  Calls for speculation.

13   A.    She probably does but I don't know.

14   Q.    Has Ms. Caberta assisted your business endeavors

15        in any fashion?

16             MR. LEIPOLD:  I'm going to instruct my

17        client not to respond based on the Fifth

18        Amendment.

19   A.    I'm following my attorney's advice.

20   Q.    Has Ms. Caberta directed any business towards

21        you?

22             MR. LEIPOLD:  I'm going to instruct my

23        client not to respond based on the Fifth

24        Amendment.

71

<u>CERTIFICATE</u>

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK, SS

       I, Evelyn M. Slicius, Registered Professional Reporter, CSR No. 127193 and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify:

       That ROBERT MINTON, the witness whose deposition is hereinbefore set forth, was duly sworn by me, and that the foregoing transcript is a true record of the testimony given by the witness.

       I further certify that I am not related to any of the parties in this matter by blood or marriage, and that I am in no way interested in the outcome of this matter.

       IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 11th day of April, 2001.

               Evelyn M. Slicius
               Notary Public

My commission expires:
May 15, 2003