FILED

IN THE UNITED STATES DISTRICT COURT:L - 5  FM 4:11
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER, an individual,

        Plaintiff,

v.                          Case No. 8:00 CV-1528-T-27C

URSULA CABERTA, an individual,

        Defendant.
_____/

## PLAINTIFF'S MOTION TO COMPEL SECOND
## SET OF INTERROGATORIES

Defendant Ursula Caberta has failed to respond to plaintiff's Second Set of
Interrogatories, and failed to respond to plaintiff's informal efforts to acquire a
response, thereto.

As defendant has waived any objection, plaintiff requests an Order requiring a
forthwith and complete response.

### I – STATEMENT OF FACTS

Plaintiff, Hubert Heller, is a citizen of Germany domiciled in Clearwater,
Florida. As alleged in detail in the Second Amended Complaint (Ex. 1), Mr. Heller
has been injured by the intentional acts of defendant, Ursula Caberta, a low level
official of the City of Hamburg, Germany, through interference in his software
distribution business activities. The amended complaint alleges that Ms. Caberta's
conduct arose out of her activities targeting persons who conduct business in



Germany, solely because they are members of the Scientology religion, such as Mr. Heller.

Plaintiff pled four causes of action for: tortious interference with an advantageous business relationship; unfair and deceptive trade practices pursuant to Florida's Little FTC Act; a 42 U.S.C. §1985(3) conspiracy to deprive him of the opportunity to engage in interstate and international commerce based upon his religious beliefs and practices; and under the Alien Tort Claims Act.

The Second Amended Complaint identified several co-conspirators of Ms. Caberta, and persons who acted with her with respect to the underlying torts by paying her or working with her concerning the alleged torts. The Second Amended Complaint alleges:

> Caberta is also engaged in continuous and systematic business contacts in the State of Florida. She is a silent partner or joint venturer with Robert Minton, Stacy Brooks, Jesse Prince, and the Lisa McPherson Trust, Inc. ("LMT, Inc."), a Florida for-profit corporation engaged in the activity of attempting to damage or destroy the Scientology religion. Caberta regularly communicates with LMT, Inc., and Minton, Young and Prince, for the purpose of contriving, creating, planning and disseminating false, deceptive and disparaging assertions regarding Scientologists, such as plaintiff.
>
> *            *            *            *
>
> In her personal capacity, Caberta has been paid an unspecified amount of money by Florida businessman, Robert Minton, in return for which, in part, she has traveled to Clearwater, Florida for the purpose of ... disseminating and requiring use of her sect filters, encouraging boycotts of businesses owned by Scientologists and continuing the general conspiracies alleged herein. Minton and LMT, Inc. have also paid Caberta to engage in propaganda in Clearwater, Florida, in Germany, in Washington, D.C., and in International publications, to bolster investments made by Minton in litigation in Florida. This payoff to Caberta ... was a private and unlawful payment for favors to Minton and LMT, Inc. in the furtherance of their joint co-conspiracy ... She has discussed and planned with Minton, the Chairman of the Board of LMT,

2

Inc., of expanding LMT, Inc., to Germany where she would become a
principal in exchange for money received from Minton and LMT, Inc.

(Ex. 1, Second Amended Complaint, ¶¶ 15-16.)

Thus, in plaintiff's Second Set of Interrogatories – limited to a single

interrogatory – plaintiff requested the following information:

3. Identify all funds and/or valuables received from Robert
Minton or any agent of Robert Minton, including the amount and date of
receipt of such money or valuable.

(Ex. 2.)

The Interrogatory was served on defendant's counsel by mail on May 17, 2001.

(*Id.*)  Having received no reply within the 30 days allotted by Rule 33 and as

requested in the body of the interrogatory, plaintiff's counsel wrote to defendant's

counsel by letter dated June 20, 2001, and requested a response. (Ex. 3.)  The letter

specifically indicated that a response was sought to avoid the need for a motion to

compel. (*Id.*)  Plaintiff's counsel ignored the attempt to resolve the matter informally.

