

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER, an individual,

        Plaintiff,

    v.                               Case No. 8:00 CV-1528-T-27C

URSULA CABERTA, an individual,

        Defendant.

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER

### I - INTRODUCTION

On June 5th, the District Court affirmed this Court's Order that defendant be required to appear in this district for the deposition she had avoided for more than eight months. However, the District Court allowed her a final option of electing to appear in Germany in the short time remaining before the discovery cut off. She so elected.

Defendant thereafter has continued to engage the plaintiff in the very expensive game of delay, obstruction and confusion she has perpetuated for many months, apparently hoping to defeat plaintiff through attrition of resources and will. Defendant's instant motion repeats issues already resolved before this Court in the presence of defendant's German counsel and U.S. counsel and no longer has the patina of good faith.



For a period of two weeks in which plaintiff sought convenient dates from defendant for the taking of her deposition, defendant declined to communicate what dates might be convenient or to assist or cooperate in the slightest manner in setting the deposition. Finally, on June 27th, after five letters had gone unanswered, plaintiff noticed the deposition for July 25th and 26th in defendant's home town of Hamburg. Defendant continued to offer no objection to the date, but complained only that the deposition should be but one day long.

Meanwhile, expensive and laborious logistical exercises were undertaken by plaintiff to arrange the necessary diplomatic approvals through the American Embassy and German agencies; retain and pay one of the few court reporters working in Germany with a non-refundable advance; retain and agree to pay a large retainer to one of the few interpreters working in the Hamburg area at this time; and arrange plaintiff's counsel's schedule to make the expensive and time consuming trip to Germany for the deposition.

Then only after this Court ordered on July 17th that the deposition would be held on two full days – July 25th and 26th, did defendant assert the dates were inconvenient, and declined to appear. Her offered alternatives were one two-hour slot on July 23rd, or a single day on July 30th. When these maddening "alternatives" were rejected by plaintiff, defendant sought an emergency motion for protective order, and both her U.S. counsel and her German counsel appeared via telephone to argue the matter. At that time, plaintiff urged the difficulties involved in scheduling the deposition, the costs, the failure of defendant to communicate, and the pending discovery cut off, but nevertheless offered Caberta the alternative of paying for the costs incurred by plaintiff brought about solely by her conduct and simply taking the

2

deposition in Florida as this Court had previously ordered. Defendant did not deny she was the cause of the problem she faced, but eschewed plaintiff's offer to come to Florida and asserted she needed to attend a conference in Berlin on those two days and did not wish to appear, offering no viable alternative.

Based on representations by defendant's German counsel, Mr. Hintze, that the trip from Berlin to Hamburg was but 1 ½ hours, the Court ruled that Caberta must return to Hamburg by 2:00 p.m. on the 25th, thus providing her several hours at her conference, and allowing her to avoid the trip to Florida.

Defendant's next move was to retain new co-counsel to try again with another motion served at the close of business on July 23rd, making the identical arguments made by his co-counsel, but in the process inaccurately stating the history of the matter and inaccurately representing the Court's ruling. Worse, defendant's new "solution" is no solution at all, and virtually shuts out plaintiff from taking the deposition at all.

Defendant's motion to vacate this Court's ruling of July 20, 2001 should be denied, and defendant ordered to pay the reasonable attorneys' fees arising out of this latest round of motions. In the alternative, defendant may be provided one final election: either appear as ordered, or pay the entirety of plaintiff's costs incurred in the aborted German deposition, reasonable attorneys' fees in arguing the last two motions and making the trip to Germany, and appear in Florida within 20 days for her deposition.

## II – STATEMENT OF FACTS

### A. The Initial Discovery Order

In her two motions to dismiss denied by this Court, Ms. Caberta argued that she

3

acted at all material times in her capacity as the so-called "sect commissioner" of the city of Hamburg, Germany and within the scope of her alleged authority in performing the torts alleged in the Complaint, and is therefore immune from suit pursuant to the Foreign Sovereign Immunities Act. In fact, defendant has no official authorization for the commercial and social boycotts she has created and fostered against plaintiff and members of his religion, and the results of her work have been condemned by the U.S. State Department, the U.S. Trade Representative, and international human rights bodies. German courts have found that the "sect filter" Ms. Caberta created to identify Scientologists for public and private discrimination, have specifically violated the rights of German citizens.

By Order dated December 16, 2000, this Court granted in part and denied in part defendant's motion to dismiss the First Amended Complaint, finding that the defendant's claims of immunity under the Foreign Sovereign Immunities Act were overcome by the allegations in the Complaint. The Court dismissed the state law claims without prejudice, giving leave to amend.

Plaintiff filed a Second Amended Complaint, re-pleading the state law claims. Ms. Caberta filed a further motion to dismiss, submitting affidavits of both herself and her direct superior in Hamburg, Willi Beiss, addressing the alleged scope of Ms. Caberta's employment and duties. (Exs. 1 & 2.) By Order dated February 15, 2001, this Court denied defendant's second motion to dismiss, denied the defendant's second motion to stay discovery, and gave leave to plaintiff to conduct discovery, "limited to the FSIA issues and this Court's exercise of jurisdiction over Defendant." (Ex. 3, at 5.)

### B. Plaintiff's Attempts to Acquire Deposition Discovery

The history of many months of attempts by plaintiff to acquire Ms. Caberta's deposition is filled with numerous efforts by Caberta to impede any actual testimony. This history, including each letter and communication, was set forth in the plaintiff's opposition to Caberta's unsuccessful Objection to vacate this Court's deposition Order, filed by plaintiff on April 30, 2001. (Docket Number 67.)   Other than the following brief summary, plaintiff will not here repeat the cumbersome details of this history of attempts to acquire Ms. Caberta's deposition prior to the instant dispute, but respectfully refers the Court to such papers and the exhibits referenced therein, which document the extraordinary efforts of plaintiff to informally arrange the deposition over the past 9 months, and the extraordinary efforts of defendant to prevent the deposition.

A summation of those prior efforts is:  plaintiff offered several times to go to Germany to take Ms. Caberta's deposition as a courtesy to the witness and to expedite discovery.   A deposition in Germany can *only* be accomplished by the voluntary appearance of the witness, and then held at the American Embassy.   Defendant's counsel declined for months, after which a motion to compel was filed on March 6, 2001.   Thereafter, defendant "agreed" to appear in Germany.   However, the date offered by defendant for her appearance left insufficient time to arrange the deposition through the U.S. Embassy, which required a minimum of 3 weeks lead time.   The purported agreed upon date of the deposition was therefore canceled by plaintiff and later dates were sought from Ms. Caberta's counsel.   Caberta then made it clear that her alleged "agreement" to testify meant only that she would testify to the extent her purported superior allegedly permitted her to testify, and that she would not

5

necessarily provide *any* actual answers to deposition questions.  Then, rejecting several attempts by plaintiff to re-schedule, defendant notified plaintiff and the American Embassy that she refused to appear at all.   Plaintiff therefore acquired an Order dated March 29, 2001 compelling the deposition.

Thwarted after months of obstruction in attempting to acquire Ms. Caberta's deposition in Germany, plaintiff thereafter noticed her deposition in this district.  Ms. Caberta failed to appear and after her no show, filed an Objection attempting to vacate this Court's Order of March 29th.   Plaintiff cross-moved to compel her deposition.

Following review of these lengthy papers and more than 45 exhibits, in its Order of May 8, 2001, this Court found that it was factually and legally appropriate for the defendant to come to this district for her deposition, and denied plaintiff's request for evidentiary sanctions without prejudice, noting that it was providing an additional 20 days to Ms. Caberta to comply. (Ex. 4, at 6 & 7.)  Defendant filed an Objection to the Order.

While affirming this Court's Order, Judge Whittemore *sua sponte* also ruled on June 5, 2001, that Ms. Caberta would be permitted to elect to have her deposition taken in Germany, if , within 10 days, she formally agreed to appear.  While giving Ms. Caberta additional time to appear in Germany, he ordered that she do so within 45 days of the Order, and also set a discovery cut-off for July 31st.   Defendant waited the full 10 days to respond, indicated she wished to appear in Germany, and asked for plaintiff's available dates. (Ex. 5.)  Plaintiff immediately responded by letter faxed to defendant's counsel on June 15, 2001 stating:

> As you have been informed, the Embassy requires
> 3 weeks lead time on scheduling depositions in Germany.
> I can be available between the 12th and the 25th of July for
> the deposition of your client.  Two consecutive days must

be set aside in light of Ms. Caberta's alleged need for a
translator.

Please select two consecutive week days within this
time period so I can make the necessary arrangements.

(Ex. 6.)

No response was received to this letter, so a nudge was faxed on June 19th,

stating:

You have failed to respond to my letter of June 15,
2001, seeking dates for Caberta's deposition in Germany.

As you know, the Embassy requires 3 weeks lead
time on scheduling depositions in Germany. I have also
freed up July 11th in addition to the dates I offered in my
last letter, but must know today which two consecutive
days to set aside so the embassy and the translator can be
arranged.

(Ex. 7.)

On June 20th, a further nudge was sent to defendant's counsel, stating:

As a further matter, while representing that Caberta will
appear in Germany for her deposition, you have also failed
to give me dates for the deposition. Again, let us avoid
motion practice and just give me the dates.

(Ex. 8.)

On June 22nd, plaintiff's counsel wrote again to Mr. Merrett, stating:

[O]ver a week ago you informed me that Ms. Caberta
would agree to appear in Germany. Despite three letters,
you have, however, failed to indicate *when* she would
appear, thus preventing any arrangements from being
made with the Embassy. My options are to either: 1)
schedule the deposition at my convenience; or 2) file a
motion to require you to meet your responsibilities; or 3)

7

> you could just give me the dates.   If I don't hear from you
> by Monday, June 25, I will pursue option numbers 1 or 2.

(Ex. 9.)

Hearing again no response, a notice of deposition was sent on June 27th,

noticing the deposition for July 25th and 26th.  These dates were, strictly speaking,

already beyond the time period set by the District Court for the taking of Ms.

Caberta's deposition, but her procrastination of providing any dates at all, and the

need for a minimum of three weeks lead time with the Embassy and scheduling

problems with the interpreter and court reporter, left no option.  The dates were still

within the discovery cut off imposed by the District Court.

A formal request was sent to the Embassy in Germany for the deposition on

June 28, 2001, with a copy to defendant's counsel, and setting the dates for the

deposition at July 25th and 26th as noticed and served.  (Ex. 10.)  The logistics involved

in retaining a court reporter and interpreter were complex and time consuming, as very

few court reporters exist in Germany and both reporters and interpreters are very

much in demand and book events weeks or months in advance.  Interpreters and court

reporters are thus able to demand non-refundable retainers for their work, or

obligations to pay a fixed and substantial rate.[1]  Plaintiff's counsel therefore waited

several additional days after the notice of deposition was served in the event that the

notice might spur defendant to file another motion for protective order or some

_____

[1] Plaintiff is obligated to pay the interpreter a daily rate of $903 for each of the two
days of the deposition, whether the deposition goes forward or not.  The Court
reporter has already been paid a non-refundable advance of $690, booked his hotel
and paid travel expenses of approximately an additional $750.

informal objection to the date of the deposition, and in consideration of the expense involved in their retention. After several days and no objection having been received to the noticed deposition dates, the court reporter and interpreter were accordingly retained at virtually the last possible time they could be booked.

On July 16th, the Embassy in Germany forwarded a letter from Ms. Caberta objecting to the dates of the deposition stating only that the deposition would have to be held on a later date. (Ex. 11.) Plaintiff's counsel immediately faxed a letter to defendant's counsel on July 16th, stating the deposition cannot be changed at this late date. (Ex. 12.) Counsel spoke by telephone and attempted to reach an agreement on new dates if it was possible, but this attempt continued to be hindered by Ms. Caberta. (Ex. 13, Letter of July 17th.) Plaintiff attempted to work out other contingencies on the 18th, and a number of letters were exchanged with Caberta's counsel on this date. (Ex. 14.) Further attempts to re-schedule the deposition were, however, fruitless, as it was logistically too late to move the deposition and Ms. Caberta continued to make only illogical and essentially useless offers. (Ex. 15, Moxon letter of July 19th.)

