IN THE UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

HUBERT HELLER,

    Plaintiff

Vs                             Case No.: 8:00CV-1528-T-27C

URSULA CABERTA,

    Defendant
_____/

### DEFENDANT'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (FSIA) AND MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY AND MEMORANDUM IN SUPPORT

Defendant, Ursula Caberta, moves this Court for an order dismissing this action for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") and entering summary final judgment pursuant to Rule 56, Fed.R.Civ.P. absolving Defendant of liability on the following grounds:

1. There are no disputed material facts and the undisputed material facts do not give rise to a justiciable issue of fact as to the issues of Defendant's entitlement to FSIA immunity or as to her entire lack of liability for the acts alleged in the complaints filed by the Plaintiff.

2 Defendant is entitled to judgment as a matter of law, both upon her claim of FSIA immunity and upon her claim of lack of liability.

### MEMORANDUM IN SUPPORT

In its Order on Defendant's Second Motion to Dismiss, this Court denied Defendant's second motion to dismiss "[g]iven Plaintiff's arguments that by conducting additional discovery

1

he will be able to establish that FSIA immunity does not apply to Defendant and that this Court has jurisdiction." The Court further ordered that the Plaintiff may conduct limited discovery "to discover evidence supporting this Court's exercise of jurisdiction over Defendant" and that Defendant shall thereafter renew its motion to dismiss or respond to the Complaint. Plaintiff subsequently took the deposition of Defendant Caberta in Germany. This is Defendant's renewed motion to dismiss and motion for summary judgment. The law relevant to the FSIA has already been set forth in Defendant's Second Motion to Dismiss For Lack of Jurisdiction Under the FSIA (document 42) and is incorporated herein. Filed with this Motion are the following exhibits:

1. Affidavit of Ursula Caberta;

2. Second Affidavit of Ursula Caberta;

3. Affidavit of Ursula Caberta;

4. Affidavit of Willie Beiss;

5. Affidavit of Rudiger Hintze;

6. Deposition of Ursula Caberta;

7. Affidavit of Stacy Brooks;

8. July 17 and 18, 2000 letters of Plaintiff's counsel;

9. Affidavit of Priscilla Coates;

10. Affidavit of Stacy Brooks.

## FACTS

According to his complaints, Plaintiff, Hubert Heller, is a citizen of Germany who resides in the Middle District of Florida and is a member of an organization which calls itself "The Church of Scientology."

Defendant is a citizen and resident of Germany. Ex. 1, ¶2 In Germany, Scientology is considered an extremist, totalitarian political organization hostile to the German Constitution and is monitored by the office for the protection of the Constitution. Ex. 2, ¶3; Ex. 4, ¶36; Ex. 6, pp. 112-113, 114, 124-125, 133. Defendant is employed by the State of Hamburg, Germany and is the head of the Scientology Working Group, an agency of the Hamburg Ministry of the Interior. Ex. 4, ¶2; Ex. 6, pp 34, 43. The Scientology Working Group was created and authorized by the Hamburg Senate and operates under the supervision of Willi Beiss, the Senator or Minister for the Hamburg Ministry of the Interior. The purpose of the Scientology Working Group is, *inter alia*, to monitor the activities of Scientology in Hamburg and to assist businesses which seek to protect themselves from infiltration or other attack by Scientologists. Ex 6, pp 39, 123, 194; Ex. 2, ¶3. Official duties of the governmental Scientology Working Group and the Defendant include the analysis of the Scientology organization; investigation of what the Scientologists want to do and how they work; performing public relations work and providing information about Scientology, the distribution of information setting forth the character, nature and activities of Scientology; helping people who turn to the Scientology Working Group for help, including people who want to leave Scientology; providing protection against Scientology to those who ask for it, including businesses and other lawful entities seeking to prevent infiltration or other attack by Scientologists; and taking such other actions as appear to Defendant to be necessary to assist businesses and other entities to avoid infiltration of themselves or harm to their employees by Scientology. Ex. 2, ¶3; Ex. 4, ¶3, 6, 8; Ex. 6, pp. 44, 109-110, 123, 195. Defendant is also the representative for the Hamburg government in discussions with other federal states in Germany about Scientology. Ex. 6, p. 123. Recently, the Hamburg Senate expanded the scope

of Defendant's work so that she is also now the representative for youth affairs in Hamburg with respect to other cults as well. Ex. 6, ¶54.

