UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER,

       Plaintiff,

v.                                    CASE NO.: 8:00-CV-1528-T-27C

URSULA CABERTA,

       Defendant.

_____/

## O R D E R

Before the court is plaintiff's **Motion to Compel Further Deposition of Defendant Ursula Caberta; to Compel Responses to Deposition Questions; and for Fees and Costs** (Dkt. 105), and defendant's response (Dkt. 117). Oral argument was held on Wednesday, October 24, 2001.

### BACKGROUND

Defendant, Ursula Caberta ("Caberta"), is employed by the government of Hamburg, Germany.[1] Plaintiff brought this action against defendant alleging tortious interference with an advantageous business relationship; unfair and deceptive trade practices pursuant to Florida Statute § 501.204(1), <u>et seq.</u>; conspiracy to commit civil rights violations pursuant to 42 U.S.C.

_____

[1]Defendant is the head of the Working Group of Scientology at the Ministry of the Interior in Hamburg, Germany. (Deposition Transcript at 6) (Dkt. 109, Ex. 6) (hereafter "Deposition Transcript").



§ 1985(3); and violation of the Alien Tort Claims Act, 28 U.S.C. § 1350.[2]

Plaintiff filed this motion after encountering problems in conducting defendant's deposition, including defendant's failure to appear for the first day of a two-day deposition, scheduled for July 25-26, 2001 in Germany.[3]  Plaintiff seeks an order requiring that 1) defendant appear in this district to complete her deposition; 2) defendant answer specific questions that she failed to answer in her deposition; and 3) defendant reimburse plaintiff for his reasonable attorney's fees and costs in conducting the deposition in Germany.

Pursuant to this court's order, defendant's deposition was scheduled to begin at 2:00 p.m. on July 25, 2001, to continue into the evening hours, and to resume on July 26, 2001 for seven hours. Defendant failed to appear on July 25, 2001, but appeared for the deposition on the following day.

At the deposition, defendant was evasive and nonresponsive to certain questions, and her associate, Runger Hintze ("Hintze"), often wasted time by interrupting and giving commentary.  Moreover,

---

[2]The district judge has authorized defendant's deposition on the issue of whether she is immune from this suit.

[3]On July 17, 2001, this court granted plaintiff's motion requesting that the length of defendant's deposition be increased from one to two days due to the need for a German interpreter. (Dkt. 91).  Plaintiff noticed the deposition on June 27, 2001. (Dkt. 82, Ex. C).

at the deposition, defendant refused to answer certain questions propounded by plaintiff's counsel.

On February 15, 2001, the district judge limited the scope of discovery to the issue of whether defendant is immune from liability pursuant to the Foreign Sovereign Immunities Act ("FSIA"). However, the district judge advised the parties that plaintiff's right to discovery "should not be thwarted by third party restrictions or diplomatic protocol." (Dkt. 46).

<u>DISCUSSION</u>

Plaintiff has repeatedly tried to depose defendant.[4] When the deposition was finally conducted, plaintiff was impeded in his efforts. First, defendant outright refused to answer certain questions, such as 1) the name of the person who wrote her job description (Deposition Transcript at 47), 2) whether she submits requests for funding to any governmental entity in which she identifies what she is doing and what she intends to accomplish (Deposition Transcript at 52), and 3) whether she receives money beyond her expenses from her speeches regarding Scientology

---

[4]On March 29, 2001, this court granted plaintiff's motion to compel the deposition of defendant. (Dkt. 56). Then, on May 8, 2001, this court denied defendant's motion for protective order and denied defendant's request to vacate that part of the court's March 29, 2001 order requiring her to appear in this district for a deposition. (Dkt. 70). This court again addressed the issue during a telephonic discovery conference on July 20, 2001, during which the court ordered that defendant be deposed in Germany on July 25-26, 2001, as scheduled by plaintiff. Finally, on July 24, 2001, the court denied defendant's emergency motion for protective order. (Dkt. 100).

