**DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

HUBERT HELLER,

          Plaintiff,

    vs.               Case No. 8:00-CV-1528-T-27C

URSULA CABERTA,

          Defendant.

_____/

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION TO RECUSE MAGISTRATE

Plaintiff Hubert Heller respectfully submits this Opposition to Defendant's Objection to the Magistrate Judge's Order Denying Defendant's Motion to Recuse Magistrate ("Objection").

In yet another round in defendant's effort to delay or prevent discovery in this action, defendant Caberta has filed an Objection to the Magistrate Judge's denial of her frivolous Motion to Recuse, without making any effort to show how the Magistrate Judge erred, let alone trying to satisfy the "clearly erroneous" standard applicable to the Magistrate Judge's Order. The Magistrate Judge thoroughly reviewed Caberta's baseless allegations of an appearance of impropriety and made specific factual findings – amply supported by the record – that she was fully aware

of the parties' arguments and had fully reviewed the record prior to her oral ruling on plaintiff's Motion to Compel.

The Magistrate Judge's factual findings can be overturned only if they are clearly erroneous, a standard Caberta fails to meet. Moreover, the Magistrate Judge applied the correct legal rules under 28 U.S.C. § 445(a) concerning allegations of impartiality in denying defendant's Motion to Recuse, which was predicated solely on disagreement with the Magistrate Judge's rulings and in-court proceedings. Under well-established law, such complaints are an insufficient basis for a Motion to Recuse.

This Court should affirm the Magistrate Judge's Order.

## I. The Magistrate Judge Correctly Denied Defendant's Motion to Recuse, Which Was Based Solely on the Magistrate Judge's Court Rulings and Information Learned from Within the Case

This Court may set aside a magistrate judge's ruling on a nondispositive pre-trial matter, such as a motion to recuse, only if the magistrate judge's order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *U.S. ex rel. Mueller v. Eckerd Corp.*, 35 F.Supp.2d 896 (M.D. Fla. 1999); *see also* 28 U.S.C. § 636(b)(1)(A). Under this standard, the district court may set aside a magistrate judge's ruling only if the district court is "left with the definite and firm conviction that a mistake has been made." *U.S. v. Block 44, Lots 3, 6*, 177 F.R.D. 692, 693 (M.D. Fla. 1997); *Rowlin v. Alabama Dept. of Public Safety*, 200 F.R.D. 459 (M.D. Ala. 2001). This standard is "a very difficult one to meet." *Tai-Pan, Inc. v. Keith Marine, Inc.*, 1997 WL 714898 at *11 (M.D. Fla. 1997).

2

The Magistrate Judge correctly denied Caberta's Motion to Recuse. Each of the complaints that formed the basis of Caberta's Motion reflected either simple disagreements with the Magistrate Judge's rulings or complaints about the Magistrate Judge's non-personal, judicial statements during the hearing. Under 28 U.S.C. § 455(a), a party seeking recusal must show that the magistrate judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). According to Caberta, the Magistrate Judge purportedly showed her impartiality because: (1) the Magistrate Judge allegedly failed to conduct an adequate review of the transcript of Caberta's deposition prior to issuing its oral order (*see* Objection, at 2-4); (2) the Magistrate Judge believed (correctly) that Caberta's counsel directed Caberta not to answer questions in her deposition[1] (*see* Objection, at 4, n.3); and (3) the Magistrate Judge allegedly failed to review the February 15, 2001 Order directing jurisdictional discovery in this case prior to conducting the Hearing[2] (*see* Objection, at 4, n.3).

---

[1] Caberta's counsel repeatedly directed Caberta not to answer questions in her deposition. Indeed, when the Magistrate Judge asked defense counsel to "let me just hear why [defense counsel] instructed [defendant] not to answer," (Ex. A, Hearing Transcript at 27), counsel did not deny the charge, but rather stated: "If it were me, I think I would have done the same thing." (*Id.*, at 28.) Counsel's accusation that the Magistrate Judge showed bias and prejudice in *accurately* recognizing that counsel instructed Caberta not to answer, after counsel expressly confirmed this fact to the Magistrate Judge, is, to put it mildly, remarkable.

