UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER,

                Plaintiff,           Case No. 8:00-CV-1528-T-27

vs.

URSULA CABERTA,

                Defendant.
_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO CONTINUE DEPOSITION

### INTRODUCTION

Plaintiff Hubert Heller respectfully submits this memorandum of law in opposition to defendant Ursula Caberta's motion "to indefinitely continue" her deposition in this case. Caberta has informed this Court that she will not comply with the Magistrate Judge's Order that she appear for a deposition in the United States by December 16, 2001 (and in fact is now in violation of that Order, having refused to appear for her scheduled deposition on December 13, 2001). She has further represented to this Court that she will not comply with an Order of this Court affirming the Magistrate Judge's Order. In a belated and meritless attempt to excuse her disobedience, Caberta relies on a Note Verbale from the German government to the U.S. State Department. This diplomatic note, however, has no legal relevance, is

not evidence, and is not properly before this Court. Under relevant *United States* law, as codified in the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-10 ("FSIA"), *this Court*, not the Executive nor the foreign government, determines jurisdiction, pursuant to the terms of an act of Congress and federal court interpretations thereof. *See Verlinden, B.V.* v. *Central Bank of Nigeria*, 461 U.S. 480 (1983).

In addition, having stated that she will not comply with an Order of this Court affirming the Magistrate Judge, Caberta is in no position to ask this Court to ratify her contumacious behavior, and this Court should summarily reject her objections to the Magistrate Judge's Orders, which are, in any event, wholly without merit.

This Court should deny the motion for an indefinite continuance.

I.  **THE GERMAN GOVERNMENT NOTE TO THE STATE DEPARTMENT HAS NO LEGAL FORCE OR EFFECT AND IS NOT PROPERLY BEFORE THIS COURT**

On December 7, 2001, the German government allegedly presented a Note Verbale to the United States Department of State concerning this case. Caberta's counsel then attached a copy of this note to its motion "to indefinitely continue" Caberta's deposition.[1] Without a single reference to the FSIA or other U.S. law, the

---

[1] Apparently, the German Consulate General in Miami filed a copy of the note directly with the Court on December 14, 2001, but did not serve a copy on counsel for plaintiff. Plaintiff points out that this case has been pending for almost one and a half years, since July 2000, and that the note was submitted only at the last moment before Caberta's court-ordered deposition, scheduled for December 13. Neither the German nor Hamburg government has moved to intervene or otherwise appear in this proceeding.

2

note purports to declare the proper outcome of this case, asserting that Caberta cannot be sued in a U.S. court, that the only proper party is the Government of Hamburg, that a U.S. court has no jurisdiction over Hamburg or Germany, and that proper jurisdiction for the torts Caberta committed against a U.S. permanent resident is in a "regional court in Hamburg." The note further declares that Germany, "representing the City of Hamburg," "will not appear as a respondent or defendant in any court of a foreign state." The note goes on to state that Caberta "has been ordered by her Hamburg authorities not to appear before the Court in Tampa." The note makes clear that neither Caberta, nor Hamburg, nor Germany intends to appear before this Court, essentially declaring a default in this case. The note further requests that the U.S. State Department "intervene to have the claim dismissed."

Contrary to Caberta's contention, unsupported by any law, this note has no legal force or effect in this Court and does not create any issue that this Court needs to resolve. Since the passage of the FSIA in 1976, the law has been clear that determinations of jurisdiction over foreign sovereigns (including those non-State parties claiming sovereign immunity) is controlled *not* by the Executive Branch, and certainly *not* by the foreign state, but by *the courts* of the United States through application of the comprehensive rules governing sovereign immunity set forth in the FSIA. *See Verlinden*, 461 U.S. at 486-89. In *Verlinden*, the Supreme Court provided a detailed and authoritative analysis of the history of sovereign immunity in the courts of the United States, the scope and purpose of the FSIA, and the role of the federal courts in determining immunity. *Verlinden* is dispositive that the German note is of

3

no legal effect and does not create any issue for this Court to resolve. *See also Jackson* v. *People's Republic of China*, 794 F.2d 1490, 1493 (11th Cir. 1986) (describing changing concepts of sovereign immunity under U.S. law, closely tracking *Verlinden*); *Chuidian* v. *Philippine Nat. Bank*, 912 F.2d 1095, 1099-1100 (9th Cir. 1990) (same).

