UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER,

      Plaintiff,

vs.                                    Case No. 8:00-CV-1528-T-27EAJ

URSULA CABERTA,

      Defendant.
_____/

## ORDER ON DEFENDANT'S RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (FSIA) AND MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY

**THIS CAUSE** is before the Court on Defendant's Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Summary Judgment as to Liability (Dkt. 109).

This case requires a determination of whether Defendant Caberta enjoys sovereign immunity from suit as an instrumentality of Hamburg, Germany, pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603, *et seq.* ("FSIA").

### I. Introduction and Procedural Posture

In the Second Amended Complaint, Plaintiff asserts causes of action against Caberta for tortious interference with advantageous business relationships (Count I), unfair and deceptive trade practices (Count II), conspiracy to deprive Plaintiff of civil rights in violation of 42 U.S.C. § 1985(3) (Count III) and violation of the Alien Tort Claims Act, 28 U.S.C. § 1350 (Count IV). (Dkt. 40, Second Am. Compl.). Plaintiff alleges that Caberta is a citizen of Germany and employed by the Government of Hamburg, Germany. Plaintiff purports to sue Caberta individually, alleging that she committed acts she claims to have undertaken in an official capacity but which were undertaken

outside the scope of her official duties and which were illegal under German, United States, Florida and International law. Plaintiff alternatively alleges that Caberta is being sued for acts which, if considered to be within the scope of her official duties, are nevertheless commercial activities. (Dkt. 40, ¶ 2).

Plaintiff alleges that "Caberta is the head of the Hamburg, Germany task force designed to disrupt the business activities, civil rights and human rights of members of the Scientology religion." (Dkt. 40, ¶ 7). Plaintiff alleges that Caberta initiated a series of discriminatory and exclusionary measures targeting Scientologists and that she "created, advocates, promotes and disseminates so called 'sect filters' both in the public and private sectors." (Dkt. 40, ¶¶ 8-9). Plaintiff alleges that Caberta's "sect filters" "are designed and intended by her to make employment, commercial and contractual relations conditional on an individual attesting that he or she and/or his or her company rejects the teachings of L. Ron Hubbard," the founder of "the Scientology religion," and that Caberta "advocates and promotes that businesses and individuals must require signed sect filters from all businesses . . . with whom they do business in order that they might prevent association with Scientologists and companies owned by Scientologists." (Dkt. 40, ¶¶ 9-11).

Caberta moved to dismiss Plaintiff's Complaint(s) on two previous occasions. See (Dkts. 5, 14). After the first motion to dismiss, Plaintiff amended the Complaint pursuant to Fed. R. Civ. P. 15(a). In the second motion to dismiss, Caberta asserted that she was immune from suit under the Federal Sovereign Immunities Act ("FSIA"). (Dkt. 14). Caberta's motion was denied, but the parties were granted leave to conduct limited discovery related solely to whether Caberta was immune from

2

suit under the FSIA. (Dkt. 46).[1]

Following the parties' discovery efforts,[2] Caberta renewed her motion to dismiss for lack of subject matter jurisdiction and moved for entry of summary judgment as to liability, the motions addressed herein. (Dkt. 109)

## II. Factual Background

Plaintiff is the Vice President of RTI, a computer software company who was negotiating with a German firm, POSPartner G.M.B.H. ("POS") to establish a distribution agreement for RTI's software products in Germany. (Dkt. 40, ¶¶ 18- 19; Dkt. 160, Ex. 5, ¶¶2,3, Declaration of Hubert Heller (hereinafter "Heller Decl.").) During the negotiations, POS learned that Plaintiff was a Scientologist. (Dkt. 40, ¶ 21; Dkt. 160, Ex. 5, Heller Decl. ¶ 4).

---

[1] Defendant appealed the Court's Order to the Eleventh Circuit. Because a final determination concerning Defendant's claim of immunity had not been made, the Eleventh Circuit concluded that it lacked appellate jurisdiction. (Dkt. 131).

