# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

HUBERT HELLER,            :
                         :
    **Plaintiff**        :
                         :
vs.                      :          **Case No.: 8:00-CV-1528-T-27C**
                         :
URSULA CABERTA,          :
                         :
    **Defendant**       :
_____ :

## DEFENDANT'S MOTION FOR ATTORNEY'S FEES, EXPENSES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to 42 U.S.C. §1988, 28 U.S.C. §1927, Fla. Statutes 501.2105, F.R.Civ.P. 54, Local Rule 4.18, and the court's supervisory power, Defendant, Ursula Caberta, moves this court for an order requiring the Plaintiff and his attorneys to reimburse Defendant for attorney's fees, expenses and costs incurred in defense of this action in the amount of $63,520.00 in fees and $2,954.74 in costs. An affidavit concerning the fees and costs is attached hereto as Exhibit 25. [1]

This amount is actually less than a reasonable amount because it only encompasses fees and expenses associated with Merkle & Magri's involvement in the case. Mr. John Merrett first

_____

[1] Exhibits 1-10 were previously submitted under the title Exhibits In Support of Defendant's Renewed Motion to Dismiss For Lack of Subject Matter Jurisdiction (FSIA) and Motion for Summary Judgment as to Liability. Exhibits 11-19 were submitted with Defendant's Response to Plaintiff's Cross-Motion for Sanctions Regarding Subject Matter Jurisdiction. Exhibits 20-26 are attached hereto.

-1-

represented Defendant in this case after it was filed on July 27, 2000. Merkle & Magri did not

become involved in the case until July 2001 when it was asked to file a motion for a protective

order concerning and shortly before Defendant's deposition in Germany. Merkle & Magri had no

involvement in the actual deposition in Germany and did not become substantively involved in this

case until after the deposition in Germany. Consequently, Mr. Merrett handled a substantial part

of the litigation here.

> The court in his May 9, 2002 order dismissing this case noted the following at page 3n.2:

> Rather than pursue relevant limited discovery, the parties have intentionally, in the
> Court's view, embroiled themselves in ostensible discovery disputes which were in
> reality contentious philosophical skirmishes concerning matters not germane to the
> question of subject matter jurisdiction. This is apparently a consequence of the
> underlying and ongoing dispute between the Government of Hamburg and the
> "Church of Scientology" which does not concern the limited jurisdictional issue
> before the Court.

Defendant is also aware of criticism of Mr. Merrett in this case by Magistrate Judge Jenkins. To

avoid any issues concerning Mr. Merrett's conduct and fees, this motion does not request any fees

or expenses of Mr. Merrett.[2]

In addition, it should be noted that most of the fees requested involve time expended by

Ward Meythaler and charged at $250.00 an hour. Judge Jenkins has already approved an hourly

rate of $250.00 an hour for Plaintiff's attorney, Mr. Moxon, who has been practicing law since

1984 while Mr. Meythaler has been practicing since 1973. *See* Judge Jenkins' January 2, 2002

Order (Docket No. 146) at n.1; Plaintiff's Notice of Filing Declaration In Connection With Fees

---

[2] Defendant does not concede that any of Mr. Merrett's fees and expenses would not be reasonable
or that the court could not properly award them against Plaintiff, especially since Plaintiff brought
the case and only kept the case alive by amending the complaint without evidentiary support and

Determination.

## MEMORANDUM OF LAW

## BACKGROUND

On July 27, 2000, Plaintiff filed a two count complaint against Defendant alleging tortious interference with an advantageous business relationship and a claim under Florida's Unfair and Deceptive Trade Practices Act ("DTPA"), Fla. Stat. §501.201-13. In that complaint, Plaintiff asserted that Defendant was the head of an anti-cult task force for the government of Hamburg, Germany (Cpt., ¶7); that in her capacity as head of the anti-cult task force, she promulgated certain anti-Scientology measures (Cpt. ¶8); that among these measures promulgated by Defendant in connection with her office was a "sect filter" (Cpt. ¶9); and that Plaintiff was injured as a result of the promulgation of the "sect filter" (Cpt. ¶¶17-19 and 20-27). In short, the initial complaint pled a conclusive case that Defendant was acting within the scope of her authority as an employee of the Hamburg government and was therefore entitled to sovereign immunity under the Foreign Sovereign Immunity Act ("FSIA").[3] Consequently, Defendant filed a motion to dismiss the initial

---

contrary to his prior position.

[3] Plaintiff's attorney had also previously claimed that Defendant's acts regarding the Scientology organization and its adherents were acts taken within her capacity as an officer of the government of Hamburg, Germany. On July 17, 2000, only ten days before filing the complaint, Plaintiff's attorney, Mr. Kendrick Moxon, wrote to Senator Hartmuth Wrocklage of the Hamburg Ministry of the Interior stating that he was "legal counsel to the Church of Scientology" and that he was aware that the Senator's "subordinate, Ursula Caberta, intends to come to the United States to the State of Florida and to there act in coordination with an anti-religious hate group named the Lisa McPherson Trust, Inc., and persons associated with that organization, to derogate and seek to damage the Church of Scientology and its members." Mr. Moxon threatened that Ms. Caberta's conduct would be "closely monitored" and that if "she is involved in the violation of the civil rights of any members of the Church, or if she acts in concert with others violating the rights of members of the Church, *we shall view her activities as being undertaken on behalf of the City of Hamburg...*" (emphases added). Exhibit 20. On the following day Mr. Moxon wrote to Senator

complaint under the FSIA since the Plaintiff had alleged that the Defendant had acted at all times in her capacity as an official of the government of Hamburg.  The motion to dismiss specifically observed that the Plaintiff had pled a "conclusive case for sovereign immunity on behalf of Defendant" in light of the allegations that she was "an official of a foreign government who, acting in her official capacity, caused some injury to Plaintiff."

Rather than respond to the motion to dismiss, Plaintiff filed a First Amended Complaint. Obviously recognizing that his initial complaint lacked subject matter jurisdiction under the FSIA, Mr. Moxon completely changed the allegations and now asserted that Defendant was also being sued as an individual for acts "which were undertaken outside the scope of her official duties" and "entirely outside the scope of her lawful authority."  First Amended Complaint, ¶¶2, 23. F.R.Civ.P. 11 states that by filing the complaint and the amended complaint, Mr. Moxon is certifying that "after an inquiry reasonable under the circumstances" the "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery..."  No new facts were offered in the amended complaint to refute the plain allegation of the initial complaint that Defendant acted at all material times within the scope of her official duties. Moreover, the amended complaint does not identify the new allegations as likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Obviously, the new allegations were added to the amended complaint simply to plead

---

Wrockledge again "regarding the activities of *your employee*, Ursula Caberta." (emphasis added). Mr. Moxon wrote, "As noted in our prior correspondence, her [Ms. Caberta's] acts in the United States must be construed as *official acts of your government.*" (emphasis added).  Exhibit 21.

around the factual deficiencies of the initial complaint to keep the litigation alive.[4]  Although the clear contradiction between the initial and the amended complaints has been raised several times in this case, the Plaintiff has never indicated any basis for changing his theory to assert, contrary to Mr. Moxon's assertions in the initial complaint and letters to the Hamburg government, that Defendant was acting outside the scope of her authority.  Further, he has never identified any reasonable inquiry that he made between the filing of the initial and amended complaints that would justify amending the complaint to assert that Defendant was acting outside the scope of her authority.

On or about October 6, 2000, Defendant filed a Motion to Dismiss the Amended Complaint which again argued that Defendant acted at all material times in her capacity as an official of the government of Hamburg, Germany and was therefore immune from jurisdiction of the court under the FSIA.  In support of this motion, Defendant submitted her affidavit which pointed out that all of her activity concerning the Hubbard Declaration had been in her capacity as an employee of the government of Hamburg.

In an order dated October 12, 2000, the court directed that the Defendant show cause why the case should not be dismissed for lack of subject matter jurisdiction.  On or about November 20, 2000, Plaintiff filed his Memorandum in Opposition to the Motion to Dismiss Amended

---

[4] As shown below, the purpose of this litigation was to harass Defendant with depositions and to cause her to incur legal expenses, a well-established Scientology tactic.  Even if Plaintiff amended the complaint in the hope that subsequent discovery may reveal  facts which will keep the litigation alive, that is something the Plaintiff is not entitled to do.  Geisinger Medical Center v. Gough, 160 F.R.D. 467, 469 (D.C.N.D. Pa. 1994).

Complaint. In that document, the Plaintiff argued, *inter alia*, that he had expressly alleged in the amended complaint that the Defendant had acted "outside the scope of her official duties" and that she was therefore not immune from suit under the FSIA. See pp.4, 6 of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint. On December 16, 2000, the court entered an order granting the motion to dismiss in part, but refusing to dismiss the amended complaint on the grounds of sovereign immunity. The court noted that "sovereign immunity does not shield a sovereign's employee from suit for acts not committed in her official capacity." The court then specifically stated that the Plaintiff had alleged "that Defendant acted outside the scope of her lawful authority as an employee of the City of Hamburg, Germany when she 'persecuted members of the Scientology religion,' interfered with Defendant's established advantageous business relationships and utilized unfair trade practices." As a result of those specific allegations, the court concluded that at that stage of the case, the Defendant was not entitled to sovereign immunity under the FSIA.

Consequently, the new allegations added to the amended complaint that Defendant had acted outside the scope of her authority, which completely contradicted the allegations of the initial complaint, were the sole basis for this court continuing the lawsuit. However, since then, Defendant has proffered no evidence to contradict his initial complaint that Plaintiff was acting within the scope of her authority. Obviously, then, the new allegations added to the amended complaint that Defendant was acting outside the scope of her authority violated Rule 11 since Mr. Moxon had no evidentiary support at the time he made the new allegations. It appears that Mr. Moxon simply added the new allegations that Defendant was acting outside the scope of her authority (contrary to the initial complaint and his letters to the Hamburg government) to try to

-6-

plead around Defendant's motion to dismiss. In short, if Mr. Moxon had not made those unsupported allegations, this case would have ended with the Defendant's motion to dismiss the initial complaint. Indeed, if the plaintiff had conducted reasonable inquiry, researched the FSIA, and acted in good faith, this case would not have been filed in the first instance.[5]

## PATTERN OF HARASSING CONDUCT

Because of the standards for an award of attorney's fees under 42 U.S.C. §1988 and 28 U.S.C. §1927, it is necessary to again set forth some of the unfortunate history of the Scientology organization's and Mr. Moxon's involvement in sham and harassing lawsuits as well as other vexatious conduct toward the Defendant personally. First, Scientology and Plaintiff's counsel and his firm have a track record of being involved in harassing, burdensome and frivolous lawsuits against Scientology's targets. See Affidavit of Priscilla Coates (Ex. 9) concerning fifty lawsuits brought against her and Cult Awareness Network by the Scientology organization to destroy the Cult Awareness Network whose purpose was to educate the public about the harmful effects of mind control as practiced by destructive cults and about the unethical and illegal practices they employ; Hart v. Cult Awareness Network, 13 Cal. App 4th 777 (1993); Church of Scientology v. Wollersheim, 42 Cal. App. 4th 628, 648 (1996) (Court found that lawsuit involving Plaintiff's counsel and his firm was being pursued "to bludgeon the opposition into submission" for having prevailed in a prior lawsuit); See also Affidavit of Stacy Brooks (Ex. 10). Ms. Brooks was formerly a Scientologist in Scientology's high-level Sea organization and worked in the Office of

---

[5] It would appear from the Plaintiff's decision not to respond to the motion to dismiss the initial complaint but rather to file an amended complaint with new allegations obviously crafted to

Special Affairs, which carried out Scientology's legal and intelligence gathering activities. She was personally aware of Scientology's effort to destroy Cult Awareness Network through a series of specious lawsuits brought by the Office of Special Affairs through nominal plaintiffs who were low-level Scientologists. She was also aware that Scientology had staff members whose entire job was to destroy the Cult Awareness Network and personally participated in operations directed against Patricia Coates and the Cult Awareness Network that were designed to undermine and destroy them.

In May 1994, Mr. Moxon's partner, Helena K. Kobrin, along with his firm (then known as "Bowles & Moxon"), was ordered to pay $17,775.00 in sanctions for the presentation and prosecution of a frivolous civil RICO claim on behalf of a Scientology entity. Religious Technology Center v. Gerbode, No. CV 93-2226 AWT, 1994 U.S. Dist. Lexis 6432 (D.C.C.D.Ca.).

In 1974 a criminal prosecution, United States v. Mary Sue Hubbard, Crim. No. 78-401, was brought against nine high-ranking officials of the Church of Scientology. "In that case, several defendants stipulated that the network of Scientology organizations had conducted a broad campaign against U.S. Government entities and officials, particularly the Internal Revenue Service. "This concerted campaign by the Scientology apparatus encompassed a wide range of illegal activities, including theft of government documents for use in litigation against the United States, falsification of government identification cards, wiretapping, infiltration, and perjury." Founding Church of Scientology v. Webster, 802 F.2d 1448, 1449-1450 (D.C. Cir. 1986).

According to Defendant's Response to Plaintiff's Motions to Stay Response and Motion to

circumvent the FSIA, that Mr. Moxon was not previously aware of the FSIA.

Strike (filed on or about October 17, 2000), the signers of the stipulation in the criminal case included United States Attorney Carl Rauh and attorney Michael Hertzberg. Mr. Hertzberg appeared as Mr. Moxon's co-counsel in two depositions in the instant case. According to Exhibit 24, the stipulation in the criminal case states that in response to a grand jury subpoena for handwriting exemplars of Mr. Meisner, Mr. Moxon submitted an affidavit with nine pages of handwritten materials; that Mr. Moxon's affidavit states that the nine pages of handwriting were those of Mr. Meisner; and that a defendant had stated to Mr. Meisner that Mr. Moxon had been directed to supply the government with fake handwriting samples. See also Defendant's Response to Plaintiff's Motions to Stay Response and Motion to Strike, pp.4-5.

Defendant, as the head of the Scientology Working Group in Germany, has also become a target of Scientology attack. For example, when she came to Florida for the first and only time in July, 2000, for a vacation and to see Ms. Brooks and Mr. Minton, she was greeted at the Tampa Airport by an organized group of Scientologists who yelled epithets at her, including that she was a "Nazi Criminal". Ex. 7. During that trip to Florida she was also served with the instant lawsuit as well as a subpoena to give a deposition in a state wrongful death lawsuit brought by the Estate of Lisa McPherson against the Scientology organization even though she had no involvement in and no knowledge of the facts of that lawsuit.

Mr. Moxon, who represents the Scientology organization as well as the Plaintiff here, took that deposition which has been filed as Exhibit B to Defendant's Response to Plaintiff's Motion to Compel. As is clearly reflected by that deposition, Defendant had no involvement in and no knowledge of the facts of that lawsuit. During the deposition, Mr. Moxon's questions to the Defendant included the following: "Oh, but part of your mission for the German government is

-9-

the genocide of Scientology, isn't it?"; "Would you like to see all Scientologists dead?"; and "Don't you consider yourself to be a Nazi?" Ex. 23, pp.83-86, 125. As Defendant was leaving the deposition, Mr. Moxon not once, but twice saluted Defendant with the "Hitler Salute" of Nazi Germany and said "Heil Hitler!" Ex. 22. Although he apparently denies it now; when this was made a matter of record, Mr. Moxon did not deny it then. Ex. 22; 23, pp. 129-130.

In addition to the events described above, the Scientology organization in Germany (through its President, Helmuth Bloebaum, and represented by its German attorney, Wilhelm Blumel), has made a false penal charge against the Defendant to authorities in Germany that she allegedly accepted a benefit (a loan from Mr. Minton) to carry out an official act ("vorteilsnahne"). In fact both these individuals assisted Mr. Moxon at Defendant's deposition in Germany, the primary goal of which appears to have been to harass Defendant with questions about matters which the Scientologists thought would be helpful in their attack on Defendant in Germany.

