UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
                              x
HUBERT HELLER,                :
                             :
              Plaintiff,      :      Case No. 8:00-CV-1528-T-27C
                             :
     vs.                      :
                             :
URSULA CABERTA,              :
                             :
              Defendant.      :
                              x
```

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
## FOR ATTORNEYS' FEES AND COSTS

Kendrick Moxon
MOXON & KOBRIN
Helena Kobrin (FBN #0259713)
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
(727) 443-5620

JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
F. Wallace Pope, Jr. (FBN #124449)
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818

*Attorneys for Plaintiff Hubert Heller*

*172*

## INTRODUCTION

Plaintiff Hubert Heller respectfully submits this memorandum of law in opposition to defendant Ursula Caberta's motion for attorneys' fees, expenses, and costs. Defendant's motion is without merit under the facts and law. Defendant all but concedes that her true claim is for Rule 11 sanctions. However, she *does not* (and *cannot*) seek Rule 11 sanctions because she has failed to comply with the safe harbor provisions of Rule 11 (to say nothing of the absence of any facts to support such a claim). Thus, her entire motion is an effort to end-run the strictures of Rule 11 by invoking other fee-shifting statutes that have no application here, and by material misstatements of the law and prior proceedings in this case. Further, in lieu of law or evidence, she seeks to prejudice this Court with a series of false and scurrilous allegations against "Scientology," mostly concerning events from 10-30 years ago, that have nothing to do with this litigation, and which are, of course, irrelevant to whether fees should be awarded *in this case*.

Defendant cannot recover fees under 42 U.S.C. § 1988 because: 1) a defendant cannot obtain a fee award under § 1988 based on a lack of subject matter jurisdiction; 2) plaintiff's *§ 1985(3) claim* was not frivolous (the only relevant issue), particularly as this Court expressly found that plaintiff had stated a § 1985(3) claim, and there were no further proceedings on that issue; and 3) even assuming a court could award § 1988 fees based on a lack of jurisdiction, plaintiff's assertion of jurisdiction was clearly not frivolous, as the claims for fees are based on the exact same arguments presented by prior counsel and *twice* rejected by this Court – that the amended complaint is somehow directly contrary to the original complaint – and on the demonstrably inaccurate claim that plaintiff submitted no evidence in support of his jurisdictional allegations. Nor is there any possible basis for a finding of bad faith by plaintiff or his counsel. Defendant's claim to fees under 28 U.S.C. § 1927, impermissibly sought in lieu

1

of Rule 11 sanctions, is meritless for many of the same reasons that defeat her claim under § 1988. Indeed, her § 1927 claim is especially ironic, given that it was defendant's refusal to comply with discovery requests and court orders that resulted in *ten* separate court orders against defendant, including sanctioning her for discovery abuses and for failing to obey court orders.

Defendant's claim for attorneys' fees under the Florida Unfair and Deceptive Trade Practices Act (DTPA) is defective for several reasons:  1) defendant ignores the change in the law from a mandatory to a discretionary award of fees, and defendant makes no argument that the DTPA claim is frivolous, unreasonable, without foundation or in bad faith, the Florida state law standard for discretionary fee awards to prevailing defendants; 2) defendant is estopped from seeking such fees by current counsel's express disclaimer to any fees prior to its involvement in the case, since the DTPA issue was addressed only prior to that involvement; and 3) the claim is premature, as defendant concedes.

For the same reasons that defendant cannot recover attorneys' fees, she cannot claim any costs other than those that the Court, in its discretion, "may tax" under 28 U.S.C. § 1920.

Finally, defendant's claim for $63,520 in fees and nearly $3,000 in costs is grossly excessive, particularly as the vast majority of these fees were incurred in motion practice as a result of defendant's discovery abuses, *every single one of which defendant lost,* and which ultimately resulted in *sanctions against* Caberta.  Further, the amounts sought are far in excess of what could be considered reasonably necessary for the work performed.

## I.    Defendant Is Not Entitled to Attorneys' Fees under 42 U.S.C. § 1988

As defendant concedes, 42 U.S.C. § 1988 is not a fee-shifting statute intended to benefit prevailing defendants.  Rather, Congress enacted 42 U.S.C. § 1988 in order to encourage

plaintiffs to vindicate their federal civil rights. To avoid chilling plaintiffs from bringing their

federal civil rights claims, a district court may award § 1988 fees to a prevailing defendant in a

civil rights action *only* in the exceptional circumstance of a finding that the civil rights claim is

"frivolous, unreasonable or without foundation," or brought in bad faith. *Hughes v. Rowe,* 449

U.S. 5, 14-15, 101 S.Ct. 173, 178 (1980); *Bruce v. City of Gainesville, Ga.*, 177 F.3d 949, 951

(11th Cir. 1999); *Sayers v. Stewart Sleep Ctr.,* 140 F.3d 1351, 1353 (11th Cir. 1998) ("[p]olicy

concerns militate against awarding attorney's fees to defendants in civil rights cases because such

practice may discourage plaintiffs from bringing civil rights lawsuits."); *Sullivan v. School Bd.*

*of Pinellas County*, 773 F.2d 1182, 1188-89 (11th Cir. 1985); *DeShiro v. Branch*, 183 F.R.D. 281,

283-84 (M.D. Fla. 1998). Defendant does not come close to meeting her burden of establishing

that standard here, *Unity Ventures* v. *County of Lake*, 894 F.2d 250, 253 (7th Cir. 1990); *Desisto*

*College, Inc.* v. *Town of Howey-In-The-Hills*, 718 F.Supp. 906, 914 (M.D. Fla. 1989), *aff'd,* 914

F.2d 267 (11th Cir. 1990), for three separate and independent reasons, as set forth below.