## II -   DEFENDANT'S FAILURE TO RESPOND WAIVES ANY FUTURE OBJECTION

Defendant has waived any objection to any of the document requests, as no

response or objection was timely filed to the interrogatory.  F.R.Civ.P. 33.  The

general rule is that failure to make timely objections to interrogatories or other

discovery requests constitutes a waiver of any objections.  *In re United States,* 864

F.2d 1153, 1156 (5th Cir.1989) ("We readily agree with the district court that as a

general rule, when a party fails to object timely to interrogatories, production

requests, or other discovery efforts, objections thereto are waived."); *Davis v.*

3

*Romney*, 53 F.R.D. 247, 248 (E.D.Pa.1971); *Krewson v. Quincy,* 120 F.R.D. 6, 7

(D.Mass.1988); *Standard Chlorine of Delaware, Inc., v. Sinibaldi,* 821 F.Supp, 232,

261-62 (D.Del. 1992); *Cahela v. Bernard*, 155 F.Supp. 221, 227 (N.D.Ga. 1994).

Plaintiff recognizes that co-conspirator Robert Minton asserted a Fifth

Amendment privilege as to this area of questioning, citing to the Foreign Corrupt

Practices Act.  However, even if defendant also makes an untimely Fifth Amendment

claim as to such information, that cannot now shield the discovery of payments

received by her from Minton.  This rule also specifically applies to objections which

may be made on the grounds of privilege, requiring a waiver of the privilege for

failure timely to respond.  *Perry v. Golub,* 74 F.R.D. 360, 363 (N.D.Ala.1976);

*United States v. 58.16 Acres of Land*, 66 F.R.D. 570 (E.D. Ill.1975).  As stated by the

Ninth Circuit,

> Generally, in the absence of an extension of time or good cause, the
> failure to object to interrogatories within the time fixed by Rule 33,
> FRCivP, constitutes a waiver of any objection. This is true even of an
> objection that the information sought is privileged. *United States v.
> 58.16 Acres of Land,* 66 F.R.D. 570 (E.D. Ill.1975). Clearly, the Fifth
> Amendment is not a self executing mechanism. It can be affirmatively
> waived or lost by not asserting it in a timely fashion. *Maness v. Meyers,*
> 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574 (1975).

*Davis v. Fendler*, 650 F.2d 1154,1160 (9th Cir. 1981).

Moreover, the information sought is important to the jurisdictional issues in

this case, going to the issue of Caberta's violation of law by the institution of a

commercial boycott, and therefor whether her conduct falls within an exception to the

FSIA for unlawful acts outside the scope of legitimate and legal governmental

conduct.  See, 28 U.S.C. § 1605(a)(2); *Chuidan v. Phillipine National Bank*, 912 F.2d

4

1095 (9th Cir. 1990); *Hilao v. Marcos*, 25 F.3d 1467, 1470 (9th Cir. 1994); *Cabiri v. Assasie-Gyimah*, 921 F.Supp. 1189, 1198-99 (S.D.N.Y. 1996). The discovery sought, thus goes both to the commercial activity exception and the "outside the scope of lawful duties" exception of the FSIA.

### III - CONCLUSION

Ms. Caberta should be ordered fully to respond to Interrogatory 3, prior to her deposition on July 25, 2001.

Dated: July 5, 2001

Respectfully submitted,

Kendrick Moxon
Helena Kobrin
FBN #: 0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
Phone: (727) 443-5620
Fax: (727) 443-5640

F. Wallace Pope, Jr.
FBN #: 124449
JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818

Attorneys for Plaintiff

5

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

I hereby certify that I have attempted to confer with defendant's counsel, John Merrett, to informally resolve the discovery disputes set forth in the motion to compel. Mr. Merrett declines to talk with me, however, and has refused to provide any response to the document requests, despite my written requests that he do so.

Kendrick L. Moxon

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S MOTION TO COMPEL SECOND SET OF INTERROGATORIES** to be served on this 5th day of July, 2001, by U.S. Mail, to John Merrett, 2716 Herschel St., Jacksonville, FL 32205.