Thus, Ms. Caberta's counsel agreed that the scheduled dates were the only remaining possibility, and stated he would appear on July 25th and 26th, and so informed his client. (Ex.16, Merrett letter of July 19th.)

Nevertheless, Caberta's German counsel continued to write to the State Department, and on the morning of July 20th, "offered" at that late date, a total of two hours for her deposition on July 26th. (Ex. 17.) The same letter indicated that Ms. Caberta was otherwise occupied on July 27th. Plaintiff's counsel contacted Ms. Caberta's attorney and rejected the sideways offer referred from the State Department,

9

precipitating the emergency motion heard by this Court on July 20th.  At that hearing,

defendant's American attorney John Merrett and her German attorney Mr. Hintze,

argued that she was busy at a planned conference in Berlin and sought to cancel the

deposition.  Plaintiff offered that the deposition could proceed in Florida if defendant

paid minimal costs incurred in arranging the deposition, but did not even seek

attorneys' fees.  Ms. Caberta's counsel declined that offer, and this Court orally ruled

that since the burden of missing part of her conference was far less than coming to

Florida, and since Mr. Hintze represented to the court that she could come back to

Hamburg in only 1 ½ hours on a high speed train,[2] and since it was Ms. Caberta's

doing that caused the situation, she must appear at 2:00 p.m. on the 25th in Hamburg,

continue as late as practicable that day, and begin at 9:00 a.m. or as early as possible

on the 26th in Hamburg to complete the deposition by 5:00 p.m. when the plaintiff's

court reporter must leave.  Mr. Moxon and Mr. Merrett spoke by telephone, at which

time each indicated they would be leaving for Europe the following morning, and

exchanged telephone numbers where they could be reached.

At approximately 4:45 p.m. on July 20th, Robert Merkle entered an appearance

for Ms. Caberta, faxed to plaintiff's counsel.  After 5:30 p.m., Mr. Merkle and Mr.

Moxon spoke by telephone.  Mr. Merkle asserted that the Court did not understand the

matter and had not been told that defendant had a conference to attend in Berlin.  He

demanded the deposition be moved to 3:00 p.m. on the 26th, and left open a vague

possibility of continuing on the 27th.  He asserted that he would file a motion for

_____

[2]  A trip, defendant's counsel claims, is only one hundred and thirty kilometers (85 miles).

protective order which would automatically prevent the issuance of sanctions for his new client's non-appearance.  Plaintiff refused to consider any further changes and Mr. Merkle eventually hung up in anger, saying he would file a motion for protective order on Monday.  A further letter was sent to Mr. Merkle citing appropriate authority that the motion for protective order did not stay the deposition or give immunity from sanctions. (Ex. 18.)

Mr. Merkle's promised motion for protective order arrived by fax after 5:00 p.m. at plaintiff's counsel's Florida office on July 23rd, and was forwarded immediately to plaintiff's counsel already in Germany, arriving near midnight. [3]

### III – ARGUMENT

The emergency motion inaccurately sets forth numerous issues and is internally contradictory in important respects.  First, Mr. Merkle, who was not present for the hearing, inaccurately asserts that this Court ordered the deposition to start at 2:00 p.m. on the 25th, *and* 2:00 p.m. on the 26th.  (¶ 1.)  In fact, the Court ordered the deposition to begin at 2:00 p.m. on the 25th,  to continue as long as possible, and to resume on the early morning of the 26th so it could have a chance of completion.

The assertion that Ms. Caberta is "enforcing German law with respect to the Church of Scientology" is also simply wrong. (¶ 4.)  There is literally no law in Hamburg or elsewhere in Germany which authorizes Ms. Caberta – who is an

---

[3]  In order to provide this Court with the accurate history of this matter, the instant memorandum is literally being drafted in the middle of the night by plaintiff's counsel from Germany, where he has come pursuant to the June 27, 2001 notice of deposition, this Court's Orders of May 8, 2001, July 13, 2001, July 17, 2001, and July 20, 2001 and the District Court's Order of June 5, 2001.

administrative officer – to enforce any law, a function performed in Germany by police and district attorneys.   She is the cause of international flaps regarding violations of the rights of Scientologists.  Indeed, the deposition is being taken to find out how she can even *allege* she operates under any governmental authority. Moreover, while several states have similar persons who provide public and derogatory *opinions* about the Scientology religion, it is untrue that there are comparable positions in every German state and defendant provides no evidence for this assertion.  Similarly, the assertion that defendant serves directly under the Interior Minister is incorrect.   There are actually several echelons between her and the Minister.  Also, the assertion that the attendees of the conference are "ministers" of German states (¶¶ 5 & 6), is a gross exaggeration.  No minister level employees were invited to the conference.

Indeed, the conference is actually only promoted as literally a "talking circle" of several persons invited to attend. (Ex. 19, Declaration of Ingo Lehmann.)  The assertion that the conference is mandatory is also inaccurate, as the only form produced under a Freedom of Information Act request in one of the German states, indicates that the conference is entirely voluntary. (*Id.*)

Moreover on the merits, the emergency motion is a mere re-argument of the identical issue presented to this Court on July 20th: Ms. Caberta's alleged scheduling conflict because she seeks to attend the "talking circle" meeting for the entirety of the two days it is scheduled.  This Court was aware of that assertion when it made the ruling permitting her the entire morning on the 25th to do so.

Ms. Caberta has contumaciously refused to obey the Court's Order, resulting in

the destruction of time, energy and funds manifested by the latest motion.  The motion should not have been filed.  With all due respect to new counsel, he did not get the facts straight, declined to be educated on those facts, and is the most recent in the line of attempts to thwart the deposition of Ms. Caberta.

Finally, the "offer" now made by defendant is vague and useless.  The most that can be said of the offer is that Ms. Caberta will appear *sometime* on the afternoon of the 26th.  The motion asserts that Caberta will appear for her deposition on the 26th at 2:00 p.m. (¶ 13), yet also claims Caberta will leave Berlin at 1:00 p.m. at the earliest, for a trip American counsel now represents will take 3 hours. (¶ 9.)  Mr. Hintze, who presumably knows better, represented to the court that the trip was only 1 ½ hours, but in any event, she will not leave the conference in Berlin at 1:00 p.m., get a train and be in the deposition at the consulate at 2:00 p.m.  Defendant also asserts she will thereafter on the 26th  "remain," but no representation is made that she will "remain" through the 27th.

Defendant's representation that counsel will "assist" in obtaining a translator for some unspecified time, presumably the 27th, is also hollow, having not apparently made any attempt to do so prior to filing the motion and making no representation that he can offer anything other than hope.  In any event, interpreters and reporters are *not* available on the 27th,  plaintiff's counsel has non-refundable tickets to leave then, is otherwise engaged on the evening of the 27th and the 28th in the States, and the consulate office is also not scheduled then.

In the emergency motion plaintiff admits she is entirely at fault in this matter (¶ 16), and on that single issue there is no dispute. The emergency motion should be

rejected and Caberta required to comply with the existing Order.  Moreover, defendant should be sanctioned in the reasonable amount of the attorneys' fees expended by plaintiff's counsel in preparing the instant opposition, in the amount of at least the 6 hours expended on the opposition at the rate of $250/hour.

In the alternative, Ms. Caberta can be provided one last option.  That option is to pay the entirety of the costs incurred by plaintiff and plaintiff's counsel in traveling to Germany for the deposition, the reporter fees, interpreter fees incurred, as well as reasonable attorneys' fees for the aborted trip and time lost.  *And*, as a necessary element of this option, Ms. Caberta should be ordered to comply with the Court's prior Order to appear in this district, having effectively negated her prior acceptance of a deposition in Germany.

## IV – CONCLUSION

For the reasons stated above, defendant's Emergency Motion should be denied, and Ms. Caberta ordered to appear for deposition forthwith, and to pay $1,500 in fees to plaintiff's counsel.

In the alternative, if Ms. Caberta is serious about her conference, she should be ordered to comply with the Court's prior Order to appear in this district for her deposition, and pay the entirety of the costs incurred by plaintiff and plaintiff's counsel in traveling to Germany for the deposition, the reporter fees, interpreter fees incurred, as well as reasonable attorneys' fees for the aborted trip and time lost, in

an amount to be determined.

Dated: July 24, 2001                    Respectfully submitted,


Kendrick L. Moxon
Helena Kobrin
FBN #:  0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL  33755
(727) 443-5620

F. Wallace Pope, Jr.
FBN #:  124449
JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla.  33757
(727) 461-1818

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER** to be served on this 24TH day of July, 2001, by TELEFAX (WITHOUT EXHIBITS) & U.S. MAIL to John Merrett, 2716 Herschel St., Jacksonville, FL 32205; and by HAND DELIVERY to Robert Merkle, Merkle & Magri, P.A., 5510 West LaSalle St., Tampa, FL 33607.

_____
Attorney

.

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

HUBERT HELLER,

                  Plaintiff,      Case No.: 8:00-CV-1528-T-27C

vs

URSULA CABERTA,

                  Defendant.

## SECOND AFFIDAVIT OF URSULA CABERTA

COMES NOW Ursula Caberta, appearing for the purpose of contesting jurisdiction and seeking dismissal of this action and no other, and says:

1. She is the named defendant in the above-styled action.

2. She is a citizen and resident of Germany, and an employee of the government of Hamburg, Germany.

3. Her duties as an employee of the government of Hamburg, Germany are focused on the protection of legitimate businesses and other lawful entities from infiltration or other attack by Scientology and Scientologists, and her duties include

    A) the development and distribution of the Hubbard Declaration[1]; and

    B) the distribution of information concerning the character, nature, and activities of Scientology, which is not recognized as a religion in Germany, but is characterized as a totalitarian political and/or profitmaking enterprise.

4. All her activity concerning the Hubbard Declaration, including development and distribution of the Declaration, has been in her capacity as an employee of the

---

[1] This is the document described by Plaintiff as a "sect filter."

government of Hamburg, Germany, and has been within the course, scope and authority of her employment by the government of Hamburg, Germany.

5. All her activity, communication and pronouncements concerning Scientology and Scientologists, directed to businesses and other entities headquartered in or doing business in Germany, including the dissemination of the Hubbard Declaration, has been within the course, scope and authority of her employment of the government of Hamburg, Germany.

_____
URSULA CABERTA


BEFORE ME, the undersigned authority, personally appeared URSULA CABERTA, who presented _____ as identification, and who did take an oath and said that the foregoing statements true and correct.

_____
OFFICER ADMINISTERING OATH



`

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

HUBERT HELLER,

        Plaintiff,    Case No.: 8:00-CV-1528-T-27C

vs

URSULA CABERTA,

        Defendant.

————————————————

AFFIDAVIT

COMES NOW     __Willi Beiß__   , and says:

1. I am an employee and an official of the government of Hamburg, Germany.

2. Ursula Caberta is employed under my supervision by the government of Hamburg, Germany.

3. Ursula Caberta's duties as an employee of the government of Hamburg, Germany are focused on the protection of legitimate businesses and other lawful entities from infiltration or other attack by Scientology and Scientologists, and her duties include

    A) the development and distribution of the Hubbard Declaration; and

    B) the distribution of information concerning the character, nature, and activities of Scientology, which is not recognized as a religion in Germany, but is characterized as a totalitarian political and/or profitmaking

enterprise.