Some years ago, in her position with the Scientology Working Group Defendant created the instrument which is referred to in this case as the "Hubbard Declaration" or the "sect filter." Ex. 6, P. 96. The Hubbard Declaration, a copy of which is attached to Plaintiff's complaints, is an affidavit in which the affiant abjures use of the "technology" of L. Ron Hubbard, the founder of Scientology. Hubbard's writings and practices, whether identified as "religious" or "secular," are referred to as "technology." The Hubbard Declaration was created because many companies in Germany were asking for help in order to protect themselves against being infiltrated and subverted by Scientologists and the influence of the Scientology organization. Ex. 1, ¶10; Ex. 6, pp. 91, 92, 93, 94, 107, 123, 194.. The Hubbard Declaration is sent out by the Scientology Working Group to those companies who request it. Ex. 6, pp. 99, 100 The companies then decide for themselves whether they want to use it or not. Ex. 6, p. 110 No business is required by the Defendant to make use of the Hubbard Declaration. Ex. 1, ¶11.

All of the Defendant's activities concerning the Hubbard Declaration, including development and distribution of the Hubbard Declaration, have been in her capacity as employee of the government of Hamburg, Germany, and undertaken within the course, scope, duties and authority of her employment by the government of Hamburg. Ex. 1, ¶9, Ex. 2, ¶3, 4; Ex. 4, ¶3, 4. Indeed, all of the Defendant's activities, including but not limited to communications and pronouncements concerning Scientology directed to businesses doing business in Germany, have been within the course and scope and authority of her employment by the government of Hamburg. Ex. 2, ¶5; Ex. 4, ¶5.

4

Upon invitation, Defendant speaks about Scientology infiltration and the availability of the Hubbard Declaration to businesses and business associations in Germany. Ex. 6, pp. 105. There is no evidence that any such speeches have been made except by invitation and in the course of Defendant's employment with the Scientology Working Group.

In April, 2000, the Scientology Working Group was contacted by a representative of a German company known as POSpartner G.M.B.H. ("POS"). Ex. 5, ¶3. Rudiger Hintze, an employee of the Scientology Working Group, handled the phone call. Ex 5, ¶3. The POS representative told Mr. Hintze that the POS had become engaged in negotiations with a company called RTI, which was represented in the negotiations by Plaintiff, Hubert Heller. The POS representative further said that in the course of conducting research on Plaintiff and his employer, POS had discovered an internet web page in which Plaintiff referenced his Scientology affiliation. Ex. 5, ¶3. The POS representative said that POS was concerned that Plaintiff might insinuate the Scientology doctrine and practices into POS and wanted the assistance of the Scientology Working Group to prevent such infiltration of the company. In response, Mr. Hintze sent POS a copy of the Hubbard Declaration. Ex. 5, ¶4. Mr. Hintze was the only person from the Scientology Working Group to have any substantive communication with POS. Ex. 5, ¶6. <u>Defendant had no knowledge of or involvement in the communication or activity between the Scientology Working Group and POS.</u> Ex. 3, ¶2, 3; Ex. 5, ¶7. <u>Indeed, prior to this lawsuit, Defendant had no knowledge of the existence of the Plaintiff or the aforementioned events concerning POS.</u> Ex. 3, ¶4; Ex. 6, p. 175. After the Hubbard Declaration was sent to POS, the Scientology Working Group had no involvement in what the company did with it. Ex. 6, pp. 100, 185.

According to Plaintiff's complaints, POS requested that Plaintiff execute the declaration as a condition of further negotiations. Plaintiff declined to do so and the relationship between Plaintiff and POS went no further. As noted above, Defendant had no direct or indirect involvement in the communication between the Scientology Working Group and POS. Defendant herself had no communication with POS, directly or indirectly, prior to the filing of this action.