(Deposition Transcript at 60). She also refused to answer questions relating to Robert Minton and the Lisa McPherson Trust. (Deposition Transcript at 65-80, 148). Moreover, defendant wasted time by giving unresponsive and evasive answers to questions, such as whether she could affirm the accuracy of statements that she made in an affidavit in this case.[5] (Deposition Transcript at 148-53).[6]

With regard to the question of who wrote defendant's job description, defendant responded "I don't know who wrote the job description, and I think it is not your business who wrote it." She further stated that "If you like, you may sue the Senator for the interior and then you can find out who draws whose job description." (Deposition Transcript at 47, lines 19-25). The argumentative nature of defendant's responses is apparent throughout the deposition. She repeatedly stated "it's none of your business" in response to a question.

Second, defendant's associate, Hintze, interrupted the deposition and made narrative statements on the record. He also

_____

[5]Additionally, she refused to answer questions relating to the Lisa McPherson Trust or its president, Stacy Brooks ("Brooks"), asserting that "it has nothing to do with this case." (Deposition Transcript at 148).

[6]Plaintiff asserts that he expended $8,707.93 in traveling to Germany, hiring an interpreter, videographer, and court reporter, and other related expenses, and $12,250.00 in attorneys' fees for traveling, preparing, and conducting the deposition.

spoke in German with the witness on numerous occasions in connection with pending questions, even though plaintiff's counsel does not speak German.[7]  At the July 20, 2001 telephonic hearing before the court, Hintze was represented as being a staff attorney in defendant's office.  (Dkt. 102 at 3).  Although he apparently has some legal training, Hintze is not an attorney.  Moreover, he appears to be a prospective witness in this case.[8] (Deposition Transcript 175-81).

Third, defendant's counsel, John M. Merrett ("Merrett"), more than once, instructed defendant not to answer specific questions. For example, Merrett instructed his client not to answer questions until he permitted her to do so.[9]  Moreover, he also answered questions for her or insisted on conferring with his client before she answered a pending question.[10]

---

[7]See e.g. Deposition Transcript at 7, 8, 9, 11, 33, 36, 42, 45, 49, 52, 54, 62, 64, 83, 86, 113, 128, 131, 135, 138, 139, 164.

[8]According to defendant, Hintze was involved in supplying the Hubbard Declaration to the German company involved in this case.  (Deposition Transcript at 175-77).  Hintze identified himself at the deposition as a representative of the Ministry of the Interior in Hamburg.  (Deposition Transcript at 6). Defendant said Hintze was her subordinate.  (Deposition Transcript at 88).  His affidavit has been submitted by defendant with her renewed motion to dismiss for lack of subject matter jurisdiction.  (Dkt. 109, Ex. 5).

[9]See e.g. Deposition Transcript at 69-82, 164.

[10]See e.g. Deposition Transcript at 48, 69-81, 138, 166-67.

Defendant also failed to comply with plaintiff's request to produce and this court's June 21, 2001 order (Dkt.80) requiring that any records responsive to Document Request Numbers 9-17, in defendant's possession, be produced to plaintiff within ten (10) days of the order.[11] During her deposition, defendant admitted that there might be documents responsive to Interrogatory Number 2, but she did not look for them.  (Deposition Transcript at 134). Similarly, defendant admitted that she did not try to locate any documents responsive to the document requests.  (Deposition Transcript at 139-40).  In fact, she stated that "it was not necessary [to locate the documents] so far."[12] (Deposition Transcript at 139).

Fifth, the deposition was scheduled for two days to commence on July 25, 2001.  As stated previously, defendant did not attend the first day of the deposition.  Furthermore, according to plaintiff, the actual time spent questioning the defendant was only four hours and twenty minutes, out of the scheduled seven hours.

---

[11]See e.g. Deposition Transcript at 134, 140, 147-48, 161-63.