[2] The record reflects that during the hearing the February 15, 2001 Order was not in the Court file, but rather had been forwarded to the Court of Appeals. Caberta fails to show that the Magistrate Judge was unfamiliar with the Order, that the Order had any particular relevance to the issues before the Magistrate Judge, or that its absence from the folder due to Caberta's appeal shows the Magistrate Judge's bias, prejudgment, or appearance of impropriety. In any event, *Caberta's counsel* provided
(continued...)

3

In cases interpreting Section 455(a), courts in this Circuit have explicitly held that a party moving for recusal must show the magistrate judge's "impartiality" based on "something other than that which the judge learned by participating in the case." *McWhorter v. City of Birmingham,* 906 F.2d 674, 678 (11th Cir. 1990); (Ex. B, Order at 4). In other words, "[t]he judge's bias must be *personal* and *extrajudicial.*" *Id.* (emphasis added); *see Loranger v. Stierheim,* 10 F.3d 776, 780 (11th Cir. 1994); *Jaffree v. Wallace,* 837 F.2d 1461, 1465 (11th Cir. 1988); *see also Noel v. U.S.,* 12 F.Supp.2d 1300, 1306 (M.D. Fla. 1998).

Further, the alleged "impartiality" may not be based on mere disagreement with a judge's rulings. *See Liteky v. United States,* 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); *McWhorter,* 906 F.2d at 678 ("a judge's rulings in the same or a related case may not serve as the basis for a recusal motion"); *Loranger,* 10 F.3d at 780-81 (rejecting recusal when "complaints about the trial judge . . . are nothing more than complaints about the judge's timeliness and rulings"); *Jaffree,* 837 F.2d at 1465 ("It is simply not enough to voice disagreement with previous rulings").

As the Magistrate Judge recognized, Caberta's complaints reflect disagreements only with the Magistrate Judge's rulings and alleged deficiencies in the Magistrate Judge's review of the record based on information learned within the judicial proceeding. These objections provide no legal basis for Caberta's Motion to

---

(...continued)
this Court with a copy of the Order at the hearing, prior to any ruling. (*See* Ex. A, Hearing Transcript, at 28.)

Recuse. Opinion at 6; *see Liteky*, 510 U.S. at 556 (rejecting motion to recuse based on "judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses").[3]

Contrary to Caberta's contention, *see* Objection at 6-7, there is no exception to these rules for cases where a party claims an "appearance of impropriety," rather than actual impropriety, which Caberta concedes does not exist. The precise standard for recusal pursuant to Section 455(a) is whether the magistrate judge's "impartiality might reasonably be questioned," that is, whether there is an *appearance of*, not actual, impropriety. *See* 28 U.S.C. § 455(a); *see McWhorter*, 906 F.2d at 678. Under well-established law, this impartiality may not be questioned, as Caberta does, solely on the basis of information the Magistrate Judge learned within the case and on mere disagreements with the Magistrate Judge's rulings.

Caberta's reliance on two cases from outside this Circuit based on facts clearly distinguishable from this case serves only to highlight that the Magistrate Judge properly denied Caberta's Motion to Recuse. (*See* Objection at 5-6, citing *Alexander*

---

[3] The courts recognize a narrowly limited exception to the rule that judicial rulings and information learned within the case cannot be the basis for a motion to recuse in these truly extraordinary cases where the judge displays "pervasive bias and prejudice." *See Loranger*, 10 F.3d at 780 ("In *rare* cases, [courts] have required recusal when such *pervasive* bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party") (internal quotation omitted) (emphasis added); *United States v. Holland*, 655 F.2d 44, 47 (5th Cir. 1981). Caberta specifically concedes she cannot make the required showing. (*See* Objection, at 6.) Moreover, Caberta's allegations that the Magistrate Judge erroneously referred to an incorrect deposition transcript and failed to conduct an adequate review of the record prior to issuing her oral ruling manifestly fail to show any "pervasive bias and prejudice."