The Court in *Verlinden* explained that "[f]or more than a century and a half, the United States generally granted foreign sovereigns complete immunity from suit in the courts of this country." *Verlinden*, 461 U.S. at 486. The Court continued its description of the pre-FSIA period:

> this Court consistently has deferred to the decisions of the political branches – in particular, those of the Executive Branch – on whether to take jurisdiction over actions against foreign sovereigns and their instrumentalities.

*Id.* Under this approach,

> [u]ntil 1952, the State Department ordinarily requested immunity in all actions against friendly foreign sovereigns. But in the so-called Tate Letter, the State Department announced its adoption of the "restrictive" theory of foreign sovereign immunity. Under this theory, immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts.

*Id.*, at 486-87 (footnote omitted). This approach proved "troublesome," however, because, just like Germany has attempted to do here, foreign nations pressured the State Department to urge immunity in cases inappropriate under the restrictive theory:

> The restrictive theory['s] . . . application proved troublesome. . . . initial responsibility for deciding questions of sovereign immunity fell primarily upon the Executive acting through the State Department, and

4

> the courts abided by "suggestions of immunity" from the State Department. As a consequence, foreign nations often placed diplomatic pressure on the State Department in seeking immunity. On occasion, political considerations led to suggestions of immunity in cases where immunity would not have been available under the restrictive theory.

*Id.*, at 487. Because of these inconsistent applications and the absence of controlling legal standards to guide the courts, in 1976 Congress, with the active support of the Executive Branch, enacted the FSIA for the express purpose of removing the State Department from the sovereign immunity determination, to provide for judicially developed uniform standards, and to ensure that *the courts, not the Executive*, made the immunity determination, and did so on purely legal grounds:

> In 1976, Congress passed the Foreign Sovereign Immunities Act in order to free the Government from the case-by-case diplomatic pressures, to clarify the governing standards, and to assure litigants that . . . decisions are made on purely legal grounds and under procedures that insure due process. To accomplish these objectives, the Act contains a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state. . . .

*Id.*, at 488 (internal quotations omitted); *see Chuidian*, 912 F.2d at 1100 ("The principal change envisioned by the [FSIA] was to remove the role of the State Department in determining immunity."). The Court further explained the comprehensive scope of the FSIA:

> For the most part, the [FSIA] codifies, as a matter of federal law, the restrictive theory of sovereign immunity. . . . When one of the [statutory] exceptions [to immunity] applies, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances. The Act expressly provides that its standards control in the courts of the United States and of the States.

5

*Verlinden,* at 488-89 (internal citations, quotations, footnotes omitted). The Court further explained that "the primary purpose of the [FSIA] was to set forth comprehensive rules governing sovereign immunity," *id.* at 496, and that "[t]he statute must be applied by the District Courts in every action against a foreign sovereign," *id.* at 493.

As *Verlinden* makes clear, for the past quarter century the determination of sovereign immunity in every case is made by the district court, based upon the comprehensive rules of the FSIA, and *not* the opinion of the State Department, based on diplomatic considerations. Thus, the German note misses the fundamental U.S. legal principles at work here when it requests the State Department "to intervene to have the case dismissed." Even if it wished to do so, the State Department no longer has any such authority.[2] In addition, the note blatantly ignores the FSIA, and expressly bases its claim that this case should be dismissed on "principles of international public law." Such purported general "principles," (which are unidentified), are irrelevant; it is the Act of Congress – the FSIA – that controls in the U.S. courts (international public law principles are relevant only insofar as they are part of the "comprehensive rules" of the FSIA, and the absolute immunity

---

[2] Occasionally, the State Department has submitted Statements of Interest in FSIA cases, pursuant to the United States' general authority to appear in federal court to attend to its interests. *See* 28 U.S.C. 517; *Alejandre v. Republic of Cuba*, 42 F. Supp. 2d 1317, 1327 n.12 (S.D. Fla. 1999), *rev'd on other grounds*, 183 F.3d 1277 (11th Cir. 1999). Unlike prior to 1976, however, its views do not control the FSIA determination. Therefore, there is no basis in law for this Court to suspend this case while it waits to see if the State Department might submit such a Statement here.