[2] The Court will not, given the limited issue to be decided, delve into or address the numerous discovery disputes and contentious arguments made by the parties addressing Caberta's failure to comply with various court orders, any alleged ulterior motives of the Plaintiff or counsel in filing suit and whether the "Church of Scientology" is the real party in interest, all of which are distracting and irrelevant to the issue before the Court. Suffice it to say that the parties have had ample opportunity to conduct adequate and appropriate, albeit limited, discovery on the issue of subject matter jurisdiction. See Colonial Pipeline Company v. Collins, 921 F.2d 1237 (11th Cir. 1991).
   In this regard, Caberta correctly points out that notwithstanding Plaintiff's protestations, he has not attempted to depose any potential witnesses other than Caberta since the Court granted leave to conduct limited discovery more than a year ago on February15, 2001.(Dkt. 161). Plaintiff could have, but chose not to propound discovery upon Defendant's employer, for example. Plaintiff did, however, take Defendant's deposition in Germany on July 26, 2001, from 9:09 A.M. to 4:36 P.M. (Dkt. 109, Ex. 6).
   Rather than pursue relevant limited discovery, the parties have intentionally, in the Court's view, embroiled themselves in ostensible discovery disputes which were in reality contentious philosophical skirmishes concerning matters not germane to the question of subject matter jurisdiction. This is apparently a consequence of the underlying and ongoing dispute between the Government of Hamburg and the "Church of Scientology" which does not concern the limited jurisdictional issue before the Court.

Thereafter, POS initiated contact with the Scientology Working Group of Hamburg, Germany and requested a copy of the Hubbard Declaration or sect filter.[3][4] (Dkt. 160, Ex. 4, ¶¶ 3, 4, Affidavit of Herr Rudiger Hintze (hereinafter "Hintze Aff.")). POS obtained the Hubbard Declaration from Hintze, an employee of the Scientology Working Group. (Dkt. 160, Ex. 4, Hintze Aff. ¶¶ 6-7; Dkt. 160, Ex. 8, Defendant's Depo. at 176-77). The Scientology Working Group sends the Hubbard Declaration to companies requesting it. (Dkt. 109, Ex. 6, Defendant's Depo. at 99-100).

Plaintiff alleges that upon learning that he was a Scientologist, POS, "as a result of Caberta's inducement, demanded that Heller sign one of Caberta's 'sect filters.'" (Dkt. 40, ¶ 21). Contrary to these unsworn allegations, Defendant Caberta had no communications with POS regarding its request for the Hubbard Declaration. Id.; (Dkt. 160, Ex. 7, ¶¶ 12, Affidavit of Ursula Caberta (hereinafter "Defendant's Aff.")). Furthermore, Caberta had no knowledge of or involvement in the communication or activity between the Scientology Working Group and POS. Id.

POS refused to enter into the distribution agreement with Plaintiff unless Plaintiff executed a Hubbard Declaration. (Dkt. 40, ¶ 21; Dkt. 160, Ex. 5, Heller Decl. ¶ 7). Plaintiff refused to execute the Hubbard Declaration and POS declined to enter into a contractual agreement with Plaintiff. (Dkt. 40, ¶ 21; Dkt. 160, Ex. 5, Heller Decl. ¶¶ 9-10).

---

[3] The Hubbard Declaration requires individuals and companies to declare in writing:
(1) That they do not use the technology of L. Ron Hubbard;
(2) That they are not trained and do not participate in the technology of L. Ron Hubbard; and
(3) That they reject the technology of L. Ron Hubbard.

(Dkt. 40, ¶ 9).

[4] Plaintiff and Defendant use different names to refer to the document attached to the Second Amended Complaint at Exhibit A. Plaintiff refers to it as a sect filter while Defendant refers to it as a Hubbard Declaration. The Court refers to it as a Hubbard Declaration for ease of reference.

4

Caberta is a citizen and resident of Germany.[5] (Dkt. 109, Ex. 1, Defendant's Aff. ¶ 2). She is employed by Hamburg, Germany and is the head of the Scientology Working Group, an agency of the Hamburg Ministry of the Interior. (Dkt. 109, Ex. 4, ¶ 2 Affidavit of Willi Beiss (hereinafter "Beiss Aff."); Dkt. 109, Ex. 6, Defendant's Depo. at 34, 43- 44). The Scientology Working Group was created and authorized by the Hamburg Senate and operates under the supervision of Willi Beiss, the Senator or Minister for the Hamburg Ministry of the Interior. Id. The purpose of the Scientology Working Group is to monitor the activities of Scientology in Hamburg and to assist businesses which seek to protect themselves from infiltration or other attack by Scientologists. (Dkt. 109, Ex. 2, ¶ 3, Second Affidavit of Ursula Caberta (hereinafter "Defendant's Sec. Aff."); (Dkt. 109, Ex. 6, Defendant's Depo. at 123). Caberta's duties include the development and distribution of the Hubbard Declaration and the distribution of information concerning the character, nature, and activities of Scientology" to individuals and entities seeking to avoid Scientology. (Dkt. 109, Ex. 2, Defendant's Sec. Aff. ¶ 3).