## III.    Defendant is Entitled to Attorney's Fees From Plaintiff Under 42 U.S.C. §1988

Plaintiff asserted a claim in Count III under 42 U.S.C. §1985(3). 42 U.S.C. §1988 provides in pertinent part:

> In any action or proceeding to enforce a provision of sections... 1985... the court, in its discretion, may allow the prevailing party... a reasonable attorney's fee as part of the cost.

Since Defendant obtained a judgment dismissing this case, she was the prevailing party. The standards for awarding attorney's fees under §1988 is different for defendants than it is for

plaintiffs. Pursuant to 42 U.S.C. §1988, Defendant is entitled to be reimbursed from the Plaintiff for her reasonable attorney's fees and costs only if the action was frivolous, unreasonable or without foundation, even though not brought in bad faith. Hughes v. Rowe, 449 U.S. 412, 98 S.Ct. 694, 178-179 (1978); Bruce v. City of Gainesville, Ga., 177 F.3d 949, 951 (11th Cir. 1999). The standards for awarding attorney's fees under 42 U.S.C. §1988 are the same as those under Title VII. Hughes, 98 S.Ct. at 178. Of course, "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." Chrstianburg Garment Co. v. E.E.O.C., 434 U.S. 412, 98 S.Ct. 694, 701 (1978). As the Eleventh Circuit noted in Popham v. City of Kenesaw, 820 F.2d 1570, 1583 (11th Cir. 1987):

> If a plaintiff brings a lawsuit for a vexatious purpose or in bad faith, i.e., not in the hope of winning but solely in order to put the defendant to the burden of defending himself, the prevailing defendant arguably is entitled to attorney's fees regardless of whether the plaintiff's claims technically were frivolous. [authority omitted].

Although the determination of frivolity is made on a case-by-case basis, courts have recognized several factors to assist in answering the question: (1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. Bruce, 177 F.3d at 952; Head v. Medford, 62 F.3d 351 (11th Cir. 1995). Applying the first factor to the present case, the court did not specifically determine that Plaintiff had failed to establish a *prima facie* case of the lack of sovereign immunity, but "this concept was a necessary import of the district court's order." Head v. Medford, *supra* at 356. After initially alleging in the first complaint that

-11-

Defendant was acting at all times within the scope of her authority, the Plaintiff has offered no meritorious evidence to support his amended pleading asserting that she was really acting outside the scope of her authority.   In other words, Plaintiff simply amended his complaint without evidentiary support to plead around the FSIA when he knew and previously alleged that the Defendant was acting within the scope of her authority.  This is virtually the definition of a claim that is frivolous as well as being without foundation.  Indeed, especially in light of Scientology's track record and the targeting of Defendant, it amounts to bad faith, whether frivolous or not.  As to the second and third factors, there was never any offer to settle by the Defendant  and this case was disposed of prior to trial on a motion to dismiss.   Accordingly, Defendant is entitled to reimbursement of her attorney's fees from Plaintiff under 42 U.S.C. §1988.

Only one of the claims here involved a claim under a federal civil rights statute.  However, most of the work in this case focused on the issue of sovereign immunity, which, of course, applied to all the counts in this case.  Consequently, there is no reason to reduce the attorney's fees and costs since that work would have been required whether the non-civil rights claims had been filed or not.  See Carmichael v. Birmingham Saw Works, 738 F.2d 1226, 1137 (11th Cir. 1984) (court should not disallow time spent on unsuccessful claims if that time concerned "facts which were also probative" on the successful claim); York v. Alabama State Board of Educ., 631 F.Supp. 78, 84 (M.D. Ala. 1986) (work relating to unsuccessful claims "was so intertwined, both factually and legally, with the successful claims that the challenged hours must be deemed compensable."); George v. GTE Directories Corp., 114 F.Supp. 2d 1281, 1295 (M.D. Fla. 2000) (court must "identify unsuccessful 'claims that were unrelated to the claims on which [t]he [Plaintiff] succeeded' or whether the time spent on the unsuccessful claims may properly 'be

deemed to have been expended in pursuit of the ultimate result achieved.'").

There is some authority for the proposition that a person is not a "prevailing party" for purposes of 42 U.S.C. §1988 when a complaint is dismissed for lack of jurisdiction. See Sellers v. Local 1598, Dist. Counsel ABA, 614 F.Supp. 141, 144 (D.C. Pa. 1985), aff'd, 810 F.2d 1164 (3rd Cir. 1987); Hidahl v. Gilpin County Dept. of Social Services, 699 F.Supp. 846, 849 (D.Col. 1988). In these cases, one of which relied on the other, the court held that the defendant was not a prevailing party because he had not prevailed over the plaintiff "on any issue central to the merits of the litigation." Id. For example, in Hidahl, the defendant, a state agency, was successful in asserting that the claim against it was barred by the eleventh amendment. Here, however, the defendant prevailed on an issue that was central to the litigation – the issue of sovereign immunity and the concomitant issue of whether the defendant had acted within the scope of her authority.[6] The whole basis of the plaintiff's amended complaint here (and the reason for the amendment changing the theory of the case) was that the defendant had acted outside the scope of her employment. Consequently, this authority, which is not binding in any event on this court, is inapplicable.

## IV.    Defendant is Entitled to Attorney's Fees From Plaintiff's Counsel Under 28 U.S.C. §1927

Defendant is also entitled to be reimbursed from Plaintiff's counsel for her reasonable attorney's fees pursuant to 28 U.S.C. §1927 because of Mr. Moxon's unreasonable and vexatious amendment of the complaint to assert, contrary to his initial complaint and letters to the Hamburg

---

[6] The court in Hidahl awarded attorney's fees in any event, but relied on Rule 11 and 28 U.S.C. §1927.

government, that Defendant acted outside the scope of her authority.

28 U.S.C. §1927 provides in pertinent part:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct.

Sanctions are appropriate pursuant to 28 U.S.C. §1927 when the court determines that counsel vexatiously and unreasonably multiplied the proceedings. Ruszala v. Walt Disney World Company, 2000 WL 33223248 (M.D. Fla. 2000). An attorney engages in such conduct when his conduct, "from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" Wilson-Simmons v. Lake County Sheriff's Dept., 207 F.3d 818, 824 (6th Cir. 2000). Such conduct is found when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims. Id. Bad faith is not required to support an award of fees under §1927. Id.

Applying these principles to the present case, Plaintiff's attorney knew and asserted in letters to the Hamburg government and in the initial complaint that Defendant had acted within the scope of her authority. After learning about the FSIA from Defendant's motion to dismiss the initial complaint, he amended the complaint to assert, without evidentiary foundation, the exact opposite in order to plead around the FSIA and continue this litigation. Indeed, as pointed out above, this case was specifically not dismissed by the Court as a result of that amendment. See court's December 16, 2000 Order, pp.2-3. As discussed above, burdensome litigation is a well-

-14-

established tactic of Scientology. The amended complaint was unreasonable, vexatious and requires that Plaintiff's counsel be personally liable. See Hale v. Harney, 786 F.2d 688, 692 (5th Cir. 1986) (failure to make reasonable inquiry into the facts surrounding allegation warranted sanction under Rule 11 and 28 U.S.C. §1927).[7]

**V.    Defendant is Entitled to Attorney's Fees Under DTPA, Fla. Stat. Section 501.2105**

Count II of the Plaintiff's complaints allege a claim under Florida's Unfair and Deceptive Trade Practices Act ("DTPA"), Fla.Stat. Section 501-201-13. Section 501.2105(1) of that Act provides that the "prevailing party may receive his or her reasonable attorney's fees and costs from the non-prevailing party." Unlike Rule 11, 42 U.S.C. §1988 and 27 U.S.C. §1927, the Defendant is entitled to fees and costs regardless of the strength of the plaintiff's case or the good faith of the plaintiff. All a defendant must do is prevail.[8] Moreover, a prevailing party would clearly include a party who prevails on an issue such as jurisdiction. For example, in Big Tomato v. Tasty Concepts, Inc., 972 F.Supp. 662, 664 n.1 (S.D. Fla. 1997), the court held a defendant

---

[7] Actually, the filing of the lawsuit in the first instance was also unreasonable and vexatious. This is demonstrated by the facts that there was no basis for the initial complaint under the FSIA; that Scientology has a history of abusive litigation; and that Scientology has targeted Defendant here. The bad faith amending of the initial complaint here; the abusive and unnecessary questioning of Defendant at both the state and federal depositions, including Nazi salutes and outrageous questions; the use of a patently false translation in Plaintiff's cross-motion; and the presence at Defendant's deposition of the two Scientologists who are attempting to have Defendant prosecuted in Germany also confirm that the filing of the lawsuit in the first instance was vexatious.

[8] One ingenious plaintiff argued in his case that since the defendant showed that the DTPA was inapplicable in that case, the defendant could not take advantage of the provision entitling the prevailing party to attorney's fees. However, the Eleventh Circuit firmly rejected that contention and held that a plaintiff in such a situation is liable because he invoked the DTPA in the first instance and did not prevail. M.G.B. Homes, Inc. v. Ameron Homes, Inc., 30 F.3d 113, 115 (11th Cir. 1994).

who prevails in a motion to dismiss based on lack of standing is a prevailing party for purposes of the attorney's fees provision.

Further, in <u>Smith v. Bilgin</u>, 534 So.2d 852 (1st DCA 1988), the court held that the prevailing defendant in an action erroneously brought under the DTPA was entitled to fees reflecting the time spent by his attorneys "on the case" rather than merely on the DTPA count absent a showing that a portion of the attorneys' services were totally unrelated to the action since the DTPA count and the other counts in the complaint arose from the same transaction. The court stated that the language of the statute "contemplates recovery of attorney's fees for hours devoted to the entire litigation... and does not require allocation of attorney time between the [DTPA] count and other alternative counts based on the same consumer transaction unless the attorneys' services clearly were not related in any way to establishing or defending an alleged violation of Chapter 501." *Id.* at 854. <u>See also</u>, <u>Rustic Village, Inc. v. Freidman</u>, 417 So.2d 305 (3rd DCA 1982) (attorney's fee awarded to prevailing defendant even though trial judge held that cause of action was not one contemplated by the DTPA).

The only real issue here is that the DTPA statute provides that "the prevailing party <u>after judgment in the trial court and exhaustion of all appeals</u>, if any, <u>may receive</u> a reasonable attorney's fees and costs from the non-prevailing party." (emphasis added). In <u>Big Tomato</u>, *supra*, at 664, the court denied a motion for attorney's fees without prejudice "to reassert at the conclusion of the case" because, according to the court, before "attorney's fees may be awarded, judgment must be final and all appeals must be exhausted." Actually, the statute does not say that all appeals must be exhausted before attorney's fees "may be awarded," but only that the prevailing party may not "receive" reasonable attorney's fees until after exhaustion of all appeals.

-16-

Under F.R.Civ.P. 54(a), this court's order granting the renewed motion to dismiss and directing the Clerk to close this case constitutes an order from which an appeal lies and is therefore a "judgment" for the Defendant. However, of course, the appeal procedure here has not yet been exhausted. On the other hand, Local Rule 4.18 requires that all claims for costs or attorney's fees "shall be asserted by separate motion or petition filed not later than fourteen (14) days following the entry of judgment" and that the "pendency of an appeal from the judgment shall not postpone the filing of a timely application pursuant to this Rule." Consequently, this court's local rules would appear to require the application for attorney's fees under the provisions of the DTPA at this point.

## VI.   Costs

Defendant is entitled to reimbursement of her costs in the amount of $2,954.74, because she was the prevailing party. 28 U.S.C. §1920 sets forth certain items of taxable costs to which a prevailing party is entitled to recover, and includes, *inter alia,* the following items: (1) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (2) fees for exemplification and copies of papers necessarily obtained for use in the case. However, in a civil rights case (and for the same reasons a DTPA case), a prevailing party is not limited to recovering those items of costs specified in 28 U.S.C. §1920. "[W]ith the exception of routine office overheard normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of the litigation... may be taxed as costs." Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983); George v. GTE Directories Corp., 114 F.Supp.2d 1281, 1298 (M.D. Fla. 2000). In this case, each of the items identified in

the defendant's bill of costs and affidavit filed by the undersigned are recoverable pursuant to applicable law.

**VII.    Additional Submissions**

Pursuant to F.R.Civ.P. 54(d)(2)(c), Defendant will submit, if necessary, additional submissions bearing on the issues concerning evaluation of services following a determination of liability for fees.

WHEREFORE, Defendant respectfully requests that the court enter an order requiring Plaintiff and his counsel, jointly and severally, to reimburse the Defendant for her reasonable attorney's fees in the amount of $63,520.00 and requiring Plaintiff to reimburse Defendant for her taxable costs in the amount of $2,954.74 incurred in defense of this action.

## RULE 3.01(g) CERTIFICATE OF COMPLIANCE

Pursuant to local Rule 3.01(g), the undersigned attempted to resolve the issues in this motion by faxing and mailing three letters to Plaintiff's counsel on May 10 and May 13, 2002 asking if he had any objection to an award of attorney's fees to Defendant, inviting him to workout the dollar amount with the undersigned and requesting that he respond by May 15, 2002. Plaintiff's counsel never responded. The undersigned also called Mr. Moxon on May 22, 2002, but he was not in and has not called back. Moreover, Plaintiff has appealed this case thereby conclusively indicating that he does not and will not agree to this motion. Consequently, Defendant's counsel has "conferred" with counsel and has been unable to agree on a resolution of this matter.

-18-

Dated this _23_ day of May, 2002.

Respectfully submitted,

ROBERT W. MERKLE
Florida Bar No.: 0138183
WARD A. MEYTHALER
Florida Bar No.: 0832723
MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida 33607
TEL: (813) 281-9000
FAX: (813) 281-2223
Counsel for Ursula Caberta

-19-

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing Defendant's Motion for

Attorney's Fees, Expenses and Costs and Memorandum of Law In Support, has been furnished via

U.S. Mail, postage prepaid, to Kendrick L. Moxon, 1100 Cleveland Street, Suite 900 Clearwater,

Florida 33755, on this __23__ day of May, 2002.

WARD A. MEYTHALER

-20-

**MOXON & KOBRIN**
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA, 33755
TELEPHONE: (727) 443-4900
TELECOPIER: (727) 442-8990

July 17, 2000

Harmuth Wrackinge
Senator, Hamburg Ministry of Interior
Johanniswall 4
20095 Hamburg
Germany

Re: Ursula Caberta

Dear Mr. Wrackinge:

I am legal counsel to the Church of Scientology, Flag Service Organization. I am informed that your subordinate, Ursula Caberta, intends to come to the United States to the State of Florida, and to there act in coordination with an anti-religious hate group named the Lisa McPherson Trust, Inc., and persons associated with that organization, to denigrate and seek to damage the Church of Scientology and its members.

We intend to interrogate Ms. Caberta under oath when she comes to the United States with respect to the litigation in which this group has improperly invested through its owner, Robert Minton. We shall subpoena Ms. Caberta when she arrives if necessary, unless you will agree in advance to accept service of legal process requiring her to appear for testimony in Florida.

Finally, please be advised that the United States is a land of religious freedom, and that civil and human rights of all persons are guaranteed by state law, federal law and the United States Constitution. The sort of hatred purveyed by Ms. Caberta in Germany is not tolerated in the United States. Ms. Caberta's conduct in the United States will therefore be closely monitored. In the event that she is involved in the violation of the civil rights of any members of the Church, or if she acts in concert with others violating the rights of members of the Church, we shall view her activities as being undertaken on behalf of the City of Hamburg and may seek to hold both Ms.

**DEFENDANT'S EXHIBIT**
**20.**

July 17, 2000
Page 2

Cubeta and the City of Hamburg legally and financially responsible.