### A.    There Can Be No § 1988 Fee Award For A Dismissal For Lack of Subject Matter Jurisdiction

Uniformly *and without exception,* the courts have held that a dismissal for lack of subject

matter jurisdiction cannot sustain an award of attorney's fees under section 1988, including in

decisions within this Circuit, and indeed in this District. *See Keene Corp. v. Cass*, 908 F.2d 293,

298 (8th Cir. 1990); *DeShiro v. Branch*, 183 F.R.D. 281, 285-86 (M.D. Fla. 1998) (analyzing §

1988 cases; where dismissal in Title VII case "for lack of subject matter jurisdiction," "defendant

cannot then be said to have 'prevailed'"; "axiomatic that there must be a judicial determination

on the merits in order for there to be a *prevailing* party.") (emphasis original);[1] *Daugherty v.*

*Westminster Schools, Inc.*, 174 F.R.D. 118, 120-22 (N.D.Ga. 1997); *Hidahl v. Gilpin County*

*Department of Social Services*, 699 F.Supp. 846, 849 (D.Colo.1988); *Sellers v. Local 1598*, 614

F.Supp. 141, 143 (E.D. Pa. 1985); *aff'd*, 810 F.2d 1164 (3d Cir. 1987).[2]

      Courts have also consistently ruled in other non-merits contexts that a victorious

defendant is not a "prevailing party" under § 1988 unless it has prevailed *on the merits* of the

civil rights claims. *See Marquart* v. *Lodge 837*, 26 F.3d 842, 852 (8th Cir. 1994) (defendant not

"prevailing party" where suit voluntarily withdrawn, because no judicial determination on the

merits of Title VII claim); *Easiley* v. *Norris*, 107 F. Supp.2d 1332 (N.D. Okla. 2000) (same);

*York* v. *Ferris State University*, 36 F. Supp.2d 976, 982 (W.D. Mich. 1998) ("dismissal based

upon the statute of limitations would not have been a determination on the merits for purposes

of determining whether attorney fees should be awarded to Defendants" under §1988).  Indeed,

just last year, in *Buckhannon* v. *West Virginia D.H.H.R.,* 532 U.S. 598, 121 S.Ct. 1835 (2001),

the Supreme Court noted, "We have only awarded attorney's fees where the plaintiff has received

a judgment *on the merits* . . . or obtained a court-ordered consent decree." *Id.* at 1841 (emphasis

added, internal citations omitted).  Given the far more stringent standards for an award of fees

to defendants, it would be a remarkably perverse result if *defendants* could obtain fees when they

---

[1]  As defendant has acknowledged, and the Supreme Court has held, "The standards for
awarding attorney's fees under 42 U.S.C. § 1988 are the same as those under Title VII." Def.
Mem. at 11; *Hughes*, 449 U.S. at 14.

[2]  Defendant ignores the Florida, Georgia and Eighth Circuit precedents, and then argues
disingenuously that "[t]here is *some authority* for the proposition that a person is not a
'prevailing party'" when there has been a dismissal for lack of jurisdiction. Def. Mem. at 13
(emphasis added).  Not only is there "some" authority, but that authority is extensive,
persuasive, and uniform.  Defendant fails to cite any case to the contrary.

have not prevailed on the merits of the civil rights claims, but *plaintiffs* could not.

In *Keene*, the Eighth Circuit explained the two related reasons why a court could not award fees under §1988 following a dismissal for lack of subject matter jurisdiction:

> First, section 1988 does not by its terms confer subject matter jurisdiction upon federal courts, but rather relies upon the provisions of other federal statutes ... to confer subject matter jurisdiction.... [the district court's] lack of jurisdiction barred an award of attorney's fees under section 1988....

> Second, *none* of the [defendants] may be considered a *prevailing party* for purposes of section 1988.... Where a complaint has been dismissed for lack of subject matter jurisdiction, the "[d]efendant has not 'prevailed' over the plaintiff on any issue central to the *merits* of the litigation."

908 F.2d at 298 (quoting *Sellers*, 614 F.Supp. at 144; citing *Webber* v. *Michela*, 633 F.2d 518, 519 (8th Cir. 1980) (same rule applies to dismissal for lack of personal jurisdiction) (emphasis added, footnotes omitted)).

Defendant's attempt to distinguish *Hidahl* (while ignoring the numerous other on-point precedents) is unavailing.   In both *Hidahl* and here, the defendants asserted the defense of sovereign immunity, a waivable species of a lack of subject matter jurisdiction under the 11th Amendment, *see Lapides v. Bd. of Regents of Univ. of Georgia*, 122  S.Ct. 1640 (2002), or the FSIA, 28 U.S.C. § 1605(a)(1).  In both *Hidahl* and here, the sovereign immunity issue was "central" to the case in the identical way – it provided defendants with complete relief from suit in the particular court – but in *both* cases the immunity issue was equally irrelevant to the *merits* of the civil rights claims, and thus to any claim for fees under Section 1988.  *Hidahl*, 699 F. Supp. at 849 (noting that, in dismissal for lack of jurisdiction due to sovereign immunity, "'Defendant has not "prevailed" over the plaintiff on any issue central to the *merits* of the litigation.'") (quoting *Sellers*, 614 F. Supp. at 144) (emphasis added).