_____
Attorney

# Exhibit 1

RECEIVED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA 01 JAN -8 PM 3: 52
TAMPA DIVISION

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

HUBERT HELLER, an individual,

Plaintiff,

v.                                    Case No. 8:00 CV-1528-T-27C

URSULA CABERTA, an individual,

Defendant.
_____/

## SECOND AMENDED COMPLAINT AND
## DEMAND FOR JURY TRIAL

Plaintiff, Hubert Heller, sues defendant, Ursula Caberta, and says:

## JURISDICTION, VENUE AND PARTIES

1.    Plaintiff, Hubert Heller, is a citizen of Germany, admitted to the United

States for permanent residence, and domiciled in Clearwater, in the State of Florida.

2.    Defendant, Ursula Caberta, is a citizen of Germany, and is employed by the

government of the City of Hamburg, Germany.  Caberta is sued as an individual, for acts

she claimed to have undertaken in an official capacity, but which were undertaken outside

the scope of her official duties, and which were illegal under German, United States,

Florida and International law.  Alternatively, she is sued for acts which, in addition to

being unlawful and unconstitutional under both U.S. and German Law, if considered to

be within the scope of her official duties, are nevertheless tortious commercial acts.  The

acts complained of herein occurred, in part, in Pinellas County, Florida.  Caberta conducts

commercial activity in and is present in Pinellas County, Florida, and was served in Pinellas County.

3.    Jurisdiction is based upon the provisions of 28 U.S.C. §§ 1331, 1343, 1350 and 1332, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.    Venue is proper in the Tampa Division of the Middle District of Florida pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and/or the defendant is subject to personal jurisdiction within this District at the time of the commencement of this action.

5.    Within the meaning of Florida Statutes, Section 48.193, and Rule 4, Fed.R.Civ. P., Caberta has committed tortious acts against plaintiff within the State of Florida; has caused injury to Heller within this State arising out of an act or omission outside this State at a time when Caberta was engaged in commercial activity, solicitation or service activities within this State; is engaged in substantial and not isolated activity within this State; and is operating, conducting, engaging in or carrying on commercial activities or business ventures in this State.

6.    All conditions precedent to the institution and maintenance of this action have been performed or have occurred.

## FACTS

7.    Caberta is the head of the Hamburg Germany task force designed to disrupt the business activities, civil rights and human rights of members of the Scientology religion.

2

8.    Both as an individual and as head of the task force, Caberta initiated a series of discriminatory and exclusionary measures designed to stigmatize, disenfranchise and ostracize Scientologists based solely on their association and beliefs.

9.    Caberta created, advocates, promotes and disseminates so-called "sect filters" both in the public and private sectors. These "sect filters" and accompanying declaration require individuals and companies to declare in writing:

(1)  That they do not "use the technology of L. Ron Hubbard;"

(2)  That they are not trained and do not participate in the "technology of L. Ron Hubbard;" and

(3)  That they reject the "technology of L. Ron Hubbard."

An example, with translation, of Caberta's "sect filters" is attached as Exhibit A. L. Ron Hubbard is the founder of the Scientology religion and the author of all Scientology scripture, sometimes referred to as the "religious technology" or the "technology" of Scientology.

10.    Caberta advocates and promotes that businesses and individuals must require signed sect filters from all businesses and individuals with whom they do business in order that they might prevent association with Scientologists and companies owned by Scientologists.

11.    Caberta's "sect filters" are designed and intended by her to make employment, commercial and contractual relations conditional on an individual attesting that he or she and/or his or her company rejects the teachings of L. Ron Hubbard. Caberta has publicly stated that the filter was carefully designed to ensure that no Scientologist could or would sign the filter, because the "technology of L. Ron Hubbard,"

3

the Founder of their religion, is utilized in all aspects of their lives. The purpose is therefore to identify and "filter" Scientologists, by identifying all persons who refuse to sign the filter. Individuals and companies who refuse to sign these declarations are subject to economic sanctions – including commercial boycotts, individual firings, discrimination and harassment based solely on their association and religious belief. Through the "sect filters" Caberta forces corporations and businesses to adopt a discriminatory and exclusionary policy toward Scientologists or to suffer serious economic consequences.