4. Ursula Caberta's activity concerning the Hubbard Declaration, including development and distribution of the Declaration, has been in her capacity as an employee of the government of Hamburg, Germany, and has been within the course, scope and authority of her employment of the government of Hamburg, Germany.

5. Activities including but not limited to communication and pronouncements concerning Scientology and Scientologists, directed to businesses and other entities headquartered in or doing business in Germany, including the dissemination of the Hubbard Declaration, is within the course, scope and authority of Ursula Caberta's employment by the government of Hamburg, Germany.

6. It is Ursula Caberta's job with the government of Hamburg to disseminate to businesses and other entities headquartered in or operating in Germany information concerning the following aspects of Scientology, which have been determined by the government of Hamburg, Germany to be accurate:

A) Scientology is not a religion;

B) Scientology is an organization which seeks and obtains control over the minds of its adherents;

C) Members of the Scientology organization have been repeatedly convicted of criminal activity, for example, in Germany, France and the United States (U.S. v Mary Sue Hubbard).

7. It is Ursula Caberta's job with the government of Hamburg, Germany to

make the Hubbard Declaration available to businesses and other entities

headquartered in or operating in Germany.

8. It is Ursula Caberta's job with the government of Hamburg, Germany to

take such other actions as appear to her to be necessary to assist businesses

and other entities headquartered in or operating in Germany to avoiding

infiltration of themselves or harm to their employees by Scientology or

Scientologists.


_W. Ill. Leil_
SIGNATURE OF AFFIANT


BEFORE ME, the undersigned authority, personally appeared _Leitender Regierungsdirektor_

_Willi Beiß_ who presented _Identity Card Nr._ _25 130 766 4828_ as

identification, and who did take an oath and said that the foregoing

statements true and correct.

_Volker Schick, Senatsdirektor_
OFFICER ADMINISTERING OATH

Freie und Hansestadt Hamburg
Behörde für Inneres
Amt für Innere Verwaltung und Planung
Johanniswall 4, 20095 Hamburg

# EXHIBIT 3

FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

01 FEB 16 AM 10: 01

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

**HUBERT HELLER,**

           **Plaintiff,**

**vs.**                                  **Case No. 8:00-CV-1528-T-27EAJ**

**URSULA CABERTA,**

           **Defendant.**
_____/

### ORDER ON DEFENDANT'S SECOND MOTION TO DISMISS

      **THIS CAUSE** came on to be considered on Defendant's Second Motion to Dismiss for Lack

of Jurisdiction Under the Federal Sovereign Immunities Act (Dkt. 42). The Court having reviewed

said motion and being otherwise fully advised in the premises, finds as follows:

      Plaintiff has filed a Second Amended Complaint ("Complaint") (Dkt. 40) asserting causes

of action for tortious interference with advantageous business relationships (Count I), unfair and

deceptive trade practices (Count II), conspiracy to deprive Plaintiff of civil rights in violation of 42

U.S.C. § 1985(3) (Count III), and violation of the alien tort claims act, 28 U.S.C. § 1350 (Count IV):

Factually, Plaintiff alleges that Defendant is an employee of the City of Hamburg, Germany and is

the head of the Hamburg, Germany task force designed to disrupt the business activities, civil rights

and human rights of the members of the Scientology religion. (Dkt. 40, ¶¶ 2, 7). Plaintiff alleges

that Defendant created, advocates, promotes and disseminates "sect filters" or "Hubbard

Declarations" that require individuals and companies to declare in writing:

      (1) That they do not use the technology of L. Ron Hubbard;
      (2) That they are not trained and do not participate in the technology of L. Ron
      Hubbard; and



(3) That they reject the technology of L. Ron Hubbard.

(Dkt. 40, ¶ 9). Plaintiff further alleges that in creating and disseminating the "sect filters," Defendant acted outside the scope of her lawful authority as an employee of the City of Hamburg, Germany and "persecuted members of the Scientology religion" interfered with Defendant's established advantageous business relationships and utilized unfair trade practices.  (Dkt. 40, ¶¶ 23-26, 35).

Defendant moved to dismiss the Complaint on the grounds that since she acted in her official capacity when creating and disseminating the "sect filters" or "Hubbard Declaration," she is immune from suit under the Federal Sovereign Immunities Act, 28 U.S.C. § 1603, *et seq*. and that no exception to sovereign immunity applies.  (Dkt. 42).

The Federal Sovereign Immunities Act ("FSIA") is the exclusive source of subject matter jurisdiction over all civil actions against foreign states. Alejandre v. Telefonica Larga Sistancia De Puerto Rico, Inc., 183 F.3d 1277, 1282 (11th Cir. 1999).  Pursuant to the FSIA, an employee of a foreign state who is acting in her official capacity may be immune from suit unless an exception in 28 U.S.C. § 1605 applies. Chuidian v. Philippine National Bank, 912 F.2d 1095 (9th Cir. 1990).

When a Plaintiff asserts facts suggesting that an exception to the FSIA applies, the Defendant bears the burden of proving by a preponderance of the evidence that no exception applies. Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279 (11th Cir. 1999); Meadows v. Dominican Republic, 817 F. 2d 517 (9th Cir. 1987).  The Defendant must first produce evidence to establish that a foreign state is named in the lawsuit and that the Plaintiff's claims relate to public acts of the foreign state. Meadows, 817 F.2d at 522; Kline v. Kaneko, 685 F.Supp. 386 (S.D. N.Y. 1988). Once Defendant produces prima facie evidence of immunity, the burden of going forward shifts to the Plaintiff to produce evidence establishing that the foreign state is not entitled to immunity.

2

Meadows, 817 F.2d at 522.

Courts considering motions to dismiss are usually confined to reviewing the four corners of the complaint. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). However, when a movant factually attacks the complaint and challenges the existence of subject matter jurisdiction, the district judge may rely on affidavits as well as the pleadings. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990); Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir. 1990); Kline, 685 F.Supp. at 389. The district court must accept the facts alleged in the complaint as true to the extent that they are uncontroverted by the defendant's affidavits. Cable/Home Communication Corp., 902 F.2d at 855. When the evidence conflicts, the district court must itself evaluate the merits of the jurisdictional claims. Lawrence, 919 F.2d at 1529.

Here, Defendant alleges in her affidavit that she acted in her official capacity as an employee of the government of Hamburg, Germany when she disseminated the "Hubbard Declaration." (Dkt. 43, pgs. 3-4). Defendant's employer has also submitted an affidavit stating that Defendant's actions in developing and distributing the "Hubbard Declaration" were performed as part of her job responsibilities in her capacity as an employee of the government of Hamburg, Germany. (Dkt. 43, pgs. 5-6).

Plaintiff alleges in response that Defendant was acting outside the scope of her employment with the government of Hamburg, Germany. (Dkt. 40, ¶ 2). Plaintiff has submitted an affidavit from Alexander Petz, an attorney practicing in the Federal Republic of Germany, to support his arguments. (Dkt. 45, Ex. A). According to Mr. Petz, "Caberta's conduct appears to violate several provisions of the [German] Basic Law," (Dkt. 45, Ex. A, ¶ 7), and that "she has thereby violated . . . her vowed obligation towards her employer," (Dkt. 45, Ex. A, ¶ 8). According to Mr. Petz, Scientology is a

3

recognized religion, (Dkt. 45, Ex. A, ¶¶ 11, 12), that is protected from persecution, (Dkt. 45, Ex. A, ¶ 7). These averments do not relate to Defendant's employment, her responsibilities in that employment, or whether her dissemination of the "sect filters" or "Hubbard Declaration" constituted a public act on behalf of the government of Hamburg, Germany.

Plaintiff asserts in his pleadings that additional discovery on the FSIA issue is required before he can introduce evidence supporting his contentions that Defendant acted outside the scope of her employment. (Dkt. 45, pgs. 5-7). The Eleventh Circuit has held that a case should not be dismissed for lack of jurisdiction when a plaintiff contends that through discovery he could obtain facts establishing jurisdiction. Colonial Pipeline Co. v. Collins, 921 F.2d 1237 (11th Cir. 1991); Majd-Pour v. Georgiana Community Hospital, Inc., 724 F.2d 901 (11th Cir. 1984); see also Coca-Cola Foods v. Empresa Comercial Internacional de Frutas S.A., 1997 WL 370121 (M.D. Fla. 1997). Given Plaintiff's arguments that by conducting additional discovery he will be able to establish that FSIA immunity does not apply to Defendant and that this Court has jurisdiction, this Court will deny Defendant's Motion to Dismiss. However, Defendant need not respond to the Complaint at this time.

Plaintiff may conduct limited discovery for a period of 90 days from the date of this Order to discover evidence supporting this Court's exercise of jurisdiction over Defendant. This discovery shall be limited to the FSIA issue. Not later than 115 days from the date of this Order, unless that period is extended for good cause, Defendant shall renew its motion to dismiss or respond to the Complaint. Both parties are advised to be cognizant of the provisions of Fed. R. Civ. P. 11 and to refrain from filing any pleadings that are unmeritorious and unsupported by law or fact. See Majd-Pour, 724 F.2d at 903.

4

Accordingly, it is

**ORDERED AND ADJUDGED** that:

1.    Defendant's Second Motion to Dismiss for Lack of Jurisdiction Under the Federal

Sovereign Immunities Act (Dkt. 42) is DENIED without prejudice.

2.    Defendant's Motion to Suspend Discovery (Dkt. 43) is DENIED.

3.    Plaintiff is permitted to conduct discovery, limited to the FSIA issue and this Court's

exercise of jurisdiction over Defendant for a period of 90 days from the date of this

Order.  Not later than 115 days from the date of this Order, unless the time period is

extended for good cause shown, Defendant may renew her motion to dismiss or

answer the Complaint, in accordance with the terms of this Order.

**DONE AND ORDERED** in chambers this _15th_ day of February, 2001.


                                        **JAMES D. WHITTEMORE**
                                        **United States District Judge**


Copies to:
Counsel of Record
Courtroom Deputy
Law Clerk

5

# EXHIBIT 4

FILED

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

01 MAY -8 AM 10: 28

. . . . . . . . . CT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

HUBERT HELLER,

     Plaintiff,

v.                          **Case No. 8:00-CIV-1528-T-27C**

URSULA CABERTA,

     Defendant.

_____/

### ORDER

    Before the Court are defendant's **Motion for Protective Order,
to Vacate Order of March 29, 2001, or to Determine Compliance, and
for Sanctions** (Dkt. 63)[1] and **Plaintiff's Opposition to "Motion for
Protective Order, to Vacate Order of March 29, 2001, or to
Determine Compliance, and for Sanctions"; Counter Motion for
Evidentiary Preclusion or Other Sanctions** (Dkt. 67).[2]

    Defendant is employed by the government of Hamburg, Germany.
At issue is whether defendant is immune from this suit pursuant to
the Foreign Sovereign Immunities Act ("FSIA").   On February 16,

---

    [1] On March 29, 2001, this Court entered an Order granting
plaintiff's motion to compel discovery and directing defendant and
Willi Beiss to appear for deposition within twenty (20) days and
for defendant to respond to plaintiff's first request for
production of documents within eleven (11) days.  (Dkt. 56).

    [2] Defendant also filed "Plaintiff's Opposition to Amended
Motion for Sanctions" (Dkt. 68).  However, defendant did not file
an "Amended Motion for Sanctions" on April 13, 2001, and no such
motion is pending.

2001, the district judge entered an Order establishing a 90 day discovery period limited to the FSIA issue and the Court's exercise of jurisdiction over defendant.  (Dkt. 46).

On March 7, 2001 defendant filed a motion to compel discovery requesting that defendant and Willi Beiss ("Beiss"), whose affidavit had previously been filed in connection with defendant's second motion to dismiss (Dkt. 42) and motion to suspend discovery (Dkt. 43), be ordered to appear for depositions.