Defendant came to the State of Florida for the first and only time in July, 2000. Ex. 1, ¶3, 4. During her vacation, she gave a talk on July 25, 2000 about the activities of the Scientology Working Group in Hamburg. Ex. 7, ¶2. Also during that visit, she was served on July 27, 2000 with process in this action. In his initial complaint, which was also filed on July 27, 2000, Plaintiff alleged unequivocally that all the Defendant's alleged actions were undertaken within the course and scope of her employment with the Scientology Working Group. After the filing of Defendant's first Motion to Dismiss (which apparently alerted Plaintiff's counsel to the existence of the FSIA), Plaintiff's counsel amended his complaint to deny that Defendant acted in the course and scope of her employment, or alternatively that if she acted within the course and scope of her employment she either acted for a non-sovereign commercial purpose or acted illegally. Defendant again pled sovereign immunity under the FSIA.

The Court authorized limited discovery on the issue of FSIA immunity. Plaintiff did not seek formal or informal discovery of any kind from POS, the Scientology Working Group, the Hamburg Ministry of the Interior, the Government of Hamburg, or the Government of the German Republic. Rather, Plaintiff sought discovery only from Defendant and from Robert Minton and Stacy Brooks, who are Americans associated with The Lisa McPherson Trust and

who have long been at odds with the Scientology organization.[1] Even within the scope of his minimal discovery efforts, Plaintiff avoided the straightforward question before the parties and the Court: whether Defendant was involved personally, officially, or not at all in POS's contacts with Plaintiff. Plaintiff's discovery efforts focused (and continue to focus) on intelligence gathering unrelated to the issue of FSIA immunity, characterized chiefly by irrelevant inquiries into Defendant's finances and relationships with other persons and entities who are concerned with the activities of the Scientology organization. See Ex. 6. The second principal focus of Plaintiff's discovery efforts was the intelligence gathering of the day-to-day operations and the internal governmental authorizations of the Scientology Working Group. See. Ex 6.

After prodding by Defendant, Plaintiff finally made some inquiry into the facts surrounding the POS/Heller matter as those facts touch on the issue of FSIA immunity. Ex. 6, p. 173. The result of that inquiry was quite straightforward: Defendant was the supervisor of the individual who dealt with POS's inquiry; and, except as that person's supervisor, Defendant had no involvement with POS regarding Plaintiff or the issues in this case.

The affidavit of Mr. Hintze, who alone dealt with POS concerning Plaintiff, discloses that it was the Plaintiff's own internet advertisement of his affiliation with Scientology that led to POS's concern and inquiry to the Scientology Working Group; that communication between POS and the Scientology Working Group was initiated by POS; that Defendant had no involvement in POS's inquiry to and communication with the Scientology Working Group (except in the status as Mr. Hintze's supervisor); and that the Hubbard Declaration was furnished to POS in response to a request from POS for a way to prevent Plaintiff from insinuating Scientology doctrine into POS.

---

[1] Stacy Brooks is the President of The Lisa McPherson Trust, whose purpose is to expose abusive and deceptive practices of the Scientology organization and to help those who have been victimized by it. Ex. 10, ¶1.

7

In sum, the uncontroverted evidence establishes that Defendant created the Hubbard Declaration some years before the contemplation of a relationship between POS and Plaintiff; that she did so solely in her official capacity; and that she had no involvement in the events by which Plaintiff was allegedly injured, except theoretically as supervisor of the government official who handled POS's inquiry to the Scientology Working Group.

Defendant's activities in Florida in late July, 2000, had nothing to do with the injuries claimed by Plaintiff. Plaintiff's approach to POS and POS's approach to the Scientology Working Group occurred prior to April 17, 2000, the date on which Plaintiff was asked by POS to sign the Hubbard Declaration. See Heller Affidavit (Exhibit B to Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Dismiss (Document 35)). There is no evidence that POS participated in, derived information from, or was in any way influenced by Defendant's activities in the State of Florida which occurred over three months later and only two days before Plaintiff filed his complaint.

The evidence now before the Count includes:

1. Plaintiff's initial complaint (an evidentiary admission of fact, when offered by an opposing party) in which it is asserted that all Defendant's alleged actions occurred within the course and scope of her employment as an official of the Government of Hamburg. *See*, *Andrews vs Metro North Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989)(original complaint admissible as admission of party.