[12]At her deposition, defendant stated that "even if these documents exist . . . they belong to the Free and Hanseatic City of Hamburg, and I can not just use them according to my own discretion."  (Deposition Transcript at 139).  The fact that defendant did not even bother to look for the documents requested by plaintiff demonstrates a lack of cooperation in discovery in this case.

6

The deposition transcript is replete with examples of evasive, argumentative, and nonresponsive testimony by defendant.

Finally, Merrett interrupted plaintiff's counsel and took breaks with his client while questions were pending. For example, Moxon asked defendant if she conducted any search to determine whether she had any records responsive to Document Request Numbers 14 and 15. While these questions were pending, Merrett engaged in a private discussion with defendant. Then, he suggested that they take a two-minute break and then left the room with defendant and Hintze. (Deposition Transcript at 162-64).

In addition, when asked whether she submits request for funding to any governmental entity in which defendant identifies what she is doing and what she intends to accomplish, defendant took a break to confer with counsel and Hintze. (Deposition Transcript at 52). The deposition resumed approximately ten minutes later. (Id.). At that point, defendant evaded answering the question by stating that "I do not refuse to answer. I am not allowed to answer, because my answer would have to be authorized by this agency." (Deposition Transcript at 53-54).

The court has reviewed the deposition in its entirety. Plaintiff has not been provided an adequate opportunity to depose defendant on the issue of FSIA immunity. Defendant has violated this court's order to appear for deposition on July 25, 2001 and

when she did appear, she was frequently uncooperative and did not answer questions.

Requiring defendant to appear in Germany to complete her deposition would be a futile act without court supervision given the difficulties encountered in plaintiff's efforts to depose her in Germany. Conducting the deposition in the Middle District of Florida at the United States Courthouse will be beneficial to both parties as the court will be available to rule on any issues that may arise during the deposition.

For these reasons, and the reasons stated at the hearing, defendant shall submit to a deposition in this district within **thirty (30) days** of this order.[13] See Local Rule 3.04(b), M.D. Fla.[14] The deposition shall be conducted at the United States District Court, 801 North Florida Avenue, Tampa, in the attorney witness room on floor 11A, on a date convenient to the parties, the witness, counsel, and the court.

The scope of the questions shall be limited to the jurisdictional issue under the FSIA of whether defendant's actions

---

[13]At the October 24, 2001 hearing, the court instructed the parties to reserve a room in the courthouse for the deposition pending this order. November 21, 2001 at 9:30 a.m. has been reserved by the parties.

[14]Local Rule 3.04(b) provides that a non-resident defendant who intends to be present in person at trial may reasonably be deposed at least once in this district either during the discovery stages of the case or within a week prior to trial as the circumstances seem to suggest. Local Rule 3.04(b), M.D. Fla.

in developing, disseminating, or distributing the "Hubbard Declaration" were in her official capacity as an employee of the government of Hamburg, Germany. (See Dkt. 46 at 3). Inquiry regarding defendant's employment and her responsibilities are relevant to this issue. Moreover, inquiry into issues pertaining to the FSIA's commercial act exception[15] are relevant as well.

The parties disagree about whether inquiry into defendant's relationship with Robert Minton ("Minton") and the Lisa McPherson

-----

[15]Pursuant to 28 U.S.C. § 1605(a)(2),

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). This is known as the "commercial act exception." A state engages in commercial activity "where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns . . . a foreign state engages in commercial activity . . . only where it acts in the manner of a private player within the market." Honduras Aircraft Registry, Ltd. v. Gov't of Honduras, 129 F.3d 543, 547 (11th Cir. 1997)(quoting Saudia Arabia v. Nelson, 507 U.S. 349, 360 (1993)), cert. denied 524 U.S. 952 (1998). The commercial activity that provides the jurisdictional nexus with the United States must also be the activity on which the lawsuit is based. Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 533 (5th Cir. 1992) (citation omitted), cert. denied 506 U.S. 956 (1992). Isolated or unrelated commercial actions by a foreign state in the United States do not satisfy the exception. Id.