*v. Primerica Holdings, Inc.*, 10 F.3d 155 (3rd Cir. 1993); *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1631 (10th Cir. 1977)). In *Alexander*, the district judge demonstrated *personal* and *extrajudicial* bias towards plaintiffs' counsel, stating: "I would appreciate candor from [plaintiffs' counsel] and that in the past I've had difficulty with him." (*Id.*, at 159.)[4] *Webbe* concerned reassignment after a reversal on appeal, in which there is a concern, not present in this case, as to whether a district court is able to put aside the reversal of its prior rulings in a subsequent proceeding. *Webbe*, 549 F.2d at 1631; *U.S. v. Torkington*, 874 F.2d 1441, 1447 (11th Cir. 1989). Further, the appeals court in *Webbe* predicated its decision on the trial judge having stated, after hearing plaintiff's oral argument, that defendant appeared to be "stuck." There is no suggestion in this case that the Magistrate Judge made any remark smacking of impropriety in the faintest degree.

## II. The Magistrate Judge's Factual Finding that She Had Reviewed the Record and Was Aware of Each Parties' Arguments is Not Clearly Erroneous

Caberta's Objection fails not only as a matter of law, but also as a matter of fact. Caberta's central factual contention was that the Magistrate Judge failed to

---

[4]    The district judge also stated in open court that two of plaintiffs' witnesses may have committed perjury, "an indication that the district court judge – without having heard all of the testimony – has already determined that important witnesses for the [plaintiffs] are not credible." *Alexander*, 10 F.3d at 164. Further, after denying the motion to recuse and subsequent to the filing of a mandamus petition, the judge wrote a letter to the plaintiffs' counsel, without providing a copy to the appellate court, accusing the retirees of making "incomplete or inaccurate summaries" of his comments, suggesting that the district judge had a "personal interest in the outcome of th[e] litigation." (*Id.*, at 165.)

review the transcript of Caberta's deposition before issuing its oral order.  (*See* Objection, at 2-4.)  The Magistrate Judge specifically rejected this factual contention after a full review of the record and the Hearing Transcript.  The Magistrate Judge found:

> Although the court referred to the wrong deposition transcript during the hearing, the court had previously reviewed *the correct deposition transcript*.  Thus, the court was *fully apprised* of the parties' arguments before ruling in open court and the transcript of the hearing reflects that as a whole.

(Ex. B, Order, at 6, n.5 (emphasis added).)

In her brief to this Court, Caberta does not even assert that this factual finding was erroneous, let alone clearly erroneous, but merely repeats the same incorrect allegation she previously made that this momentary reference to the another deposition transcript indicates that the Magistrate Judge had failed to review the record prior to making her oral ruling.  (*See* Objection, at 2, 7.)

Moreover, the Hearing Transcript itself shows that the Magistrate Judge was fully aware of the parties' arguments and conducted the hearing on plaintiff's motion to compel in an evenhanded and unbiased manner.  In questioning the parties' counsel, the Magistrate Judge asked a number of probing questions which demonstrated evenhandedness and her intimate, detailed familiarity with the record in this case.[5]  Nor has Caberta shown any other fact-finding by the Magistrate Judge that

---

[5]  For example, the Magistrate Judge questioned plaintiff's counsel regarding the Affidavit filed by Caberta (*see* Ex. A, Hearing Transcript, at 10-11), whether plaintiff sought to compel answers only to the specific questions listed in his Motion

(continued...)

is clearly erroneous.

## CONCLUSION

For the foregoing reasons, this Court should affirm the Magistrate Judge's

Order.