"principles" cited by the German note are directly contrary to the restrictive theory set forth in the FSIA).

Moreover, the note contains no new information on Caberta's immunity claim. Caberta has already asserted her immunity under the FSIA, and has asserted that this is the position of her government. Both this Court and the Court of Appeals have determined that ultimate resolution of this issue must await the completion of jurisdictional discovery. District Court Order, dated February 15, 2001, at 4 (Dkt. 46); No. 01-10092 (11th Cir. Nov. 13, 2001) (Dkt. 131). The German government's reiteration to the executive branch of Caberta's assertion of immunity in this Court in no way alters or affects the FSIA issue in the slightest, nor does it provide any basis to deviate from the procedures adopted by this Court for determining the FSIA issue.[3]

Finally, the note is not properly before the Court. It is not *evidence* of anything. It is not legal argument. Neither the German government nor the City of Hamburg has sought to intervene or otherwise appear before this Court to present their position, although they have had almost a year and a half to do so. Indeed, the German government has now expressly stated that both it and Hamburg *will not* appear before this Court. Thus, as a matter of fact and law, this note creates no issues

---

[3] The assertion of immunity by the German government and by the city of Hamburg is irrelevant (since neither have been sued) and unsurprising. Foreign governments, of course, can be expected routinely to oppose U.S. court jurisdiction over their instrumentalities and employees, but such statements do not control the FSIA issue, except, perhaps when there is a question of waiver, which is not at issue here.

for this court to resolve, and presents no basis to delay determination of the FSIA issue or the ultimate merits, including by default if necessary.

## II. THE PENDING OBJECTIONS TO THE MAGISTRATE'S ORDERS PROVIDE NO BASIS TO SUSPEND THIS CASE

Caberta's filing of objections to the Magistrate Judge's orders that Caberta appear for deposition by December 16 and that deny a frivolous motion to recuse provide no basis for this Court to order a continuance of her deposition.[4] She has already told this Court that she will not appear for her deposition, regardless what this Court (and implicitly any U.S. appellate courts) decides. Thus, she seeks an advisory opinion as to what this Court thinks about the Magistrate's decision. The time for her to appear (December 13, 2001) has passed, and she has not obtained a stay from either this Court or the Magistrate Judge. Thus, Caberta has already unilaterally, and contumaciously, "continued" her deposition without judicial authorization. Under these circumstances, it is appropriate that this Court refuse Caberta's brazen attempt to have this Court *ratify* her violation of the Magistrate's Order, while at the same time stating that she will not comply with any adverse order this Court may issue.

For over one year, through numerous motions and court orders, and at great expense, plaintiff has fruitlessly sought discovery from Caberta.[5] The time for her

---

[4] The absence of any merit to these objections is addressed in separate Memoranda of Law being submitted to the Court.

[5] Plaintiff first served a notice for Caberta's deposition on November 8, 2000. This Court originally ordered that jurisdictional discovery by completed by May 16, 2001 (Dkt. 46).

dilatory and improper tactics, and repeated violations of court orders and the federal rules of discovery, has ended. Caberta's position is now clear: she is not going to participate voluntarily in discovery and she is not going to comply with orders of the courts of the United States. Assuming that Caberta has not forfeited the right to be heard on her objections, this Court should reject them forthwith, as they are wholly without merit.

## CONCLUSION

For the reasons stated herein, defendant's motion for a continuance should be denied.

Dated: December 19, 2001

Respectfully submitted,

Kendrick Moxon
Helena Kobrin
FBN #: 0259713
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
(727) 443-5620

F. Wallace Pope, Jr.
FBN #: 124449
JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO CONTINUE DEPOSITION** to be served on this 19th day of December, 2001, by U.S. Mail, to John Merrett, 11250 St. Augustine Road, Apartment 15-393, Jacksonville, FL 32257-1147; and Ward Meythaler of Merkle & Magri, P.A., 5510 West LaSalle St., Tampa, FL 33607.

_____
Attorney