Beiss is Caberta's immediate supervisor. (Dkt. 109, Ex. 4, Beiss Aff. ¶ 2). According to Beiss, Caberta's efforts in developing and distributing the Hubbard Declaration have been in her capacity as an employee of the government of Hamburg, Germany. (Dkt. 109, Ex. 4, Beiss Aff. ¶ 4). Beiss describes Caberta's employment responsibilities as

> "including but not limited to communication and pronouncement concerning Scientology and Scientologists, directed to businesses and other entities headquartered in or doing business in Germany, including the dissemination of the

---

[5] Defendant avers that she came to the United States for the first and only time in July 2000. (Dkt. 109, Ex. 1, ¶¶ 3, 4). During her vacation, she gave a speech on July 25, 2000 about the activities of the Scientology Working Group in Hamburg, Germany. (Dkt. 109, Ex. 7, Affidavit of Stacy Brooks ¶ 2). During Defendant's visit, she was served with process in this action, on the same day the initial Complaint was filed. (Dkts. 1-3).

5

Hubbard Declaration, is within the course, scope and authority of Ursula Caberta's employment by the government of Hamburg, Germany."

"It is Ursula Caberta's job with the government of Hamburg to disseminate to businesses and other entities headquartered in or operating in Germany information concerning the following aspects of Scientology, which have been determined by the government of Hamburg, Germany to be accurate:

  A) Scientology is not a religion;

  B) Scientology is an organization which seeks and obtains control over the minds of its adherents;

  C) Members of the Scientology organization have been repeatedly convicted of criminal activity, for example, in Germany, France and the United States . . . ."

Id. at ¶¶ 5, 6.

Caberta also filed a *Note Verbale* authored by the Embassy of the Federal Republic of Germany. (Dkt. 140). Therein, the Embassy states that Caberta is a German citizen and an employee of the Free and Hanseatic City of Hamburg, a state of the Federal Republic of Germany. Id. The Embassy also explains that Plaintiff's claim "exclusively concerns the activities of Mrs. Caberta and her coworkers in Germany in their official capacities as employees of the Government of the Free and Hanseatic City of Hamburg," Defendant is a government official and that the proper subject of the Plaintiff's claim would be the "Government of Hamburg (Senator for the Interior)."[6]

---

[6] Additionally, the Court acknowledges that the Consul General of the Federal Republic of Germany has submitted an official statement indicating that the Heller Declaration was developed by Defendant in her official capacity as an employee of the Free and Hanseatic City of Hamburg, Germany. (Dkt. 152). The Consul General also states that the Heller Declaration sent to POS and developed by Defendant was "fully within the scope of her service-related tasks. In particular, Ms. Caberta did not pursue any private interests in exercising this activity, nor did she violate the law in any way. Above all, she did not exceed her official competences (i.e. the rules relating to ultra vires) in terms of her action on behalf of the Department for Internal Affairs of the Free and Hanseatic City of Hamburg." Id.
 This statement was not signed by an attorney of record or party in this case as required by Fed. R. Civ. P. 11(a). Although neither party has challenged the submission of this letter into the record, the Court will not consider it absent compliance with Rule 11(a).

Id.

Plaintiff alleges that Caberta was acting outside the scope of her employment with the government of Hamburg, Germany and in her personal capacity when she promoted and disseminated the Hubbard Declaration. (Dkt. 40, ¶ 2). Plaintiff has submitted a Declaration of Alexander Petz, an attorney in Germany, in which Petz opines that the dissemination of the Hubbard Declaration is contrary to German law (Dkt. 160, Ex. 10).

### III.   Applicable Standard: Motion to Dismiss

A court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (citations omitted); accord South Florida Water Management Dist. v. Montalvo, 84 F.3d 402, 406 (11th Cir. 1996). The Court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. See Marshall County Bd. of Educ. v Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

Courts considering motions to dismiss are usually confined to reviewing the four corners of the complaint. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). However, when a movant factually attacks the complaint and challenges the existence of subject matter jurisdiction, the district judge may rely on affidavits as well as the pleadings. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990); Cable/Home Communication Corp. v. Network Productions, Inc., 902

F.2d 829, 855 (11th Cir. 1990); <u>Kline v. Kaneko</u>, 685 F.Supp. 386, 389 (S.D. N.Y. 1988). The district court must accept the facts alleged in the complaint as true to the extent that they are uncontroverted by the defendant's affidavits. <u>Cable/Home Communication Corp.</u>, 902 F.2d at 855. When the evidence conflicts, the district court must itself evaluate the merits of the jurisdictional claims. <u>Lawrence</u>, 919 F.2d at 1529. Additionally, in "assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." <u>Colonial Pipeline Co. v. Collins</u>, 921 F.2d 1237, 1243 (11th Cir. 1991).