Sincerely,

Kendrick L. Moxon

XLM:jj

GESAMT SEITEN 06

**MOXON & KOBRIN**
ATTORNEYS AT LAW
1100 CLEVELAND STREET
SUITE 900
CLEARWATER, FLORIDA 33755
TELEPHONE: (727) 449-9400
TELECOPIER: (727) 449-9410

OF COUNSEL

JEANNE M. GAVIGAN+

KENDRICK L. MOXON
HELENA K. KOBRIN
ANN PARETTE+

*ADMITTED ONLY IN
CALIFORNIA AND THE
DISTRICT OF COLUMBIA

+ALSO ADMITTED IN
CALIFORNIA

+ADMITTED ONLY IN
CALIFORNIA

3055 WILSHIRE BLVD.
SUITE 900
LOS ANGELES, CALIFORNIA 90010
TELEPHONE (213) 384-4448
TELECOPIER (213) 384-4548

July 18, 2000

Hartmuth Wrocklage
Senator, Hamburg Ministry of Interior
Johanniswall 4
20095 Hamburg
Germany

Re: Ursula Caberta

Dear Mr. Wrocklage:

This supplements my letter of July 17, 2000, regarding the activities of your employee, Ursula Caberta.

Today, a message was posted to a newsgroup on the internet by one Stacy Brooks, the president of the anti-religious hate group Lisa McPherson Trust, Inc., that indeed, Ms. Caberta is appearing in Florida on July 25 at the offices of such organization to make inflammatory statements regarding the Scientology religion.

As noted in our prior correspondence, her acts in the United States must be construed as official acts of your government. Moreover, Ms. Caberta is publicly promoted by the Lisa McPherson Trust, Inc., as appearing in an official capacity for your city. We shall therefore assume that she can accept service of a summons and complaint in the United States.

Sincerely,

Kendrick L. Moxon

DEFENDANT'S EXHIBIT
21.
ALL-STATE LEGAL®

# AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared KENNAN G. DANDAR, who after being first duly sworn deposes and says:

1.  Affiant is an attorney and a member of the Florida Bar since 1979, practicing civil litigation in the Tampa Bay area with offices located in Tampa, Florida, and is over the age of eighteen years.

2.  Affiant represents the Estate of Lisa McPherson in a wrongful death case brought against the Church of Scientology Flag Service Organization, Inc. now pending in Pinellas County, Florida.

3.  On or about the 25th day of July, 2000, the Church of Scientology Flag Service Organization, Inc. took the deposition of Ursula Caberta, a German government official vacationing in Florida, in the wrongful death case.

4.  Affiant attended the deposition of Ursula Caberta.

5.  Deposition questioning was conducted by Kendrick Moxon, Scientologist, and the attorney for the Church of Scientology Flag Service Organization, Inc.

6.  At the conclusion of the deposition as Ms. Caberta was leaving, in front of Ms. Caberta, Ms. Caberta's counsel, John Merrett, and myself, Atty. Moxon not just once, but twice saluted Ms. Caberta with the "Hitler salute" of Nazi Germany and said "Hiel Hilter!"  This gesture greatly upset Ms. Caberta and insulted her as obvious by the expression on her face, as well as the statements made to Affiant.

54597 199


DEFENDANT'S EXHIBIT

22.

ALL-STATE LEGAL

7.    Attached hereto as Exhibit A is an excerpt of the transcript where Affiant placed this information on the record of the deposition.

FURTHER AFFIANT SAITH NOT.

KENNAN G. DANDAR

Sworn to and subscribed before me this 21st day of May, 2001

NOTARY PUBLIC
My commission expires:

Personally Known  ✓
Produced ID ___ ___
Type of ID Produced ___ _____ _____


Donna M. West
MY COMMISSION # CC819446 EXPIRES
October 31, 2003
BONDED THRU TROY FAIN INSURANCE, INC.

54597 199

FILE No. 903 05 21 '01 14:1  RUNNER & RUNNER       813 _ '0896              PAGE  4

COPY

1        IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL
     CIRCUIT OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
2                        CIVIL DIVISION

3    ESTATE OF LISA McPHERSON, by and
     through the Personal Representative,
4    DELL LIEBREICH,

5         Plaintiff,

6    vs.                         Case No.:   97-01235

7    CHURCH OF SCIENTOLOGY FLAG
     SERVICE ORGANIZATION, INC.; JANIS
8    JOHNSON; ALAIN KARTUZINSKI; and
     DAVID HOUGHTON, D.D.S.,
9
         Defendants.
10
     VIDEOTAPED DEPOSITION OF URSULA CABERTA
11
          C O N F I D E N T I A L
12

13

14

15

16

17

18

19

20

21

22

23                                      Reported by:

24            Susan D. Wasilewski, RPR, CRR
                      July 25, 2000

25
     Selafini Williams Court Reporters, Inc.
     Registered Professional Reporters Serving Central Florida

     Lakeland      Tampa        Sarasota      Winder Haven      Exhibit A
     Sebring       Bartow       St. Petersburg  Bradenton

FILE No. 988 05 21 '01 14:1   V:HNDR & INDR          813 2   035               PAGE  5

2

```
 1              APPEARANCES

 2    Counsel for Plaintiff:

 3        MR. KENNAN G. DANDAR
          Dandar & Dandar, P.A.
 4        Attorneys at Law
          5340 West Kennedy Boulevard, Suite 201
 5        Tampa, Florida 33609

 6    Counsel for Defendant Church of Scientology Flag
      Service Organization, Inc.:
 7
          MR. KENDRICK MOXON
 8        Moxon & Kobrin
          Attorneys at Law
 9        1100 Cleveland Street, Suite 900
          Clearwater, Florida 33755
10
          MR. MICHAEL LEE HERTZBERG
11        Attorney at Law
          740 Broadway, 5th Floor
12        New York, New York 10003

13        MR. MARCOS HASBUN
          Zuckerman, Spaeder, Taylor & Evans, LLP
14        Attorneys at Law
          401 East Jackson Street, Suite 2525
15        Tampa, Florida 33602

16    Counsel for the witness:

17        MR. JOHN MERRETTE
          Attorney at Law
18        2716 Herschel Street
          Jacksonville, Florida 32205
19
      Also Present:
20
          Ms. Anuschka Keller
21        Mr. Wilhelm Blumel
          Ms. Inge Walters, the Interpreter

22

23

24

25
```

FILE No. 968 05.21 '01 14:.  'j:I*NI** & I**NI**      813 2.  9*9*      FH*E  6

129

1          MR. MERRETTE:  I know that much German.

2    She's asking that it be kept sealed.

3    A.    I would like that.

4    Q.    Why?

5          MR. DANDAR:   No, that's not a proper

6    question.

7          MR. MERRETTE:  Bug off, Moxon.

8          MR. DANDAR:   That's not a proper

9    question under the Court's ruling.

10         MR. MOXON:   No.  Well, she wasn't given

11   what you -- no.  Well, let me give her the

12   whole thing then.

13         MR. MERRETTE:  No.

14         MR. MOXON:   Yeah.

15         MR. MERRETTE:  No.  Give her something

16   by mail in Germany.

17         MR. DANDAR:  Let's go.

18         MR. MERRETTE:  She is requesting that

19   the document be kept confidential.

20         Let the record reflect that Mr. Moxon

21   has just given a raised arm Nazi salute to

22   the witness.

23         MR. DANDAR:  What is wrong with you?  Is

24   this something you're told to do?  Because

25   you're not acting like a professional.  What

SCLAFANI WILLIAMS COURT REPORTERS, INC.
LAKELAND, FLORIDA (863) 688-5000

130

1      is wrong with you?

2           MR. MOXON:  What's the problem?

3           MR. DANDAR:  I have this witness, I have

4      the court reporter that I will subpoena.

5           MR. MOXON:  What's your problem?

6           MR. DANDAR:  The problem is it's called

7      the Florida Bar.  That's what it is.  How

8      dare you.  I hope you have a wonderful

9      evening.

10           MR. MOXON:  I guess we're off the

11     record.

12           MR. DANDAR:  Let's go.  Let's go.  You

13     almost got away with the whole thing.

14                (Recess.)

15           MR. DANDAR:  I'm putting on the record

16     that Mr. Moxon, as Ms. Caberta was leaving,

17     in front of her saluted her in Nazi style to

18     again insult her and I will take this up with

19     all of the appropriate authorities.

20           MR. MOXON:  Well, you have Exhibit B?

21           THE COURT REPORTER:  (Nodding head.)

22           MR. MOXON:  Anything else for the

23     record?  I guess it's over.

24           THEREUPON, the deposition of URSULA

25     CABERTA was adjourned at 10:06 p.m.

SCLAFANI WILLIAMS COURT REPORTERS, INC.
LAKELAND, FLORIDA (863) 668-5000

COPY

```
1        IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL
     CIRCUIT OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
2                        CIVIL DIVISION

3    ESTATE OF LISA McPHERSON, by and
     through the Personal Representative,
4    DELL LIEBREICH,

5        Plaintiff,

6    vs.                        Case No.:  97-01235

7    CHURCH OF SCIENTOLOGY FLAG
     SERVICE ORGANIZATION, INC.; JANIS
8    JOHNSON; ALAIN KARTUZINSKI; and
     DAVID HOUGHTON, D.D.S.,

9
         Defendants.
10
         VIDEOTAPED DEPOSITION OF URSULA CABERTA
11
                 C O N F I D E N T I A L
12

13

14

15

16

17

18

19

20

21

22

23                                      Reported by:

24                      Susan D. Wasilewski, RPR, CRR
                              July 25, 2000
25
```

**Sclafani Williams Court Reporters, Inc.**
Registered Professional Reporters Serving Central Florida

| Lakeland | Tampa | Sarasota | Winter Haven |
|----------|-------|----------|--------------|
| Sebring | Bartow | St. Petersburg | Bradenton |

DEFENDANT'S EXHIBIT
23.

```
 1                      APPEARANCES

 2   Counsel for Plaintiff:

 3       MR. KENNAN G. DANDAR
         Dandar & Dandar, P.A.
 4       Attorneys at Law
         5340 West Kennedy Boulevard, Suite 201
 5       Tampa, Florida 33609

 6   Counsel for Defendant Church of Scientology Flag
     Service Organization, Inc.:
 7
         MR. KENDRICK MOXON
 8       Moxon & Kobrin
         Attorneys at Law
 9       1100 Cleveland Street, Suite 900
         Clearwater, Florida 33755
10
         MR. MICHAEL LEE HERTZBERG
11       Attorney at Law
         740 Broadway, 5th Floor
12       New York, New York 10003

13       MR. MARCOS HASBUN
         Zuckerman, Spaeder, Taylor & Evans, LLP
14       Attorneys at Law
         401 East Jackson Street, Suite 2525
15       Tampa, Florida 33602

16   Counsel for the witness:

17       MR. JOHN MERRETTE
         Attorney at Law
18       2716 Herschel Street
         Jacksonville, Florida 32205
19
     Also Present:
20
         Ms. Amuschka Keller
21       Mr. Wilhelm Blumel
         Ms. Inge Walters, the Interpreter

22

23

24

25

              SCLAFANI WILLIAMS COURT REPORTERS, INC.
                LAKELAND, FLORIDA (863) 688-5000
```

```
1                    I  N  D  E  X

2   WITNESS                                    PAGE

3   Called by the Defendant Church of Scientology Flag

4   Service Organization, Inc.:

5   URSULA CABERTA

6       DIRECT EXAMINATION BY MR. MOXON........... 6

7   SIGNATURE PAGE................................. 132

8   CERTIFICATE OF REPORTER OATH.................. 133

9   REPORTER'S DEPOSITION CERTIFICATE............. 134

10

11                     EXHIBITS

12  Defendant's Exhibit A......................... 35

13  Defendant's Exhibit B......................... 81

14

15

16

17

18

19

20

21

22

23

24

25
```

1    was for.                                                    20:39:49

2    A.    It was private.  I'm a member of the US    20:39:55

3    American and European committee for peoples right    20:40:10

4    of --                                                       20:40:21

5          MR. BLUMEL:  For human rights.              20:40:24

6    A.    -- for human rights.                        20:40:27

7          MR. BLUMEL:  And religious freedom in the  20:40:28

8    United States.                                              20:40:30

9    A.    And freedom of religion.                    20:40:32

10          THE INTERPRETER:  Right?  Is that what     20:40:35

11    you said?                                                  20:40:36

12    A.    -- and freedom of religion in the USA.      20:40:37

13    Q.    But your mission for the -- just --         20:40:46

14    there's no question.                                       20:40:50

15          You say you support religious freedom?     20:40:52

16    A.    Yes.                                        20:41:02

17    Q.    But part of your mission --                 20:41:03

18    A.    With full heart.                            20:41:05

19    Q.    Oh, but part of your mission for the        20:41:06

20    German government is the genocide of Scientology,  20:41:08

21    isn't it?                                                  20:41:10

22          THE INTERPRETER:  Did you say genocide?    20:41:19

23          MR. MOXON:  Yes, genocide of               20:41:25

24    Scientologists.                                            20:41:27

25          MR. BLUMEL:  (Speaking German.)            20:41:31

1          THE INTERPRETER:  Right.  Okay.                    20:41:43

2          MR. BLUMEL:  The genocide convention               20:41:44

3     is --                                                   20:41:46

4          MR. MERRETTE:  You might also try                  20:41:49

5     Holocaust or Shoah so she gets an idea of the           20:41:52

6     disproportion in the analogy.

7          MR. MOXON:  What did she say?                       20:42:00

8     A.    That is not my job.                                20:42:05

9     Q.    That's not part of your job description?           20:42:08

10    A.    I don't understand what you are saying.            20:42:22

11    Q.    Would you like to see all Scientologists           20:42:25

12    dead?                                                    20:42:28

13    A.    (Untranslated.)

14    Q.    Most Scientologists dead?                          20:42:56

15         MR. MERRETTE:  And the answer hasn't been           20:42:56

16    translated, so I don't think she has                    20:42:56

17    anything.                                                20:42:56

18         MR. DANDAR:  You have to say no.  You               20:42:56

19    didn't translate it.                                     20:42:56

20         MR. MERRETTE:  You just need to translate           20:42:56

21    her answer to that question.                             20:42:56

22         THE INTERPRETER:  I did say no.                      20:42:56

23         MR. DANDAR:  No, you --

24         THE INTERPRETER:  I didn't?                          20:42:56

25         MR. MERRETTE:  I don't believe so, but

1        it doesn't matter.                          20:42:59

2            MR. DANDAR:  You said nein.            20:42:59

3            MR. MOXON:  You've said it now.

4            THE INTERPRETER:  Oh, I thought I said

5    no.  Sorry if I didn't.