5

**B.    Plaintiff's Section 1985(3) Claim is not Frivolous**

Even if Caberta were considered a "prevailing party," there is no basis for an attorneys'
fee award in this case.  Caberta must prove that plaintiff's *§ 1985(3) claim* is itself "frivolous,
unreasonable, or without foundation." *Hughes,* 449 U.S. at 14; *Sayers,* 140 F.3d at 1353 (in
awarding fees under § 1988, "factors considered important in determining whether a *claim* is
frivolous include....") (emphasis added);*O'Neal v. DeKalb County, Ga.*, 850 F.2d 653, 658 (11th
Cir. 1988).  A civil rights *claim* is frivolous only if it is "so lacking in arguable merit as to be
groundless or without foundation...." *Sullivan,* 773 F.2d at 1189.  Plaintiff has not located any
case − and defendant has not cited to any − in which § 1988 fees were awarded to a defendant
in the absence of a finding that the *civil rights claim* itself was frivolous, unreasonable, or
without foundation, as opposed to some other legal defect in the suit unrelated to the *merits* of
the civil rights claim.

The standard for awarding fees to a defendant is a "stringent" one, and an award of fees
is reserved for truly exceptional cases.  *See Hughes,* 449 U.S. at 14; *Walker v. NationsBank of
Florida, N.A.*, 53 F.3d 1548, 1559 (11th Cir. 1995) ("a plaintiff's claim should not be considered
groundless or without foundation for the purpose of awarding fees to a prevailing defendant
when the claims are meritorious enough to receive careful attention and review."); *Head v.
Medford*, 62 F.3d 351, 355-56 (11th Cir. 1995) (fees are properly awarded to defendants "where
plaintiffs did not introduce *any* evidence to support their claim.") (emphasis original); *Ruszala
v. Walt Disney World Co.*, 132 F.Supp.2d 1347, 1350 (M.D. Fla. 2000).  Further, when the
plaintiff establishes a *prima facie* case of his civil rights claim, a defendant is not entitled to
§1988 fees. *See E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571 (11th Cir. 1993).

6

Plaintiff's claim under 42 U.S.C. § 1985(3) — that Caberta conspired to deprive plaintiff of an opportunity to engage in interstate and international business because of plaintiff's religion (Dkt.12, ¶¶ 37-43) — cannot be considered "frivolous, unreasonable, or without foundation" as a matter of law for several reasons. First, in its December 16, 2000 Order, this Court expressly denied defendant's motion to dismiss this claim, holding that plaintiff had stated a claim for relief under § 1985(3) (Dkt. 36, at 6-7). Since that Order, there has been no further adjudication of the § 1985(3) issue, and the Court expressly barred plaintiff from pursuing any discovery into his civil rights claim (Dkt. 46 at 5). Thus, on this record, in which plaintiff established a *prima facie* case that Caberta violated his civil rights, an award of § 1988 attorneys' fees is precluded. Indeed, defendant makes *no* argument here whatsoever that the *civil rights claim itself* is "frivolous, unreasonable, or without foundation," which is the *only* relevant consideration.

Second, defendant moved for summary judgment on the merits solely on the ground that she allegedly was not personally involved in the conspiracy against plaintiff (and despite substantial evidence to the contrary) (Dkt. 109). In response, plaintiff submitted both substantial evidence of Caberta's involvement and liability, and of the discovery that he would pursue on the merits once authorized, to establish further that liability (Dkt. 160 at 12-15, 19-20, and Exhibits thereto); *see* Point IC, *infra*. This Court denied the summary judgment motion as moot in its May 9, 2002 Order (Dkt. 165 at 15). Thus, even assuming that this Court, deprived of subject matter jurisdiction, could *now* revisit and adjudicate the merits of the § 1985(3) claim, the evidence submitted, *plus* the court-ordered absence of any discovery into the claim, *and* this Court's prior finding that plaintiff stated a §1985(3) claim, precludes a finding now that the § 1985(3) claim is "frivolous, unreasonable, or without foundation."

### C.    Defendant Cannot Recover § 1988 Fees Based on Her FSIA Defense

Even assuming, contrary to the uniform case law, that defendant is a "prevailing party" within the meaning of § 1988 and that a defendant can recover § 1988 fees unrelated to the *merits* of a plaintiff's civil rights claims, plaintiff's position that Caberta is not entitled to immunity from suit under the FSIA clearly is not "frivolous, unreasonable or without foundation." *Hughes*, 449 U.S. at 14-15. First, this Court has already *twice rejected* defendant's primary argument regarding the merits of the FSIA issue. Second, plaintiff submitted substantial evidence and legal argument that Caberta is not entitled to sovereign immunity. Third, plaintiff properly – in reliance on direct Supreme Court precedent – sought to preclude the FSIA defense as a sanction for repeated violations of court discovery orders, including refusing to attend a court-ordered deposition. The fact that this Court did not accept plaintiff's evidence and argument – erroneously, we believe – cannot itself support an award of fees. *See id.* at 14-15 ("[a]llegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg.*").