12.   With knowledge that plaintiff and other Scientologists are doing business or attempting to do business with German companies, Caberta distributed copies of her "sect filter" to numerous companies and individuals throughout Germany, including governmental entities, businesses, chambers of commerce and banks. In the media, in speeches, conferences and over the internet, Caberta advocates the systematic use of her "sect filters" to discriminate against Scientologists, and personally or through one of her subordinates or co-conspirators, distributes it to businesses and chambers of commerce throughout Germany. It is Caberta's intent to boycott, disrupt and destroy any business relationship that any Scientologist may have with any business, person or government in Germany, the United States and elsewhere, and, as she describes it, to "clear Germany" of all Scientologists.

13.   Businesses that fail to use the sect filters face the prospect of losing government contracts, business and social ostracism, or being labeled as companies that are owned by or employ Scientologists, thereby resulting in the systematic boycotting of such businesses.

4

14.  In seeking and obtaining the agreement of individuals, businesses and officials to use "sect filters," Caberta has engaged in a conspiracy with numerous such businesses and officials to achieve that goal.  It is part of the intention and effect of said conspiracy that the participants in said conspiracy will, in turn, require other businesses with which they do business to also use the "sect filters" thereby joining the conspiracy. It further is part of the intention and effect of said conspiracy that the use of "sect filters" be expanded beyond Germany, including to the United States, and in particular to the States of California and Florida, where, as Caberta knows, many Scientologist business people conduct businesses which involve international trade and contracts.  Caberta also is, or should be aware that among such business people in Florida are German nationals or former German nationals who conduct and/or are likely to conduct business with German businesses, and thus who are likely to be adversely affected by the use of the "sect filters" by German businesses.   Caberta is also aware that some German Scientologists have fled Germany to reside in Florida because of the persecution faced by Scientologists arising out of her unlawful and tortious conduct.

15.  Caberta is also engaged in continuous and systematic business contacts in the State of Florida.  She is a silent partner or joint venturer with Robert Minton, Stacy Brooks, Jesse Prince, and the Lisa McPherson Trust, Inc. ("LMT, Inc."), a Florida for-profit corporation engaged in the activity of attempting to damage or destroy the Scientology religion.  Caberta regularly communicates with LMT, Inc., and Minton, Young and Prince, for the purpose of contriving, creating, planning and disseminating false, deceptive and disparaging assertions regarding Scientologists, such as plaintiff. Plaintiff is aware that information placed into commerce, published in newspapers and

5

periodicals and assertions made by her is false, exaggerated, misleading, and deceptive, but is done for the purpose of encouraging and demanding businesses in Germany and elsewhere to adopt her sect filter and boycott and discriminate against Scientologists and businesses owned by Scientologists in Germany and around the world – including in Florida and other states. Among numerous false and deceptive statements made by Caberta to induce or force companies to adopt the sect filter, are assertions that Scientologists who have fled Germany to the United States did not leave because they were fired or unable to get work because of the sect filter, but rather, because they "have problems because of tax evasion and other things where they have been sued by the court"; and that the sect filter was being applied only to "business consultants," when in fact, it has been applied to all identified Scientologists in many types of businesses.

16. In her personal capacity, Caberta has been paid an unspecified amount of money by Florida businessman, Robert Minton, in return for which, in part, she has traveled to Clearwater, Florida for the purpose of publicly attacking Scientology, disseminating and requiring use of her sect filters, encouraging boycotts of businesses owned by Scientologists and continuing the general conspiracies alleged herein. Minton and LMT, Inc. have also paid Caberta to engage in propaganda in Clearwater, Florida, in Germany, in Washington, D.C., and in International publications, to bolster investments made by Minton in litigation in Florida. This payoff to Caberta was not publicly revealed to her government employer in Germany, and thus was a private and unlawful payment for favors to Minton and LMT, Inc. in the furtherance of their joint co-conspiracy to harm Scientologists and companies owned by or employing Scientologists. She has discussed and planned with Minton, the Chairman of the Board of LMT, Inc., of expanding LMT,

6

Inc., to Germany where she would become a principal in exchange for money received from Minton and LMT, Inc. She has assisted Minton in setting up press conferences in Germany through which Minton promoted his own investments, in Florida, and the interests of LMT, Inc. LMT, Inc., operating out of FLorida, continues to promote the use of Caberta's sect filters to this day.