On March 8, 2001 defendant offered to produce defendant and Beiss for deposition in Germany on or about March 20 (Dkt. 63 Ex. 3, 4).  Plaintiff accepted this offer (Dkt. 63 Ex.5).  Counsel for defendant filed a "Notice of Unavailability" on March 12, 2001 stating that he would be out of the country from March 9 through March 25, 2001.  (Dkt. 52).

Also on March 12, counsel for plaintiff wrote to counsel for defendant to advise that because of treaty requirements, the embassy office in Germany could not make space available for the deposition or swear in the witness unless the German Ministry of Justice first approved the taking of the deposition.  (Dkt. 63 Ex. 7).  Counsel for plaintiff further stated that the process takes about three weeks, and requested that the deposition be rescheduled for approximately one month later, or that the deposition be conducted in the United States.

On March 26, 2001 plaintiff filed a "Notice of No-Opposition"

2

stating that defendant had not responded to the motion to compel discovery and that the matter was ripe for adjudication. (Dkt. 55). On March 29, 2001 plaintiff's motion to compel discovery was granted. (Dkt. 56).

Plaintiff noticed the depositions of defendant and Beiss for April 16, 2001 in Florida. (Dkt. 67 Ex. 25). Defendant filed her motion for protective order on April 13, 2001, one business day before the scheduled depositions. (Dkt. 63).

Defendant states in her motion that sometime after March 20, 2001 the government of Hamburg and/or the German Republic decided that defendant will not be permitted to give a deposition concerning her duties and activities with the government of Hamburg, but will be permitted to provide evidence in accordance with the procedures laid out in German law and international treaties.[3] Defendant further states that she does not have the means to travel to the United States. Defendant also filed a notice on April 18, 2001 stating that she has no control or authority over Willi Beiss, and that the Court lacks personal jurisdiction over Beiss. (Dkt. 66).

## DISCUSSION

Defendant now seeks an order relieving her of any responsibility to appear for a deposition in the United States or

---

[3] Defendant has not submitted any documentation of this decision by the government of Hamburg and/or Federal Republic of Germany.

from incurring any costs or expenses for travel of counsel to Europe for purposes of deposition, and requiring plaintiff to take discovery using procedures set forth in 28 U.S.C. § 1781 ("the Hague Convention"). Defendant argues that the reason she did not file an opposition to the motion to compel was because plaintiff and defendant had reached an agreement concerning the depositions which, at the time, mooted the issue. Defendant states that later, however, plaintiff unilaterally elected not to proceed in accordance with the agreement.

Plaintiff counters that defendant should be ordered to come to the United States (where plaintiff alleges that defendant frequently travels) and testify regarding the issues she has raised in her defense to jurisdiction. Plaintiff further argues that defendant should be warned that failure to comply will result in an order precluding the introduction of any evidence by defendant as to her purported official immunity or to jurisdictional issues. Plaintiff also asserts that efforts to take the testimony of defendant and Beiss pursuant to the Hague Convention would be moot as both defendant and Beiss have expressed their refusal to appear.

The Local Rules, M.D. Fla., provide that a non-resident defendant who intends to be present in person at trial may reasonably be deposed at least once in this district either during the discovery stages of the case or within a week prior to trial as the circumstances seem to suggest. See Local Rule 3.04(b), M.D.

4

Fla.[4]  Further, defendant offers no authority for her argument that
"[d]efendant's discovery obligations concerning the jurisdictional
issues were entirely fulfilled when [d]efendant agreed to, and did,
make herself available for deposition in Hamburg on March 20."
(Dkt. 63 at 5).

Plaintiff cites to <u>Societe Nationale Industrielle Aerospatiale</u>
<u>v. United States District Court for the Southern District of Iowa</u>,
482 U.S. 522, 536 (1987) for the proposition that the Hague
Convention was intended as a permissive supplement, not a pre-
emptive replacement, for other means of obtaining evidence abroad.
In <u>Aerospatiale</u>, the Supreme Court stated that the Hague Convention
did not deprive the district court of the jurisdiction it otherwise
possessed to order a foreign national party before it to produce
evidence physically located within a signatory nation.  <u>See id.</u> at
539-40.  The Court further noted that although its procedures are
not mandatory, the Hague Convention does "apply" to the production
of evidence in the sense that it is one method of seeking evidence
that a court may elect to employ.  <u>See id.</u> at 541.  The Court also
rejected the contention that the Hague Convention procedures must
be a "first resort" whenever discovery is sought from a foreign
litigant.  <u>See id.</u> at 542; <u>see also</u> <u>Administrators of the Tulane</u>
<u>Educational Fund v. Dabio Holding</u>, 2000 WL 1131999 (E.D. La. 2000)

_____

   [4] The district judge, in his order dated December 18, 2000,
found that personal jurisdiction over defendant exists.  (Dkt. 36
at 3).

(ordering that the Rule 30(b)(6) depositions of representatives of the Swiss company defendant be conducted in New Orleans, Louisiana).

Under the circumstances of this case and pursuant to Local Rule 3.04(b), M.D. Fla., defendant should make herself available for deposition in this district during the limited discovery period as set forth in the district judge's February 16, 2001 order. Because of the proximity of this cut-off date, a brief extension of the deadline for twenty (20) days from the date of this order is appropriate. Defendant shall appear for deposition within twenty (20) days from the date of this order.

Regarding Willi Beiss, however, defendant has filed a notice asserting that the Court lacks personal jurisdiction over Beiss. (Dkt. 66). Although the notice fails to recite any facts in support of this contention, it appears from the record that Beiss resides in Germany and is not a party to this suit. The March 29, 2001 order is therefore vacated to the extent that it pertains to Willi Beiss. Defendant's motion for protective order, to vacate order, or to determine compliance (Dkt. 63) is otherwise denied.

Plaintiff's motion for evidentiary preclusion and for sanctions (Dkt. 67) is denied without prejudice at this point. Plaintiff argues that defendant should not be permitted to submit testimony in the form of an affidavit to the Court and then refuse to be cross-examined on her assertions. However, the discovery

6

window remains open for twenty (20) days from the date of this order and it is possible that plaintiff could obtain the discovery it seeks before then, which would moot the motion to preclude the affidavits.

### CONCLUSION

Accordingly, and upon consideration, it is **ORDERED**:

(1) Defendant's motion for protective order, to vacate order of March 29, 2001, or to determine compliance and for sanctions (Dkt. 63) is **GRANTED** to the extent that the March 29, 2001 Order (Dkt. 56) is vacated as it pertains to Willi Beiss.  The motion (Dkt. 63) is otherwise **DENIED;**

(2) Plaintiff's motion for evidentiary preclusion and for sanctions (Dkt. 67) is **DENIED WITHOUT PREJUDICE.**

**DONE AND ORDERED** in Tampa, Florida on this ___8th___ day of May, 2001.

ELIZABETH A. JENKINS
United States Magistrate Judge

Copies to:

Counsel of Record

7

# EXHIBIT 5

# John M. Merrett
## Attorney & Counselor at Law

June 15, 2001

VIA FACSIMILE: 727.443.5640

Kendrick L. Moxon, Esquire
Moxon & Kobrin
1100 Cleveland Street—Suite 900
Clearwater, Florida 33755

RE:    *Heller v. Caberta*

Dear Mr. Moxon:

In accordance with the Court's recent Order, this letter is to inform you that Ms. Caberta will exercise her option of appearing for deposition in Germany. I will let you know next week in which city Ms. Caberta prefers to appear. Please provide me with possible dates no later than the end of next week.

Very truly yours,

John M. Merrett
(signed in his absence to avoid delay)

# EXHIBIT 6

## MOXON & KOBRIN
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON *
HELENA K. KOBRIN #
AVA PAQUETTE +

* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

# ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

OF COUNSEL

JEANNE M GAVIGAN +

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

June 15, 2001

### VIA TELEFAX & U.S. MAIL

John Merrett
2716 Herschel Street
Jacksonville, Florida 32205

Re:  *Heller v. Caberta*

Dear Mr. Merrett:

As you have been informed, the Embassy requires 3 weeks lead time on scheduling depositions in Germany.  I can be available between the 12th and the 25th of July for the deposition of your client.  Two consecutive days must be set aside in light of Ms. Caberta's alleged need for a translator.

Please select two consecutive week days within this time period `so I can make the necessary arrangements.

Sincerely,

Kendrick L. Moxon

# EXHIBIT 7

**MOXON & KOBRIN**
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON
HELENA K. KOBRIN
ANA PAQUETTE -

—————
* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

# ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

3055 WILSHIRE BLVD
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

OF COUNSEL

JEANNE M GAVIGAN -

June 19, 2001

**VIA TELEFAX & U.S. MAIL**

John Merrett
2716 Herschel Street
Jacksonville, Florida 32205

Re:  *Heller v. Caberta*

Dear Mr. Merrett:

You have failed to respond to my letter of June 15, 2001, seeking dates for Caberta's deposition in Germany.

As you know, the Embassy requires 3 weeks lead time on scheduling depositions in Germany. I have also freed up July 11th in addition to the dates I offered in my last letter, but must know today which two consecutive days to set aside so the embassy and the translator can be arranged.

Sincerely,

Kendrick L. Moxon

# EXHIBIT 8

**MOXON & KOBRIN**
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON *
HELENA K. KOBRIN *
AVA PAQUETTE +

─────────

* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

♦ ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

3055 WILSHIRE BLVD
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

OF COUNSEL

─────────

JEANNE M. GAVIGAN +

June 20, 2001

**VIA TELEFAX & U.S. MAIL**

John Merrett
2716 Herschel Street
Jacksonville, Florida 32205

Re: *Heller v. Caberta*

Dear Mr. Merrett:

Defendant's responses to plaintiff's Second Set of Interrogatories to Defendant are overdue.

This letter constitutes an attempt to informally resolve this matter without the need for a motion to compel. Please respond today.

As a further matter, while representing that Caberta will appear in Germany for her deposition, you have also failed to give me dates for the deposition. Again, let us avoid motion practice and just give me the dates.

Sincerely,

Kendrick L. Moxon

# EXHIBIT 9

**MOXON & KOBRIN**
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON *
HELENA K. KOBRIN #
AVA PAQUETTE +

———————

* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

# ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

OF COUNSEL

———————

JEANNE M GAVIGAN +

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA  90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

———————

June 22, 2001

**VIA TELEFAX & U.S. MAIL**

John Merrett
2716 Herschel St.
Jacksonville, FL  32205

          Re: *Heller v. Caberta*

Dear Mr. Merrett:

          I don't know what your problem is, however, over a week ago you informed me that Ms. Caberta would agree to appear in Germany.  Despite three letters, you have, however, failed to indicate *when* she would appear, thus preventing any arrangements from being made with the Embassy.   My options are to either:  1) schedule the deposition at my convenience; or 2) file a motion to require you to meet your responsibilities; or 3) you could just give me the dates.  If I don't hear from you by Monday, June 25, I will pursue option numbers 1 or 2.

                                        Sincerely,

                                        Kendrick L. Moxon

cc: Counsel of record

# EXHIBIT 10

## MOXON & KOBRIN
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON *
HELENA K. KOBRIN #
AVA PAQUETTE +
———————
* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

# ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

OF COUNSEL
———————
JEANNE M GAVIGAN +

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

June 28, 2001

American Consulate General
American Citizen Services
Alsterufer 27/28
20354 Hamburg
Germany

Re: *Heller v. Caberta Deposition*

Dear Sir:

I request your assistance to schedule and hold a deposition in Hamburg in a civil case pending in United States District Court, in the Middle District of Florida. Pertinent information is as follows:

Case name:          *Hubert Heller v. Ursula Caberta*

Case number:        8:00 CV-1528-T-27C

Court:              United States District Court, Middle District of Florida (Tampa)

Witness:            Ursula Caberta. The witness is a German national, employed by the Department of the Interior, City of Hamburg. No telephone numbers are available for the witness.