2. The threatening letters sent by Plaintiff's counsel to Defendant's superiors before Defendant's July, 2000 trip to Florida, in which Mr. Moxon stated that "In the event she is involved in the violation of the civil rights of any members of the Church [sic], or if she acts in

8

concert with others violating the rights of members of the Church [sic], we shall view her activities as being undertaken on behalf of the City of Hamburg ...." Ex. 8.

3. The affidavit of Defendant's supervisor, Senator Willi Beiss, which establishes that the creation and distribution of the Hubbard Declaration which is at the heart of Plaintiff's complaint is at the heart of Defendant's responsibility and duties as an official of the Government of Hamburg. Ex. 4.

4. The affidavit of Stacy Brooks establishing that some of Defendant's expenses for her trip to Florida in July (months after the conclusion of any involvement of Defendant's office in the POS/Heller matter) were reimbursed by the Lisa McPherson Trust. Ex 7.

5. Defendant's most recent affidavit establishing that Defendant had no involvement at all in the matters by which Plaintiff claims to have been affected. Ex. 3.

6. The affidavit of Rudiger Hintze, a subordinate in Defendant's office, detailing his own exclusive involvement in the POS/Heller matter and conclusively establishing Defendant's lack of involvement in that matter. Ex. 5.

7. Defendant's deposition transcript establishing that Defendant had no involvement in the POS/Heller matter and that her creation and distribution of the Hubbard Declaration was within the course and scope of her employment as an official of the government of Hamburg and that that employment is wholly regulatory and has no commercial component which would take the activity outside the FSIA.[2] Ex. 6

On consideration of these facts, three compelling conclusions emerge: first, that Defendant had no personal involvement in any of the acts which are alleged to have caused

---

[2] Beyond that, of course, if the activities of the Scientology Working Group were commercial rather than governmental in nature, it would be the government of Hamburg and not Defendant who might be reached through an exception to the FSIA.

9

injury to Plaintiff; second, that her professional involvement (if any can be deemed to exist) occurred entirely within the ambit of her position as head of the government office under whose auspices one of her subordinates furnished the Hubbard Declaration to POS; third, that Plaintiff never possessed any information to the contrary and possesses none now. The legal conclusion is that Defendant is not liable on the complaint and in fact had nothing to do with the acts alleged to have injured Plaintiff.

*Plaintiff's request for additional discovery.* It is anticipated that Plaintiff will request additional discovery on two grounds: first a claim that time limitations and Defendant's refusal to answer certain questions prevented Plaintiff from obtaining necessary information concerning the FSIA defense; and second, a claim that additional discovery will put Plaintiff in a better position to meet the Motion for Summary Judgment. On either basis, Plaintiffs request must fail.

Rule 56(f), F.R.Civ.P, provides, "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." However, the denial or delay of summary judgment for further discovery is not to be had for the asking. The party opposing summary judgment bears the burden of showing "what facts she hopes to discover to raise a material issue of fact." *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1306 n. 1 (9th Cir. 1986). "The party seeking additional discovery also bears the burden of showing that the evidence sought exists. "Denial of a Rule 56(f) application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation." *Terrell vs Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). "[A] court need not allow further discovery when there is

no reason to believe that it will lead to the denial of a pending motion for summary judgment." *Pacific Service Stations Co. vs Mobil Oil Corp.*, 689 F.2d 1055, 1066 (Em. Ct. App. 1982). There is no such reason in this case. Plaintiff has had every opportunity to find evidence to show that Defendant had any involvement at all in the events described in the current complaint or to show, contrary to the initial complaint, that she had unofficial involvement in those events. He spent that opportunity pursuing other matters, focusing on Defendant's finances and largely ignoring the question of whether and how Defendant was involved in that of which he complains. The affidavits and testimony of record are conclusive on the issues at hand. Any hope of controversion through protraction of the discovery process is chimerical at best. In considering this matter, it should be remembered that:

a) Plaintiff failed, apparently deliberately, to set forth in his pleadings the dates of his involvement with POS and the date of POS's notification to him of termination of their contemplated business relationship because they occurred long before Defendant traveled to Florida;

b) In conducting FSIA discovery, the Plaintiff deposed (in addition to the Defendant) two noted detractors of Scientology, Robert Minton and Stacy Brooks, but made no attempt to obtain truly relevant discovery from POS or the Hamburg government.

c) In deposing Defendant, Plaintiff focused on tangential questions relating to financial contacts between or among the Defendant, Minton and the Lisa McPherson Trust, turning to the question of the capacity (if any) in which Defendant was involved in the Plaintiff/POS matter only at the direct prompting of Defendant's counsel. Whatever else Plaintiff may claim to want from discovery, he has voluntarily foregone.