Trust is within the limited scope of the sovereign immunity issue.[16]

When questioned about her dealings with Minton, defendant asserted her Fifth Amendment privilege against self-incrimination. (Deposition Transcript at 73, 161). She likewise refused, on Fifth Amendment grounds, to answer questions concerning whether Minton gave her any money to assist the Lisa McPherson Trust. (Deposition Transcript at 78, 161). Likewise, she refused to answer any questions about Stacy Brooks ("Brooks") or any financial transactions among the Trust, Minton, or Brooks. (Deposition Transcript at 161). Plaintiff has not challenged defendant's assertion of her privilege against self-incrimination as to these matters.[17] It is therefore unnecessary to determine whether questions concerning these entities is relevant to the sovereign immunity issue in this case.

_____

[16]In an order dated February 15, 2001 (Dkt. 46), the district judge noted that plaintiff's averments regarding whether defendant violated several provisions of the German Basic Law and whether Scientology is a recognized religion in Germany that is protected from persecution, did "not relate to Defendant's employment, her responsibilities in that employment, or whether her dissemination of the 'sect filters' or 'Hubbard Declaration' constituted a public act on behalf of the government of Hamburg, Germany." (Dkt. 46 at 3-4).

[17]In a civil case, a litigant may claim a Fifth Amendment privilege both during pretrial discovery and trial; however, at trial, a jury will be entitled to draw an adverse inference from the assertion of privilege. See Arango v. United States Dep't of the Treasury, 115 F.3d 922, 926 (11th Cir. 1997) (citations omitted); Clark v. City of Munster, 115 F.R.D. 609, 617 (N.D. Ind. 1987) (citation omitted). Whether an adverse inference should be drawn against defendant is not before the court at this time.

10

The following questions shall be answered by defendant at her deposition (See Dkt. 105 at 20-22):[18]

1) Do you submit requests for funding to any governmental entity in which you identify what you are doing and what you intend to accomplish?

2) Do you receive any monies that you deposit in your personal bank accounts from any of these speeches [about Scientology]?

3) Do you receive any money beyond your expenses which you may keep, from your speeches about Scientology?

4) Have you deposited any money in your private bank accounts that you have received for lectures given with respect to Scientology that is not part of your income received from the State of Hamburg?

5) Identify whether or not you have received any funds beyond actual expenses that you have incurred for any lecture, speech or advice regarding Scientology beyond the income you have received from the State of Hamburg.

6) Do you have any personal bank records that are property of the City?

_____

[18]Questions 1)-5), and 7) are relevant to the issue of whether defendant has immunity under the FSIA, and whether she was acting in her governmental capacity.  Question 6) relates to documents originally sought by plaintiff, and is within the limited scope of discovery.  Finally, questions 8)-9) relate to documents sought by plaintiff that also relate to the issue of sovereign immunity.

7) When you **appeared at the** Alternate Charlemagne award ceremony in Leipzig **last year, were your expenses,** and those of your employees, **paid for by the City or by someone** else?

8) In your **computer system, do you maintain the** names of some of the people that **the companies are asking about [**whether they are Scientologists]?

9) Do you **have a computer system for locating** records such as this [notes regarding **sending out sect filters to** companies for certain people]?

Next, the following **questions, from the** transcript of defendant's deposition, **shall also be answered:**

1) Who wrote your **job description?** (Deposition Transcript at 47, line 18).

2) Do you have **any specific orders from any sen**ior official in Hamburg telling you what to do in **your job?** (Deposition Transcript at 47, lines 6-8).

Any follow-up **questions shall be permitted** and any other questions relevant to the issue of sovereign immunity.

Finally, as previously ordered by this court, defendant shall produce any documents **in her possession or** control that are responsive to plaintiff's Request to Produce, specifically those documents referenced in the deposition transcript. The documents shall be produced **two (2) days** prior to the deposition.