Dated: December 19, 2001                    Respectfully submitted,

Kendrick Moxon
Helena Kobrin
FBN #: 0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL  33755
(727) 443-5620

F. Wallace Pope, Jr.
FBN #: 124449
JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818

*Attorneys for Plaintiff*

---

(...continued)
or to other questions (*see id.*, at 13-14), as well as Caberta's claim that she would
have appeared for further deposition the following day (*see id.*, at 15-16).  The
Magistrate Judge questioned Caberta's counsel regarding Caberta's refusal to provide
her bank records or to be questioned about them, although that particular point had
not arisen during plaintiff's argument.  (*See id.,* at 26-27.)  The rest of the Magistrate
Judge's questions to Caberta's counsel likewise show the Magistrate Judge's full
knowledge of each parties' arguments prior to ruling and her evenhanded conduct of
the Hearing.

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION TO RECUSE MAGISTRATE** to be served on this 19th day of December, 2001, by U.S. Mail, to John Merrett, 11250 St. Augustine Road, Apartment 15-393, Jacksonville, FL 32257-1147; and Ward Meythaler of Merkle & Magri, P.A., 5510 West LaSalle St., Tampa, FL 33607.

_____
Attorney

9

# EXHIBIT A

1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE MIDDLE DISTRICT OF FLORIDA
2                 TAMPA DIVISION

3         Case No. 8:00-CV-1528-T-27EAJ

4                October 24, 2001
                 Tampa, Florida
5

6    HUBERT HELLER,

7           Plaintiff,

8    vs.

9    URSULA CABERTA,

10          Defendant.

11   _____/

12

13

14

15       TRANSCRIPT OF TAPE-RECORDED HEARING
             RE:  MOTION TO COMPEL
16   BEFORE THE *HONORABLE ELIZABETH A. JENKINS,*
           *UNITED STATES MAGISTRATE JUDGE*
17

18

19

20   Appearances of Counsel:

21   For the Plaintiff:      Mr. Kendrick Moxon

22   For the Defendant:      Mr. Ward Meythaler
                             Mr. John Merrett
23

24   Transcribed by:         Dennis Miracle
                             Official Court Reporter
25

10

1   relationship or any benefits received from the president

2   of the company that Mr. Minton owns, a woman named Stacey

3   Brooks.   Yet in her opposition to summary judgment she

4   filed an affidavit from Ms. Brooks, and she talked about

5   both Ms. Brooks and Ms. Minton -- Mr. Minton in her

6   declaration she filed in this case, although she

7   steadfastly refused to respond to any questions about the

8   matter at the deposition.

9         THE COURT:  Now, is the issue of immunity before

10  Judge Whittemore on the motion for summary judgment?

11        MR. MOXON:  He's held it in abeyance pending a

12  ruling by this Court on this discovery dispute.

13        THE COURT:  Okay.  So -- but that -- those are

14  the issues that are briefed before Judge Whittemore.

15        MR. MOXON:  Well, no, they're briefed -- a

16  summary judgment motion was filed by the defendant.  I

17  filed a motion to hold in abeyance any opposition until

18  this was resolved.

19        THE COURT:  Okay.  So -- but defendant is

20  challenging the Court's jurisdiction on the grounds of

21  sovereign immunity?

22        MR. MOXON:  Yes, Your Honor.

23        THE COURT:  Okay.  So her affidavit goes

24  directly to the heart of the issues that Judge Whittemore

25  ordered discovery on.

1          MR. MOXON:   That's correct.

2          THE COURT:   Okay.

3          MR. MOXON:   The first immunity issue, by the

4    way, to put this in context, is whether or not

5    Ms. Caberta qualifies as an agent of a foreign state; and

6    if she acts beyond the scope of her authorized duties,

7    then she is not immune; she's susceptible to tort

8    liability for her acts if she acts outside of her

9    authority.  And I've got many citations of authority if

10   you wish me to give them to you.

11          But many of my questions went to establishing

12   the scope of her alleged authority and, indeed, whether

13   the Hamburg government by which she's employed even knew

14   what she was doing.

15          So some of my questions, for example, were,

16   "Have you provided any requests for funding to the

17   government listing what your activities are?"  Obviously

18   if the government paid for activities and knew what they

19   were, then that would be critical evidence.  She refused

20   to answer any questions like that.