## IV.    Discussion

The Federal Sovereign Immunities Act, 28 U.S.C. §§ 1603- 1607 ("FSIA")[7] was enacted "to . . . 'assure litigants that . . . decisions are made on purely legal grounds and under procedures that insure due process.' " <u>Verlinden B.V. v. Central Bank of Nigeria</u>, 461 U.S. 480, 488 (1983). The Act is the exclusive source of subject matter jurisdiction over all civil actions against foreign states. <u>Alejandre v. Telefonica Larga Sistancia De Puerto Rico, Inc.</u>, 183 F.3d 1277, 1282 (11th Cir. 1999). Under the Act (28 U.S.C. § 1604), a " foreign state shall be immune from the jurisdiction of the courts of the United States unless one of the several statutorily defined exceptions apply." <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607 (1992). Subject matter jurisdiction over an action

---

[7] Section 1604 expressly provides:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

8

against a foreign sovereign therefore necessarily depends on the existence of one of the specified exceptions to foreign sovereign immunity. 28 U.S.C. §§ 1330(a), 1604.

Section 1603 defines "foreign state" to include "agencies or instrumentalities of a foreign state" and "a political subdivision of a foreign state." Hamburg, a subdivision of the German Republic, is a "foreign state." Furthermore, individuals acting in their capacity as employees of a foreign state are considered "agencies or instrumentalities of a foreign state" under § 1603(b). Junquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027 (D.C. Cir. 1997); see also El Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996); Chuidian v. Phillipine National Bank, 912 F.2d 1095, 1099-1103 (9th Cir. 1990). The parties agree that pursuant to the FSIA, an employee of a foreign state who is acting in her official capacity is immune from suit unless an exception specified in 28 U.S.C. § 1605 applies. Chuidian v. Philippine National Bank, 912 F.2d 1095 (9th Cir. 1990).

### A. Defendant's Prima Facie Case of Immunity Under the FSIA

When a Plaintiff asserts facts suggesting that an exception to the FSIA applies, the Defendant bears the burden of proving by a preponderance of the evidence that no exception applies. Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279 (11th Cir. 1999); Meadows v. Dominican Republic, 817 F.2d 517 (9th Cir. 1987). The Defendant must first produce evidence to establish that a foreign state is named in the lawsuit and that Plaintiff's claims relate to public acts of the foreign state. Meadows, 817 F.2d at 522; Kline v. Kaneko, 685 F.Supp. 386 (S.D. N.Y. 1988).

Caberta has met her burden of establishing that she was an agent of a foreign sovereign at all material times. An employee is generally considered an agent of his or her employer. Goldsmith v. City of Atmore, 996 F.2d 1155, 1162 (11th Cir. 1993); Restatement (Second) of Agency §§ 1-2

(1958). A key element in establishing an agency relationship is that of control. Chase Manhattan Mortg. Corp. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A., 694 So. 2d 827, 832 (Fla. 4th DCA 1997). "'Control is relevant when the sovereign exercises its control in such a way as to make the instrumentality its agent; in that case control renders the sovereign amenable to suit under ordinary agency principles.'" S & Davis, 218 F.3d at 1299 (*quoting* Transamerica Leasing, Inc. v. La Republica de Venezuela, 200 F.3d 843, 848 (D.C. Cir. 2000)).

Caberta's supervisor, Willi Beiss, has averred that Caberta is an employee of the German government and that her conduct at issue in this case was authorized and required by her employer as part of her employment responsibilities. (Dkt. 109, Ex. 4, Beiss Aff.). Specifically, Beiss avers that Caberta's activities include:

> A) the development and distribution of the Hubbard Declaration; and
> B) the distribution of information concerning the character, nature, and activities of Scientology . . . .