6            MR. DANDAR:  Here is the question.      20:43:07

7    Q.    Do you want Scientologists to be dead,   20:43:10

8    that's the question?                            20:43:12

9            MR. DANDAR:  Objection; asked and       20:43:13

10   answered.                                       20:43:15

11   Q.    Do you want all Scientologists to be      20:43:16

12   dead, yes or no?                                20:43:17

13   A.    No.                                       20:43:22

14   Q.    Do you want any Scientologists to live as 20:43:25

15   Scientologists?                                 20:43:28

16   A.    Yes, because I'm not wishing them dead.   20:43:41

17   Q.    As long as they don't stay               20:43:44

18   Scientologists, correct?                        20:43:46

19   A.    That's wrong.  If people want to stay     20:43:53

20   with the Scientology, then that's where they    20:43:59

21   should stay.                                     20:44:02

22   Q.    And they should have full rights,         20:44:03

23   correct, they should have full rights and freedoms 20:44:05

24   in the government, correct?                      20:44:09

25   A.    They have it, yes.                         20:44:11

1          Q.     Scientologists have full rights and

2     freedoms in Germany?                                    20:44:16

3          MR. DANDAR:  Objection; scope.                      20:44:18

4          MR. MERRETTE:  And relevance.                       20:44:19

5          MR. DANDAR:  Do not waste my time on                20:44:21

6     what happens in Germany.                                 20:44:22

7          MR. MERRETTE:  I'm instructing the                  20:44:24

8     witness not to answer, unless you want to                20:44:25

9     give me an explanation about German policy               20:44:28

10    about Scientologists that's relevant to the              20:44:41

11    death of Lisa McPherson or the damages of her            20:44:41

12    estate.                                                  20:44:41

13         MR. MOXON:  Sure.                                   20:44:41

14         MR. MERRETTE:  What, Kartuzinski and                20:44:41

15    them killed her because they were protesting             20:44:41

16    German policy, is that what you're saying?               20:44:41

17         MR. MOXON:  Merrette, chill out.

18         MR. MERRETTE:  I'm just trying to help              20:44:44

19    you.  I want to hear an explanation.                     20:44:44

20         MR. MOXON:  Merrette, then just shut up             20:44:47

21    and listen.                                              20:44:48

22         MR. MERRETTE:  Let's go.  Roll.

23         MR. MOXON:  Minton paid this woman lots             20:44:49

24    of money to crank out her propaganda machine             20:44:51

25    and destroy the jury pool here in Florida,               20:44:56

1      that, Mr. Moxon?  I'm sorry, Counsel.  You          21:58:35

2      started a comment and you need to finish it.        21:58:37

3      We only have part of it on the record.  What        21:58:40

4      was it?  The little what?  Cat got your             21:58:41

5      tongue?                                             21:58:44

6          Q.   Mr. Merrette claims you took offense at    21:58:45

7      being called a Nazi.  Is that correct?             21:58:47

8          A.   Yes, of course.  It's an --              21:59:04

9          Q.   But you're quoted in --                   21:59:09

10             MR. DANDAR:  Wait.  Wait.  It's a what?   21:59:09

11         A.   It's an impertinence.                     21:59:11

12         Q.   Why?  Don't you consider yourself to be a 21:59:13

13     Nazi?                                               21:59:15

14             MR. DANDAR:  Objection.  I know it's        21:59:16

15     almost times up but if you're going to start       21:59:18

16     insulting her, the time is up right now.            21:59:20

17     Time is up in 60 seconds anyway.                    21:59:24

18             MR. MOXON:  I don't know that she          21:59:27

19     considers that to be an insult.                     21:59:28

20             MR. MERRETTE:  She just told you it        21:59:31

21     does, Moxon.  Are you listening?  You just          21:59:32

22     asked her if she found it offensive and she         21:59:34

23     said yes.  Now you're saying you don't know         21:59:39

24     if she finds it offensive, is that what             21:59:39

25     you're saying?

1          MR. MERRETTE:  I know that much German.          22:04:11

2     She's asking that it be kept sealed.          22:04:13

3     A.    I would like that.          22:04:15

4     Q.    Why?          22:04:18

5          MR. DANDAR:    No, that's not a proper          22:04:19

6     question.          22:04:20

7          MR. MERRETTE:  Bug off, Moxon.          22:04:22

8          MR. DANDAR:    That's not a proper          22:04:23

9     question under the Court's ruling.          22:04:24

10         MR. MOXON:   No.  Well, she wasn't given          22:04:26

11    what you -- no.  Well, let me give her the          22:04:27

12    whole thing then.          22:04:28

13         MR. MERRETTE:  No.          22:04:30

14         MR. MOXON:   Yeah.          22:04:30

15         MR. MERRETTE:  No.  Give her something          22:04:30

16    by mail in Germany.          22:04:31

17         MR. DANDAR:  Let's go.          22:04:33

18         MR. MERRETTE:  She is requesting that          22:04:33

19    the document be kept confidential.          22:04:34

20         Let the record reflect that Mr. Moxon          22:04:37

21    has just given a raised arm Nazi salute to          22:04:49

22    the witness.          22:04:49

23         MR. DANDAR:  What is wrong with you?  Is          22:04:49

24    this something you're told to do?  Because          22:04:49

25    you're not acting like a professional.  What          22:04:49

1      is wrong with you?                                    22:04:49

2           MR. MOXON:  What's the problem?                  22:04:49

3           MR. DANDAR:  I have this witness, I have         22:04:52

4      the court reporter that I will subpoena.              22:04:52

5           MR. MOXON:  What's your problem?                 22:04:55

6           MR. DANDAR:  The problem is it's called          22:04:56

7      the Florida Bar.  That's what it is.  How             22:04:57

8      dare you.  I hope you have a wonderful                22:05:00

9      evening.                                              22:05:05

10          MR. MOXON:  I guess we're off the                22:05:05

11     record.                                               22:05:06

12          MR. DANDAR:  Let's go.  Let's go.  You           22:05:07

13     almost got away with the whole thing.                 22:05:10

14                    (Recess.)                              22:05:44

15          MR. DANDAR:  I'm putting on the record           22:05:44

16     that Mr. Moxon, as Ms. Caberta was leaving,           22:05:45

17     in front of her saluted her in Nazi style to          22:05:48

18     again insult her and I will take this up with         22:05:52

19     all of the appropriate authorities.                   22:05:55

20          MR. MOXON:  Well, you have Exhibit B?            22:05:59

21          THE COURT REPORTER:  (Nodding head.)             22:06:05

22          MR. MOXON:  Anything else for the                22:06:09

23     record?  I guess it's over.                            22:06:10

24          THEREUPON, the deposition of URSULA

25     CABERTA was adjourned at 10:06 p.m.

SCLAFANI WILLIAMS COURT REPORTERS, INC.
LAKELAND, FLORIDA (863) 688-5000

# Since some of the materials which describe the $cientology considered to be

| master index | current index | skeptictank | human rights | criminal cult |
| --- | --- | --- | --- | --- |



Since some of the materials which describe the $cientology cult could be
considered to be copywritten materials, I have censored myself and The
Skeptic Tank by deleting any and all possible text files which describes
the cult's hidden mythologies.  I have elected to quote just a bit of the
questionable text according to the "Fair Use" legal findings afforded to
those who report.  - Fredric L. Rice, The Skeptic Tank, 09/Sep/95

-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-

From news.interserv.net!news.sprintlink.net!EU.net!news.eunet.fi!anon.penet.
Message-ID: <025307Z09071995@anon.penet.fi>
Path: news.interserv.net!news.sprintlink.net!EU.net!news.eunet.fi!anon.penet
Newsgroups: alt.religion.scientology
From: an248805@anon.penet.fi (Clambo)
X-Anonymously-To: alt.religion.scientology
Organization: Anonymous forwarding service
Reply-To: an248805@anon.penet.fi
Date: Sun,  9 Jul 1995 02:43:13 UTC
Subject: Re:  More snow white revelations (forwarded)
Lines: 110


(I was asked to post this as the original didn't show up on ars. Sorry if my
forwarding of this causes a duplicate to appear)

> dennis.l.erlich@support.com wrote:

[Good stuff about Mo Budlong deleted]


>    There's lots of old GO staff that now work for OSA.

Of course there is, including one of your "favorites", Kendrick "Ricky"
Moxon.  In the Stipulation of Evidence for United States vs. Mary Sue
Hubbard, et al it mentions Moxon on several occasions.  Remember, evidence
stipulation means that BOTH the prosecution and the defendants agree to
this, usually as a means to shorten trial lengths. This was NOT contested
evidence!  Some quotes -

"On August 30, FBI Special Agents Joseph Jackson and John Pavlansky went to
the offices of the Church of Scientology at 2125 S Street, N.W., in
Washington , D.C. to attempt to locate Mr. Meisner. They were met there by
Assistant Guardian for Legal Bureau  Kendrick 'Rick' Moxon."
        (Note: There was a sealed warrant issued for Meisner previous to
this incident.)

" On October 8, 1976, FBI Special Agent Hansen served upon Assistant
Guardian for the Legal Bureau in Washington, D.C.   Kendrick 'Rick' Moxon a
Grand Jury supoena for all the know handwriting exemplars of Michael Meisner
and the employment application and personnel records in the posession of the
Church of Scientology."

"On October 14, 1976, District of Columbia Assistant Guardian for the Legal
Bureau  Kendrick 'Rick' Moxon, submitted an affidavit with nine pages of



DEFENDANT'S
EXHIBIT
24.
ALL-STATE LEGAL

Since some of the materials which describe the Scientology cult could be considered to be                    Page 2 of 3

handwritten material.  In the affidavit, he stated that he was unable to locate the personnel file for Mr. Meisner, and that the nine pages of appended handwriting were those of Mr. Meisner.  However, as the defendant Raymond stated to Mr. Meisner in a meeting in late September 1976, Mr. Moxon had been directed to supply the government with fake handwriting samples in lieu of Mr. Meisner's true handwriting exemplars."

"The defendant Hermann told Mr. Meisner that he had entered the main IRS building on the morning of November 1, 1974, gone to the conference room where the meeting was to be held and placed a bugging device in a wall socket in that room." [exact building location details snipped]
"Thereafter, Hermann left the building and waited in a car in the driveway of the museum with Don Alvarado and Carla Moxon (the assistant Guardian Communicator in the District of Columbia) and overheard [sic] and taped the entire meeting over the FM radio of the car."

(Question, who is Carla Moxon? She was obviously G.O. in D.C. at the same time as Kendrick Moxon. Kendrick Moxon's name appears in more than I have quoted. The Stipulation is 284 pages of very small font typing so I really need to comb through it more carefully. It IS extremely interesting reading for those willing to pick through it. I thank "Clambo" for sending it to me. Just three final quotes that stuck out from the massive evidence of burglary, infiltration, electronic bugging and assorted coverups.)

"At all times material to the indictment, L. Ron Hubbard was, by virtue of his role as the founder and leader of Scientology, overall supervisor of the Guardian's Office.  His wife, Mary Sue Hubbard, held titles of "Controller" and "Commodore Staff Guardian" (CSG) and, as the second person in the hierarchy of Scientology, had duties which included supervision of the Guardian's Office. Jane Kember held the title of "Guardian World-Wide (GWW) and headed daily operations of all Guardian's Offices, reporting directly to Mary Sue Hubbard who in turn reported directly to L. Ron Hubbard."

The following is something often overlooked in this whole sordid affair. Scientology was afraid that Meisner, who was in hiding at this time, would "blow" and "handle things as he saw fit".  To preclude this from happening, Meisner was then, as defendant Heldt stated, ".. to be restrained and guarded. He is not permitted to leave."
"On May 1, at approximately 6 pm., Brian Andrus, Peter Alvet, Information Bureau official Chuck Reese and two bodyguards visited Mr. Meisner and told him he was to be moved to another apartment.  Mr. Meisner refused to leave, threatening to cause a commotion if forced to do so.  The two guards handcuffed him behind his back, gagged him and dragged him out of the building.  Outside they forced him onto the backseat of a waiting car. In the car one of the guards held Mr. Meisner down with his feet."
(Note: Meisner was held under guard by COS for 28 more days until he finally escaped.)

"Red Box data includes: (a) Proof that a Scnist[sic] is involved in criminal activities. (b) Anything illegal that implicates MSH, LRH. (c) Large amounts of non-FOI docs. (d) Operations against any government group or persons. (e) All operations that contain illegal activities. (f) Evidence of incriminating activities. (g) Names and details of confidential financial accounts"
( Note: the above quote from Government Doc. #219 - seized by Special Agent Aldrich from defendant Willardson's office at the Cedars Complex.)

All Quotes from Stipulation of Evidence, United States vs. Mary Sue Hubbard, et al - Criminal case No. 78-401, United States District Court for The District of Columbia.

Apologists who say those in Scientology who were involved in this have been purged are simply deluded, lying or both.

Gregg

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER,                          :
                                        :
        Plaintiff                       :
                                        :
vs.                                     :        Case No.: 8:00-CV-1528-T-27C
                                        :
URSULA CABERTA,                         :
                                        :
        Defendant                       :
_____:

## AFFIDAVIT OF WARD A. MEYTHALER
## IN SUPPORT OF MOTION TO TAX COSTS AND ATTORNEY'S FEES

STATE OF FLORIDA                )
                                :ss
COUNTY OF HILLSBOROUGH          )

        Affiant, WARD A. MEYTHALER, after having been duly sworn, deposes and states as

follows:

        1.      I am a resident of Hillsborough County, Florida, I am competent to state the

matters contained herein and such matters are known to me of my own personal knowledge.

        2.      I have been a partner with the law firm of Merkle & Magri, P.A., located at 5510

West LaSalle Street, Tampa, Florida  33607 since 1989.  I have been a licensed attorney in good

standing with the State of Florida since 1989 and the State of Illinois since 1973.  I have been

admitted to practice law in the United States District Court for the Northern District of Illinois,

the United States District Court for the Middle District of Florida, the Eleventh Circuit Court of

-1-



Appeals, and the Seventh Circuit Court of Appeals. From 1985 to 1989, I was an Assistant U.S. Attorney with the Criminal Division of the United States Attorney's Office in Tampa, Florida. Part of that time I worked with the Organized Crime and Drug Enforcement Task Force. While at the U.S. Attorney's Office, I worked on and tried cases involving, *inter alia,* narcotics, organized crime and public corruption. From 1973 to 1985 I was first an associate and then a partner with Keck, Mahin & Cate, a large law firm in Chicago, Illinois, where I worked on many various litigation matters and cases, primarily civil, including the large complex civil litigation involving the Amoco Cadiz oil disaster off the coast of France. At Merkle & Magri I have also worked on a large variety of criminal defense and civil litigation matters, including the complex Breast Implant Multi-District Litigation. I graduated from Harvard Law School in 1973.

3.     My entire 29-year legal career has basically involved civil and criminal litigation and trials involving many types of cases. I have handled, *inter alia,* numerous civil rights cases or cases involving civil rights issues and I represented a major Lutheran Synod in a moderately large case involving issues of religion, the law, and the interplay between the two. I am familiar with the fees and costs usually charged in cases of the instant type in the Middle District of Florida, as well as the fees and costs customarily charged in the Middle District, generally. My customary hourly rate at the times relevant to this case was $250.00 per hour which is reasonable and consistent with fees charged in the Middle District.

4.     Other attorneys who worked on this matter include Robert W. Merkle, Gerard J. Robles and Aaron Proulx. Mr. Robles has been an associate with the firm of Merkle & Magri since 1990 and was admitted to the Florida Bar in October, 1987. His normal hourly rate at the pertinent time was $100.00 an hour. Aaron Proulx was admitted to the Florida Bar in September

2000 and was an associate of Merkle & Magri from August, 2000 through part of July, 2001. He is presently a staff attorney for the Florida Supreme Court. His normal hourly rate at the pertinent time was $100.00 per hour. Robert W. Merkle was admitted to the Florida Bar in 1971. He was a special attorney with the Internal Security Division and the Criminal Division in the Department of Justice from 1971 to 1977; was an Assistant State Attorney and Deputy Director of the Habitual Felony Division at the Pinellas-Pasco County State Attorney's Office from 1977 to 1981; was special attorney with the Criminal Division, Fraud Section, Department of Justice from 1981 to 1982; and was United States Attorney for the Middle District of Florida from 1982 to 1988. He started Merkle & Magri in 1988 after an unsuccessful campaign for the U.S. Senate. While a state and federal prosecutor, Mr. Merkle successfully prosecuted numerous high profile cases. Since then, he has been involved in both criminal and civil litigation and trials. He is a sought-after outstanding trial attorney. His normal hourly rate for the pertinent time period was $300.00 per hour. The aforesaid hourly rates are reasonable and consistent with fees charged in the Middle District except Mr. Robles' fee is probably less than average.