1.    This Court has already *twice* rejected defendant's primary argument on the FSIA issue. Defendant contends here that plaintiff in "the initial complaint pled a conclusive case that Defendant was ... entitled to sovereign immunity under the [FSIA]," but then amended the complaint and "completely changed the allegations" to assert that she had acted outside the scope of FSIA immunity. Def. Mem. at 3-4. Defendant now argues that this amended complaint "completely contradicted" that prior complaint and was therefore fatally defective when filed. Def. Mem. at 6. This argument, however, is *identical* to the argument defendant's *prior* counsel made to this Court not once, *but twice*, in its two motions to dismiss, both of which were *denied* by this Court (Dkt. 14, 15, 36, 42, 46). If this argument were valid, it necessarily would have

8

resulted in dismissal of the Amended Complaint on the first motion to dismiss. Thus, defendant's

primary, recycled argument for sanctions cannot now support an award of § 1988 fees.[3]

       **2.**      Defendant erroneously argues that there is no evidence to support the

jurisdictional allegations in the Amended Complaint.[4]  This contention blatantly ignores the

---

[3]  In repeating this rejected argument, defendant's present counsel misunderstands the FSIA
in the same way as prior counsel.  As plaintiff has repeatedly explained, and as this Court
recognized, there is no inconsistency between the two complaints in terms of the FSIA.  The
pleading in the initial complaint that Caberta engaged in anti-Scientology acts as head of a
Hamburg task force on the Scientology religion (Dkt. 1, ¶¶ 7, 8), is fully consistent with the
allegation in the Amended Complaint that such acts, although allegedly undertaken in her
official capacity, were outside the scope of her lawful authority and illegal under German and
international law (Dkt. 12, ¶ 2).  That a state official, acting in her *official capacity,* but
outside the scope of her lawful authority, is not immune from suit under the FSIA is precisely
the point of *Chuidian* v. *Philippine National Bank*, 912 F.2d 1095 (9th Cir. 1990), and its
progeny, as this Court recognized (Dkt. 36 at 2-3; Dkt. 165 at 11), and as plaintiff previously
explained (Dkt. 35 at 4-7; Dkt. 45 at 7-10).  In addition, both the initial and amended
complaints consistently pled that Caberta's acts constituted systematic *economic* coercion
intended to damage the economic interests of Scientologists, thus falling within the FSIA's
commercial activity exception (Dkt. 1, ¶¶ 10-12; Dkt. 12, ¶¶ 11-15).  Defendant also rehashes
her prior argument, necessarily rejected by the Court in denying the second motion to
dismiss, that two letters sent by counsel for the Church of Scientology to the City of
Hamburg establish a lack of FSIA jurisdiction here.  As plaintiff previously explained:
"Under the FSIA, there is no reason that Caberta cannot be liable for her *ultra vires* official
acts, *even if* Hamburg officials have authorized those illegal acts, in the same way that local
and state governments or officials in the United States can engage in or *authorize* activities
that are *ultra vires* of both local, state and national law, subjecting both the individual
officers and the government entities to liability, pursuant, for example, to 42 U.S.C. § 1983
...." (Dkt. 45 at 11) (emphasis in original).

[4]  As defendant's brief effectively concedes, at 3-7, her claim for fees on the FSIA issue is
in fact based exclusively on Rule 11.  Defendant, however, does not seek Rule 11 sanctions,
because they are precluded by defendant's failure to invoke Rule 11 in a timely manner (*and
there is no factual or legal basis for Rule 11 sanctions*).  Rule 11's 21-day safe-harbor
provision, in which a party has the right to withdraw a challenged paper, prohibits a party
from simply awaiting the outcome of litigation and then moving for Rule 11 sanctions.  *See*
Fed. R. Civ. P. 11(c)(1)(a).  Defendant now seeks to avoid the consequences of her failure
timely to invoke Rule 11 by asserting a right to fees under § 1988.  Such an end-run,
however, would render the carefully crafted safe-harbor strictures of Rule 11 a nullity.

substantial evidence that plaintiff has submitted that shows that defendant's actions were not immunized by the FSIA. Again, the fact that this Court did not accept this evidence does not mean there was *no* evidence or that the jurisdictional claim was frivolous. *See Hughes*, 449 U.S. at 14-15. In summary, and without rearguing here the motion to dismiss, plaintiff submitted extensive evidence, much of it undisputed – and despite Caberta's and her co-worker's refusal to be deposed or to produce documents that the Court had repeatedly held relevant – which showed that Caberta's actions were not within the scope of her lawful authority or constituted a commercial activity under 28 U.S.C. § 1605(a)(2), including, but not limited to:

- Minton paid Caberta $75,000 in June 2000, and both Minton and Caberta asserted their rights against self-incrimination when questioned on the relationship between this payment and the extension of the sect filter to Scientologists in the U.S., including Heller. This Court could have drawn appropriate adverse inferences that Minton paid Caberta to extend her economic boycott of Scientologists to the U.S.

- Caberta never made any repayment to Minton, and there are no documents evidencing that the $75,000 payment was in fact a loan and not a payment.

- At the same time that Minton met with Caberta in Germany to coordinate anti-Scientology activities, Caberta's direct subordinate gave the sect filter to POS Partners to be used against Heller; a few weeks thereafter, Minton paid Caberta the $75,000.

- Caberta is under criminal investigation in Germany for official bribery in connection with her acceptance of the $75,000 payment from Minton.