17. On July 25, 2000, Caberta was present in Clearwater, Florida, and held a press conference paid by Minton and LMT, Inc., in which she publicly promoted in the United States and the State of Florida the use and dissemination of her "sect filters" to blacklist Scientologists.

18. RTI is a computer software company in Sacramento, California. RTI's clients are large and small retail companies and manufacturers of retail products in the United States and abroad. RTI has customers in 58 countries with over 18,000 installations of its point-of-sale inventory control software. The software controls ordering, receiving and distribution of products in stores, it monitors how well individual merchandise and products are selling, and it controls inventory of products essentially monitoring and controlling the flow of merchandise through a retail system. RTI is the market leader in this type of inventory control software, with installations in clothing stores, specialty shops, gift shops, sporting goods stores and many other types of businesses. A large market exists for RTI's products in Europe, and particularly in Germany.

19. Plaintiff, Hubert Heller, is Vice-President, International, of RTI, who is paid in large part on commission. Heller negotiated with the German firm, POSPartner G.M.B.H. (POS) to establish a distribution agreement whereby POS would distribute

7

RTI's software products in Germany. Heller would realize substantial commissions from such sale to POS as well as other sales in Germany exceeding $75,000. The negotiations occurred in part between Heller and representatives of POS in Orlando, Florida, in the Middle District of Florida.

20. While unknown to Heller at the time, POS has voluntarily or involuntarily joined the conspiracy, organized and instituted by Caberta as described above, to use and disseminate Caberta's sect filters. POS has instituted the use of "sect filters," and now requires those with whom it does business to use such filters, because it has been required to do so as a condition of doing business in Germany with other businesses and German government entities and officials that have entered into the conspiracy. It was and is part of Caberta's purpose in organizing, initiating and expanding the conspiracy, that businesses such as POS be pressured and coerced into using "sect filters" and, in turn, requiring their business partners or those with whom they do business to do likewise, including within the State of Florida.

21. POS and Heller negotiated to the point that POS offered to enter into an agreement with RTI. During the process of the negotiation, POS learned that Heller is a Scientologist. Heller has been a devoted member of the Church of Scientology since 1971. Upon learning that Heller is a Scientologist, POS, as a result of Caberta's inducement, demanded that Heller sign one of Caberta's "sect filters." Heller refused to sign Caberta's "sect filter," and POS refused to enter into the agreement or do business with him unless Heller signed Caberta's "sect filters," thereby causing substantial damage to Heller with respect to his contract with POS and as to other subsequent business activities in Germany.

8

22. Part of Caberta's program involved the dissemination of sect filters to the various chambers of commerce of cities in Germany, and the dissemination of the sect filter in the periodicals of the chambers of commerce to businesses. Because German states require mandatory membership of local businesses such as POS, in the chambers of commerce, Caberta thus assured the greatest possible spread of the unlawful filter throughout Germany. It was both foreseeable and intended by Caberta that the reach of the conspiracy which she organized, initiated and furthered, include POS and other companies which would do business with Scientologists and be extended into the State of Florida to affect and injure Scientologist business people such as plaintiff Heller. Caberta thus committed a tort within the State of Florida, and is subject to the jurisdiction of Florida Courts.

23. While purportedly carrying out her activities as an employee of the City of Hamburg, in fact, Caberta acted entirely outside the scope of her lawful authority. Her conduct specifically violated German constitutional law by persecuting members of the Scientology religion; calling for, organizing and instituting an unlawful commercial boycott of adherents to the Scientology religion; acting with private business persons who were secretly paying her for favors and assistance to harm Scientologists like Heller; and as part of an illegal conspiracy in which she and her city government was involved. To the extent that Caberta acted within the scope of her duties, those duties were nevertheless unlawful and unconstitutional in both the United States and Germany. Alternatively, if Caberta's activities described herein are deemed to be lawful in Germany, those activities are tortious commercial acts. Caberta is paid by Minton and LMT, Inc., to carry out the activities alleged herein, in part, to increase the value of his American investments, to

9

harass Scientologists, and to cause Scientologists to realize monetary losses.