Nature of action:   Civil action for conspiracy to violate civil rights pursuant to 42 U.S.C. §1985(3); tortious interference with an advantageous business relationship and a business expectancy; unfair and deceptive trade practices pursuant to Florida's Deceptive and Unfair Trade Practices Act; and violation of the Alien Tort Claims Act, 28 U.S.C. § 1350.

U.S. Consulate General, Hamburg
June 28, 2001
Page Two

     The Federal District Court, the Hon. James Whittemore, denied Ms. Caberta's motion to dismiss, which motion was predicated upon a claim of sovereign immunity, and ordered that discovery may proceed on the issue of jurisdiction and purported official immunity. (Copy attached). Ms. Caberta has filed declarations in the Court in Tampa, Florida relating to the scope of her duties, which will be the primary matters addressed at the depositions. The Court has ordered that the deposition take place in Florida or Germany, at the option of Ms. Caberta. She has selected Germany for the deposition through a letter from her counsel. (Copy attached)

     The dates for the deposition are presently set for July 25th and 26th at the consulate offices in Hamburg. While we will attempt to complete the deposition in a single day, it is more likely that the deposition will require two days. I agree to pay the appropriate fee which is being sent via commercial courier and will reach the consulate by July 2nd.

     Please contact me at 727-443-5620 if you have any questions. I may also be reached via email at kmoxon@earthlink.net if the time difference makes telephone contact impractical. I understand that your office will seek appropriate approval of the Ministry of Justice and will let me know when that is obtained, or if the German government has any questions. Thank you for your assistance.

     Sincerely,

     Kendrick L. Moxon

cc:   Wally Pope
      John Merrett

# EXHIBIT 11

# EMBASSY OF THE UNITED STATES OF AMERICA
## BERLIN, GERMANY



A FAX MESSAGE FROM

the desk of
*Carole Masley*

FAX No. (Int'l) (0049)(30) 832 9558     Tel: (Int'l) (0049)(30) 8305 1270

FAX No. (FRG) (030) 832 9558     Tel: (FRG) (030) 8305 1270

---

**TO**     :     **Mr. Kendrick Moxon – Attorney at Law**

**FAX No.**     :     **001 727 443 5640**

**SUBJ**     :     **Deposition – Fr. Caberta**

July 16, 2001

Good morning Mr. Moxon,

Please find the original letter received today on behalf of Ms. Caberta.
If there is anything you do not understand in the letter please advise and I
will try to help.

Regards,

Carole

# TRANSLATION

Hamburg, July 12, 2001

**My questioning in the Civil Case in Heller v. Caberta in front of the
US District Court for the Middle District.**

Dearest Mr. Dr. Flora,

Your letter to Mr. Schrock (BMJ) of June 29th, 2001 arrived with the Ministry of Interior, Scientology Group yesterday via the Democratic Ministry for Justice (BMJ) and via the Hamburg Judiciary.

Unfortunately I have to tell you that I will not be able to make the scheduled date for the 25th and 26th of July 2001, as I will not be in Hamburg because of business obligations. The questioning therefore can't take place at the scheduled time. I am asking you to give me a later date.

When you give me a new date, please also give me a document that will show that the questioning is based on a Court order and on what theme I will be questioned.

I would also like to ask you to send any further communications on this subject, with a copy to the above address to save time.

At my end I will let the BMJ and the Hamburg Judiciary know and one extra copy will go by Fax to the American Consulate in Hamburg.

Yours Sincerely,

Ursula Caberta



# Freie und Hansestadt Hamburg
## Behörde für Inneres

Bit Arbeitsgruppe Scientology, Eiffestr. 664b, D-20537 Hamburg

Embassy of the United States of America
Konsularabteilung
Dr. Brian M. Flora
Clayallee 170

14195 Berlin

Amt für Innere Verwaltung und Planung
Arbeitsgruppe Scientology
Die Leiterin

Eiffestr. 664b IV. Stock (Eingang vom Parkdeck)
D - 20537 Hamburg

Telefon: 040 – 428.86.84.44
Telefax: 040 – 428.86.84.45

eMail: fhhags@t-online.de

Geschäftszeichen (bei Antworten bitte angeben)

Hamburg, 12. Juli 2001

**Avisierte konsularische Befragung meiner Person im Rahmen des Zivilprozesses HELLER J. CABERTA vor dem US District Court for the Middle District of Florida**

Sehr geehrter Herr Dr. Flora,

über das Bundesministerium der Justiz (BMJ) und die Hamburgische Justizbehörde ist der Behörde für Inneres, Arbeitsgruppe Scientology, Ihr Schreiben an Herrn Schrock (BMJ) vom 29. Juni 2001 am gestrigen Tage zugegangen.

Ich muss Ihnen zu meinem Bedauern mitteilen, dass ich an dem anberaumten Termin, dem 25. und 26. Juli 2001, aus dienstlichen Gründen nicht in Hamburg bin. Die Befragung kann an diesem Termin daher nicht stattfinden. Ich bitte Sie, mir einen späteren Ausweichtermin mitzuteilen.

Bei dieser Gelegenheit darf ich Sie zugleich bitten, mir mit der Mitteilung eines Ausweichtermins auch ein Dokument zu überreichen, aus welchem sich ergibt, dass die Befragung aufgrund einer gerichtlichen Entscheidung des o. g. Gerichts erfolgt und zu welchen Themen ich befragt werden soll.

Um Zeitverzögerungen zu vermeiden, darf ich Sie schließlich bitten, weitere Schreiben in dieser Sache parallel auch direkt an die obige Anschrift zu senden.

Ich werde meinerseits das BMJ und die Hamburgische Justizbehörde in Kenntnis setzen. Eine weitere Kopie geht per Fax an das Amerikanische Generalkonsulat in Hamburg.

Mit freundlichen Grüßen

Ursula Caberta

# EXHIBIT 12

**MOXON & KOBRIN**
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON *
HELENA K. KOBRIN ♪
AVA PAQUETTE +
––––––
* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

♪ ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

OF COUNSEL
––––––
JEANNE M. GAVIGAN+

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

July 16, 2001

**VIA TELEFAX & U.S. MAIL**

John Merrett
2716 Herschel St.
Jacksonville, FL 32205

Re: *Heller v. Caberta*

Dear Mr. Merrett:

I am in receipt of a letter from Ms. Caberta to the U.S. Embassy in Germany, refusing to attend her deposition in Germany, stating that she is busy on the 25th and 26th of July. As you were not copied on the letter, I assume she sent the letter without consulting you. I need not remind you of the history of correspondence on this matter, but refer you to my letters of June 15th, June 19th, June 20th, June 22nd, June 27th, and July 6th, my notice of deposition dated June 27th, and my motions dated July 3rd and July 12th.

As I repeatedly informed you, the dates for the deposition cannot be changed, and must be requested of the Embassy and the Minister of Justice informed a minimum of 3 weeks in advance. I have purchased non-refundable airline tickets, and I have retained the court reporter and translator with non-refundable retainers (as I informed you, there are few court reporters in Germany and they all require retainers.) The court reporters and translators book depositions weeks in advance and I had difficulty holding off as long as I did to make the bookings, waiting for any word from you on convenient dates for the deposition.

Moreover, as I indicated, the discovery cut-off will soon be upon us and because of defendant's failure to provide any specific dates over the entirety of the past month, there are no more available dates within the discovery period imposed by the Court. In short, I have done everything possible to schedule the deposition consistent with your assertion that Caberta agreed to appear in Germany before the discovery cut-off. If Ms.

July 16, 2001
Page Two

Caberta intends to offer a defense in this case, she must appear.

Please accordingly contact your client and inform her that the dates of deposition cannot be changed.  Please also be advised that if she fails to appear I will seek dispositive sanctions as to liability or in the alternative, preclusive sanctions as to the FSIA issue in addition to substantial costs incurred based upon her insistence that the deposition take place in Germany.  Because of the short time available, I must hear back from you no later than noon tomorrow.

Sincerely,

Kendrick L. Moxon

# EXHIBIT 13

# MOXON & KOBRIN
## ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON *
HELENA K. KOBRIN ʲ
AVA PAQUETTE+

* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

ʲ ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA  90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

OF COUNSEL

JEANNE M. GAVIGAN+

July 17, 2001

## VIA TELEFAX & U.S. MAIL

John Merrett
2716 Herschel Street
Jacksonville, Florida 32205

Re:  *Heller v. Caberta*

Dear Mr. Merrett:

This letter is to confirm our telephone conversation of today.

You informed me that you were unaware that your client had written to the US Embassy in Germany and sought to cancel the deposition, scheduled to begin on June 25th.  You indicated that you had informed your client of the date of the deposition some time ago, and that like me, you also had non-refundable tickets for Germany for the time set.  You also indicated that you would endeavor to communicate with Ms. Caberta to get the date re-established as set.  However, you also suggested that there may be alternative dates prior to the 25th and 26th and asked if the deposition could be moved.

I informed you that I have paid non-refundable retainers to the court reporter office and the interpreter but would contact them to see if they can be available on the 23rd and 24th to see if they can appear at this time.  State Department officials have confirmed to me that space remains available on the 23rd and 24th but that they need immediate notice of any change.

While I am attempting to cooperate with this potential change, please understand that it is an extreme burden to my office, my client, the embassy, the court reporter, the interpreter and myself.  The change will require the purchase of new tickets at substantial expense, additional charges from the court reporter and interpreter and disruption of my work schedule requiring me to change dates for other matters and

July 17, 2001
Page 2

other clients.  Thus, while I am willing to move the deposition to accommodate Ms. Caberta if her need is genuine, and contingent upon the availability of the few court reporters in Europe and interpreters, I do so without waiver of any motion I may bring for reimbursement of the additional costs inherent in the move.  Having said that, I nevertheless am ready to change if it can be done.

I also received a call from your paralegal today indicating that you intended to have word back from your client by noon tomorrow.  Please see if you can advance that hour, as by noon it will be too late to contact the embassy and other support persons in Germany and another day will be lost.  I request that you attempt to contact you client in the early morning so that we will have time to make arrangements and let all concerned know what is happening – or what is not.

Sincerely,

Kendrick L. Moxon

# EXHIBIT 14

## John M. Merrett
### Attorney & Counselor at Law

TO : K. MOXON
FROM : J. MERRETT

△ says she can be there
on Monday, July 30.
Is This acceptable?
    Pardon the note — it is
an unusual hour for corres—
pondence. Jeff will be in the
office @ 9 AM.
    Thank you
        J. Merrett

2716 Herschel Street
Jacksonville, Florida 32205
Telephone: 904.388.8391    Telefax: 904.388.8409

## MOXON & KOBRIN
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON *
HELENA K. KOBRIN ♯
AVA PAQUETTE+
_____
* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

♯ ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

OF COUNSEL
_____
JEANNE M. GAVIGAN+

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

July 18, 2001

**VIA TELEFAX & U.S. MAIL**

John Merrett
2716 Herschel Street
Jacksonville, Florida 32205

Re:  *Heller v. Caberta*

Dear Mr. Merrett:

I am in receipt of your noted faxed to my office, indicating that Ms. Caberta can be available on July 30th. This is unacceptable.

First, the deposition requires 2 days, not one day. I have a motion pending for two days for reasons I will not elaborate upon here. I have no intention of flying to Germany for a single day's incomplete deposition at the huge expense I have incurred for this deposition and the substantial *additional* costs I will have to incur to change the date of over $5,000 and the travel time for myself and my client.

Second, while I have been able to tentatively reschedule the deposition for the 23rd and 24th, the reporter and interpreter I retained are not available after the 27th. Apparently July 30th kicks off the season when the whole continent goes on vacation and many businesses and offices are literally shut down.