Plaintiff is obliged to show by a competent affidavit that there exists some evidence which will controvert that which has been developed to date which will show that Defendant had some causative role in Plaintiff's alleged difficulties which was outside her official capacity. This cannot be done.

As to the questions not answered by Defendant in her deposition, in light of the incontrovertible fact that she had no personal involvement in the events of which Plaintiff complains, it is not possible that answers to those questions would further Plaintiff's case. The unanswered questions were in the first place irrelevant to any issue before the Court and in the second place could not have produced evidence which would either show Defendant to have acted outside her official role in any pertinent undertaking or to have been a meaningful actor in Plaintiff's purported difficulties.

It is only too clear that this action is a sham for other purposes.[3] It was born (apparently in ignorance of the existence of the FSIA) on the stated assumption that Defendant acted strictly

---

[3] Plaintiff's counsel and his firm have a track record of bringing sham lawsuits in the names of members of Scientology when in fact the real party in interest in prosecuting the suit is the entity of Scientology. See Affidavit of Priscilla Coates (Ex. 9) concerning fifty lawsuits brought against her and Cult Awareness Network by the Scientology organization to destroy the Cult Awareness Network whose purpose was to educate the public about the harmful effects of mind control as practiced by destructive cults and about the unethical and illegal practices they employ; *Hart v. Cult Awareness Network*, 13 Cal. App 4th 777 (1993); *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 648 (1996)(Court found that lawsuit being prosecuted by Plaintiff's counsel and this firm was being pursued "to bludgeon the opposition into submission" for having prevailed in a prior lawsuit.) In addition, see Affidavit of Stacy Brooks (Ex. 10). As pointed out above, Ms. Brooks is the president of The Lisa McPherson Trust. In addition, she was formerly a Scientologist in Scientology's high-level Sea organization and worked in the Office of Special Affairs, which carried out Scientology's legal and intelligence gathering activities. She was personally aware of Scientology's effort to destroy Cult Awareness Network through a series of specious lawsuits brought by the Office of Special Affairs through nominal plaintiffs who were low-level Scientologists. She was also aware that Scientology had staff members whose entire job was to destroy the Cult Awareness Network and personally participated in operations directed against Patricia Coates and the Cult Awareness Network that were designed to undermine and destroy them.

as an agent of a foreign government; it was briefly resuscitated by retreat from and denial of that statement; it has expired in confrontation with the facts. There is no reasonable hope that any contrary version of facts can be conjured to revive the action. In conclusion, the evidence establishes that Defendant is immune from suit with respect to the actions ascribed to her and moreover that Plaintiff has sued a person wholly innocent of his claimed distress. For the foregoing reasons, the Court should dismiss Plaintiff's action and/or enter summary judgment in favor of Defendant.

Robert W. Merkle
Florida Bar No.: 0138183
Ward A. Meythaler
Florida Bar No.: 0832723
Merkle & Magri, P.A.
5510 West LaSalle Street
Tampa, Florida 33607
TEL: (813) 281-9000
FAX: (813) 281-2223

John M. Merrett
Florida Bar No.: 0742848
2716 Herschel Street
Jacksonville, Florida 32205
TEL: (904) 388-8891

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing and the exhibits in support (without Exhibit 6) have been furnished by U.S. Mail on this 31st day of August, 2001, to: F. W. Pope, 911 Chestnut Street, Clearwater, FL 33756 and K. Moxon, 1100 Cleveland Street, Suite 900, Clearwater, FL 33755.

Ward A. Meythaler

Due to the physical nature of exhibit, it is not scanned; please see case file.