## CONDUCT OF CABERTA'S DEPOSITION

The following guidelines, which were set forth in <u>Quantachrome Corp. v. Micromeritics Instrument Corp.</u>, 189 F.R.D. 697, 701 (S.D. Fla. 1999), shall govern the conduct of the deposition of defendant and any other depositions conducted in this case:

1) counsel shall limit his or her objections and instructions to those permissible under Rule 30;

2) counsel shall not make any objection or statement in the presence of the deponent that might suggest the answer to a pending question; and

3) prior to the commencement of questioning, counsel for defendants shall instruct the deponent that the deponent should ask deposing counsel, not her own counsel, for clarification of any question. <u>See</u> <u>id.</u>

The parties shall also be guided by the provisions concerning conferences between the deponent and counsel addressed in standard 18 of the Civil Discovery Standards adopted by the American Bar Association in August 1999:

**Standard 18 - Conferring with the Witness**

a.   During the Deposition

i.   An attorney for a deponent should not initiate a private conference with the deponent during the taking of the deposition except to determine whether a privilege should be asserted or to enforce a court-ordered limitation on the scope of discovery.  Subject to the provisions of subparagraph (a)(ii) and (b) below, a deponent and the attorney may confer during any recess in a deposition.

13

ii.  An attorney for a deponent should not request or take a
     recess while a question is pending except to determine
     whether a privilege should be asserted or to ascertain
     whether the answer to the question would go beyond a
     court-ordered limitation on discovery.

iii. In objecting to or seeking to clarify a pending question,
     an attorney for a deponent should not include any comment
     that coaches the witness or suggests an answer.

iv.  Any discussion among counsel about the subject matter of
     the examination should at the request of the examining
     attorney occur only when the deponent has been excused
     from the deposition room.

v.   An attorney shall not instruct or permit another attorney
     or any other person to violate the guidelines set forth
     in sections a(i)-a(iv) with respect to that attorney's
     client.

b.   During a Recess

i.   During a recess, an attorney for a deponent may
     communicate with the deponent; this communication should
     be deemed subject to the rules governing the attorney-
     client privilege.

ii.  If, as a result of a communication between the deponent
     and his or her attorney, a decision is made to clarify or
     correct testimony previously given by the deponent, the
     deponent or the attorney for the deponent should,
     promptly upon the resumption of the deposition, bring the
     clarification or correction to the attention of the
     examining attorney.

iii. The examining attorney should not attempt to inquire into
     communications between the deponent and the attorney for
     the deponent that are protected by the attorney-client
     privilege.  The examining attorney may inquire as to the
     circumstances that led to any clarification or
     correction, including inquiry into any matter that was
     used to refresh the deponent's recollection.

Conferring with the Witness, Civil Discovery Standards, Standard

18, A.B.A. Sec. of Litig. (August 1999) (available at

www.abanet.org/litigation/taskforces/standards.html).

Instructing a witness not to answer a question due to a relevancy objection is a treacherous practice, especially in light of the 1993 amendment to Federal Rule of Civil Procedure 30(d)(1). The court expects that counsel will be especially mindful of this rule in Caberta's deposition, and in all future depositions.

Counsel for the parties are experienced litigators and should be mindful of the admonition by the court in Quantachrome:

> In closing, the primary purpose of the Rules of Civil Procedure is to 'secure the just, speedy, and inexpensive determination of every action.' Fed.R.Civ.P. 1. The constant sniping and bickering between the instant parties have operated to draw out this action and increase the expense at every turn, effectively defeating the very purpose for which we have the Rules and a liberal discovery process.
>
> The Court has previously noted that there is no love loss [sic] between these parties. That said, the Court refuses to believe that it must actually issue an order for the parties to play nice. The Court understands that the parties are competitors in their field. Nonetheless, if counsel for both parties will attempt to inject a little more civility into this civil action, perhaps the litigation will flow more smoothly and expeditiously toward resolution.