21          The questions concerning financial matters also

22   go to the illegality.  If she's accepting bribes or

23   accepting funds for the work that she's doing as a public

24   official, obviously also that's unlawful and would be

25   outside the scope of her authority, and she would be

1  purpose is to investigate Scientology business and

2  Scientology practices" -- and she went on and on about it

3  -- and I asked her simply, "Well, did you issue one of

4  these sect filters to locate Jewish business practices?"

5  And she became upset at that and said, "Well, that's anti

6  semitic; that's a disgusting answer, and I'm not going to

7  go any further."

8         But it was -- it was a Socratic question

9  obviously intended to elucidate that what she was doing

10  was committing acts that were obviously prejudicial

11  against a specific religious body.

12         THE COURT:  Mr. Moxon, let me ask you, you've

13  identified some specific questions and answers that

14  you're seeking a motion to compel on; but in other

15  respects, you say, kind of, See e.g.

16         Do you have a complete list of all questions

17  which you're requesting an order to compel?

18         MR. MOXON:  Well, I guess the -- the simple

19  answer to that is no.  I mean, I listed a number of

20  questions by bullet point at the end.

21         THE COURT:  Right.

22         MR. MOXON:  But throughout the body of my paper,

23  I listed a number of examples of --

24         THE COURT:  Right.

25         MR. MOXON:  -- evasive responses.

1          THE COURT:  So as I understand it, in some areas

2     she refused to answer totally on instructions of counsel,

3     is that right?  And on some she gave answers that you

4     felt were not complete or were misleading, is that

5     correct?

6          MR. MOXON:  That's correct.

7          In addition, she refused to answer many

8     questions on her own accord without any instructions of

9     counsel.  In fact, that was the -- the predominant

10    questions that she refused to answer were on her own

11    accord or she evaded and declined to answer directly.

12         THE COURT:  Okay.

13         MR. MOXON:  But I guess my biggest beef, in

14    addition to the non-responsiveness, is that there was so

15    little time that I -- I couldn't remotely approach all of

16    the areas of questioning that I needed to approach.  And

17    with this very, very difficult witness and the difficult

18    problem with the translation and her evasive answers,

19    this is the kind of deposition that it takes some time.

20         If we had a witness that you give them a

21    question and they give you a direct answer, you know,

22    it's very easy; it's simple.  It's A to B, and that's the

23    way it should be.  But this was not an easy witness.

24         I don't mean to cast aspersions, but she has an

25    arrogant mien and she didn't -- didn't -- she didn't want

1   to answer the questions.  She felt that she -- didn't

2   feel that she had to answer the questions, and so she

3   felt that whatever question -- whatever answer she gave

4   me, that was good enough and I'd better accept it.  And

5   that's kind of the way the deposition went.

6          THE COURT:  And so what -- on the 26th you were

7   only able to cover about four hours of total testimony.

8          MR. MOXON:  Four hours and 20 minutes of actual

9   Q and A --

10          THE COURT:  Okay.

11          MR. MOXON:  -- but, again, with translation...

12          THE COURT:  What about this issue of the next

13   day?  That seems to be raised as one of the defenses

14   here.  "Well, we said we'd go the next day."  What's your

15   response to that?

16          MR. MOXON:  They didn't say they would go the

17   next day.  That's a -- that was a very -- I won't say

18   tricky -- it's an inaccurate assertion.

19          They said -- the best they said in their

20   opposition was, "I didn't mention anything about the next

21   day," or "I didn't indicate a desire to go the next

22   day."  Well, that's just a complete red herring.

23          One, they all knew -- and we addressed before

24   the Court -- that we -- I didn't have a court reporter

25   for the next day.  And they said in their emergency

1    motion that they would find somebody and they didn't.

2    They didn't find any court reporter.  I knew there were

3    no other court reporters.  There weren't any.

4         At the deposition I asked Mr. Merrett if he had

5    found another court reporter, and he said, "No, we

6    didn't."  And I -- we all left.  She -- and, indeed, she

7    had indicated earlier that she wasn't available that day

8    in some of the prior correspondence.  You have to work at

9    these depositions three weeks in advance.