Id. at ¶ 3. Additionally, according to Caberta, all of her activities concerning the Hubbard Declaration have been in her capacity as an employee of Hamburg, Germany and undertaken within the course, scope, duties and authority of her employment by Hamburg. (Dkt. 109, Ex. 1, Defendant's Aff. ¶ 9; Ex. 2, Defendant's Sec. Aff. ¶¶ 3, 4; Ex. 4, Beiss Aff. ¶¶ 3, 4).

Although this evidence conflicts with the opinions expressed by Alexander Petz on behalf of Plaintiff, the Court finds that Caberta's evidence confirming her status as an agent of the sovereign is more credible. Petz's affidavit is replete with legal opinions and conclusions without evidencing any personal knowledge of Caberta's employment activities or authority. The undisputed evidence establishes that Caberta created the Hubbard Declaration well before any relationship between RTI and POS was contemplated by Plaintiff and that she created the Hubbard Declaration in her official

capacity. Further, she had no involvement in the distribution of the Hubbard Declaration to POS. The Court accordingly finds and concludes that Caberta has established that at all material times she was acting as an agent of Hamburg, Germany with respect to the conduct alleged in the Second Amended Complaint.

Once a Defendant produces prima facie evidence of immunity, the burden of going forward shifts to the Plaintiff to produce evidence establishing that the foreign state is not entitled to immunity. Meadows, 817 F.2d at 522.

Sovereign immunity will not shield an official who acts beyond the scope of his or her authority. Chuidian, 912 F.2d at 1106. "Obviously, 'if the officer purports to act as an individual and not as an official, a suit directed against that action is not a suit against the sovereign.'" Id. Plaintiff maintains that Caberta acted outside her official capacity in publicly attacking Scientology through promoting the use of the Hubbard Declaration. Plaintiff alleges in the Second Amended Complaint that Caberta's promotion and dissemination of the Hubbard Declaration constitutes tortious interference, unfair and deceptive trade practices, a violation of 42 U.S.C. § 1985 as well as the Alien Tort Claims Act. (Dkt. 40).

The Court finds, however, that Caberta has met her burden of establishing that her alleged conduct was within the scope of her employment. She submitted evidence in the form of affidavits and deposition testimony establishing that she is employed by the City of Hamburg, Germany as the head of its Scientology Working Group. She reports to the Senator for the Interior in Hamburg, Germany. Her responsibilities as head of the Scientology Working Group involve promoting and disseminating the Heller Declaration, the very acts Plaintiff complains of. According to the evidence submitted, Caberta's responsibilities also generally include protecting "legitimate business and other

11

lawful entities from infiltration or other attack by Scientology and Scientologists." (Dkt. 109, Ex. 2, Defendant's Sec. Aff. ¶ 3); (Dkt. 109, Ex. 6, Defendant's Depo. at 123). By this evidence, Caberta has established that her conduct involving the dissemination and promotion of the Heller Declaration and protecting businesses from "infiltration or other attack by Scientology and Scientologists" was within the scope of her employment with Hamburg, Germany and that her alleged conduct relates to public acts she was required to perform as part of her employment responsibilities in Germany.

To establish subject matter jurisdiction under the FSIA, the Plaintiff must overcome the presumption that the foreign state, in this case the foreign state's agent or instrumentality, Caberta, is immune from suit in the United States' courts. S & Davis International, Inc. v. Yemen, The Republic of, 218 F. 3d 1292,1300 (11th Cir. 2000). In order to overcome the presumption of immunity, the Plaintiff must prove that the conduct complained of falls within one of the statutorily defined exceptions. Id.

**B.      Applicable Exceptions to Immunity Under the FSIA**

**(1) Commercial activity exception; 28 U.S.C. §1605(a)(2)**

As Caberta has produced evidence of sovereign immunity, Plaintiff has the burden of producing evidence establishing that she is not entitled to immunity. Meadows, 817 F.2d at 522. Plaintiff contends that the 'commercial activity' exception to sovereign immunity applies. The 'commercial activity' exception set forth in 28 U.S.C. § 1605(a)(2) provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

"Commercial activity" means "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(3)(d). The Supreme Court has addressed and construed this "commercial activity" exception and concluded that "when a foreign government acts, not as a regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992). The Court further explained, "the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade or commerce.'" Id.