5.     In July, 2001, my firm was retained to represent Ursula Caberta in this action. Ms. Caberta has incurred attorney's fees to my firm concerning this matter in the amount of $63,520.00, after excluding various fees as discussed below and fees concerning the instant fee petition. The total fees charged Ms. Caberta by this firm for the case to date (after excluding various fees as discussed below and fees concerning the instant fee petition) include a total of 212.2 hours of attorney time at the rate of $250.00 per hour for Ward A. Meythaler; 29.5 hours at $300.00 per hour for Robert W. Merkle; 9 hours at $100.00 per hour for Aaron Proulx; and 7.2 hours at $100.00 per hour for Gerard Robles. I am familiar with the manner in which my

firm's services are billed and attest that the attorney's hours are accurate as reflected on Exhibit 26, except for the possible exceptions hereinafter described. The April 1, 2002 entry for Mr. Meythaler (WAM) for $125.00 is an error which should have been billed to a different client. It has not been included in the request for fees. Mr. Meythaler's entry of July 24, 2001 has been reduced by .2 hours or $50.00. The January 16, 2002 entry for Mr. Meythaler contains an entry including a call to Mr. Zitek's office. The undersigned can recall no reason that such a call would have been made and assumes that he incorrectly wrote "Zitek" instead of "Ziegeler," who Mr. Meythaler may have had reason to call. In any event, this call (.1 hour) has not been included in the request for fees. Mr. Merkle's (RWM) July 24, 2001 charge of $30.00 has been excluded from the fee request because the entry has been redacted in its entirety to protect confidences and privilege. The August 15, 2001 entry for Angela Merkle (AM), a paralegal, has also been excluded from the fee request because the entry has been redacted to avoid disclosure of privileged information and because she is not an attorney and there is not enough time involved to warrant argument over reimbursement for her time. A few other items have been redacted to preserve attorney-client confidence or to protect the identity of third parties. Where the redaction involved costs, such costs have not been requested in the request for costs. Finally, there are several hours indicated on the bill with the designation N/C which means there was no charge.

6. I further attest that all fees requested in the fee request were both necessary and reasonable. I have considered and am guided by the standards outlined in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), recognized by this court in George v. GTE Directories Corp., 114 F.Supp.2d 1281, 1286 (M.D. Fla. 2000), as relevant to the determination of a reasonable fee.

7.      I have prepared the Bill of Costs which has been submitted and I have reviewed invoices and other forms of documentation for the items submitted as taxable costs in this action or discussed them with our office manager. All of the items included in the Bill of Costs were necessarily incurred in this case and the services for which costs have been charged were actually and necessarily performed for use by the undersigned's law firm in defense of this case.

8.      With respect to reimbursement of court reporter fees for transcripts necessarily obtained for use in this case, the expenses pertained to the deposition of Ursula Caberta, the Defendant in this case, and a hearing held before the Magistrate. The transcripts were used by the undersigned in organizing and providing evidence to the court in support of Defendant's position in this case or in preparation for witness and client conferences.

9.      With respect to reimbursement for over-night express charges, each of the expenses pertain to necessary papers in this case that were either sent to or from counsel in the case, Ms. Caberta, a German official, the State Department, or a court reporter. Courier charges include the delivery of papers relevant to this case to or from the court, counsel in this case, and a copy service.

10.     With respect to reimbursement for fees for exemplification and copies of papers necessarily obtained for use in this case, all of the copies pertain to documents necessarily obtained for use in this case. Costs of copying include $818.83 at 12-1/2¢ a page for copying done in-house and $257.55 for copying done outside of my law firm.

11.     The total costs for which Defendant seeks reimbursement are calculated to be $2,954.74.

FURTHER AFFIANT SAYETH NOT.


_____
WARD A. MEYTHALER



STATE OF FLORIDA            )
                            :ss
COUNTY OF HILLSBOROUGH      )


      SWORN TO AND SUBSCRIBED BEFORE ME this ____ day of May, 2002, by WARD A. MEYTHALER, who is personally known to me, or who has produced _____ _____ as identification and who, upon being first duly sworn, deposes and states that he has read the foregoing Affidavit, and that the statements contained therein are true and correct to the best of his knowledge and belief.

_____
Notary Public
State of Florida at Large
My Commission Expires:

-6-

MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida  33607

(813) 281-9000  or (727) 441-2699

August 7, 2001

Billed through 08/06/01

Bill number        0775-00001-003 RWM

Caberta, Ursula
Arbeitsgruppe Scientology
Eiffestrabe 664 B
20537 Hamburg,

PROFESSIONAL SERVICES RENDERED

| | | | | | |
|---|---|---|---|---|---|
| 07/20/01 AP | Conference with Robert Merkle re protective order; draft motion for protective order. | 1.30 hrs | 100 | /hr | 130.00 |
| 07/20/01 AP | Revise letter to counsel. | .20 hrs | 100 | /hr | 20.00 |
| 07/20/01 RWM | Telephone conferences with client; telephone conferences with John Merrett; telephone call to Pope, left message; telephone conference with Moxon; prepare letter; telephone conferences with *redacted* prepare motion; telephone conference with Aaron Proulx. | 4.00 hrs | 300 | /hr | 1,200.00 |
| 07/23/01 AP | Revise emergency motion for protection. | .20 hrs | 0 | /hr | N/C |
| 07/23/01 AP | Telephone to Robert Merkle re obtaining complete file; legal research - use Pacer to obtain pleadings. | 1.00 hrs | 100 | /hr | 100.00 |
| 07/23/01 RWM | Telephone conference with client (2); prepare motion. | 1.30 hrs | 300 | /hr | 390.00 |
| 07/23/01 RWM | Review motion; review fax affidavit. | .40 hrs | 300 | /hr | 120.00 |
| 07/23/01 RWM | Telephone conference with client (2); telephone conference with *redacted* | .50 hrs | 300 | /hr | 150.00 |
| 07/24/01 AP | Conference with Robert Merkle re immediate research on foreign deposition; legal research re foreign nationals deposition. | 3.50 hrs | 0 | /hr | N/C |
| 07/24/01 RWM | *Redacted* | .10 hrs | 300 | /hr | 30.00 |
| 07/24/01 RWM | Review motion/response. | .20 hrs | 300 | /hr | 60.00 |



```
Caberta, Ursula                                              PAGE   2
Bill number        0775-00001-003 RWM
```

```
07/24/01 RWM   Telephone conference Joe Magri; review response.
                                 .50 hrs   300 /hr            150.00
07/24/01 RWM   Telephone conference with client; telephone
               conference with Judge's office; telephone
               conferences with Kovachevich's office; telephone
               conference with Susan; telephone conference with
               Wilson's office; telephone conference with Susan.
                                2.00 hrs   300 /hr            600.00
07/25/01 AP    Legal research re deposition in foreign
               country.          .50 hrs     0 /hr            N/C
07/25/01 AP    Legal research re deposition in foreign
               country.         1.80 hrs     0 /hr            N/C
07/25/01 AP    Review docket sheet for pleadings to
               copy.            .30 hrs   100 /hr             30.00
07/25/01 AP    Revise memo re foreign depos.
                                 .20 hrs     0 /hr            N/C
07/25/01 RWM   Telephone conference with attorney Heinz;
               telephone conference with Heinz; conference with
               Ward Meythaler; memo to file.
                                 .40 hrs   300 /hr           120.00
07/25/01 RWM   Telephone conference with Merett; telephone
               conference with client.  .40 hrs   300 /hr    120.00
07/26/01 RWM   Review materials; telephone conference with
               client; review pleadings. 2.20 hrs   300 /hr  660.00
07/27/01 RWM   Telephone conference with client; prepare
               correspondence.          .30 hrs   300 /hr     90.00
07/30/01 RWM   Revise letter.           .30 hrs   300 /hr     90.00
08/02/01 RWM   Telephone conference with redacted  review fax.
                                 .20 hrs   300 /hr            60.00
08/06/01 RWM   Review fax; review fax; conference with Joe
               Magri.          .50 hrs   300 /hr             150.00
```

```
               ROBERT W. MERKLE                       13.30 hrs
               Aaron Proulx                            6.20 hrs
               Aaron Proulx                            2.80 hrs

               Total fees for this matter   22.30  hrs   4,270.00
```

```
COST INCURRED
```

```
07/20/01       Cost of courier service for delivery of documents
               to Federal Courthouse by Sonic Courier, Inc.
               (Inv. #206947)                                10.14
07/20/01       Facsimile Charges.                             9.00
07/20/01       Postage Charges.                               1.36
07/23/01       Secretarial overtime for Susan McGregor -
               emergency motion for protective order.        16.22
07/23/01       Cost of courier service for delivery of documents
               to Federal Courthouse by Sonic Courier, Inc.
               (Inv. #207370)                                13.14
07/23/01       Facsimile Charges.                            28.00
07/23/01       Postage Charges.                               1.36
```

```
Caberta, Ursula                                                PAGE   3
Bill number       0775-00001-003 RWM

07/24/01       Secretarial overtime for Susan McGregor - memo on
               foreign depositions.                               21.63
07/24/01       Facsimile Charges.                                101.00
07/25/01       Photocopy charges from from IKON Office Solutions
               for court records.                                 78.40
07/31/01       Photocopy Charges.                                 79.25
07/31/01       Facsimile Charges.                                  6.00
                                                           ------------
               Total cost for this matter        $         365.50

BILLING SUMMARY

               TOTAL FEES FOR THIS PERIOD        22.30  hrs    4,270.00

               TOTAL COST FOR THIS PERIOD        $            365.50
                                                           ------------
               TOTAL CHARGES FOR THIS PERIOD     $          4,635.50
```

```
                    MERKLE & MAGRI, P.A.
                   5510 West LaSalle Street
                   Tampa, Florida  33607

               (813) 281-9000  or  (727) 441-2699

                     September 15, 2001

                   Billed through 08/31/01

              Bill number      0775-00001-005 RWM


     Caberta, Ursula
     Arbeitsgruppe Scientology
     Eiffestrabe 664 B
     20537 Hamburg,
```

| | | |
|---|---|---:|
| Balance forward as of bill number 003 dated 08/07/01 | $ | 4,635.50 |
| Payments received, Thank You.     (last payment 08/15/01) | $ | 4,635.50 |
| | | ------------ |
| Net balance forward | $ | .00 |

**PROFESSIONAL SERVICES RENDERED**

| Date | Atty | Description | Hours/Rate | Amount |
|---|---|---|---|---:|
| 07/24/01 | WAM | Conference with Robert Merkle. | .30 hrs  250 /hr | 75.00 |
| 07/25/01 | WAM | Conference with Robert Merkle; telephone conference with Robert Merkle and representative in Germany. | .40 hrs  250 /hr | 100.00 |
| 08/07/01 | RWM | Prepare letter; telephone conference with Hintze. | .40 hrs  300 /hr | 120.00 |
| 08/14/01 | RWM | Telephone conference with Joe Magri. | .10 hrs  300 /hr | 30.00 |
| 08/15/01 | AM | *Redacted* | .20 hrs   35 /hr | 7.00 |
| 08/16/01 | RWM | Telephone call to Merrit, left message. | .10 hrs  300 /hr | 30.00 |
| 08/17/01 | RWM | Telephone conference with client. | .20 hrs  300 /hr | 60.00 |
| 08/20/01 | RWM | Conference with Ward Meythaler; telephone conference with John Merret; prepare new contract; prepare correspondence. | 1.10 hrs  300 /hr | 330.00 |
| 08/21/01 | RWM | Review order; conference with Susan; conference with Ward Meythaler. | .20 hrs  300 /hr | 60.00 |
| 08/21/01 | WAM | Conference with Robert Merkle; review file. | 2.10 hrs  250 /hr | 525.00 |
| 08/22/01 | RWM | Conference with Ward Meythaler and Susan. | .30 hrs  300 /hr | 90.00 |

```
Caberta, Ursula                                              PAGE  2
Bill number        0775-00001-005 RWM
```

| Date | | Description | | | |
|------|------|------|------|------|------|
| 08/22/01 | RWM | Telephone conference with client. | | | |
| | | | .10 hrs | 300 /hr | 30.00 |
| 08/24/01 | RWM | Conference with Susan. | .10 hrs | 0 /hr | N/C |
| 08/24/01 | RWM | Review order; telephone conference with Ward Meythaler; conference with Susan. | | | |
| | | | .40 hrs | 300 /hr | 120.00 |
| 08/27/01 | RWM | Conference with Ward Meythaler. | | | |
| | | | .40 hrs | 300 /hr | 120.00 |
| 08/29/01 | RWM | Conference with Ward Meythaler; review fax. | | | |
| | | | .30 hrs | 300 /hr | 90.00 |
| 08/29/01 | RWM | Review draft motion. | .20 hrs | 300 /hr | 60.00 |
| 08/29/01 | WAM | Conference with Robert Merkle; calls to Mr. Merrett; work on motion to dismiss; review file and affidavits. | 3.70 hrs | 250 /hr | 925.00 |
| 08/30/01 | RWM | Review deposition; conference with Ward Meythaler. | 1.80 hrs | 300 /hr | 540.00 |
| 08/30/01 | WAM | Telephone conference with Mr. Merrett; conference with Robert Merkle; work on motion to dismiss; review case law re scientology. | 5.90 hrs | 250 /hr | 1,475.00 |
| 08/31/01 | RWM | Review and revise motion. | .60 hrs | 300 /hr | 180.00 |
| 08/31/01 | WAM | Work on motion to dismiss; conference with Robert Merkle; complete, serve and file motion to dismiss; call re messenger. | 4.90 hrs | 250 /hr | 1,225.00 |

```
          ROBERT W. MERKLE                               .10 hrs
          Angela Merkle                                  .20 hrs
          ROBERT W. MERKLE                              6.20 hrs
          WARD A. MEYTHALER                            17.30 hrs

          Total fees for this matter        23.80  hrs   6,192.00
```

COST INCURRED

| Date | Description | Amount |
|------|------|------|
| 07/26/01 | Cost of courier service for delivery of documents from Ikon to Merkle & Magri, P.A. by Florida Courier Express.  (Inv. #125883) | 14.40 |
| 08/01/01 | West Law Computer Research for the month of July, 2001. | 77.66 |
| 08/07/01 | Facsimile Charges | 6.00 |
| 08/20/01 | Facsimile Charges | 7.00 |
| 08/22/01 | Cost of deposition transcript paid to Marten Walsh Cherer Limited.  (Check #20177) | 286.97 |
| 08/22/01 | Cost of Federal Express overnight delivery of documents to Akina Tennyson, Surrey UK.  (Inv. #5-917-16296) | 27.56 |
| 08/22/01 | Facsimile Charges | 2.00 |
| 08/23/01 | Cost of Federal Express overnight delivery of documents to Merkle & Magri, P.A. from G. Williams, London, England.  (Inv. #5-917-16296) | 78.13 |
| 08/23/01 | Cost of overnight delivery of documents to Robert Merkle from J. Wittis, Jacksonville, Florida by Federal Express.  (Inv. #5-917-24349) | 40.82 |

```
Caberta, Ursula                                              PAGE   3
Bill number       0775-00001-005 RWM

08/31/01       Photocopy Charges for the month of August 2001.      365.50

                                                          ------------
               Total cost for this matter          $         906.04

BILLING SUMMARY

               TOTAL FEES FOR THIS PERIOD        23.80   hrs     6,192.00

               TOTAL COST FOR THIS PERIOD          $         906.04
                                                          ------------
               TOTAL CHARGES FOR THIS PERIOD       $       7,098.04
                                                          ------------
               AMOUNT DUE - PLEASE PAY THIS AMOUNT $       7,098.04
```

MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida 33607

(813) 281-9000  or (727) 441-2699

October 19, 2001

Billed through 09/30/01

Bill number      0775-00001-007 RWM

Caberta, Ursula
Arbeitsgruppe Scientology
Eiffestrabe 664 B
20537 Hamburg,

```
Balance forward as of bill number 005 dated 09/15/01    $      7,098.04
Payments received, Thank You.    (last payment 09/28/01) $      7,098.04
                                                          ------------
Net balance forward                                       $        .00
```