- Not one official pre-litigation document or law has been produced or cited that shows that Hamburg or German law authorized Caberta to use the sect filter to discriminate against and boycott adherents of the Scientology religion resident in the U.S.

- Caberta's use of the sect filter was not only not authorized under Hamburg law, but it was *ultra vires* and unconstitutional under German and international law, and has been condemned by the United States government as an international human rights violation.

- Caberta used the sect filter as a primary and secondary economic boycott of Scientologists, constituting a commercial activity, not a sovereign regulatory function, under the FSIA, 28 U.S.C. §1605(a)(2).

*See* Dkt. 160 at 12-18, and Exhibits thereto. This substantial evidence establishes far more than a reasonable and colorable claim of jurisdiction, thereby barring fees under § 1988. *See Head*, 62 F.3d at 355-56. Indeed, defendant's assertion that plaintiff had *no* evidence to support its jurisdictional allegations is so demonstrably inaccurate as to be itself frivolous.

      **3.**      Defendant repeatedly refused to produce discovery or to comply with court orders concerning discovery, necessitating *ten* separate discovery orders against defendant, ultimately leading to sanctions for her discovery abuses (Dkt. 160 at 3-7). In the end, defendant refused to comply with the Court's orders, including refusing to appear for her deposition or to produce documents. Plaintiff properly sought the Rule 37(b)(2) sanction of preclusion of the FSIA defense, pursuant to long-standing, well-settled law that a court should find jurisdiction as a sanction for failure to comply with jurisdictional discovery, regardless whether the extant evidence establishes jurisdiction. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694 (1982); Dkt. 160 at 7-10. Again, the fact that the Court did not adopt plaintiff's more than reasonable and colorable position cannot support an award of § 1988 fees.

      **D.**      **There is No Evidence of Bad Faith by Plaintiff or His Counsel**

      Defendant's claim of plaintiff's bad faith is without evidentiary basis. Unsubstantiated, scurrilous attacks on plaintiff's counsel and his religion cannot meet her burden. Defendant's allegation of bad faith boils down to three meritless grounds: 1) that the Amended Complaint was directly contrary to the initial complaint; 2) that counsel *knew* there was no evidentiary or legal basis for this suit; and 3) that "Scientology" allegedly engaged in improper litigation tactics in cases mostly occurring many years ago. The first two grounds have been addressed above, and for the same reasons, which do not need to be repeated, they fail as a matter of fact and law to establish bad faith. Defendant's allegations are indeed ironic, given that *defendant, not*

*plaintiff*, has already been sanctioned for her abusive litigation tactics in *this* litigation.

Defendant devotes almost one-quarter of her brief to a series of scurrilous and irrelevant attacks on "Scientology" based on a handful of litigations over a thirty-year period, all but one of which has no relationship to this case and which concern events occurring 10-30 years ago.[5] Defendant cites no law that would suggest that these unrelated matters have any relevance to a finding of bad faith in this case. Moreover, defendant's repugnant attempt to establish guilt by religious association run from the specious to the bizarre.[6] Further, in the only matter remotely related to this case, concerning the deposition of Caberta in an unrelated state court proceeding, the state court never made any finding of misconduct, and Mr. Moxon has denied these allegations in this case (Dkt. 130 at 5, 10).

Because these unrelated litigations over a thirty-year period are so obviously irrelevant here, plaintiff will not burden this Court with the hundreds, if not thousands of pages of evidence and documents that would put the lie to defendant's accusations.[7] However, if the Court does determine to consider these unrelated matters, then plaintiff would insist on his right to present evidence at an evidentiary hearing.

---

[5]   Defendant cites a *1974* criminal proceeding, a 1993 case, *Hart* v. *Cult Awareness Network*, 13 Cal.App.4th 777 (1993) (which makes no mention of any litigation misconduct), a 1994 decision, and a 1996 decision concerning events from the 1980's.

[6]   For example, defendant claims a right to attorney's fees because an attorney who signed a stipulation in an unrelated case appeared at two depositions in this case. Def. Mem. at 8-9.

[7]   One ready example that demonstrates the untruth of defendant's accusations is the fact that the Cult Awareness Network was forced into bankruptcy because of its participation in violent "deprogramming" kidnappings, resulting in a jury verdict of $4,875,000. *Scott v. Ross, et al.*, 140 F.3d 1275, 1279-80 (9th Cir. 1998).

## II.    Defendant Cannot Obtain Attorneys' Fees under 28 U.S.C. § 1927

The sanctions provided for in 28 U.S.C. § 1927 are clearly inapplicable to this case.[8] To award sanctions under § 1927, the attorney must engage in "unreasonable and vexatious" conduct and "there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997); *see Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) ("[a]s the express language of section 1927 indicates, this sanctioning mechanism is aimed at the unreasonable and vexatious multiplication of proceedings."). "[T]he provisions of § 1927, being penal in nature, must be strictly construed." *Peterson*, 124 F.3d at 1395. Although "the Eleventh Circuit has not specifically" held that "subjective bad faith" is required under §1927, it has required "willful[] abuse [of] the judicial process by 'conduct *tantamount* to bad faith.'" *Jerelds* v. *City of Orlando*, 194 F.Supp.2d 1305, 1314 (M.D. Fla. 2002) (emphasis in original; quoting *Avirgan* v. *Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)); *see Byrne*, 261 F.3d at 1119 (§ 1927 sanctions affirmed "because...plaintiff's counsel have acted with bad faith");[9] *Malautea* v. *Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993) ("bad faith and willful abuse of the judicial process").