## COUNT I

## TORTIOUS INTERFERENCE

24. This is a count for tortious interference with an advantageous business relationship and a business expectancy.

25. Plaintiff adopts and realleges the allegations of paragraphs 1 through 23 above.

26. Heller had established an advantageous business relationship with POS. Caberta intentionally designed and implemented a strategy to interfer with that advantageous business relationship as well as all other similarly situated relationships. As a result of Caberta's actions, Heller has lost the benefit of the relationship and has been damaged. Defendant's actions constitute a willful, wanton and malicious interference with plaintiff's advantageous business relationship and prospective economic advantage with POS, and defendant's actions have damaged plaintiff. Caberta knew that her conduct had interfered with the business relationships and contracts of Scientologists such as Heller, and would and reasonably did know that her conduct described herein would continue to interfere with the advantageous business relationship of persons in Heller's class of persons espousing the beliefs and practices of the Scientology religion.

27. Plaintiff demands judgment against defendant for damages, including, but not limited to, loss of profits, loss of business reputation, costs, expenses, increased overhead, prejudgment interest and such exemplary damages as may later be allowed by court on motion, and such other and further relief as to the court may appear just and proper.

## COUNT II

## UNFAIR AND DECEPTIVE TRADE PRACTICES

28. This is a count for unfair and deceptive trade practices pursuant to Florida's Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201, *et seq.* (1999).

29. Plaintiff adopts and realleges the allegations of paragraphs 1 through 27 above.

30. Florida Statutes § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Florida Statutes § 501.202(2) provides that Florida's Deceptive and Unfair Trade Practices Act shall be construed liberally to promote the following policy:

> To protect the consuming public and *legitimate business enterprises* from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

(emphasis added).

31. Plaintiff's business activities constitute a "legitimate business enterprise" within the meaning of Section 501.202(2).

32. Plaintiff is a "consumer" within the meaning of Section 501.203(7).

33. Florida Statutes § 501.203(8) defines "Trade or commerce" to include "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. 'Trade or commerce' shall include the conduct of any trade or commerce, however denominated, including any

11

nonprofit or not-for-profit person or activity."

34.  Pursuant to Florida Statutes § 501.203(9), "'Thing of value' may include, *without limitation*, any moneys, donation, membership, credential, certificate, prize, award, *benefit*, license, interest, *professional opportunity*, or chance of winning" (emphasis added).

35.  Defendant is engaged in the conduct of "trade or commerce" within the meaning of § 501.203(8), in that she provides and offers certain services and things of value, as set forth herein.

36.  Defendant engages in commerce through the economic boycott that she conducts against Scientologists, businesses that employ Scientologists, and those businesses that refuse to sign her "sect filter."

37.  Through offering and providing her "sect filter," including in the State of Florida, as a condition of doing business in Germany, defendant offers and provides a service and things of value to individuals and businesses; that is, the benefit and professional opportunity to do business with the government of the City of Hamburg and with other German businesses that comply with defendant's "sect filter," and the avoidance of economic sanctions – including commercial boycotts, individual firings, and the disruption and destruction of business relations with persons, businesses, and governments in Germany, as set forth in paragraphs 10-14 above.

38.  Defendant further advertises and solicits the use of her services or things of value through her promotion, including in the State of Florida, of the use of her "sect filter" as the pre-condition for engaging in trade or commerce in Germany with her employer – the City of Hamburg – and other German individuals, businesses, and

governments.

39. Defendant has further offered and provides her services to certain anti-Scientologists in the United States, including in the State of Florida, in exchange for cash payments and other economic opportunities from Minton and/or LMT, Inc., to promote the use of her "sect filter," to undertake lectures and press conferences for a fee and/or economic benefit and to promote and to engage in economic boycotts of Scientologists and businesses that would do business with Scientologists, as set forth in paragraphs 15-17, above.

40. Defendant conducts her commercial activities, particularly her promotion and solicitation of her "sect filter," with the intent of economically harming Scientologists throughout the world, including in the United States and the State of Florida, and with the knowledge and expectation that she will cause economic harm to Scientologists, including Scientologists located in the State of Florida.