I suggest to you that Ms. Caberta waiting to re-schedule until weeks after everything was set and only 10 working days before the discovery cut-off, was inappropriate. I am willing to jointly request that the court modify the discovery cut-off to permit Caberta to come to Florida for her deposition on the 30th and 31st if she wishes to utilize those dates or any other dates in the first two weeks of August.

Mr. Merrett, I realize this problem was not entirely of your personal making and that your client has a mind of her own and perhaps disagrees with our legal system and

July 18, 2001
Page 2

conventions.  However it has been made clear by experience that (contrary to defendant's arguments made to the Court), the cost of you and I flying to Germany and attempting to hold the deposition there is far more onerous and more expensive by 4 or 5 times than defendant coming to the States.  Caberta traveling to the States would seem to be a more sensible option than what she is now proposing.

I therefore propose to you the following alternatives:

1.  The best solution is that Caberta change her travel plans so that all of the rest of those concerned (the embassy, you, me, my client, the reporter, the interpreter) keep the present schedule of the 25th and 26th. This will also permit compliance with the Court's scheduling order.

2.  Barring Ms. Caberta's agreement on maintaining the present schedule, the deposition can be moved to the 23rd and 24th, and I have already put the wheels in motion to accomplish this.

3.  If I am able to find a reporter and interpreter for the 30th *and* the 31st, and if I am able to get the consulate office to agree to the change, and if Caberta will agree to the two full days and would she agree to cover the additional expenses, then those dates would be acceptable.

4.  Barring these alternatives, she will have to come to the States.

Sincerely,

Kendrick L. Moxon

# John M. Merrett
## Attorney & Counselor at Law

July 18, 2001

**VIA FACSIMILE: 727.443.5640**

Kendrick L. Moxon, Esquire
Moxon & Kobrin
1100 Cleveland Street - Suite 900
Clearwater, Florida 33755

RE:    *Heller v. Caberta*
          Deposition of Defendant

Mr. Moxon:

I have in hand your letter of this date. Please note that if the Court grants your motion for extension of time, whatever date we agree on would obviously be followed by the conclusion of the deposition on the next day.

I have a call in to my client in order to clarify her position regarding the 23rd. However, at this point I would like to further explore the option of the 30th. While I doubt we will be able to come to an agreement as to shifting the burden of additional costs, bear in mind that any costs will be taxable to the prevailing party. For now, would you please provide me with an estimated breakdown of additional costs so that I can discuss the issue intelligently with my client. Just as an aside, I sincerely question the cost effectiveness of either party paying for your client to attend this deposition as I doubt he will have anything meaningful to contribute regarding the issue to be explored.

Very truly yours,

John M. Merrett
(signed in his absence to avoid delay)

# John M. Merrett
## Attorney & Counselor at Law

July 18, 2001

**VIA FACSIMILE: 727.443.5640**

Kendrick L. Moxon, Esquire
Moxon & Kobrin
1100 Cleveland Street - Suite 900
Clearwater, Florida 33755

RE: *Heller v. Caberta*
    Deposition of Defendant

Mr. Moxon:

I have spoken with my client again regarding the 23rd. She is attempting to clear this date and has promised to call me with an answer as soon as possible but not later than tomorrow morning (her time). I will notify you immediately once I hear from her. If there is a number at which I can leave you a message this evening, please provide it.

In the meantime, I am still interested in receiving the cost information requested in my previous letter. Thank you.

Very truly yours,

John M. Merrett
(signed in his absence to avoid delay)

# MOXON & KOBRIN

ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON *
HELENA K. KOBRIN #
AVA PAQUETTE+

———

* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

# ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

OF COUNSEL

———

JEANNE M. GAVIGAN+

———

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA  90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

———

July 18, 2001

## VIA TELEFAX & U.S. MAIL

John Merrett
2716 Herschel Street
Jacksonville, Florida 32205

Re:  *Heller v. Caberta*

Dear Mr. Merrett:

I am in receipt of your letters sent to me circa 11:30 and 12:00 today.

As to the 2-day issue, I understand your letter to agree that if the motion is granted for an extension of the length of the deposition,  the deposition will continue the second day after the deposition starts -- whatever day that is.  As to the 30th and 31st, I am trying to find a reporter and interpreter for those days, but have not succeeded thus far.  I'll keep working on it.

That is hopeful news that your client is attempting to arrange for the 23rd (and 24th), as I have a reporter and interpreter then, and the State Department has also set these days aside for us.  This could resolve the entire mess if these dates are accepted.

Regarding additional costs if the deposition changes, the cost for my client will not be requested to be reimbursed.  However, my additional charges for airfare are about $900 depending on when the flight is booked, and the court reporter an additional $475. I am obligated to pay for the entirety of the base rates for the reporter and interpreter for the days booked, but if changed to the 23rd and 24th, believe I can reduce or eliminate these additional fees of about $2,900.  If it goes to the 30th, I am obligated to pay the presently booked interpreter $1,800 and find a new interpreter to cover the deposition.

Someone will be available to take a message at my office number late this

July 18, 2001
Page 2

evening, and I can receive messages again anytime after about 8:00 a.m. tomorrow.  The
fax machine is always on.

Sincerely,

Kendrick L. Moxon

# John M. Merrett
## Attorney & Counselor at Law

July 18, 2001

**VIA FACSIMILE: 727.443.5640**

Kendrick L. Moxon, Esquire
Moxon & Kobrin
1100 Cleveland Street - Suite 900
Clearwater, Florida 33755

RE:   *Heller v. Caberta*
      Deposition of Defendant

Mr. Moxon:

I have received your letter of this date delineating the cost information I requested. Thank you for your courtesies.

Based upon the information I now have, it appears that the deposition will go forward either on the 23rd or the 30th. I will provide you with more details as they become available.

Very truly yours,

John M. Merrett
(signed in his absence to avoid delay)

---

2716 Herschel Street
Jacksonville, Florida 32205
Telephone: 904.388.8891   Telefax: 904.388.8409

EXHIBIT 15

## MOXON & KOBRIN
### ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

KENDRICK L. MOXON*
HELENA K. KOBRIN*
AVA PAQUETTE+

*ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

*ALSO ADMITTED IN
CALIFORNIA

+ADMITTED ONLY IN
CALIFORNIA

OF COUNSEL

JEANNE M. GAVIGAN+

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

July 19, 2001

10:10 a.m.

## VIA TELEFAX & U.S. MAIL

John Merrett
2716 Herschel Street
Jacksonville, Florida 32205

Re: *Heller v. Caberta*

Dear Mr. Merrett:

I have heard back from some of my translation sources overnight and called our booked interpreter this morning endeavoring to arrange someone for 23-24 July or 30-31 July. I have been completely unsuccessful. The reporting firm and even the embassy have not been able to locate anyone who can now translate on the 23rd and 24th, as the few interpreters and reporters who might otherwise have been available are on chosen or enforced vacation at that time. Moreover, the interpreter we booked for 25 - 26 July several weeks ago, has informed me that unless we confirm within hours, he too must take another job.

As I pointed out several times at the beginning of this odyssey, we needed to confirm these dates long ago because of the same logistical problems we are now experiencing.

Moreover, your client has sent yet another letter to the embassy in Berlin continuing to try to negotiate the dates, rather than working through you. Her latest letter (enclosed) states in substance that she is willing to come for either *2 hours* on the 23rd or one day on the 30th. And, she demands the questions in advance because of the allegedly short time before the deposition takes place.

The embassy has declined to attempt to resolve this dispute and merely sent the

July 19, 2001
Page 2

letter to me.

        In short, we are out of scheduling options, and I must therefore insist upon compliance with the date as scheduled and ordered by the Court for July 25-26 in Hamburg.  I have no intention of communicating with your client regarding the scope of the deposition (or on any other subject since it would violate the ethical rules of the Bar).  Indeed, the scope of the deposition has been known and ordered for months.  At 11:15 a.m., I must call the interpreter in Germany and confirm the 25th and 26th unless you inform me in advance that your client intends to disobey the notice of deposition served on June 27th, and the Court's Order of yesterday.

                                Sincerely,


                                Kendrick L. Moxon

# EMBASSY OF THE UNITED STATES OF AMERICA
## BERLIN, GERMANY



### A FAX MESSAGE FROM

#### The desk of
**Carole Masley**

FAX No. (Int'l) (0049)(30) 832 9558     Tel: (Int'l) (0049)(30) 8305 1270

FAX No. (FRG)  (030) 832 9558     Tel:  (FRG) (030) 8305 1270

---

TO       :   **Mr. Kendrick Moxon – Attorney at Law**

FAX No.  :   **001 727 443 5640**

SUBJ    :   **Deposition of Fr. Caberta**

19 July, 2001

Good morning Mr. Moxon,

Please find attached a fax which I received just 5 minutes ago from the legal division of the Interior Ministry in Hamburg. They tried to get me involved in this matter this morning but I told them to put whatever they have to say to you in writing — so here it is. Please advise,

Thank you and regards,

Carole Masley
Judicial Assistance Coordinator
American Embassy Berlin

# TRANSLATION

Embassy of the United States of America
Mrs. Carol Mosley

Clayallee 170
14195 Berlin

Hamburg. 19 July 2001

**Deposition at the Consulate of Ms. Caberta in the case** *Heller v. Caberta*

Dear Ms. Mosely,

Due to the fact that the appointment is being changed, the possibilities for Ms. Caberta to participate at the planned deposition have been expanded. I can now give you the following options (within the limit of 31 July 01):

- ► Monday 23 July 01, 13hrs - 15 hrs
- ► Monday 30 July 01, all day

Despite requests in this regard (letter from Ms. Caberta of 12 July 01) the exact content of the deposition has not been communicated so far. Therefore Ms. Caberta is assuming, from what she knows the pertinent content can be sufficiently discussed within the short appointment of 23 July 01.

I will send a copy of this letter at the same time to the Federal Ministry of Justice as well as the Justice Administration. At the same time I am also informing Ms. Caberta's lawyer in the USA.

Sincerely,

Hintze

J-JUL-2001 14:06  UGN:                          AN: +49 30 8326558          S. 001/001



# Freie und Hansestadt Hamburg
## Behörde für Inneres

5½ Arbeitsgruppe Scientology. Eiffestr. 664b, D-20537 Hamburg

**Embassy of the United States of America**
Mrs. Carol Mosley
Clayallee 170

14195 Berlin

**Fax:  030 832 9558**

Amt für Innere Verwaltung und Planung
Arbeitsgruppe Scientology

Eiffestr. 664b IV. Stock (Eingang vom Parkdeck)
D - 20537 Hamburg

Telefon: 040 – 429.38.64.44
Telefax: 040 – 428.96.64.15
eMail: hhag@t-online.de

Ansprechpartner:   Herr Hintze
Durchwahl:         429.38.6421

Geschäftszeichen (bei Antworten bitte angeben)

Hamburg, 19. Juli 2001

## Konsularische Befragung von Frau Caberta im Verfahren HELLER vs. CABERTA

Sehr geehrte Frau Mosley,

durch Terminverschiebungen haben sich die Möglichkeiten von Frau Caberta, an der geplanten Befragung teilzunehmen, nochmals etwas ausweiten lassen. Ich kann Ihnen nun folgende Termine (innerhalb der Frist bis zum 31. Juli 01) mitteilen:

> Montag; 23. 07. 01, 13.00 Uhr bis 15.00 Uhr

> Montag, 30. 07. 01, ganztägig

Trotz diesbezüglicher Bitte (Schreiben Frau Cabertas vom 12. Juli 01) ist der genauere Inhalt der Befragung bisher nicht mitgeteilt worden. Frau Caberta geht daher davon aus, dass die aus hiesiger Sicht sachdienlichen Inhalte auch im Rahmen des kurzen Termins am 23. 07. 01 hinreichend erörtert werden können.