Quantachrome, 189 F.R.D. at 701-02.

## SANCTIONS

Plaintiff seeks sanctions in the amount of $8,707.93 for costs incurred by plaintiff's counsel for airfare, hotel, State Department fees, transportation, interpreter, videographer, and court reporter. (Dkt. 105 at 25). Plaintiff also seeks attorneys' fees in the amount of $12,250.00 for 49 hours at $250.00 per hour. (Id.).

15

Rule 37, Federal Rules of Civil Procedure, provides for sanctions in discovery-related disputes under certain circumstances. See <u>Carlucci v. Piper Aircraft Corp., Inc.</u>, 775 F.2d 1440, 1446 (11th Cir. 1985) ("[A]ll federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties litigant. . . the Federal Rules of Civil Procedure provide, in Rule 37(b), that failure by a party or his counsel to make or cooperate in court-ordered discovery may, at the trial court's discretion, lead to the imposition of sanctions of several sorts.").

Subsection (d), in particular, provides that sanctions are appropriate against a party who fails to appear at a properly noticed deposition. Fed. R. Civ. P. 37(d).[19] <u>See also Lee v. Walters</u>, 172 F.R.D. 421, 425-29 (D. Or. 1997) (court ordered defendant, its attorney, or both to pay plaintiff's reasonable expenses, including attorney's fees, that were caused by their failure to attend duly-noticed depositions); <u>Blue Grass Steel, Inc. v. Miller Bldg. Corp.</u>, 162 F.R.D. 493, 495 (E.D. Penn. 1995) (court

---

[19]Federal Rule of Civil Procedure 37(d) states:

If a party . . . fails . . . to appear before the officer who is to take the deposition, after being served with a proper notice . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under [other subsections of this rule].

Fed. R. Civ. P. 37(d).

granted attorney's fees and costs to defendant for bringing the motion to compel after corporate party failed to show up for deposition).

The party seeking sanctions need not establish that the deponent wilfully failed to appear at the deposition, unless extreme sanctions such as dismissal or default are sought. See Fed. R. Civ. P. 37(d), advisory committee's note.[20]  See also Barkatlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1049 (11th Cir. 1994).

In the instant case, defendant did not attend her scheduled deposition on July 25, 2001.  Even though she asserts that she was obligated to attend a work-related meeting in Berlin on the morning of July 25, 2001, her attorney represented to the court at the July 20, 2001 hearing, that defendant could travel back to Hamburg by 2:00 p.m. on July 25, 2001 in time for the deposition.  (Dkt. 102 at 12, 15).

Moreover, the court was fully apprised of the issue when it denied defendant's emergency motion on July 20, 2001.  (Dkt. 94).  Likewise, Judge Wilson denied the second emergency motion on July 24, 2001.  (Dkt. 100).

--------

[20]The advisory committee's note to Rule 37(d) states that "[t]he resulting flexibility as to sanctions eliminates any need to retain the requirement that the failure to appear or respond be 'wilful.'"  Fed. R. Civ. P. 37(d), advisory committee's note.  Moreover, "in view of the possibility of light sanctions, even a negligent failure should come within Rule 37(d)."  Id.

Accordingly, plaintiff is entitled to his reasonable attorney's fees and costs associated with defendant's failure to appear for her deposition on July 25, 2001 at 2:00 p.m.

Similarly, Rule 37(a)(2)(B), Federal Rules of Civil Procedure, provides "if a deponent fails to answer a question propounded or submitted under Rules 30 or 31 . . . the discovering party may move for an order compelling an answer." Fed. R. Civ. P. 37(a)(2)(B). Then, if the court grants the motion and finds that the party's nondisclosure or lack of response was not "substantially justified or that no "other circumstances make an award of expenses unjust," reasonable attorney's fees and costs may be awarded to the moving party. Fed. R. Civ. P. 37(a)(4)(A). <u>See also Gober v. City of Leesburg</u>, 197 F.R.D. 519, 521-22 (M.D. Fla. 2000) (defendant was not substantially justified in withholding social security number at deposition, thus plaintiff's reasonable attorney's fees and costs were granted for bringing the motion to compel).