10        Also, for them to say that, at the end of the

11   day, they would have stayed if I had asked, the

12   suggestion is just -- is just inaccurate.  There was no

13   suggestion by them that she would have stayed.  This is a

14   post hoc kind of justification that has no basis in

15   fact.

16        And, in fact, you know, you may recall,

17   Your Honor, at the emergency hearing that you admonished

18   counsel, because I had offered -- when they brought up

19   this problem of the scheduling, I said, Look, I'm willing

20   to cancel this whole thing in Germany; just come to

21   Florida.  Come into the district and I'm willing to

22   stipulate that we can extend the time, come back here,

23   just as the Court had originally ordered, and we don't

24   have to go through all this complex procedure and

25   everything that we have to go through with having the

1          She repeatedly told counsel that if any

2   documents exist, they are under the custody and control

3   of the government of Hamburg, and she is not allowed to

4   produce them.

5          THE COURT:  Does that include her bank records?

6          MR. MEYTHALER:  Now, with respect to the bank

7   records, what -- she said that if any documents exist,

8   including the bank records, they belong to the government

9   of Hamburg.

10         THE COURT:  Does she -- she doesn't have a

11  personal bank account, Mr. Meythaler?

12         MR. MEYTHALER:  She has a personal bank

13  account.  She has personal bank records.  They belong to

14  her.

15         The ones that he asked about with -- that might

16  show -- that may or may not show any receipt of funds

17  from Mr. Minton she does not have anymore.  She doesn't

18  have any such documents.  They have been discarded.  She

19  doesn't keep bank records for that long a period of time.

20         THE COURT:  Don't the banks keep records?

21         MR. MEYTHALER:  Well, they may well keep bank

22  records.

23         THE COURT:  So her personal records would be

24  within her custody and control; it would be just as if

25  you were missing a monthly statement and you didn't have

27

1   it, you could ask your bank.

2         MR. MEYTHALER:  Well, I don't know if that's

3   true or not.  I mean, I know you can do that here.  I

4   know I can do it with my bank.  I don't know if that's

5   true but --

6         THE COURT:  Well, let me ask you about another

7   thing, Mr. Meythaler -- and I'm going to let you

8   finish --

9         MR. MEYTHALER:  All right.

10        THE COURT:  In looking at this deposition,

11  Mr. Merrett was instructing Mr. Caberta -- Ms. Caberta

12  not to answer certain questions.  Mr. Merrett and I have

13  been down this road before -- and I don't know if that's

14  why he's not presenting argument -- but we have been down

15  this road before about instructing witnesses not to

16  answer where we're not talking about a privilege or to

17  enforce an order entered by the Court.  That, in and of

18  itself, raises a red flag in my mind as to whether this

19  deposition was conducted in good faith.  Can you answer

20  that for me?

21        MR. MEYTHALER:  I can, Your Honor, but it's

22  inherent in my whole argument.

23        THE COURT:  Well, let me just hear why he

24  instructed her not to answer.

25        MR. MEYTHALER:  Well, he'd have to answer the

1    question himself of why he instructed her not to answer.

2         If it were me, I think I would have done the

3    same thing, because you can't very well adjourn the

4    deposition when you're in Germany and come back here for

5    a ruling.

6         Every question that was not answered is

7    absolutely irrelevant to this case and is contrary to the

8    Court's order of what's supposed to occur here.  I mean,

9    that's my short answer.  And I want to expound on that

10   when I get to it.

11        I mean, the Court -- can I present the Court

12   with -- because this is what's critical here -- the order

13   that's actually established this deposition?

14        THE COURT:  My order?

15        MR. MEYTHALER:  No.  This is Judge Whittemore's.

16        THE COURT:  That's in the file, but the file was

17   up before the Eleventh Circuit so I don't have that.  You

18   can hand that to the C.S.O.  Thank you.