Caberta maintains that her actions on behalf of the State of Hamburg, Germany were regulatory and governmental in nature. (Dkt. 42). The Court agrees and finds that Caberta has met her burden of proving that the commercial activity exception is not applicable to Plaintiff's claims asserted herein. Caberta's conduct in protecting "legitimate business and other lawful entities from infiltration or other attack by Scientology and Scientologists" and promoting the Hubbard Declaration is not the type of conduct a private party engages in in trade or commerce. See e.g., Weltover, 504 U.S. 607 (government's actions in issuing bonds was a commercial activity); S & Davis, 218 F.3d 1292 (government's action in breaching contract by failing to open a letter of credit was commercial activity); Meadows, 817 F.2d 517 (government's actions in obtaining a loan commitment was commercial activity). Rather, Caberta's conduct was intended to regulate and control the "infiltration or other attack by Scientology and Scientologists" in the State of Hamburg, Germany, consistent with

13

that government's expressed concerns.[8] Further, even in its dissemination of the Scientology related information, Caberta does not require companies who request and receive the Hubbard Declarations to actually make use of them. (Dkt. 109, Ex. 1, Defendant's Depo. at ¶ 11). According to the evidence presented, Caberta provides information concerning Scientology and performs no commercial activity as described in 28 U.S.C. § 1605(a)(2).

### (2) Tort exception; 28 U.S.C. §1605(a)(5)

The tort exception precludes immunity under the FSIA under circumstances in which:

> . . . money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or ommission of that foreign state or any official or employee of that foreign state while acting within the scope of his office or employment; except that this paragraph shall not apply to –
>
> (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
>
> (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights;

28 U.S.C. § 1605(a)(5).

Plaintiff's claims of tortious interference with advantageous business relationships, unfair and deceptive trade practices, conspiracy to deprive Plaintiff of civil rights in violation of 42 U.S.C. § 1985(3) and violation of the Alien Tort Claims Act, 28 U.S.C. § 1350 do not involve property damage or loss, personal injury or death. Additionally, Plaintiff's claims for interference with its business relationships are specifically excluded from the application of the tort exception. 28 U.S.C.

---

[8] The sole dispositive issue is whether the Court has subject matter jurisdiction, that is, whether Caberta enjoys sovereign immunity under 28 U.S.C. § 1603, *et seq*. The Court is not called upon to address, and has not addressed, except when necessary to resolve the jurisdictional issue, the merits of Plaintiff's allegations or the Republic of Germany's view of Scientology.

§ 1605(a)(5)(B). Accordingly, the tort exception is not applicable to preclude immunity under the FSIA.

### (3) Waiver exception; 28 U.S. § 1605(a)(1)

A foreign sovereign may expressly or implicitly waive sovereign immunity. S & Davis International, Inc. V. Yemen, supra; 28 U.S.C. §1605(a)(1). To the extent that Plaintiff argues that Caberta has in some way waived her sovereign immunity, the Court finds and concludes that Caberta has not expressly or implicity waived her sovereign immunity, through procedural default or otherwise.

Upon consideration, the Court finds and concludes that Plaintiff has not met his burden of establishing that Caberta's conduct falls within any of the statutorily defined exceptions to sovereign immunity. The Court concludes therefore that Caberta enjoys absolute sovereign immunity from suit as an instrumentality of the State of Hamburg, Germany and that this cause must be dismissed for lack of subject matter jurisdiction. Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. Defendant's Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction (FSIA) (Dkt. 109) is **GRANTED**.

2. Defendant's Motion for Summary Judgment as to Liability (Dkt. 109) is **DENIED as MOOT**.

3. The Clerk is directed to close this case.

**DONE AND ORDERED** in chambers this 9th day of May, 2002.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

15

Date Printed: 05/13/2002

Notice sent to:

   ___  F. Wallace Pope, Esq.
        Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A.
        911 Chestnut St.
        P.O. Box 1368
        Clearwater, FL   33757-1368

   ___  Kendrick L. Moxon, Esq.
        Moxon & Kobrin
        3055 Wilshire Blvd., Suite 900
        Los Angeles, CA   90010

   ___  Helena K. Kobrin, Esq.
        Moxon & Kobrin
        1100 Cleveland St., Suite 900
        Clearwater, FL   33755

   ___  John Matthew Merrett, Esq.
        Law Office of John M. Merrett
        11250 St. Augustine Rd., Suite 15-393
        Jacksonville, FL   32257-1147

   ___  Robert Merkle, Esq.
        Merkle & Magri, P.A.
        5510 W. LaSalle St.
        Tampa, FL   33607

   ___  Daniel A. Leipold, Esq.
        Leipold, Donohue & Shipe, LLP
        960-A W. 17th St.
        Santa Ana, CA   92706