PROFESSIONAL SERVICES RENDERED

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 09/04/01 | RWM | Conference with Ward Meythaler; prepare letter. | | | |
| | | | .30 hrs | 300 /hr | 90.00 |
| 09/04/01 | WAM | Conference with Robert Merkle; telephone conference with Mr. Moran; telephone conference with process server; prepare, file and serve motion to file motion one day late. | | | |
| | | | 2.00 hrs | 250 /hr | 500.00 |
| 09/04/01 | WAM | Review file. | .60 hrs | 250 /hr | 150.00 |
| 09/07/01 | RWM | Review letter; telephone conference with Ward Meythaler. | | | |
| | | | .30 hrs | 300 /hr | 90.00 |
| 09/10/01 | RWM | Conferences with Ward Meythaler. | | | |
| | | | .50 hrs | 300 /hr | 150.00 |
| 09/17/01 | RWM | Conference with Ward Meythaler. | | | |
| | | | .20 hrs | 300 /hr | 60.00 |
| 09/18/01 | RWM | Review fax. | .10 hrs | 300 /hr | 30.00 |
| 09/18/01 | WAM | Interoffice conferences; check docket. | | | |
| | | | .20 hrs | 250 /hr | 50.00 |
| 09/19/01 | RWM | Conference with Ward Meythaler; review order. | | | |
| | | | .30 hrs | 300 /hr | 90.00 |
| 09/19/01 | RWM | Review motion. | .20 hrs | 300 /hr | 60.00 |
| 09/19/01 | WAM | Review fax; review order; fax to Mr. Merrett. | | | |
| | | | .40 hrs | 250 /hr | 100.00 |
| 09/20/01 | RWM | Review motion. | .20 hrs | 300 /hr | 60.00 |
| 09/20/01 | RWM | Conference with Ward Meythaler. | | | |
| | | | .20 hrs | 300 /hr | 60.00 |

Caberta, Ursula                                                    PAGE  2
Bill number        0775-00001-007 RWM

| Date | | Description | hrs | rate | Amount |
|---|---|---|---|---|---|
| 09/20/01 | GJR | Retrieve files from Federal courthouse. | | | |
| | | | .50 hrs | 100 /hr | 50.00 |
| 09/20/01 | WAM | Work on response to plaintiff's motion to suspend time; work on motion to strike. | | | |
| | | | 1.80 hrs | 250 /hr | 450.00 |
| 09/21/01 | RWM | Review motion. | .20 hrs | 300 /hr | 60.00 |
| 09/21/01 | WAM | Complete and file response to motion to suspend time and motion to strike. | 2.20 hrs | 250 /hr | 550.00 |
| 09/25/01 | WAM | Review research for motion to strike. | | | |
| | | | .10 hrs | 250 /hr | 25.00 |
| 09/27/01 | WAM | Review motion to compel; work on response. | | | |
| | | | 3.40 hrs | 250 /hr | 850.00 |
| 09/28/01 | RWM | Conference with Ward Meythaler. | | | |
| | | | .10 hrs | 300 /hr | 30.00 |
| 09/28/01 | WAM | Review orders; work on response to motion to compel; review deposition in federal case. | | | |
| | | | 4.00 hrs | 250 /hr | 1,000.00 |

                   ROBERT W. MERKLE                          2.60 hrs
                   WARD A. MEYTHALER                        14.70 hrs
                   GERARD J. ROBLE                            .50 hrs

                   Total fees for this matter        17.80  hrs    4,505.00

COST INCURRED

| Date | Description | Amount |
|---|---|---|
| 08/31/01 | Postage Charges | .68 |
| 09/01/01 | Long distance charges for the month of August 2001. | 7.14 |
| 09/06/01 | Cost of overnight delivery of documents to John Merrett, Jacksonville, Florida by Federal Express.  (Inv. #5-964-41212) | 27.96 |
| 09/13/01 | Photocopy charges from The Presentation Group.  (Inv. #41157) | 107.21 |
| 09/15/01 | Facsimile Charges | 4.00 |
| 09/15/01 | Postage Charges | .80 |
| 09/16/01 | Postage Charges | 1.65 |
| 09/18/01 | Photocopy charges from Ikon Office Solutions.  (Inv. #L09121342) | 115.34 |
| 09/20/01 | Cost of overnight delivery of documents to Ursula Caberta, Hamburg, Germany by Federal Express.  (Inv. #5-964-62652) | 62.14 |
| 09/21/01 | Cost of courier service for delivery of documents to U.S. District Court, Tampa by Florida Courier Express.  (Inv. #126267) | 14.40 |
| 09/28/01 | Wire fee charged by Dresdner Bank on funds in the amount of $7,098.04 wired to Merkle & Magri Trust Account. | 15.00 |
| 09/30/01 | Photocopy Charges for the month of September, 2001. | 294.75 |
| 09/30/01 | Cost of transcript of deposition of Ursula Caberta by Dandar & Dandar, P.A. | 35.00 |

                                                         ------------
                   Total cost for this matter       $      686.07

Caberta, Ursula                                                    PAGE   3
Bill number       0775-00001-007 RWM

BILLING SUMMARY


          TOTAL FEES FOR THIS PERIOD        17.80   hrs      4,505.00

          TOTAL COST FOR THIS PERIOD                  $        686.07
                                                           ------------
          TOTAL CHARGES FOR THIS PERIOD               $      5,191.07
                                                           ------------
          AMOUNT DUE - PLEASE PAY THIS AMOUNT          $      5,191.07

MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida  33607

(813) 281-9000  or (727) 441-2699

November 21, 2001

Billed  10/01/01-10/31/01

Bill number      0775-00001-009 RWM


Caberta, Ursula
Arbeitsgruppe Scientology
Eiffestrabe 664 B
20537 Hamburg,




Balance forward as of bill number 007 dated 10/19/01    $     5,191.07
Payments received, Thank You.    (last payment 11/02/01)  $     5,191.07
                                                         ------------
Net balance forward                                      $          .00

PROFESSIONAL SERVICES RENDERED

| Date | | Description | | | | Amount |
|------|-----|-------------|-----|-----|-----|--------|
| 10/01/01 | RWM | Conference with Ward Meythaler. | | | | |
| | | | .10 hrs | 300 | /hr | 30.00 |
| 10/01/01 | WAM | Work on response to motion to compel; review deposition in state case; fax to Ms. Caberta. | | | | |
| | | | 4.10 hrs | 250 | /hr | 1,025.00 |
| 10/02/01 | RWM | Conference with Ward Meythaler; telephone conference with client, et al. | | | | |
| | | | 1.20 hrs | 300 | /hr | 360.00 |
| 10/02/01 | WAM | Work on response to motion to compel;; review pleadings; telephone conference re case. | | | | |
| | | | 6.90 hrs | 250 | /hr | 1,725.00 |
| 10/03/01 | RWM | Conference with Ward Meythaler; review and revise motion. | | .40 hrs | 300 /hr | 120.00 |
| 10/03/01 | WAM | Complete and file rsponse to Plaintiff's motion to compel. | | 6.70 hrs | 250 /hr | 1,675.00 |
| 10/05/01 | WAM | Letter to Ms. Caberta; telephone conference re case. | | .30 hrs | 250 /hr | 75.00 |
| 10/09/01 | WAM | Telephone conference with Mr. Moxon; conference with Robert Merkle. | | .20 hrs | 250 /hr | 50.00 |
| 10/10/01 | WAM | Telephone conference with Mr. Moxon re expert stipulation and his request to file reply brief. | | | | |
| | | | .20 hrs | 250 | /hr | 50.00 |
| 10/11/01 | RWM | Conference with Dot Bunger. | | .10 hrs | 300 /hr | 30.00 |
| 10/12/01 | WAM | Review reply brief and motion to file reply brief. | | 1.00 hrs | 250 /hr | 250.00 |

Caberta, Ursula                                                    PAGE  2
Bill number        0775-00001-009 RWM

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/17/01 | RWM | Conference with Ward Meythaler. | .10 hrs | 300 /hr | 30.00 |
| 10/18/01 | WAM | Review order; prepare for argument. | .20 hrs | 250 /hr | 50.00 |
| 10/19/01 | RWM | Review motion. | .10 hrs | 300 /hr | 30.00 |
| 10/19/01 | WAM | Telephone conference with Ms. Caberta; review pleadings; review fax; conference with Robert Merkle; prepare and file response to motion to file reply brief. | 3.10 hrs | 250 /hr | 775.00 |
| 10/20/01 | WAM | Fax to Ms. Caberta; prepare for hearing. | 1.00 hrs | 250 /hr | 250.00 |
| 10/21/01 | WAM | Prepare for hearing. | 1.50 hrs | 250 /hr | 375.00 |
| 10/22/01 | RWM | Conference with Ward Meythaler. | .20 hrs | 300 /hr | 60.00 |
| 10/22/01 | WAM | Telephone conference with Ms. Caberta and Mr. Hintze; telephone conference with Mr. Merrett; prepare for hearing; review pleadings; conference with Robert Merkle. | 3.30 hrs | 250 /hr | 825.00 |
| 10/23/01 | RWM | Conference with Ward Meythaler. | .20 hrs | 300 /hr | 60.00 |
| 10/23/01 | WAM | Fax to Ms. Caberta; telephone conferences with Ms. Caberta, Mr. Hintze and Mr. Merrett; conference with Robert Merkle; prepare for hearing. | 6.40 hrs | 250 /hr | 1,600.00 |
| 10/24/01 | WAM | Prepare for and attend hearing on motion to compel; conference with Mr. Merrett; conference re hearing. | 5.20 hrs | 250 /hr | 1,300.00 |
| 10/25/01 | RWM | Conference with Ward Meythaler. | .10 hrs | 300 /hr | 30.00 |
| 10/25/01 | WAM | Review faxes from Mr. Moxon; letter to Ms. Caberta; conference with Robert Merkle; call to Judge Jenkins' assistant; review transcript. | 1.80 hrs | 250 /hr | 450.00 |
| 10/26/01 | RWM | Conference with Ward Meythaler; review letter. | .20 hrs | 300 /hr | 60.00 |
| 10/26/01 | WAM | Telephone conference with clients in Germany; telephone conference with Mr. Moxon; faxes to and from Mr. Moxon; conference with Robert Merkle; research re recusal; work on motion to recuse; research re appeal of magistrate's orders. | 3.30 hrs | 250 /hr | 825.00 |
| 10/29/01 | RWM | Conference with Ward Meythaler. | .10 hrs | 300 /hr | 30.00 |
| 10/29/01 | WAM | Telephone conference with Ms. Caberta and Mr. Hintze; telephone conference re case; work on motion to recuse; legal research re recusal; letter to Ms. Caberta. | 3.00 hrs | 250 /hr | 750.00 |
| 10/30/01 | WAM | Work on motion to recuse; legal research re recusal of court; telephone conference with Ms. Caberta; call to Mr. Moxon's office; letter to Mr. Moxon; telephone conference with client; call to client's clerk. | 4.00 hrs | 250 /hr | 1,000.00 |

```
Caberta, Ursula                                              PAGE  3
Bill number      0775-00001-009 RWM
```

```
10/31/01 RWM  Review motion.              .20 hrs  300 /hr       60.00
10/31/01 WAM  Review motion to vacate case management order;
              research re recusal; complete and file motion to
              recuse; telephone conference with Mr. Moxon;
              conference with Robert Merkle.
                                          2.80 hrs  250 /hr      700.00

              ROBERT W. MERKLE                              3.00 hrs
              WARD A. MEYTHALER                            55.00 hrs

              Total fees for this matter     58.00  hrs   14,650.00
```

COST INCURRED

```
10/01/01      Facsimile Charges                               1.00
10/03/01      Facsimile Charges                              28.00
10/18/01      Facsimile Charges                               2.00
10/19/01      Cost of courier service for delivery of documents
              to K. Moxon, Clearwater, Florida by Florida
              Courier Express, Inc.  (Inv. #126463)          21.60
10/19/01      Cost of courier service for delivery of documents
              to Federal Courthouse by Florida Courier Express,
              Inc. (Inv. #126463)                            14.40
10/19/01      Cost of courier service for delivery of documents
              to F. Pope, Attorney, by Florida Courier Express,
              Inc. (Inv. #126463)                            15.00
10/24/01      Travel cost for Ward Meythaler to attend hearing.
                                                              7.21
10/25/01      Facsimile Charges                               3.00
10/26/01      Facsimile Charges                               3.00
10/26/01      Postage Charges                                  .35
10/27/01      Facsimile Charges                               3.00
10/28/01      Facsimile Charges                               2.00
10/29/01      Postage Charges                                 1.10
10/31/01      Cost of transcript of hearing 10/24/01 from
              Dennis Miracle.                                37.50
10/31/01      Long distance charges for the month of September,
              2001.                                           1.57
10/31/01      Photocopy Charges for the month of October, 2001.
                                                             88.25
10/31/01      West Law Computer Research for the month of
              October, 2001.                                 17.77
10/31/01      Cost of courier service for delivery of documents
              to Federal Courthouse by Florida Courier Express,
              Inc.  (Inv. #126463)                            8.00
10/31/01      Wire transfer fee from Dresdner Bank.          15.00
                                                       ------------
              Total cost for this matter         $         269.75
```

BILLING SUMMARY

```
              TOTAL FEES FOR THIS PERIOD       58.00  hrs   14,650.00
```

Caberta, Ursula                                             PAGE   4
Bill number        0775-00001-009 RWM


              TOTAL COST FOR THIS PERIOD            $            269.75
                                                              ------------
              TOTAL CHARGES FOR THIS PERIOD         $         14,919.75
                                                              ------------
              AMOUNT DUE - PLEASE PAY THIS AMOUNT   $         14,919.75

MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida  33607

(813) 281-9000  or  (727) 441-2699

December 14, 2001

Billed through 12/14/01

Bill number        0775-00001-011 WAM

Caberta, Ursula
Arbeitsgruppe Scientology
Eiffestrabe 664 B
20537 Hamburg,

Balance forward as of bill number 009 dated 11/21/01        $    14,919.75

PROFESSIONAL SERVICES RENDERED

| | | | | | |
|---|---|---|---|---|---|
| 11/01/01 | RWM | Review motion. | .10 hrs | 300 /hr | 30.00 |
| 11/01/01 | WAM | Review transcript of hearing; prepare and file supplement to motion to recuse and response to motion to vacate case management order; conference with Robert Merkle. | | | |
| | | | 3.00 hrs | 250 /hr | 750.00 |
| 11/04/01 | WAM | Review law re recusal. | .30 hrs | 250 /hr | 75.00 |
| 11/06/01 | WAM | Review order. | .10 hrs | 250 /hr | 25.00 |
| 11/08/01 | WAM | Review fax. | .10 hrs | 250 /hr | 25.00 |
| 11/09/01 | RWM | Conference with Ward Meythaler. | | | |
| | | | .20 hrs | 300 /hr | 60.00 |
| 11/12/01 | GJR | Research. | 1.50 hrs | 100 /hr | 150.00 |
| 11/12/01 | WAM | Review order and notice of deposition. | | | |
| | | | .30 hrs | 250 /hr | 75.00 |
| 11/13/01 | WAM | Review memorandum in response to motion to recuse; review faxes; telephone conference with Mr. Ziegler; letter to Ms. Caberta. | | | |
| | | | 1.00 hrs | 250 /hr | 250.00 |
| 11/16/01 | WAM | Interoffice conference re orders; review fax. | | | |
| | | | .30 hrs | 250 /hr | 75.00 |
| 11/19/01 | RWM | Telephone conference with Ward Meythaler; conference with Susan. | .10 hrs | 300 /hr | 30.00 |
| 11/19/01 | RWM | Conference with Ward Meythaler. | | | |
| | | | .20 hrs | 300 /hr | 60.00 |
| 11/19/01 | RWM | Telephone conference with client; conference with Ward Meythaler. | .30 hrs | 300 /hr | 90.00 |
| 11/19/01 | WAM | Review fax; conference with Robert Merkle; fax to Ms. Caberta; conference with Robert Merkle; telephone conference with Ms. Caberta. | | | |
| | | | .70 hrs | 250 /hr | 175.00 |

Caberta, Ursula                                                    PAGE   2
Bill number        0775-00001-011 WAM