Once again, Caberta's primary argument for *§ 1927* fees is that plaintiff violated *Rule 11* in supposedly filing the Amended Complaint without an evidentiary basis. Def. Mem. at 3-7,

---

[8]    28 U.S.C. § 1927 provides: "Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

[9]    Defendant improperly relies on one Sixth Circuit case, *Wilson-Simmons* v. *Lake County Sheriff's Dept.*, 207 F.3d 818, 824 (6th Cir. 2000), while ignoring *this Circuit's* law, to argue for an "objective" standard of proper attorney conduct. Def. Mem. at 14. Not only is this *not* the standard in this Circuit, but *Jerolds* expressly noted that other circuits are split on the issue of subjective bad faith, and cited *Wilson-Simmons* in discussing that split.

13

14. This argument, however, fares no better than the claim for § 1988 fees when Rule 11 sanctions are unavailable.  The purpose of § 1927 is neither to provide a lower standard than Rule 11, nor to serve as a substitute for Rule 11 when a party has failed to comply with the safe harbor provisions of that Rule.  *See Peterson*, 124 F.3d at 1396 ("§ 1927 is not a 'catch-all' provision for sanctioning objectionable conduct by counsel"); *Byrne*, 261 F.2d at 1106 (distinguishing functions of Rule 11 and § 1927).  Caberta's effort to have fees imposed under § 1927 for purportedly filing a complaint without an evidentiary basis ignores the clear purpose of § 1927, which addresses *multiplication* of proceedings *within* a case, as well as the protections of the Rule 11 safe harbor provision.  The Court should reject her attempt to end-run the safe harbor provisions of Rule 11.

Defendant's claim that filing the Amended Complaint itself unreasonably or vexatiously multiplied the proceedings is meritless for the same reasons addressed in Point IC, *supra*, regarding § 1988 fees.  First, this Court *twice* refused to dismiss the Amended Complaint on the exact same theory that defendant's new counsel argues here.  Given this Court's prior decisions, plaintiff's counsel cannot *now*, over eighteen months later, be charged with unreasonably and vexatiously multiplying the proceedings by filing the Amended Complaint.

Second, defendant's assertion that plaintiff had no evidentiary basis for the Amended Complaint and has *never* submitted *any* evidence in support of the claim (which is a Rule 11, not a § 1927, issue in any event), is patently erroneous, as discussed above.  The Amended Complaint was entirely proper both under the facts and law, and defendant's statements to the contrary simply blink reality.[10]  Indeed, any objective consideration of this case leads to the

---

[10]    In a footnote, defendant presents an *ipse dixit* laundry list of frivolous and inaccurate allegations that the initial complaint was also unreasonable and vexatious. Def. Mem. at 15 n.7.  The claim that there was no basis for the initial complaint is belied by this Court's prior

conclusion that it was Caberta who unnecessarily multiplied the proceedings by repeatedly refusing to provide discovery and by repeatedly disobeying numerous court orders.

### III.    Defendant Is Not Entitled to Attorneys' Fees under Fla. Stat. § 501.2105

Section 501.2105(1) of the Florida Unfair and Deceptive Trade Practices Act (DTPA) provides that a court "*may*" award attorney's fees to a prevailing party.  This section was amended in 1994 to make the award of attorney's fees discretionary, rather than mandatory.  *See* Laws 1994, c. 94-298 § 4 (eff. July 1, 1994) (amending statute from "shall" to "may award"). "In order to lend substance to this amorphous statutory grant of discretion," the Florida courts, in interpreting materially identical discretionary fee-shifting statutes, have "adopted the standard utilized by the United State Supreme Court regarding prevailing defendants in Title VII civil rights cases" (the identical standard for § 1988 fees, *see* n.1, *supra*).  *National Union of Hosp. & Health Care Employees* v. *Southeast Volusia Hosp. Dist.*, 436 So.2d 294, 296 (1st DCA 1983) (interpreting Fla. Stat. § 447.503(6)(c), adopting federal standard that plaintiff's claim must be "frivolous, unreasonable or without foundation," or brought in bad faith); *Village of Palm Springs* v. *Retirement Builders, Inc.*, 396 So.2d 196 (4th DCA 1981) (same, interpreting Fla. Stat. § 180.191(5)).

---

rulings and the extensive evidence plaintiff has submitted.  As discussed in Point ID, *supra*, the assertion that "Scientology" has a history of abusive litigation is completely irrelevant here.  The claim of abusive questioning by plaintiff's counsel at Caberta's deposition is stunning in its audacity, given that it was *defendant* who has been *sanctioned* by this Court for deposition misconduct, *not* plaintiff (Dkt. 133).  The statement that the presence of two German-speaking members of the Scientology religion to assist U.S. counsel at Caberta's deposition "confirm[s] that the filing of the lawsuit in the first instance was vexatious," Def. Mem. at 15 n.7, is simply bizarre.  The statement that plaintiff used a "patently false translation" in his cross-motion is inaccurate and erroneous.  Based on the three different translations submitted, there is ambiguity as to whether the statement came from Ms. Caberta or it was the reporter's interpretation of her statement.