41. Targeting Scientologists, including plaintiff, with defendant's "sect filter" both in the State of Florida and in Germany and the introduction of defendant's "sect filters" into the United States and the State of Florida for the purpose of discriminating based on a person's religious beliefs, in order to harm the person in their business activities constitutes an unfair method of competition, and/or an unconscionable act or practice, and/or an unfair or deceptive act or practice in the conduct of trade or commerce, within the meaning of Chapter 501, Florida Statutes.

42. Florida Statutes § 501.211(1) provides, "without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to

13

enjoin a person who has violated, is violating, or is otherwise likely to violate this part."

43.  Florida Statutes § 501.211(2) provides that "in any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such consumer may recover actual damages, plus attorneys' fees and court costs . . . ."

44.  As a result of these unfair, unconscionable, and deceptive acts and practices by Caberta, in violation of Chapter 501, Florida Statutes, plaintiff has suffered a loss in the conduct of his legitimate business activities, as set forth in paragraphs 18-22, above, and is entitled to his actual damages, plus attorneys' fees and court costs.

### COUNT III
### CONSPIRACY TO DEPRIVE PLAINTIFF
### OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. §1985(3)

45.  Plaintiff repeats and realleges paragraphs 1 - 44 above.

46.  Defendant Caberta has conspired with numerous individuals, corporations, and government entities, known and unknown, including POS, and individuals in the United States, including Robert Minton, Stacy Brooks, Jesse Prince, Kennan Dandar, and LMT, Inc., to interfere with and deprive, both directly and indirectly, plaintiff and other individual Scientologists as well as United States businesses of the equal protection of the laws, or of equal privileges and immunities under the laws, by interfering with and depriving them of the opportunity to engage in interstate and international commerce based upon their religious beliefs and practices.

47.  Defendant Caberta has entered into and undertaken to carry out said conspiracy on the basis of class based animus against adherents to and followers of the Scientology religion, against churches of Scientology, and against the Scientology religion.

14

48.   Pursuant to said conspiracy, defendant Caberta has engaged in the overt acts alleged above.

49.   Pursuant to said conspiracy, co-conspirator POS has engaged in the overt acts alleged above, including requiring plaintiff and RTI to sign a "sect filter," which would constitute an illegal boycott and illegal discrimination under the laws of the United States.

50.   As a result of said conspiracy, plaintiff has been injured in the manner set forth above, and in an amount to be determined by a jury.

51.   As a result of said conspiracy, plaintiff faces the substantial likelihood of suffering continuing, ongoing, and significant damage to his business, to his ability to engage in interstate and international commerce, and to his rights to the free exercise of religion, due process of law, and the equal protection of the laws.

## COUNT IV

## ALIEN TORT CLAIMS ACT

52.   This is a count for violation of the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350.

53.   Plaintiff adopts and realleges the allegations of paragraphs 1 through 51, above.

54.   ATCA provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."

55.   Plaintiff is an alien, residing in the United States, who has been subjected to the tort of systematic religious discrimination, committed by defendant Caberta in violation of the law of nations.

15

56.  Defendant is amenable to suit under ATCA, in that, acting as an official of the government of the City of Hamburg, Germany, and under color of law (albeit acting outside and beyond the scope of her lawful authority and beyond her official capacity under, and *ultra vires* of, Hamburg, German, and international law), she has engaged, and continues to engage, in systematic religious discrimination against Scientologists generally, and plaintiff Heller in particular, through her use, advocacy and promotion of her "sect filter" and her economic boycott of Scientologists and businesses that employ Scientologists.

57.  Religious discrimination, as engaged in by defendant Caberta, is a tort committed in violation of the law of nations, as universally recognized in international human rights norms, conventions, declarations, and commentary, including, and without limitation, Articles 2, 18, 19, 23 of the Universal Declaration of Human Rights, adopted and proclaimed by United Nation's General Assembly Resolution 217A (III), of December 10, 1948; Articles 1, 13, 55 of the Charter of the United Nations, effective October 24, 1945; Articles 2, 18, 19, 26, 27 of the International Covenant on Civil and Political Rights, adopted December 16, 1966; Articles 2, 6 of the International Covenant on Economic, Social and Cultural Rights, adopted December 16, 1966; Articles 9, 10, 14 of the European Convention on Human Rights, adopted November 4, 1950; Articles 3, 44, 105 of the Charter of the Organization of American States, adopted 1948 (as amended); Articles 1, 12, 13, 16, 24 of the American Convention on Human Rights, dated July 18, 1978; the Declaration on the Elimination of All Forms of Intolerance and of Discrimination Based on Religion or Belief, United Nations General Assembly Res. 36/55, November 25, 1981; and *Restatement of the Law (Third), Foreign Relations Law*

16

*of the United States,* § 702(f), (g); *id.* cmt. j, m; *id.* Reporters' Note 8.