Dieses Schreiben werde ich parallel dem Bundesjustizministerium sowie der Justizbehörde zur Kenntnis geben. Gleichzeitig informiere ich auch den Anwalt von Frau Caberta in den USA.

Mit freundlichen Grüßen

Hintze

# EXHIBIT 16

# John M. Merrett
## Attorney & Counselor at Law

July 19, 2001

**VIA FACSIMILE: 727.443.5640**

Kendrick L. Moxon, Esquire
Moxon & Kobrin
1100 Cleveland Street - Suite 900
Clearwater, Florida 33755

     RE:   *Heller v. Caberta*
          Deposition of Defendant

Mr. Moxon:

     I have received your letter of 10:10 a.m. this date outlining your unsuccessful efforts to secure an interpreter for possible alternative dates.  Thank you again for your courtesies.

     I will be at the deposition on July 25th and 26th as ordered by the Court.  I have informed my client of the Court's order and have every expectation that she will abide by the order.

                    Very truly yours,

                    John M. Merrett
                    (signed in his absence to avoid delay)

# EXHIBIT 17

07/20/01   14:01   ☎+49 30 8329558   EXECUTIVE OFFICE   ☑001

# EMBASSY OF THE UNITED STATES OF AMERICA
## BERLIN, GERMANY



### A FAX MESSAGE FROM

#### The desk of
**Carole Masley**

FAX No. (Int'l) (0049)(30) 832 9558        Tel: (Int'l) (0049)(30) 8305 1270

FAX No.  (FRG)   (030) 832 9558        Tel:   (FRG)  (030) 8305 1270

---

**TO**          :     ~~Mr. Kendrick Moxon~~ — Attorney at Law

**FAX No.**      :     **001 727 443 5640**

**SUBJ**        :     ~~Deposition of~~ Fr. Caberta

20 July, 2001

Good morning Mr. Moxon,

Please ~~find attached a fax which I~~ just received from the legal division of the Interior Ministry in Hamburg. I guess it's self-explanatory. Please advise,

Thank you and regards,

Carole Masley
Judicial Assistance Coordinator
American Embassy Berlin

# TRANSLATION

20 July 2001

Consular questioning of Ms. Caberta

Dear Ms. Mosely,

As we discussed just now over the telephone, I am sending you as an attachment the "Order" of the court relating that

1.    the questioning is to be done over two days, and

2.    that it is to be done on 25 and 26 July 2001

This duration is supposed to be necessary because Ms. Caberta demands a translator..

Ms. Caberta is in Berlin on 25 and 26 July 2001 for [literally: in the framework of] a inter-ministerial conference of the Ministry of the Interior.  This - as we have already communicated - makes it impossible for her to be in Hamburg during these days.

Looking at the schedule of the conference, there is now the possibility that she will be available on the afternoon of 26 July 01.  On 27 July 01 the presence of Ms. Caberta is required in Hamburg, therefore she has to travel back home on the evening of 26 July.

Ms. Caberta therefore offers to be
**on 26 July 2001 from 14.00 hrs to approximately 16.00 hrs in the premises of your embassy**

available for a consular questioning.  In referring to my comments of the fax of 19 July 01, it is furthermore assumed that the essential questions can be discussed sufficiently within this time period.

I have already communicated this possibility to the American lawyer of Ms. Caberta with the request to prepare the necessary steps there.

Best regards,

Hintze

# Freie und Hansestadt Hamburg
## Behörde für Inneres

an Arbeitsgruppe Scientology, Eiffestr. 664b, D-20537 Hamburg

Embassy of the United States of America
Mrs. Carol Mosley

Per Fax:   030-832 9558

Amt für Innere Verwaltung und Planung
Arbeitsgruppe Scientology

Eiffestr. 664b IV. Stock (Eingang vom Parkdeck)
D - 20537 Hamburg

Telefon: 040 - 428.36.54.44
Telefax: 040 - 428.36.54.45
eMail: AHags@t-online.de

Ansprechpartner:   Herr Hintze
Durchwahl:          428.36.6421

Geschäftszeichen (bei Antworten bitte angeben)

Hamburg, 20. Juli 2001

### Konsularische Befragung von Frau Caberta

Sehr geehrte Frau Mosley,

wie soeben telefonisch besprochen übersende ich Ihnen in der Anlage die „Order" des Gerichts dahingehend, dass

1. die Befragung an zwei Tagen zu erfolgen hat und
2. dass sie am 25. und 26. Juli 2001 durchgeführt werden muss.

Diese Dauer soll nötig sein, weil Frau Caberta einen Übersetzer fordert.

Frau Caberta befindet sich am 25. und 26. Juli 2001 im Rahmen einer Interministeriellen Konferenz im Bundesministerium des Inneren in Berlin, was es – wie bereits mitgeteilt – unmöglich macht, an diesen Tagen in Hamburg zur Verfügung zu stehen.

Mit Blick auf die Tagesordnung der Konferenz zeichnet sich nun die Möglichkeit ab, am Nachmittag des 26. Juli 01 in Berlin zur Verfügung zu stehen. Am 27. Juli 01 ist die Anwesenheit von Frau Caberta in Hamburg erforderlich, sodass sie am Abend des 26. Juli 01 die Heimreise antreten muss.

Frau Caberta bietet daher an,

**am 26. Juli 2001 von 14.00 Uhr bis ca. 18.00 Uhr
in den Räumen Ihrer Botschaft**

zur konsularischen Befragung zur Verfügung zu stehen. Ich verweise auf meine Anmerkungen aus dem Fax vom 19. Juli 01; es wird weiter davon ausgegangen, dass die wesentlichen Fragen innerhalb dieses Zeitraums hinreichend erörtert werden können.

Diese Möglichkeit habe ich bereits dem amerikanischen Anwalt von Frau Caberta mitgeteilt mit der Bitte, dort die erforderlichen Schritte in die Wege zu leiten.

Mit freundlichen Grüßen

Hintze

Dokument4

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

01 JUL 17 PM 5 32

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

RUBERT HELLER,

    Plaintiff,

vs.                                          Case No.:  8:00-CV-1528-T-27C

URSULA CABERTA,

    Defendant.

_____/

## ORDER

    Before the court is plaintiff's Motion to Increase Length of Deposition of Defendant Ursula Caberta (Dkt. 82) and defendant's response (Dkt. 89). In his motion, plaintiff requests that the court expand the length of Ms. Caberta's deposition from one day, as required by Federal Rule of Civil Procedure 30(d)(2), to two days. The deposition will purportedly take longer since Ms. Caberta requires a translator.[1]

    Upon due consideration, it is hereby ORDERED that:

    (1) Plaintiffs' motion to increase length of deposition of defendant, Ursula Caberta, is GRANTED. The length of the defendant's deposition will be expanded by one day and shall be conducted on July 25 - 26, 2001.

    DONE AND ORDERED at Tampa, Florida this 17th day of July, 2001.

ELIZABETH A. JENKINS
United States Magistrate Judge

Copies to:
Counsel of record

_____

[1] In accordance with the federal rules, plaintiff has shown good cause to warrant expanding the deposition by one day. See Fed. R. Civ. P. 30(d)(2) advisory committee's note.



# EXHIBIT 18

**MOXON & KOBRIN**
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 443-5620
TELECOPIER: (727) 443-5640

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 487-4468
TELECOPIER (213) 487-5385

KENDRICK L. MOXON *
HELENA K. KOBRIN ª
AVA PAQUETTE +

───────────

* ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

ª ALSO ADMITTED IN
CALIFORNIA

+ ADMITTED ONLY IN
CALIFORNIA

OF COUNSEL
───────────
JEANNE M. GAVIGAN +

July 20, 2001

**VIA TELEFAX & U.S. MAIL**

Robert Merkle
Merkle & Magri, P.A.
5510 West LaSalle St.
Tampa, FL 33607

Re:  *Heller v. Caberta*

Dear Mr. Merkle:

I am in receipt of your letter sent to my office at 5:53 p.m. today.

I do not wish to provide a line by line refutation of your letter.  I have wasted enough time on this case today.  For the record, your letter is extremely inaccurate and it does *not* "confirm" our conversation of today, other than that we had one.

But for the record, before you hung up on me and called *me* a liar for having the temerity to inform you that the filing of new motion for protective order does not stay the deposition or absolve your client from sanctions as you claimed, *Pioche Mines v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964), *Hepperle v. Johnson*, 590 F.2d 609 (5th Cir. 1979), I attempted to tell you that the matters you raised were fully argued before the court today by Ms. Caberta's counsel.  Contrary to your assertion that the court was misinformed, Mr. Merrett did indeed tell the Court that she was scheduled to attend a conference in Berlin and explained the nature thereof.  Indeed, that was the basis of the motion.  I suggest you read the transcript of that hearing.

You rendition of various facts which you characterize as "understandings" of what was allegedly at the embassy in Berlin is also inaccurate.  The deposition was never scheduled anywhere *but* Hamburg.

This is not a good way to start your appearance in the case.  You yell at me over the phone for declining to agree to vacate a court order upon which an argument had just

July 20, 2001
Page 2

concluded; you represent facts based on your "understanding" which I know to be inaccurate; you refuse to hear the law contrary to your position; you refuse to hear the facts and hang up on me for not agreeing with your position.

      I will be in Hamburg as scheduled and as ordered.  Your client should simply comply with the Court's Order.

Sincerely,

Kendrick L. Moxon

cc: John Merrett

`

# EXHIBIT 19

## DECLARATION OF INGO LEHMANN

I, Ingo Lehmann, hereby declare and state:

1. I make the following statements of my own personal knowledge, unless indicated otherwise, and if called to testify as to the matters set forth herein, I could and would competently do so.

2. I am staff of the Church of Scientology of Germany, Human Rights Office. The purpose of our office is to document abuses of human rights in Germany, and to communicate such violations to appropriate authorities within and without Germany. Based in part upon research and work of the Human Rights Office, a Regional Court of Hamburg found that public statements that Caberta was a violator of human rights, were not defamatory. Such decision was upheld by the Hamburg Court of Appeals.

3. Based in part upon the work of our office which has been provided to the U.S. Department of State, and the U.S. Trade Representative, the activities instituted by Ursula Caberta have resulted in condemnation of the country and the work of Caberta specifically, as violations of the Human Rights of Scientologists. Germany has accordingly been on the U.S. watch lists of human rights violators for the past 2 years.

4. I am aware of irregular meetings held by Ms. Caberta and several other persons from other German states that have designated themselves informally as "sect commissioners," who disseminate derogatory opinions regarding minority religions. This conference is denominated literally as a "talking circle." I and another member of my office personally contacted several of the so-called sect commissioners regarding the conference, who informed us that attendance therein is voluntary. There is no law, regulation or statute in Hamburg or under federal law that requires attendance of the informal discussions. Documents released under a German freedom of information act request, indicate that the talking circle sends invitations to the attendees, with a form which requests an "RSVP" whether or not the invitee will attend. (A copy of this document is attached hereto.) Ms. Caberta is

1

12

included in the list of invitees.

    I declare under the penalty of perjury of the law of Germany, declare the foregoing to be true and correct.  Signed this 24th day of July, 2001, in Munich, Germany.