In the case at bar, defendant appeared for the second scheduled day of her deposition, but gave evasive answers and even failed to answer certain questions propounded by plaintiff's counsel. Moreover, at the deposition, Hintze, who is a prospective witness for defendant, often interrupted and engaged in commentary on the record, and spoke with the defendant in German while questions were pending.

18

While defendant's counsel is permitted to direct defendant not to answer a deposition question when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to protect a witness from an examination that is being conducted in bad faith, <u>Gober</u>, 197 F.R.D. at 520 (citing Fed. R. Civ. P. 30(d)(1)); defendant frustrated the purpose of the deposition by engaging in dilatory tactics.  Thus, she has not established that she was "substantially justified" in refusing to answer deposition questions that fall within the scope of the jurisdictional issue under FSIA.  Defendant, however, may have been justified in asserting her Fifth Amendment privilege, and shall not be required to answer those questions for which she has already asserted the privilege.

Accordingly, because plaintiff obtained some information from defendant during the deposition, imposing the entire amount of sanctions sought would be unjust.  Plaintiff is entitled to the reasonable attorney's fees and costs in connection with defendant's failure to attend the first day of her deposition on July 25, 2001.

As for the second day of deposition testimony, the request for sanctions is under advisement pending defendant's compliance with this order.

## CONCLUSION

Accordingly, upon due consideration, it is hereby **ORDERED THAT:**

(1)  Plaintiff's motion to compel (Dkt. 105) is **GRANTED** to the extent that defendant shall **submit to a deposition** in this district within thirty (30) **days of this order,** defendant shall answer questions as mentioned <u>supra</u>, **and defendant shall** produce documents responsive to plaintiff's document requests within **ten (10) days** of this order; and

(2) The request for sanctions is **GRANTED** to the extent that defendant shall **reimburse plaintiff for the reason**able expenses and **attorney's fees incurred in connection with the fai**led first day of defendant's deposition in Germany, **one-half of** the reasonable expenses and attorney's fees, as well as the expenses incurred in **filing the instant motion to compel.   Airf**are and ground transportation **shall not be included.**[21]  The parties shall confer in good faith in **an effort to stipulate to the amou**nt of reasonable attorney's fees and **expenses.   If the parties are** unable to agree, plaintiff shall **file an affidavit as to expenses** and fees within

---

[21]The request for **sanctions for the second da**y of deposition testimony is under **advisement pending defendant's** compliance with this court's order.

twenty (20) days of the date of this order and defendant may file

a counter-affidavit within ten (10) days thereafter.

**DONE and ORDERED** at Tampa, Florida this ___/6th___ day of

November, 2001.

_____
ELIZABETH A. JENKINS
United States Magistrate Judge

Copies to:
Counsel of Record

21

F I L E   C O P Y

Date Printed: 11/16/2001


Notice sent to:

     ___   F. Wallace Pope, Esq.
          Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A.
          911 Chestnut St.
          P.O. Box 1368
          Clearwater, FL  33757-1368

     ___   Kendrick L. Moxon, Esq.
          Moxon & Kobrin
          3055 Wilshire Blvd., Suite 900
          Los Angeles, CA  90010

     ___   John Matthew Merrett, Esq.
          Law Office of John M. Merrett
          11250 St. Augustine Rd., Suite 15-393
          Jacksonville, FL  32257-1147

     ___   Robert Merkle, Esq.
          Merkle & Magri, P.A.
          5510 W. LaSalle St.
          Tampa, FL  33607

     ___   Daniel A. Leipold, Esq.
          Leipold, Donohue & Shipe, LLP
          960-A W. 17th St.
          Santa Ana, CA  92706