19        Any objection?

20        MR. MOXON:  No, Your Honor.

21        THE COURT:  All right.  Go ahead, Mr. Meythaler.

22        MR. MEYTHALER:  Judge, this case --

23        THE COURT:  Is this my copy?

24        MR. MEYTHALER:  Yes, Your Honor.

25        THE COURT:  Okay.

51

1    order that I'm going to enter **hopefully** within a week or

2    so.

3            MR. MOXON:  Thank you, Your Honor.

4            THE COURT:  Thank you.  We're in recess.

5            (Thereupon, **the proceedings** in this case for

6    this date were concluded at **this** time.)

7

8

9

10

11

12

13

14

15

16

17

18

19            C E R T I F I C A T E

20    I hereby certify that **the foregoing** is an accurate

21    transcription of **tape-recorded proceedings** in the above-

22    entitled matter.

23

24    _____            _____

25    / Official Court Reporter                          /Date

*Dennis Miracle*
United States Court Reporter
801 North Florida Avenue
Tampa, FL  33602 * Ph. (813) 301-5699

# EXHIBIT B

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER,

     Plaintiff,

v.                                    CASE NO.: 8:00-CV-1528-T-27C

URSULA CABERTA,

     Defendant.

_____/

## O R D E R

Before the court is defendant's **Motion to Recuse Magistrate and for New Hearing and Memorandum of Law** (Dkt. 124), Supplement to Defendant's **Motion to Recuse Magistrate and for New Hearing** (Dkt. 126), and plaintiff's response (Dkt. 130).

### BACKGROUND

On October 24, 2001, the undersigned conducted a hearing on plaintiff's motion to compel further deposition of defendant, Ursula Caberta ("Caberta") (Dkt. 105). At the end of the hearing, the court directed the parties to set a date for defendant's deposition to be conducted in the Middle District of Florida within thirty (30) days and indicated that a written order would be forthcoming.

On October 31, 2001, defendant filed a recusal motion requesting that the undersigned magistrate judge recuse herself from this case pursuant to 28 U.S.C. § 455(a). The court has



deferred entering a written order on the motion to compel pending resolution of the instant motion.

First, defendant asserts that by the end of the hearing, the court had already decided to grant plaintiff's motion to compel without considering critical evidence favorable to defendant. (See Dkt. 124 at 2-4). Defendant argues that this gives rise to the appearance of a lack of impartiality. (Id.).

Specifically, defendant asserts that the undersigned reviewed the wrong deposition transcript before conducting the hearing: a deposition transcript from plaintiff's state court proceeding, instead of the transcript from the July 26, 2001 deposition of defendant, Ursula Caberta ("Caberta"). (See Dkt. 124 at 3).

Next, defendant asserts that the court did not review the district judge's February 15, 2001 order that established the limited scope of Caberta's deposition. (See Dkt. 124 at 4).[1]

Finally, defendant claims that the court has engaged in "seemingly unevenhanded treatment of the Defendant and her counsel." (Dkt. 124 at 6). As one example, defendant points to the court's order striking defendant's motion (Dkt. 112) as not complying with the requirement in Local Rule 3.01(g) that the movant confer with opposing counsel before filing the motion.

---

[1]Defendant asserts that the undersigned "acknowledged that the Court's February 15, 2001 Order was not even available to her because it was part of the record at the Eleventh Circuit Court of Appeals." (Dkt. 124 at 4).

2

Defendant claims that its certification in that motion was identical to a certification made by plaintiff in the motion to compel currently before the court. (Dkt. 124 at 6-7).[2]

Plaintiff, on the other hand, asserts that the court (1) has "intimate familiarity" with this case; (2) is apprised of the district judge's February 15, 2001 order, as evidenced by the court's March 29, 2001 order in which the court initially compelled Caberta's deposition; and (3) was not biased or prejudiced against defendant merely because the court ruled against her. (Dkt. 130 at 2-3). Moreover, plaintiff asserts that defendant misrepresents the facts underlying the motion at issue. (Dkt. 130 at 3).