11/20/01 WAM   Review orders; review fax; letter and fax to Ms.
               Caberta; conference with Robert Merkle.
                                    1.00 hrs  250 /hr          250.00
11/21/01 RWM   Conference with Ward Meythaler.
                                     .20 hrs  300 /hr           60.00
11/21/01 WAM   Telephone conference with Ms. Caberta; review
               fax.                  .70 hrs  250 /hr          175.00
11/22/01 WAM   Review orders; telephone conference with Ms.
               Caberta.             1.00 hrs  250 /hr          250.00
11/26/01 GJR   Research two issues.  2.50 hrs  100 /hr         250.00
11/26/01 WAM   Review fax from Ms. Caberta; telephone conference
               with Mr. Moxon; telephone conference with Ms.
               Caberta; review Moxon fax; fax to Ms. Caberta;
               review documents requested.  1.40 hrs  250 /hr  350.00
11/27/01 GJR   Conference with Ward Meythaler.
                                     .10 hrs  100 /hr           10.00
11/27/01 WAM   Call re documents requested; letter to Mr. Moxon.
                                     .50 hrs  250 /hr          125.00
11/28/01 WAM   Fax from Mr. Moxon; telephone conference with Ms.
               Caberta.              .40 hrs  250 /hr          100.00
11/29/01 RWM   Conference with Ward Meythaler; telephone
               conference with client; telephone conference with
               German counsel.       .50 hrs  300 /hr          150.00
11/29/01 WAM   Telephone conference with Ms. Caberta and Mr.
               Ziegeler; conference with Robert Merkle; review
               documents request.   1.00 hrs  250 /hr          250.00
11/30/01 RWM   Conference with Ward Meythaler.
                                     .20 hrs  300 /hr           60.00
11/30/01 WAM   Review fax from Mr. Moxon; letter to Mr. Moxon;
               conference with Robert Merkle.
                                     .80 hrs  250 /hr          200.00


               ROBERT W. MERKLE                              1.80 hrs
               WARD A. MEYTHALER                            12.60 hrs
               GERARD J. ROBLE                               4.10 hrs

               Total fees for this matter    18.50  hrs     4,100.00

COST INCURRED

11/01/01       Long distance charges for the month of October,
               2001.                                            2.57
11/19/01       Facsimile Charges                                1.00
11/20/01       Facsimile Charges                                2.00
11/20/01       Cost of overnight delivery of documents to Ursula
               Caberta, Hamburg, Germany by Federal Express
               11/20/01.  (Inv. #401322861)                    27.30
11/26/01       Facsimile Charges                                8.00
11/27/01       Postage Charges                                   .34
11/30/01       Photocopy Charges for the month of November,
               2001.                                           82.50
11/30/01       West Law Computer Research for the month of
               November 2001.                                  39.35
                                                          ------------
               Total cost for this matter        $           163.06

Caberta, Ursula                                                              PAGE   3
Bill number        0775-00001-011 WAM

BILLING SUMMARY

```
          TOTAL FEES FOR THIS PERIOD        18.50  hrs      4,100.00

          TOTAL COST FOR THIS PERIOD               $          163.06
                                                          ------------
          TOTAL CHARGES FOR THIS PERIOD            $        4,263.06

          PLUS PAST DUE BALANCE                    $       14,919.75
                                                          ------------
          AMOUNT DUE - PLEASE PAY THIS AMOUNT      $       19,182.81
```

MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida  33607

(813) 281-9000  or (727) 441-2699

January 22, 2002

Billed through 12/31/01

Bill number        0775-00001-013 WAM

Caberta, Ursula
Arbeitsgruppe Scientology
Eiffestrabe 664 B
20537 Hamburg,


Balance forward as of bill number 011 dated 12/14/01     $     19,182.81
Payments received, Thank You.    (last payment 12/24/01) $     14,904.75
                                                               ------------
Net balance forward                                      $      4,278.06

PROFESSIONAL SERVICES RENDERED

| | | | |
|---|---|---|---:|
| 12/03/01 WAM | Fax from Mr. Moxon; fax to Mr. Moxon. | | |
| | | .20 hrs  250 /hr | 50.00 |
| 12/04/01 WAM | Study letter re costs; letter to Mr. Moxon; work on objections to Magistrate's orders. | | |
| | | 5.60 hrs  250 /hr | 1,400.00 |
| 12/05/01 RWM | Conference with Ward Meythaler. | | |
| | | .20 hrs  300 /hr | 60.00 |
| 12/05/01 WAM | Telephone conference with Ms. Caberta; telephone conference with *redacted* letter to Ms. Caberta; work on objections to Magistrate's orders. | | |
| | | 7.00 hrs  250 /hr | 1,750.00 |
| 12/06/01 RWM | Conference with Ward Meythaler. | | |
| | | .20 hrs  300 /hr | 60.00 |
| 12/06/01 WAM | Complete and file objections to Magistrate's orders on motions to compel and to recuse; letter to Mr. Moxon with discovery documents; review discovery documents; letter to Deputy Marshal Lee; review fax from Mr. Moxon. | | |
| | | 6.40 hrs  250 /hr | 1,600.00 |
| 12/07/01 RWM | Conference with Ward Meythaler. | | |
| | | .10 hrs  300 /hr | 30.00 |
| 12/07/01 WAM | Telelphone calls from Mr. Hintze; review fax; telephone conference with secretary re responding to Mr. Moxon; letter to Mr. Moxon with discovery documents. | | |
| | | 1.00 hrs  250 /hr | 250.00 |

```
Caberta, Ursula                                            PAGE  2
Bill number      0775-00001-013 WAM
```

| Date | Atty | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 12/10/01 | RWM | Conference with Ward Meythaler; review note. | .20 hrs  300 /hr | 60.00 |
| 12/10/01 | WAM | Conference with secretary to call Mr. Moxon; telephone conference with Ms. Caberta and Magistrate's clerk; letters to Mr. Moxon; work on notice of protest and motion to continue deposition; fax from Mr. Moxon; conference with Robert Merkle; review fax from German Consulate. | 2.40 hrs  250 /hr | 600.00 |
| 12/11/01 | RWM | Review pleadings. | .10 hrs  300 /hr | 30.00 |
| 12/11/01 | WAM | Review fax from Mr. Moxon; fax to Mr. Moxon; complete and file notice of protest and motion to continue deposition; telephone conference with Mr. Moxon; review fax from Ms. Caberta. | 2.00 hrs  250 /hr | 500.00 |
| 12/13/01 | WAM | Telephone conference with Ms. Caberta; status report to Ms. Caberta. | 1.10 hrs  250 /hr | 275.00 |
| 12/14/01 | RWM | Conference with Ward Meythaler. | .10 hrs  300 /hr | 30.00 |
| 12/14/01 | WAM | Check on filing of Note Verbale; "refile" Note; letter to Mr. Moxon; letter to German Embassy; obtain documents for Embassy. | 3.00 hrs  250 /hr | 750.00 |
| 12/19/01 | WAM | Work on response to Mr. Moxon's affidavit; research re fee petitions. | 4.80 hrs  250 /hr | 1,200.00 |
| 12/20/01 | WAM | Research re Mr. Moxon's affidavit; work on response to Mr. Moxon's fee petition; interoffice conference. | 3.00 hrs  250 /hr | 750.00 |
| 12/21/01 | RWM | Conference with Ward Meythaler. | .20 hrs  300 /hr | 60.00 |
| 12/21/01 | WAM | Complete and file response to Mr. Moxon's fee petition; review fax. | 4.50 hrs  250 /hr | 1,125.00 |

```
                 ROBERT W. MERKLE                          1.10 hrs
                 WARD A. MEYTHALER                         41.00 hrs

                 Total fees for this matter     42.10  hrs  10,580.00


COST INCURRED

12/04/01         Facsimile Charges                            2.00
12/04/01         Postage Charges                               .34
12/05/01         Facsimile Charges                            2.00
12/06/01         Facsimile Charges                            3.00
12/06/01         Postage Charges                               .34
12/06/01         Cost of courier service for delivery of documents
                 to Moxon & Kobrin, Clearwater, Florida by
                 Roadrunner Courier Service.  (Inv. #45887)   20.60
12/07/01         Cost of courier service for delivery of documents
                 to Moxon & Kobrin, Clearwater, Florida by
                 Roadrunner Courier Service.  (Inv. #45887)   20.60
12/10/01         Facsimile Charges                            2.00
```

Caberta, Ursula                                                    PAGE   3
Bill number       0775-00001-013 WAM

| Date | Description | Amount |
|---|---|---|
| 12/10/01 | Postage Charges | .34 |
| 12/10/01 | Postage Charges | .34 |
| 12/10/01 | Facsimile Charges | 2.00 |
| 12/11/01 | Facsimile Charges | 4.00 |
| 12/11/01 | Postage Charges | .34 |
| 12/11/01 | Facsimile Charges | 4.00 |
| 12/11/01 | Facsimile Charges | 5.00 |
| 12/11/01 | Cost of courier service for delivery of documents to U.S. District Court, Tampa, Florida by Roadrunner Courier Service.  (Inv. #46041) | 8.24 |
| 12/13/01 | Facsimile Charges | 3.00 |
| 12/13/01 | Cost of overnight delivery of documents to Ms. Caberta, Hamburg, Germany by Federal Express. (Inv. #4-060-53908) | 36.72 |
| 12/14/01 | Facsimile Charges | 2.00 |
| 12/14/01 | Postage Charges | .34 |
| 12/14/01 | Postage Charges | .34 |
| 12/14/01 | Cost of overnight delivery of documents to Mr. German, Washington, D.C. by Federal Express. (Inv. #4-060-63742) | 26.27 |
| 12/14/01 | Cost of courier service for delivery of documents to U.S. District Court, Tampa, Florida by Roadrunner Courier Service.  (Inv. #46041) | 10.30 |
| 12/17/01 | Reimbursement to Ward Meythaler for long distance calls made from home telephone. | 15.44 |
| 12/18/01 | West Law Computer Research for the month of December 2001. | 57.83 |
| 12/21/01 | Postage Charges | .91 |
| 12/21/01 | Cost of courier service for delivery of documents to U.S. District Court, Tampa, Florida by Roadrunner Courier Service.  (Inv. #46280) | 8.24 |
| 12/31/01 | Photocopy Charges for the month of December 2001. | 232.50 |
| 12/31/01 | Long distance charges for the month of November 2001. | 1.16 |
| 12/31/01 | Cost of courier service for delivery of documents to Federal courthouse, Tampa, Florida by Florida Courier Express, Inc. 11/01/01 (Inv. #126650) | 14.40 |

```
                                          ------------
            Total cost for this matter    $    484.59
```

BILLING SUMMARY

```
            TOTAL FEES FOR THIS PERIOD       42.10  hrs    10,580.00

            TOTAL COST FOR THIS PERIOD                $       484.59
                                                          ------------
            TOTAL CHARGES FOR THIS PERIOD             $    11,064.59

            PLUS PAST DUE BALANCE                     $     4,278.06
                                                          ------------
            AMOUNT DUE - PLEASE PAY THIS AMOUNT       $    15,342.65
```

MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida  33607

(813) 281-9000  or (727) 441-2699

February 26, 2002

Billed through 01/31/02

Bill number        0775-00001-014 WAM

Caberta, Ursula
Arbeitsgruppe Scientology
Eiffestrabe 664 B
20537 Hamburg,


| | | |
|---|---|---|
| Balance forward as of bill number 013 dated 01/22/02 | $ | 15,342.65 |
| Payments received, Thank You.    (last payment 01/16/02) | $ | 4,248.06 |
| Net balance forward | $ | 11,094.59 |

PROFESSIONAL SERVICES RENDERED

| | | | | |
|---|---|---|---|---|
| 01/08/02 WAM | Telephone conference with Ms. Teel; review file. | | | |
| | | .20 hrs | 250 /hr | 50.00 |
| 01/09/02 WAM | Obtain materials and send to state department. | | | |
| | | 1.70 hrs | 250 /hr | 425.00 |
| 01/10/02 RWM | Conference with Ward Meythaler. | | | |
| | | .10 hrs | 300 /hr | 30.00 |
| 01/16/02 WAM | Call to Mr. Zitek's office; call to Mr. Moxon's office; review file. | | | |
| | | .30 hrs | 250 /hr | 75.00 |
| 01/17/02 WAM | Call to Mr. Moxon's office re motion. | | | |
| | | .10 hrs | 250 /hr | 25.00 |
| 01/24/02 WAM | Telephone conference with Mr. Ziegeler. | | | |
| | | .20 hrs | 250 /hr | 50.00 |
| 01/29/02 WAM | Review order on motion to continue. | | | |
| | | .10 hrs | 250 /hr | 25.00 |
| 01/30/02 RWM | Conference with Ward Meythaler. | | | |
| | | .20 hrs | 300 /hr | 60.00 |
| 01/30/02 WAM | Review order; conference with Robert Merkle; attempt to reach Mr. Ziegeler. | | | |
| | | .90 hrs | 250 /hr | 225.00 |
| 01/31/02 WAM | Review fax from Mr. Moxon; letter to Ms. Caberta with copy of Magistrate's order. | | | |
| | | 1.30 hrs | 250 /hr | 325.00 |

| | | |
|---|---|---|
| ROBERT W. MERKLE | | .30 hrs |
| WARD A. MEYTHALER | | 4.80 hrs |
| Total fees for this matter | 5.10  hrs | 1,290.00 |

```
Caberta, Ursula                                              PAGE   2
Bill number      0775-00001-014 WAM
```

COST INCURRED

| | | |
|---|---|---:|
| 01/01/02 | Long distance charges for the month of December 2001. | 1.70 |
| 01/09/02 | Cost of overnight delivery of documents to Department of State, Washington, DC by Federal Express.  (Inv. #4-061-88218) | 30.81 |
| 01/25/02 | Facsimile Charges | 6.00 |
| 01/31/02 | Photocopy Charges for the month of January 2002. | 84.50 |
| 01/31/02 | Cost of overnight delivery of documents to client 2/1/02 by Federal Express.  (Inv. #4-110-81005) | 28.28 |
| 01/31/02 | Cost of overnight delivery of documents to client 2/5/02 by Federal Express.  (Inv. #4-110-81005) | 28.00 |

```
                                                       ------------
                 Total cost for this matter       $         179.29
```

BILLING SUMMARY

```
              TOTAL FEES FOR THIS PERIOD       5.10  hrs    1,290.00

              TOTAL COST FOR THIS PERIOD            $         179.29
                                                       ------------
              TOTAL CHARGES FOR THIS PERIOD        $       1,469.29

              PLUS PAST DUE BALANCE                $      11,094.59
                                                       ------------
              AMOUNT DUE - PLEASE PAY THIS AMOUNT  $      12,563.88
```

MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida  33607

(813) 281-9000  or  (727) 441-2699

March 22, 2002

Billed  02/01/02-02/28/02

Bill number        0775-00001-017 WAM

Caberta, Ursula
Arbeitsgruppe Scientology
Eiffestrabe 664 B
20537 Hamburg,


Balance forward as of bill number 014 dated 02/26/02     $     12,563.88
Payments received, Thank You.    (last payment 03/21/02)  $     12,533.88
                                                           ------------
Net balance forward                                       $         30.00