15

Defendant *never* argues that plaintiff's DTPA claim meets this frivolousness standard; any such claim would itself be frivolous.[11/] And defendant has provided no reason for this federal court to ignore the state court interpretations of materially identical fee-shifting statutes. Instead, with one exception, defendant relies solely on cases interpreting the old, *mandatory* statute (a fact defendant conveniently failed to disclose) to assert erroneously: "All a defendant must do is prevail." Def. Mem. at 15.[12/] Obviously, if this were the standard, then the award of DTPA fees would be *mandatory* and the 1994 amendment would be a nullity.

Moreover, defendant has estopped herself from obtaining fees under the DTPA. In her Memorandum, her new counsel specifically and expressly disclaimed any right to any fees prior to its involvement in the case. Def. Mem. at 1 (amount of fees and expenses sought "*only* encompasses fees and expenses *associated with Merkle & Magri's involvement* in the case")

---

[11]    The Court dismissed the DTPA claim based on its view that defendant did not offer "any good, service, property or thing of value." Dkt. 36 at 6. Plaintiff's contrary position was certainly reasonable and not frivolous, given that the services and things of value provided by defendant included the benefit and professional opportunity to do business with the government of Hamburg and with other German businesses, and the avoidance of the severe economic sanctions imposed by her anti-Scientology boycott. (Dkt. 40, ¶ 37). Indeed, defendant did not challenge the DTPA claim after it was amended to allege the services and things of value that Caberta provided.

[12]    The one case defendant cited under the new law *denied* the fee request as premature. *See Big Tomato* v. *Tasty Concepts, Inc.*, 972 F. Supp. 662, 664 (S.D. Fla. 1997). Defendant's reliance on *Big Tomato* for the proposition that a finding of lack of subject matter jurisdiction supports an award of fees under the DTPA is misplaced. *Big Tomato* held only that the fee application was premature and dismissed it without prejudice. In dicta in a footnote, the court stated, "[a] defendant who prevails in a motion to dismiss based on lack of standing is a 'prevailing party' for the purposes of § 501.2105," citing only *M.G.B. Homes*, Inc. v. *Ameron Homes, Inc.*, 30 F.3d 113 (11th Cir. 1994). *Id.* at 664 n.1. In both *M.G.B. Homes* and *Big Tomato*, however, the DTPA claim was not dismissed for lack of standing in any jurisdictional sense. Rather, both courts merely held that the claims failed to meet the statutory language, and hence were "legally insufficient," *i.e.*, they failed to state a DTPA claim. *M.G.B. Homes*, 903 F.2d at 1494; *Big Tomato*, 972 F.Supp. 662, 664 (quoting *Darrell Swanson Cons. Serv.*v. *Davis*, 433 So.2d 651, 652 (Fla. Dist. Ct. App. 1983).

16

(emphasis added); *id*. at 2 ("this motion does not request any fees or expenses of Mr. Merrett"). It is undisputed that the *entirety* of litigation and adjudication of the DTPA claim concluded long before Merkle & Magri's involvement in this case in July 2001. It is further indisputable that Merkle & Magri could not have spent any "reasonable" time on this claim, and the firm has not identified a single minute directed to that claim. Thus, its concession has barred defendant from any recovery under the DTPA.

Defendant's reliance on one *pre-amendment* case, *Smith* v. *Bilgin,* 534 So.2d 852 (1st DCA 1988), for the proposition that a defendant can recover for time spent "on the case," rather than the DTPA count, Def. Mem. at 16, simply misses the point of her fee disclaimer. Even assuming the correctness of defendant's assertion under the *post-amendment* statute, what the case law might authorize has no relevance here, because of defendant's disclaimer to fees or costs "associated" with Mr. Merkle. Defendant obviously cannot disclaim 100% of the fees "associated" with Mr. Merkle and at the same time base 100% of its demand for fees and costs on a claim handled 100% by Mr. Merkle.

In any event, as the statute expressly provides, and as defendant concedes, Def. Mem. at 16, her application for DTPA fees is premature and must be dismissed without prejudice, as a party may recover attorney's fees only "after judgment in the trial court *and exhaustion of all appeals*." Fla. Stat. § 501.2105(1) (emphasis added); *See Big Tomato* v. *Tasty Concepts, Inc.,* 972 F. Supp. 662, 664 (S.D. Fla. 1997) ("[b]efore attorney's fees may be awarded, judgment must be final and all appeals must be exhausted."); *Nolan v. Altman,* 449 So.2d 898, 901 (1st DCA 1984) ("section 501.2105 clearly and unambiguously precludes an award of attorney's fees until *after* a judgment has been entered by the trial court *and the appellate process, if any, has run its*

course.") (emphasis added).[13]

## IV.   Defendant's Application for Fees and Costs is Unreasonable

A fee applicant has the burden of proving that his fee request is reasonable. *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983); *American Civil Liberties Union of Georgia* v. *Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). "Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* (internal quotations omitted). Defendant's application for $63,520 in fees (258 hours) and $2,954.74 in costs is grossly excessive and unreasonable.[14]

First, Caberta is not entitled to the vast majority of the fees requested (almost 80%), because they were for time spent on *unsuccessful* motions, unrelated to the merits, regarding sanctions, discovery and recusal, and which included the *imposition of sanctions on Caberta*. Caberta cannot recover fees incurred in *unsuccessful* motions regarding discovery, *sanctions imposed against her*, and recusal, because this work "do[es] not 'contribute[ ]to any favorable result achieved by the litigation.'" *Outdoor Systems, Inc.* v. *City of Mesa*, 997 F.2d 604, 619 (9th

---

[13]   Contrary to defendant's suggestion, Def. Mem. at 16, this Court cannot issue an advisory opinion that, *if* Caberta prevails on appeal, she *would be* entitled to attorney's fees. While the Court can *deny* DTPA fees now, it simply lacks the power to grant a conditional award of DTPA fees until after the "exhaustion of all appeals." Fla. Stat. § 501.2105(1); *Big Tomato*, 972 F.Supp. at 664.