58. As a result of Caberta's tortious conduct, committed in violation of the law of nations, Heller has been damaged and suffered economic losses in the conduct of his legitimate business activities.

WHEREFORE, plaintiff demands:

1. An award of compensatory damages exceeding the sum of $75,000, exclusive of interest and costs;

2. Punitive damages in an amount to be determined at trial;

3. An award of plaintiff's reasonable attorneys fees pursuant to Florida Statutes, Section 501.2105 and 42 U.S.C. § 1988.

4. An award of prejudgment interest, plus court costs;

5. For a declaratory ruling that defendant's conduct violates Florida Statutes 501.201 et seq., and 42 U.S.C. § 1985.

6. A permanent injunction prohibiting defendant from engaging in the unfair, deceptive and unconscionable trade practices alleged herein; and

7. Such other and further relief as to the Court may appear just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 8, 2001                    Respectfully submitted,

Kendrick Moxon
Helena Kobrin

17

FBN #: 0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
(727) 443-5620

F. Wallace Pope, Jr.
FBN #: 124449
JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818

**Attorneys for Plaintiff**

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing **SECOND AMENDED**

**COMPLAINT AND DEMAND FOR JURY TRIAL** to be served on this 8th day of

January 2001, by U.S. Mail, to the person on the below Service List.

_____
Attorney

## **SERVICE LIST**

John Merrett
2716 Herschel Street
Jacksonville, Florida 32205
**Attorney for Ursula Caberta**

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER, an individual,

      Plaintiff,

v.                              Case No. 8:00 CV-1528-T-27C

URSULA CABERTA, an individual,

      Defendant.

_____/

**SECOND SET OF INTERROGATORIES
TO DEFENDANT**

Plaintiff, Hubert Heller, through his undersigned attorneys, demands that defendant, Ursula Caberta, pursuant to Rule 33, Federal Rules of Civil Procedure, respond to the following interrogatories within thirty (30) days:

3. Identify all funds and/or valuables received from Robert Minton or any agent of Robert Minton, including the amount and date of receipt of such money or valuable.

Dated: May 17, 2001                  Respectfully submitted,

                                    _____
                                    Kendrick Moxon
                                    MOXON & KOBRIN
                                    1100 Cleveland Street, Suite 900
                                    Clearwater, Florida, 33755
                                    Telephone: (727) 443-5620

1

Facsimile: (727) 443-5640

Wally Pope
JOHNSON, BLAKELY, POPE,
BOKOR, RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818

**Counsel for plaintiff**
**Hubert Heller**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing SECOND SET OF

INTERROGATORIES TO DEFENDANT to be served on this 17th day of May 2001, by

Telefax and U.S. Mail, First Class, postage prepaid, to John Merrett, 716 Herschel Street,

Jacksonville, Florida 32205.

_____
Attorney

3

Exhibit
3

**MOXON & KOBRIN**
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON *
HELENA K. KOBRIN ⁰
AVA PAQUETTE +

─────────

* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

⁰ ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

OF COUNSEL
─────────
JEANNE M. GAVIGAN +

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA  90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

June 20, 2001

**VIA TELEFAX & U.S. MAIL**

John Merrett
2716 Herschel Street
Jacksonville, Florida 32205

Re:  *Heller v. Caberta*

Dear Mr. Merrett:

Defendant's responses to plaintiff's Second Set of Interrogatories to Defendant are overdue.

This letter constitutes an attempt to informally resolve this matter without the need for a motion to compel.  Please respond today.

As a further matter, while representing that Caberta will appear in Germany for her deposition, you have also failed to give me dates for the deposition.  Again, let us avoid motion practice and just give me the dates.

Sincerely,

Kendrick L. Moxon