INGO LEHMANN

359



# MINISTERIUM FÜR KULTUS, JUGEND UND SPORT BADEN-WÜRTTEMBERG

---

Ministerium für Kultus, Jugend und Sport Baden-Württemberg
Postfach 10 34 42  •  70029 Stuttgart

---

An die Mitglieder
des Bund-Länder-Gesprächskreises
Sog. Sekten und Psychogruppen

Adressen lt. beil. Liste

| | |
|---|---|
| Stuttgart, | 2. Dezember 1997 |
| Bearbeiter/in: | Interministerielle Arbeitsgruppe für Fragen sog. Sekten und Psychogruppen |
| Gebäude: | Königstr. 44 (Neue Kanzlei) |
| Telefon: | (0711) 279-2872 |
| Telefax: | (0711) 279-2699 |
| Aktenzeichen: | VI/4-7171.13/266 |
| | (Bitte bei Antwort angeben) |

**Tagung des Bund-Länder-Gesprächskreises am 22. und 23. Januar 1998 in Stuttgart**

Sehr geehrte Damen und Herren,
liebe Kolleginnen und Kollegen,

mit diesem Schreiben darf ich Sie, zusammen mit dem geschäftsführenden Referat des Bundesverwaltungsamts zu unserer nächsten Tagung am 22./23. Januar 1998 nach Baden-Württemberg einladen. Tagungsort ist am 22. Januar 1998 das Kultusministerium (Neues Schloß), Schloßplatz 4 (Großer Sitzungssaal 1. OG), Telefon: 0711/279-2806 und am 23. Januar 1998 das Studienzentrum der Evangelischen Landeskirche in Württemberg "Haus Birkach", Grüninger Straße 25, 70599 Stuttgart, Telefon: 0711/45804-0, Fax: 0711/4580422.

Hausadresse: Neues Schloß, 70173 Stuttgart
Telefonvermittlung: (0711) 279-0
X.400-Adresse: c=DE;a=DBP;p=BWL, o=KULTUSVW, ou1=KM, s=Poststelle

P  im Schloßhof

- 3 -

361

TOP 7:    Arbeitsgrundlage und Befugnisse des Bund-Länder-Gesprächskreises
          - Rechtsgrundlage der Tätigkeit, Beschlußfassung, Bestrebung einer Institutionalisie-
          rung des Kreises (vorbereitende Berichterstattung: Herr Dr. Schröter)

*Mittagspause (vorauss. 12.00 Uhr bis 13.00 Uhr)*

TOP 8:    Aktuelle Fragen aus den einzelnen Bundesländern/Infobörse

ggf.
TOP 9:    Sonstiges

*vorauss. Ende der Tagung: 15.00 Uhr*

*Leitung der Sitzung: Hans-Werner Carlhoff; als Gäste nehmen am ersten Sitzungstag die Mitglie-*
*der der Interministeriellen Arbeitsgruppe Baden-Württembergs für Fragen sog. Sekten und Psycho-*
*gruppen teil (Vertreter Staatsministerium, Innenministerium, Justizministerium, Wirtschaftsmini-*
*sterium, Sozialministerium).*

- 4 -

362

**Anreise/Anmeldung:**

Zur Erleichterung Ihrer Anreise wird ein Stadtplan beigefügt. Das Kultusministerium in der Stadtmitte (Schloßplatz) ist sehr leicht vom Hauptbahnhof über die Königstraße zu Fuß zu erreichen (oder mit den U-Bahnlinien 5, 6, 7, 15 Richtung Degerloch, Vaihingen, Möhringen, Heumaden nur eine Station bis "Schloßplatz"). Das Ministerium selbst befindet sich im rechten Flügel des Neuen Schlosses.

Nach der Sitzung am 22. Januar 1997 ist ein gemeinsamer Transfer zum Studienzentrum der Evangelischen Landeskirche in Württemberg ("Haus Birkach"), Grüninger Straße 25, 70599 Stuttgart, vorgesehen (das Studienzentrum liegt im Süden von Stuttgart im Stadtteil Birkach). Hier wurden für die Teilnehmer unserer Arbeitstagung für die Nacht vom 22./23. Januar 1998 Zimmer reserviert. Bitte beachten Sie, daß bei einer Übernachtung im "Haus Birkach" es notwendig ist, die Reservierung über das Kultusministerium Baden-Württemberg (Herrn OAR Lienow, Tel.: 0711/279-2874, Fax: 0711/279-2699) bis spätestens zum 5. Januar 1998 vorzunehmen. Die Hotelunterbringung im Zentrum von Stuttgart ist wegen der zeitgleich durchgeführten CMT-Messe sehr kostenaufwendig. Unterkunft und Verpflegung im "Haus Birkach" betragen dagegen 83 DM.

Zu Ihrer Orientierung dient der beigefügte Prospekt "Haus Birkach". Mit dem Prospekt "Stuttgart ist mehr" stellt sich die gastgebende Stadt für unseren Bund-Länder-Gesprächskreis vor.

Bitte melden Sie sich bis spätestens **5. Januar 1998** bei Herrn OAR Lienow (vgl. Rückmeldeformular in der Anlage) an.

Für die Adventszeit, das Weihnachtsfest und den Jahreswechsel wünsche ich Ihnen alles Gute.

Mit freundlichen Grüßen

Carlhoff

**Anlagen**
4

363

Absender:

_____

_____                    _____

_____                                      Datum

_____


Ministerium für Kultus, Jugend
und Sport
Baden-Württemberg
Herrn OAR Lienow
Postfach 10 34 42

70029 Stuttgart


**Bund-Länder-Gesprächskreis am 22./23. Januar 1998 in Stuttgart**
Schreiben vom 2. Dezember 1997, Az.: VI/4-7171.13/266


An der Sitzung werde ich teilnehmen                                          ☐

An der Sitzung kann ich nicht teilnehmen                                     ☐

Zu der Sitzung werde ich eine Vertreterin/einen Vertreter entsenden         ☐

_____

Name, Amts-/Dienstbezeichnung

Für die Übernachtung benötige ich ein Zimmer                                 ☐

Ich komme mit dem Pkw nach Stuttgart                                         ☐

(Parkmöglichkeit im Hof des Neuen Schlosses)


_____

Unterschrift


Um die zentrale Reservierung der Zimmer im Haus Birkach vornehmen zu können, wird um verbind-
liche Zusage mit zum 5. Januar 1998 gebeten.



# MINISTERIUM FÜR KULTUS, JUGEND UND SPORT
## BADEN-WÜRTTEMBERG

Ministerium für Kultus, Jugend und Sport Baden-Württemberg
Postfach 10 34 42 • 70029 Stuttgart

Senatsverwaltung für Schule
Jugend und Sport
z. Hd. Herrn Löhe
Am Karlsbad 8-10

10785 Berlin

Stuttgart, 2. Dezember 1997

Bearbeiter/in:

Interministerielle Arbeitsgruppe
für Fragen sog. Sekten und
Psychogruppen

Gebäude: Königstr. 44 (Neue Kanzlei)
Telefon: (0711) 279-2872
Telefax: (0711) 279-2699
Aktenzeichen: VI/4-7171.13/266

(Bitte bei Antwort angeben)

Bundesministerium für Familie,
Senioren, Frauen und Jugend
Herrn MR Norbert Reinke
- Referat 413 -
Rochusstraße 8-10

53132 Bonn

Ministerium für Kultus, Jugend und Sport
Baden-Württemberg
Herrn Hans-Werner Carlhoff
Postfach 10 34 42

70029 Stuttgart

Ministerium für Wissenschaft,
Forschung und Kultur des
Landes Brandenburg
Herrn Reinhold Kier
Friedrich-Ebert-Straße 4

14467 Potsdam

Hausadresse: Schloßplatz 4 (Neues Schloß) 70173 Stuttgart
Telefonvermittlung: (0711) 279-0
X.400-Adresse: c=DE, a=DBP, p=BWL, o=KULTUSVW, ou1=KM, s=Poststelle

- 2 -

Freie und Hansestadt Hamburg
Behörde für Schule, Jugend und Berufsbildung
Herrn Udo Pauer
Hamburger Straße 131

22083 Hamburg


Kultusministerium des Landes
Mecklenburg-Vorpommern
Herrn Ulrich G. Hojczyk
Werderstraße 124

19048 Schwerin


Niedersächsisches Frauenministerium
Frau Regierungsassessorin
Birgit Maaß
Hamburger Allee 26-30

30161 Hannover


Ministerium für Kultur, Jugend,
Familie und Frauen
des Landes Rheinland-Pfalz
Frau Brigitte Dewald-Koch
Mittlere Bleiche 61

55116 Mainz


Ministerium für Frauen, Arbeit,
Gesundheit und Soziales des Saarlandes
Herrn Walter Burgard
Franz-Josef-Röder-Str. 23

66119 Saarbrücken


Senatsverwaltung für Schule, Jugend
und Sport
- Referat V F 3 -
Frau Anne Rühle
Am Karlsbad 8-10

10785 Berlin

- 3 -

366

Senator für Frauen, Gesundheit,
Jugend, Soziales und Umweltschutz
der Freien Hansestadt Bremen
Frau Ilse Bartels
Bahnhofsplatz 29

28195 Bremen


Hessisches Ministerium für Umwelt, Energie,
Jugend, Familie und Gesundheit
- Referat VIII C 2 -
Herrn MR Dr. Walter Kindermann
Dostojewskistraße 4

65187 Wiesbaden


Kultusministerium des Landes
Mecklenburg-Vorpommern
Frau Dr. Sigrid Hermes
Werderstraße 124

19048 Schwerin


Ministerium für Arbeit,
Gesundheit und Soziales
des Landes Nordrhein-Westfalen
Herrn Dr. Klaus Eppe
Fürstenwall 25

40219 Düsseldorf


Sächsisches Staatsministerium
für Kultus
Frau Regierungsrätin
Hedwig Delpenwisch
Carolaplatz 1 Westflügel

01097 Dresden


Ministerium für Arbeit, Soziales
und Gesundheit
des Landes Sachsen-Anhalt
Herrn RL Werner Theisen
- Referat 52 -
Seepark 5-7

39116 Magdeburg

367

- 4 -

Thüringer Institut für
Lehrerfortbildung, Lehrplanentwicklung
und Medien
Herrn Dr. Albrecht Schröter
Heinrich-Heine-Allee 2-4

99438 Bad Berka


Bundesministerium der Justiz
- Referat IV B 5 -
Heinemannstraße 6

53175 Bonn


Bundesverwaltungsamt
- Referat V 1 3.3 -
Informationsstelle sog. Jugendsekten
und Psychogruppen
Frau RR'in Roswitha Engel-Steinmetz
Marzellenstraße 50-56

50728 Köln


Arbeitsgruppe
Enquête-Kommission
"Sog. Sekten und Psychogruppen"
Frau Ortrun Schätzle MdB
Friedrich-Ebert-Allee 38

53113 Bonn


Bundesministerium für Gesundheit
z. Hd. Frau Andrea Bernhardt
Am Probsthof 78 a

53108 Bonn

- 5 -

Bayerisches Staatsministerium des Innern
z. Hd. Herrn MR Walther
Odeonsplatz 3

80524 München


Hessisches Ministerium des Innern und
für Landwirtschaft, Forsten und Naturschutz
z. Hd. Frau Bettina Macik
Friedrich-Ebert-Allee 12

65185 Wiesbaden


Die Ministerpräsidentin
des Landes Schleswig-Holstein
Informations- und Dokumentationsstelle
"Sekten und sektenähnliche Vereinigungen"
z. Hd. v. Herrn Dr. Hans-Peter Bartels
Adolfstraße 48

24100 Kiel


Bundesministerium des Innern
Referat K II 5
Frau RD'in Juliane Kalinna
Graurheindorfer Straße 198

53117 Bonn


Bayerisches Staatsministerium für
Unterricht, Kultus, Wissenschaft und Kunst
- Referat III/6 -
Herr Oberstudienrat Walter Gremm
Salvatorstraße 2

80333 München


Freie und Hansestadt Hamburg
Behörde für Inneres
"Arbeitsgruppe Scientology"
Frau Ursula Caberta
Hachmannplatz 2

20099 Hamburg

- 6 -

369

Bayerisches Staatsministerium
für Arbeit, Sozialordnung, Familie,
Frauen und Gesundheit
Herrn MR Mainberger
Postfach

80792 München


Ministerium des Innern
Henning-von-Treskow-Straße 9-15

14411 Potsdam