## ANALYSIS

A magistrate judge should recuse herself in any proceeding "in which [her] impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or "[where she] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," among other grounds. 28 U.S.C. § 455(b)(1). The instant action concerns only section 455(a).[3]

_____

[2]In this court's September 26, 2001 order (Dkt. 115), the court stated that defendant's statement that it "unsuccessfully attempted to confer with Plaintiff's counsel" was insufficient in light of plaintiff's assertion that defendant never attempted to contact him regarding the motion and that defendant filed the motion sixteen (16) days after plaintiff's motion had been filed.

[3]Defendant does not seek recusal pursuant to the standard set forth in 28 U.S.C. § 144, which provides that:

Whenever a party to any proceeding in a district court

3

Under section 455(a), the judge to whom the recusal motion is addressed may decide whether or not she is required to recuse herself. See e.g. United States v. Greenough, 782 F.2d 1556, 1558 (11th Cir. 1986). The standard for recusal under section 455(a) is objective reasonableness and is not to be construed to require recusal on spurious or loosely based charges of partiality. McBeth v. Nissan Motor Corp., 921 F. Supp. 1473, 1477 (D.S.C. 1996). The reasonable appearance of impropriety necessitates recusal, even if the judge is not, in fact, biased. See id. (citation omitted).

A judge should recuse or disqualify herself when her bias stems from extrajudicial sources and is personal in nature. See McWhorter v. City of Birmingham, 906 F.2d 674, 678 (11th Cir. 1990) (citation omitted); Hamm v. Members of the Bd. of Regents of the State of Fla., 708 F.2d 647, 651 (11th Cir. 1983) (citation omitted). Thus, "it must derive from something other than that which the judge learned by participating in the case." McWhorter, 906 F.2d at 678 (citation omitted).

But, even if the bias is not extrajudicial and personal, a judge must recuse herself when the "judge's remarks in a judicial

---

makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

18 U.S.C. § 144.

4

context demonstrate such pervasive bias and prejudice that it constitutes bias against a party.  Neither a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias."  Hamm, 708 F.2d at 651 (citations omitted).

It is well-settled that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994).[4] Moreover, the Supreme Court in Liteky noted that:

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

Id.

Thus, a litigant's mere disappointment with a judge's adverse ruling or a judge's remark indicating dissatisfaction with the parties or their counsel does not rise to the level of pervasive bias or prejudice as to warrant the judge's recusal.

---

[4]See also Loranger v. Stierheim, 10 F.3d 776, 780-81 (11th Cir. 1994); McWhorter, 906 F.2d at 678 (citation omitted).

5

In the instant case, defendant's assertions do not substantiate the recusal of the undersigned from this case. First, the conduct complained of occurred within the context of judicial proceedings. Thus, defendant must establish that the court's actions are pervasively prejudicial to defendant.

Although prejudging a case before considering a party's evidence or arguments may justify a judge's recusal, see Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 164 (3d Cir. 1993), the court's erroneous reference to the deposition transcript during the hearing is not evidence of bias.[5] Thus, the court did not prejudge the issues raised in plaintiff's motion to compel.

Furthermore, the court's adverse rulings against defendant do not establish severe bias or prejudice that would require recusal in this matter. See e.g. Loranger, 10 F.3d at 780—81.

Thus, defendant has failed to establish that the undersigned lacks impartiality or that the proceedings lack the appearance of impartiality in this matter.

----

[5]Although the court referred to the wrong deposition transcript during the hearing, the court had previously reviewed the correct deposition transcript. Thus, the court was fully apprised of the parties' arguments before ruling in open court and the transcript of the hearing reflects that as a whole.

6

Accordingly, upon due consideration, it is hereby ORDERED and ADJUDGED that:

(1)  Defendant's **Motion to Recuse Magistrate** and for **New Hearing and Memorandum of Law** (Dkt. 124) is DENIED.

DONE and ORDERED at Tampa, Florida this ___16TH___ day of November, 2001.

_____
ELIZABETH A. JENKINS
United States Magistrate Judge

Copies to:
Counsel of Record

7