PROFESSIONAL SERVICES RENDERED

| | | | |
|---|---|---|---|
| 02/01/02 RWM | Conference with Ward Meythaler. | | |
| | | .10 hrs  300 /hr | 30.00 |
| 02/01/02 WAM | Review order on fees; review fax from Mr. Moxon. | | |
| | | .30 hrs  250 /hr | 75.00 |
| 02/04/02 WAM | Review court's order re appeal of magistrate's orders; review notice of State Department's refusal to intervene; letter to Ms. Caberta; telephone conference with Mr. Ziegeler; fax to Mr. Ziegeler. | 1.00 hrs  250 /hr | 250.00 |
| 02/07/02 WAM | Work on appeal of court's order re fees. | | |
| | | 2.00 hrs  250 /hr | 500.00 |
| 02/08/02 WAM | Letter to Ms. Caberta; work on objection to Magistrate's order re fees; research re proof in support of fees. | 2.00 hrs  250 /hr | 500.00 |
| 02/09/02 WAM | Review message from *redacted* | | |
| | | .10 hrs  250 /hr | N/C |
| 02/11/02 WAM | Work on appeal of Magistrate's order regarding fee determination; telephone conference with Ms. Caberta; telephone conference with Mr. Moxon; conference with Robert Merkle; draft memo to file; attempt to reach Mr. Ziegeler; letter to Ms. Caberta. | 2.00 hrs  250 /hr | 500.00 |
| 02/12/02 RWM | Conference with Ward Meythaler. | | |
| | | .10 hrs  300 /hr | 30.00 |
| 02/12/02 WAM | Complete and file defendant's objection to Magistrate's fee determination; telephone conference with Mr. Ziegeler; prepare memos to file. | 2.30 hrs  250 /hr | 575.00 |

Caberta, Ursula                                                    PAGE  2
Bill number        0775-00001-017 WAM

| Date | Atty | Description | Hrs | Rate | Amount |
|---|---|---|---|---|---|
| 02/14/02 | RWM | Conference with Ward Meythaler. | | | |
| | | | .10 hrs | 300 /hr | 30.00 |
| 02/14/02 | WAM | Revise memos to file. | .30 hrs | 250 /hr | 75.00 |
| 02/15/02 | RWM | Conference with Ward Meythaler. | | | |
| | | | .20 hrs | 300 /hr | 60.00 |
| 02/15/02 | WAM | Review fax; telephone conference with Ms. Caberta; letter to Mr. Moxon; conference with Robert Merkle. | .80 hrs | 250 /hr | 200.00 |
| 02/19/02 | RWM | Conference with Ward Meythaler. | | | |
| | | | .10 hrs | 300 /hr | 30.00 |
| 02/19/02 | WAM | Letter to Ms. Caberta. | .40 hrs | 250 /hr | 100.00 |
| 02/22/02 | RWM | Conference with Ward Meythaler. | | | |
| | | | .10 hrs | 300 /hr | 30.00 |
| 02/22/02 | WAM | Review faxes; prepare and file notice of inability to appear; letters to Ms. Caberta; telephone conference with Mr. Hintze, Mr. Ziegeler and Mr. Fulmitch. | 2.10 hrs | 250 /hr | 525.00 |
| 02/25/02 | WAM | Telephone conference with Ms. Caberta and Mr. Fulmitch; review fax. | .30 hrs | 250 /hr | 75.00 |
| 02/26/02 | WAM | Review plaintiff's response to appeal of Magistrate's order; review fax. | .40 hrs | 250 /hr | 100.00 |
| 02/28/02 | WAM | Telephone conference with Mr. Moxon; consider requested relief. | .20 hrs | 250 /hr | 50.00 |

          ROBERT W. MERKLE                               .70 hrs
          WARD A. MEYTHALER                            14.20 hrs

          Total fees for this matter       14.90  hrs   3,735.00

COST INCURRED

| Date | Description | Amount |
|---|---|---|
| 02/04/02 | Facsimile Charges | 13.00 |
| 02/04/02 | Photocopy Charges. | 11.25 |
| 02/08/02 | Facsimile Charges | 2.00 |
| 02/08/02 | Postage Charges | .80 |
| 02/11/02 | Postage Charges | .80 |
| 02/11/02 | Photocopy Charges. | .75 |
| 02/12/02 | Postage Charges | 1.26 |
| 02/12/02 | Cost of courier service for delivery of documents to U.S. District Court, Tampa, Florida by Roadrunner Courier Service.  (Inv. #47724) | 10.30 |
| 02/15/02 | Facsimile Charges | 2.00 |
| 02/19/02 | Facsimile Charges | 3.00 |
| 02/19/02 | Postage Charges | .80 |
| 02/21/02 | Facsimile Charges | 2.00 |
| 02/22/02 | Facsimile Charges | 2.00 |
| 02/22/02 | Facsimile Charges | 8.00 |
| 02/22/02 | Cost of courier service for delivery of documents to U.s. District Court, Tampa, Florida by Roadrunner Courier Service.  (Inv. #48056) | 8.24 |
| 02/28/02 | Photocopy Charges for the month of February 2002. | 40.25 |

```
Caberta, Ursula                                          PAGE   3
Bill number        0775-00001-017 WAM
```

| 02/28/02 | Cost of courier service for delivery of documents to U.S. District Court by Roadrunner Courier Service 3/5/02. (Inv. #48453) | 10.30 |
|---|---|---|
| 02/28/02 | Wire fee charged by Southern Exchange Bank 3/18/02. | 15.00 |
| 02/28/02 | Wire fee charged by Southern Exchange Bank 3/21/02. | 15.00 |

```
                                                   ------------
          Total cost for this matter        $         146.75
```

**BILLING SUMMARY**

| TOTAL FEES FOR THIS PERIOD | 14.90 hrs | 3,735.00 |
|---|---|---|
| TOTAL COST FOR THIS PERIOD | $ | 146.75 |
| TOTAL CHARGES FOR THIS PERIOD | $ | 3,881.75 |
| PLUS PAST DUE BALANCE | $ | 30.00 |
| AMOUNT DUE - PLEASE PAY THIS AMOUNT | $ | 3,911.75 |

**MERKLE & MAGRI, P.A.**
5510 West LaSalle Street
Tampa, Florida 33607

(813) 281-9000  or (727) 441-2699

April 26, 2002

Billed through 03/31/02

Bill number        0775-00001-019 WAM

Caberta, Ursula
Arbeitsgruppe Scientology
Eiffestrabe 664 B
20537 Hamburg,

| | | |
|---|---|---|
| Balance forward as of bill number 017 dated 03/22/02 | $ | 3,911.75 |
| Payments received, Thank You.    (last payment 04/23/02) | $ | 3,911.75 |
| Net balance forward | $ | .00 |

PROFESSIONAL SERVICES RENDERED

| Date | | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 03/01/02 | WAM | Telephone conference with Mr. Moxon; review proposed motion. | .30 hrs  250 /hr | 75.00 |
| 03/05/02 | WAM | Telephone conference with Mr. Moxon; prepare and serve motion to strike request for attorney's fees. | 2.60 hrs  250 /hr | 650.00 |
| 03/12/02 | RWM | Conference with Ward Meythaler; review letter. | .20 hrs  300 /hr | 60.00 |
| 03/12/02 | WAM | Review plaintiff's motion; review court order; letter to Ms. Caberta; telephone conference with Mr. Ziegeler; fax to Mr. Ziegeler. | 1.00 hrs  250 /hr | 250.00 |
| 03/19/02 | WAM | Telephone conference with Ms. Caberta. | .10 hrs  250 /hr | 25.00 |
| 03/25/02 | WAM | Telephone conference with Mr. Moxon. | .10 hrs  250 /hr | 25.00 |
| 03/27/02 | WAM | Review motion. | .10 hrs  250 /hr | 25.00 |
| 03/28/02 | WAM | Review order. | .10 hrs  250 /hr | 25.00 |

| | | |
|---|---|---|
| ROBERT W. MERKLE | | .20 hrs |
| WARD A. MEYTHALER | | 4.30 hrs |
| Total fees for this matter | 4.50  hrs | 1,135.00 |

COST INCURRED

| | | |
|---|---|---|
| 03/03/02 | Postage Charges | .34 |

```
Caberta, Ursula                                              PAGE   2
Bill number      0775-00001-019 WAM

03/12/02      Facsimile Charges                                8.00
03/12/02      Facsimile Charges                               18.00
03/12/02      Postage Charges                                  3.20
03/31/02      Photocopy charges for the month of March 2002.  10.00
                                                          ------------
              Total cost for this matter          $          39.54

BILLING SUMMARY

              TOTAL FEES FOR THIS PERIOD      4.50  hrs    1,135.00

              TOTAL COST FOR THIS PERIOD             $          39.54
                                                          ------------
              TOTAL CHARGES FOR THIS PERIOD          $       1,174.54
                                                          ------------
              AMOUNT DUE - PLEASE PAY THIS AMOUNT    $       1,174.54
```

MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida  33607

(813) 281-9000  or (727) 441-2699

May 17, 2002

Billed through 04/30/02

Bill number        0775-00001-020 WAM

Caberta, Ursula
Arbeitsgruppe Scientology
Eiffestrabe 664 B
20537 Hamburg,


Balance forward as of bill number 019 dated 04/26/02       $     1,174.54

PROFESSIONAL SERVICES RENDERED

| | | | | | |
|---|---|---|---|---|---|
| 04/01/02 WAM | Interoffice conference re hearing; handle telephone hearing; interoffice conference re hearing. | .50 hrs | 250 /hr | 125.00 |
| 04/03/02 WAM | Review e-mail; letter to Ms. Caberta. | .30 hrs | 250 /hr | 75.00 |
| 04/04/02 WAM | Telephone conference with Ms. Caberta; review fax. | .30 hrs | 250 /hr | 75.00 |
| 04/05/02 WAM | Review fax. | .10 hrs | 250 /hr | 25.00 |
| 04/09/02 WAM | Review plaintiff's brief; letter to Ms. Caberta; call to *redacted* | 1.40 hrs | 250 /hr | 350.00 |
| 04/12/02 WAM | Telephone conference with *redacted* review part of file. | .30 hrs | 250 /hr | 75.00 |
| 04/16/02 WAM | Consider response to cross-motion for sanctions. | .20 hrs | 250 /hr | 50.00 |
| 04/16/02 GJR | Pull cases for Ward Meythaler. | 1.50 hrs | 100 /hr | 150.00 |
| 04/17/02 WAM | Study cross-motion; work on response to cross-motion; review authorities. | 7.90 hrs | 250 /hr | 1,975.00 |
| 04/17/02 GJR | Pull cases and other materials; research sanctions and summary judgment. | 1.00 hrs | 100 /hr | 100.00 |
| 04/18/02 WAM | Work on response to cross-motion; interoffice conference re transcripts; review legal authority; review prior pleadings; review transcript. | 6.80 hrs | 250 /hr | 1,700.00 |
| 04/18/02 GJR | Pull cases. | .10 hrs | 100 /hr | 10.00 |
| 04/19/02 WAM | Work on response to cross-claim; telephone conference with office. | .80 hrs | 250 /hr | 200.00 |

```
Caberta, Ursula                                              PAGE  2
Bill number        0775-00001-020 WAM
```

| | | | |
|---|---|---|---|
| 04/20/02 WAM | Work on respones to cross-motion; review authorities; review transcripts; prepare exhibits; review fax.        10.00 hrs  250 /hr | 2,500.00 |
| 04/21/02 WAM | Work on response to plaintiff's cross-claim; redraft response; research authorities; prepare exhibits.        11.00 hrs  250 /hr | 2,750.00 |
| 04/22/02 RWM | Conference with Ward Meythaler.        .10 hrs  300 /hr | 30.00 |
| 04/22/02 WAM | Calls, faxes to and from translation service; complete and file response to cross-motion.        6.20 hrs  250 /hr | 1,550.00 |
| 04/23/02 RWM | Conference with Ward Meythaler.        .10 hrs  300 /hr | 30.00 |
| 04/23/02 WAM | Review article, letter to Ms. Caberta and Mr. Hintze.        .30 hrs  250 /hr | 75.00 |
| 04/25/02 WAM | Review fax and attached article; telephone conference with Mr. Hintze.        .30 hrs  250 /hr | 75.00 |
| 04/26/02 RWM | Conference with Ward Meythaler.        .10 hrs  300 /hr | 30.00 |

```
          ROBERT W. MERKLE                            .30 hrs
          WARD A. MEYTHALER                          46.40 hrs
          GERARD J. ROBLE                             2.60 hrs

          Total fees for this matter       49.30  hrs   11,950.00
```

COST INCURRED

| | | |
|---|---|---|
| 04/01/02 | Long distance charges for the month of February 2002.  (Sprint) | 2.02 |
| 04/05/02 | Facsimile Charges | 2.00 |
| 04/05/02 | Postage Charges | .80 |
| 04/09/02 | Cost of overnight delivery of documents to Ms. Caberta by Federal Express.  (Inv. #4-202-06294) | 38.38 |
| 04/12/02 | *Redacted* | 31.18 |
| 04/18/02 | *Redacted* | 39.35 |
| 04/20/02 | Facsimile Charges | 3.00 |
| 04/20/02 | Facsimile Charges | 8.00 |
| 04/20/02 | Postage Charges | 2.18 |
| 04/21/02 | Facsimile Charges | 6.00 |
| 04/22/02 | Translation charge of TransPerfect Translations, Inc. (Charged to firm credit card) | 75.00 |
| 04/22/02 | Cost of courier service for delivery of documents to U.S. District Court by Roadrunner Courier Service.  (Inv. #49842) | 10.50 |
| 04/22/02 | Cost of courier service for delivery of documents to Merkle & Magri, P.A. from U.S. District Court by Roadrunner Courier Service.  (Inv. #49842) | 10.50 |
| 04/23/02 | Cost of overnight delivery of documents to Ursula Caberta by Federal Express.  (Inv. #4-202-81818) | 38.38 |

**Caberta, Ursula**                                                    PAGE   3
**Bill number**       0775-00001-020 **WAM**

| | | |
|---|---|---|
| 04/30/02 | Photocopy Charges for the month of April 2002. | 269.75 |
| 04/30/02 | West Law Computer Research for the month of April 2002. | 31.51 |
| 04/30/02 | Cost of translation by Transperfect Translations 4/22/02.  (Inv. #62002) | 75.00 |

```
                                                                ------------
            Total cost for this matter              $           643.55
```

BILLING SUMMARY

```
            TOTAL FEES FOR THIS PERIOD        49.30  hrs    11,950.00

            TOTAL COST FOR THIS PERIOD               $        643.55
                                                          ------------
            TOTAL CHARGES FOR THIS PERIOD             $     12,593.55

            PLUS PAST DUE BALANCE                     $      1,174.54
                                                          ------------
            AMOUNT DUE - PLEASE PAY THIS AMOUNT       $     13,768.09
```

MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida  33607

(813) 281-9000  or (727) 441-2699

May 23, 2002

Billed through 05/10/02

Bill number      0775-00001-022 WAM

Caberta, Ursula
Arbeitsgruppe Scientology
Eiffestrabe 664 B
20537 Hamburg,

Balance forward                              $      13,643.09

PROFESSIONAL SERVICES RENDERED

05/03/02 WAM  Review motion; letter to Ms. Caberta and Mr.
              Hintze.              .30 hrs  250 /hr        75.00
05/09/02 WAM  Prepare response to motion to file reply
              memorandum; review order; review fax; return fax;
              telephone conference with Mr. Moxon.
                                   .60 hrs  250 /hr       150.00
05/10/02 WAM  Review court order dismissing case; telephone
              conference with and faxes to Mr. Hintze and Mr.
              Ziegeler; interoffice conference.
                                  1.80 hrs  250 /hr       450.00

              WARD A. MEYTHALER                          2.70 hrs

              Total fees for this matter    2.70  hrs     675.00

COST INCURRED

05/10/02      Photocopy Charges.                           30.75
05/10/02      Long distance charges period 4/9/02 - 4/22/02.  3.08
                                                      ------------
              Total cost for this matter      $            33.83

BILLING SUMMARY

              TOTAL FEES FOR THIS PERIOD    2.70  hrs     675.00

Caberta, Ursula                                          PAGE   2
Bill number        0775-00001-022 WAM

      TOTAL COST FOR THIS PERIOD              $           33.83
                                                                 -------------

      TOTAL CHARGES FOR THIS PERIOD           $          708.83

      PLUS PAST DUE BALANCE                   $       13,643.09
                                                                 -------------

      AMOUNT DUE - PLEASE PAY THIS AMOUNT     $       14,351.92