[14]   Like defendant, pursuant to Fed. R. Civ. P. 54(d)(2)(C), plaintiff reserves the right to submit additional evidence and analysis on the amount of fees claimed, in the event the Court determines that defendant is entitled to fees. In addition, in such event, plaintiff requests the opportunity to take discovery and conduct a hearing into the fee application. In this proceeding, plaintiff would present a detailed analysis of the fee application, further demonstrating the unreasonableness of the fees claimed. *See American Civil Liberties*, 168 F.3d at 427-29. On this record, even if the Court determines defendant is entitled to fees, almost all of her requested fees must be disallowed, for the reasons stated in the text.

Cir. 1993); *Duckworth* v. *Whisenant*, 97 F.3d 1393, 1398 (11ᵗʰ Cir. 1996) (deducting fees claimed for "issue[s]" on which "[p]laintiff did not prevail"); *Gilmere* v. *City of Altanta, Ga.*, 864 F.2d 734, 741 (11ᵗʰ Cir. 1989).¹⁵/ Indeed, Caberta's attempt to obtain well over $15,000 in fees for time spent on the motion and appeal that resulted in her being sanctioned for discovery abuses and for which *she* has been *ordered to pay fees to plaintiff* is stunningly improper and audacious and perverts the basic principle that fees must be limited to those reasonably necessary to achieve the successful result. *See Hensley,* 461 U.S. at 434.

Second, defendant has failed to show that the amount of time spent on this case was reasonable, as is her burden. In fact, the time spent was grossly excessive and fails to show "billing judgment." *American Civil Liberties*, 168 F.3d at 428. The time spent on particular discovery motions (for which defendant is not entitled to fees in any event) was grossly excessive. For example, defendant apparently requests approximately $4,100 (16.5 hours at $250/hr) for her unsuccessful last-minute (and repetitive) motion to block Caberta's deposition in Germany, which this Court had repeatedly ordered to go forth. Ex. 26 to Def. Mem. (July 20-24, 2001 entries);¹⁶/ Dkt. 100. Defendant appears to seek at least *$11,500* (over *46 hours, almost 20%* of her entire application), including an astounding $5,000 (over 20 hours) to prepare for and to attend the hearing, for her unsuccessful opposition to plaintiff's post-deposition motion to compel and for sanctions. Ex. 26 to Def. Mem. (Sept. 27 to October 24, 2001 entries, limited to identified motion to compel hours); Dkt. 133. Counsel also appears to request an astounding

---

¹⁵  Although numerous entries are unclear, and defendant has failed to prepare the requisite "summary, grouping the time entries by the nature of the activity or stage of the case," *American Civil Liberties*, 168 F.3d at 427, it appears that a mere *15 hours (6%* of the time claimed) was actually spent by new counsel on the motion to dismiss filed on August 31, 2001, and less than 45 hours opposing plaintiff's cross-motion to preclude the FSIA defense.

¹⁶  Defendant's failure to number her time records makes it impossible to cite specific pages.

additional *$12,500 (50 hours)* for her frivolous motion to recuse, for her unsuccessful opposition to plaintiff's fee petition for her discovery misconduct, and for her unsuccessful appeal of the Magistrate's Order compelling discovery, sanctioning her misconduct, and denying the recusal motion. Def. Mem. Ex. 26 (Oct. 26 - Dec. 6, 2001 entries, *not including* numerous unspecified entries in that period).

Third, it appears that substantial time may have been spent duplicating the work of prior counsel (where the FSIA motion essentially relied on the filings by prior counsel, and there are numerous entries not identifying the nature of the work), which must be disallowed, *see Goodwin* v. *Metts*, 973 F.2d 378, 383-84 (4th Cir. 1992), and the use of multiple attorneys at the new firm must also be carefully scrutinized, *see Trimper* v. *City of Norfolk*, Va., 58 F.3d 68, 76 (4th Cir. 1995); *American Civil Liberties*, 168 F.3d at 432; *see* Ex. 26 to Def. Mem. In addition, defendant impermissibly claims thousands of dollars of fees, spread throughout the billing records, for which counsel completely fails to identify the nature of the work, which must also be disallowed, as defendant must prove the necessity of these fees. *Barnes,* 168 F.3d at 427.

## V. CONCLUSION

For the reasons stated herein, this Court should deny defendant's motion for attorneys' fees, expenses, and costs.

Dated: June 24, 2002                    Respectfully submitted,

Kendrick Moxon
Helena Kobrin (FBN #0259713)
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
(727) 443-5620

F. Wallace Pope, Jr.
FBN #: 124449
JOHNSON, BLAKELY, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, Fla. 33757
(727) 461-1818
*Attorneys for Plaintiff Hubert Heller*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS** to be served on this 24TH of June, 2002, by U.S. Mail, to Ward Meythaler, Merkle & Magri, P.A., 5510 West LaSalle St., Tampa, FL 33607.

_____
Attorney