IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER,

    Plaintiff,

vs.                           Case No.: 8:00-CV-1528-T-27C

URSULA CABERTA,

    Defendant.
_____/

## DEFENDANT'S OBJECTION TO MAGISTRATE'S
## ORDER ON ATTORNEY'S FEES

      After Plaintiff's case was dismissed, Defendant filed a Motion for Attorney's Fees, Expenses and Costs pursuant to 42 U.S.C. §1988; 28 U.S.C. §1927; and §501.2105, Fla. Stat.   In a Report & Recommendation ("Report") dated October 2, 2002, the Magistrate Judge recommended that Defendant's motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. §1927 be denied and that Defendant's motion for fees and costs pursuant to §501.2105, Fla. Stat., be denied without prejudice. This is Defendant's objection to that Report.   Defendant's Motion for Attorney's Fees, Expenses and Costs (without exhibits) is attached as Exhibit A and incorporated herein.

      Defendant generally objects to the recommendation that she not be awarded fees and costs pursuant to 42 U.S.C. §1988 and 28 U.S.C. §1927.  More specifically, the Magistrate erroneously ruled that Defendant was not a "prevailing party," that the Defendant's §1985 claim was not frivolous or unreasonable or in bad faith, and that Scientology's pattern of harassing conduct was irrelevant.

## 1. The Magistrate Erroneously Ruled That Defendant Was Not A Prevailing Party

In recommending that Defendant is not entitled to recover attorney's fees and costs under 42 U.S.C §1988, the Magistrate asserted that Defendant was not a "prevailing party" because this case was dismissed on the grounds of lack of subject matter jurisdiction as the result of foreign sovereign immunity. In making that recommendation, the Magistrate also appears to assert that in the absence of subject matter jurisdiction, the court has no jurisdiction to award attorney's fees. This point will be addressed first.

Relying on *Keene Corp. vs. Cass,* 908 F.2d 293, 298 (8th Cir. 1990), the Magistrate stated that §1988 "does not, by its terms, confer subject matter jurisdiction upon federal courts, but rather relies upon the provision of other federal statutes to confer subject matter jurisdiction." Report, p. 6. Based on this, the Magistrate apparently asserts that since the court lacks subject matter jurisdiction here, there is no jurisdiction to make an award of attorney's fees under §1988. *Id.* However, this reasoning was rejected by the Eleventh Circuit in *M.G.B. Holmes Inc., v. Ameron Homes, Inc.,* 30 F. 3rd 113 (11th Cir. 1994). There, the plaintiff argued in a case brought under the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") that since the defendant showed that the FUDTPA was inapplicable in that case, the defendant could not take advantage of the statutory provision entitling the prevailing party to attorney's fees. However, the Eleventh Circuit firmly rejected that contention and held that the plaintiff in such a situation was liable because he invoked the statute in the first instance and did not prevail. *Id* at 115. Under the Magistrate's reasoning, the court would lack jurisdiction to do anything, including entering an award for costs, which the Magistrate did enter here, or even ruling on the motion to dismiss in the first instance. While the court lacks subject matter jurisdiction over claims against Defendant as a result of sovereign

immunity, it still has authority to award attorney's fees against Plaintiff who invoked the civil rights statute in the first instance.

Next, relying on cases which Defendant brought to her attention, the Magistrate held that a defendant may not recover attorney's fees when a claim is dismissed for lack of subject matter jurisdiction.   The Eleventh Circuit has apparently not ruled on the issue of whether a defendant can be a "prevailing party" for the purpose of awarding attorney's fees if she prevails on a jurisdictional issue.

The cases relied on by the Magistrate are inapplicable to the instant case.  The general principle in those cases is that a party who prevails on a jurisdictional issue is not a "prevailing party" because he has not prevailed over the plaintiff "on any issue central to the merits of the litigation." *Sellers v. Local 1598, Dist. Counsel ABA,* 614 F.Supp 141, 144 (D.C. Pa. 1985), *aff'd,* 810 F.2d 1164 (3rd Cir. 1987); *Hidahl v. Gilpin County Dept. of Social Services, 699 F.Supp. 846, 849 (D. Colo. 1988).*  Unlike the cases cited by the Magistrate, the Defendant here prevailed on issues that were central to the merits of the litigation, including the issue of whether the Defendant had acted within the scope of her official capacity or authority.[1]  The essential change inherent in Plaintiff's amendment of the complaint here was the assertion that the Defendant had acted outside the scope of her official capacity or authority.  Consequently, the issue resolved by the court in dismissing the case  (i.e. that Defendant acted within her official capacity and authority) went not just to the issue of subject matter jurisdiction, but involved an issue that was so central to the merits of the litigation that the Plaintiff had to amend his complaint to even assert a cause of action.   Unlike the cases cited by the

---

[1] Ironically, in concluding that this case was not frivolous, the Magistrate implicitly recognized that this court has ruled on an issue concerning the merits of the case when it decided the issue of Defendant's authority.  Report, p. 7.

Magistrate, this is not a situation in which any issue evaporated prior to the court addressing it. For example, in *Hidahl v. Gilpin County Dept. of Social Services, supra,* the defendant state agency was not awarded fees because it prevailed on the issue of whether the claim was barred by the Eleventh Amendment. In *Keene Corp. v. Cass, supra,* the defendant was not awarded fees because the defendant prevailed on the legal principle that a federal court lacked subject matter jurisdiction to review a state court decision and issue an injunction. In *DeShiro v. Branch,* 183 F. R.D. 281 (M.D. Fla. 1998), the defendant was not awarded fees because it prevailed on the issue of whether defendant employed a sufficient number of employees to be an "employer" under Title VII. None of these cases involved an issue central to the merits of the litigation  Unlike these cases, the issue of whether the Defendant here was acting in her official capacity went to the merits of the case. In addition to sovereign immunity, the issue of official capacity and authority was central to the merits because Plaintiff would not have a claim against the Defendant individually, as opposed to her employer, if she were acting within the scope of her authority since capacity lawsuits are really lawsuits against the government entity, not the individual. *See Morongo Band of Mission Indians. v. California State Board of Equalization,* 858 F.2d 1376, 1382 n. 5 (9th Cir. 1988) ("A claim alleged against a state officer acting in his official capacity is treated as a claim against the state itself."), *cert. denied,* 488 U.S. 1066, 109 S.Ct. 787, 102, L.Ed.2d 779 (1989); *Herbage v. Meese,* 747 F.Supp. 60, 66 (D.D.C. 1990), *Summary Affirmance,* 1991 U.S. App. LEXIS 24405 (D.C. Cir. September 3, 1991) (". . . difficult to see how those persons [FSIA defendants] could be sued…in their individual capacities for actions they took at the behest of their government or at the very least 'under color of law.'"); *Chuidian v. Philippine Nat'l Bank,* 912 F.2d 1095, 1101-1102 (9th Cir. 1990) ("It is generally recognized that a suit against

an individual acting in his official capacity is the practical equivalent of a suit against the sovereign directly."); and *Monell v. Department of Social Services,* 436 U.S. 658, 690 n. 55, 98 Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). The issue of whether the Plaintiff even has a claim against Defendant individually, as opposed to the State of Hamburg, is obviously central to the merits of the litigation.

Thus, this is not a case where resolution of some procedural issue, such as application of the Eleventh Amendment or a legal issue, resolves the case before any issue central to the merits of the case is resolved. Indeed, in dismissing Plaintiff's claim, the court also ruled on the most critical aspect of the merits of this case. The court found that the Defendant had no communications with POS regarding its request for the Hubbard Declaration and had no involvement in the distribution of the Hubbard Declaration. Court's Order on Defendant's Renewed Motion to Dismiss, pp. 4, 11. There is simply nothing in this case that is more central to the merits than these issues.

In *Davis v. Crush,* 646 F. Supp. 1192 (S.D. Ohio, 1986), a suit was brought against various defendants, including a state court judge, for an injunction and damages as a result of the state court judge's decision in an abortion protest case. The court dismissed the case against the judge on the grounds of judicial immunity and *Younger* abstention. Although it did not reach the merits of the case, the court held that the defendant judge was a "prevailing party" under the attorney's fees provision of 42 U.S.C. §1988. In the instant case the court actually did rule on issues that were central to the merits of the litigation as discussed above.

### 2.  The Magistrate's Opinion Was Erroneous In Determining That Plaintiff's §1985 Claim Was Not Frivolous, Unreasonable and In Bad Faith

As shown in the attached Defendant's motion for attorney's fees, Plaintiff claimed in his initial complaint that the Defendant was acting within the scope of her authority as an employee of the Hamburg government.  Consequently, Defendant filed a motion to dismiss arguing that she was entitled to sovereign immunity under the Foreign Sovereign Immunity Act ("FSIA").  Rather than respond to Defendant's motion to dismiss raising this issue, the Plaintiff filed an amended complaint completely changing the allegations and asserting that the Defendant's acts "were undertaken outside the scope of her official duties" and "her lawful authority." No new facts were offered in the amended complaint to refute the plain allegation of the initial complaint that Defendant acted at all material times within the scope of her official duties.  Obviously, the new allegations were added to the amended complaint simply to plead around the factual deficiencies of the initial complaint to keep the litigation alive. Although the clear contradiction between the initial and the amended complaints have been raised several times in this case, the Plaintiff has not indicated any appropriate basis for changing his theory to assert, contrary to his assertions in the initial complaint and letters to the Hamburg government (discussed below), that Defendant was acting outside the scope of her authority.  Further, Plaintiff has never identified any reasonable inquiry that he made between the filing of the initial and amended complaints that would justify amending the complaint to assert that Defendant was acting outside the scope of her authority.

The Magistrate erroneously suggests that the allegations in the original complaint that Caberta acted in her official capacity are somehow consistent with the new allegations in the amended complaints that Defendant's actions were outside the scope of her "lawful

6

authority." Report, p. 7. This is simply not true. First, the Report ignores the fact that the new allegation that Defendant was acting outside of the scope of her "lawful authority" was made with the new allegation that Defendant was acting outside of her "official duties" which was the direct opposite of the initial complaint which alleged that Defendant was acting in her official capacity. The whole purpose of the initial complaint, taken as a whole, was to allege a cause of action that Defendant was acting within the scope of her capacity as an employee of the Hamburg government. It was obviously implicit in the initial complaint that Defendant was acting within her lawful authority. Moreover, nowhere was it alleged in the initial complaint that Defendant was not acting within her lawful authority. In addition, in letters sent to the Hamburg government shortly before filing the instant lawsuit, Plaintiff's attorney asserted that Scientology would view Defendant's "activities [in purported violation of the rights of Scientology and its members] as being undertaken on behalf of the City of Hamburg" and that Defendant's "acts in the United States must be construed as official acts of [the Hamburg] government." *See* Exhibits 20 and 21 to Defendant's Motion for Attorney's Fees. It was only after Plaintiff's attorney became aware of the FSIA from Defendant's motion to dismiss that the complaint was amended to assert the exact opposite (i.e., that she was acting outside the scope of her "official duties" and "lawful authority."). Thus, when read as a whole and considered in context, the whole purpose of the amended complaint was to allege the exact opposite of what Plaintiff had alleged in the original complaint. That is precisely why Plaintiff amended the complaint rather than respond to the motion to dismiss.

The foregoing is further demonstrated by subsequent events. For example, Plaintiff argued in his response to the motion to dismiss the amended complaint that the amended complaint should not be dismissed because he had alleged in the amended complaint that the

Defendant had acted "outside the scope of her official duties" and that she was therefore not immune from suit under the FSIA.  *See*  pp. 4, 6 of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint.  This was the precise opposite of the allegations of the initial complaint.  Moreover, this court denied the motion to dismiss because the Plaintiff had alleged in the amended complaint, contrary to the initial complaint, "that Defendant acted outside the scope of her lawful authority as an employee of the City of Hamburg, Germany..."

The Magistrate's suggestion that the new allegation in the amended complaint (that she was acting outside scope of her "lawful authority") is consistent with the allegations in the initial complaint (that she was acting in her official capacity) is also a distinction without a difference.  In general, if one is acting within one's official capacity, one is acting within one's lawful authority, especially in the absence of any allegation to the contrary.  If Defendant had acted within her official capacity but somehow had no lawful authority, that would be the fault of the Hamburg government, not Defendant.  In that situation, the proper Defendant would be the government of Hamburg, not Defendant.  Defendant was frivolously and unreasonably sued here because she was a target of Scientology and became subject to service of process when she visited Florida.  The fact that Scientology can produce a ridiculous affidavit from a "purported expert," who is no doubt a Scientologist, to suggest that the Hamburg government does know the scope of its own employees' authority does not make Plaintiff's changed position reasonable, especially when there has been no explanation for the change of position.

Doubtlessly not coincidental, the instant case was brought only a few months after a court in Hamburg entered a judgment and an award of attorney's fees against Scientologists

seeking to enjoin Hamburg's Scientology Working Group ("SWG") from distributing the Hubbard Declaration. *Decision of Verwaltungsgericht,* Hamburg Case No. 16 VG 2913/97, April 4, 2000. Having been unsuccessful in a German court, Scientology sought to have an American court determine that the State of Hamburg and the Federal Republic of Germany have incorrectly determined the scope of Caberta's lawful authority and have given her responsibilities contrary to German law

The State of Hamburg created the SWG and long ago gave Caberta her responsibilities. The State of Hamburg and the Federal Republic of Germany have declared in various documents filed in this case, including Mr. Beiss' affidavit, Hamburg's *Statement,* the *Note Verbale,* and the *Aide Memoire,* that Defendant's activities were within the scope of her official capacity and were lawful. Plaintiff knew Defendant's actions were within her lawful authority. Plaintiff implicitly alleged this in his initial complaint and in his attorney's letters to the State of Hamburg. Further, Scientology had unsuccessfully sought to have distribution of the Hubbard Declaration enjoined in Germany. Plaintiff's change of theory was frivolous, unreasonable and designed to harass Defendant.

Moreover, it was also unreasonable and frivolous to call upon an American court to determine if Caberta's official duties were lawfully authorized in light of the pronouncements of the Federal Republic of Germany and the State of Hamburg that they were. In *Herbage,* 747 F.Supp. at 67, the court noted that the FSIA barred plaintiff's claims there "because his allegations would require an adjudication of the propriety and legality of the acts of [foreign] authorities in the performance of their official duties," that "the court has no authority to address the legality of the Defendant's actions," and that the Act of State Doctrine precluded "American courts from inquiring into the validity of the public acts of a recognized foreign

9

sovereign power committed within its own territory."

Next, in attempting to find consistency, where there is none, between the initial complaint and the amended complaints, it is notable that the Magistrate ignores the several factors listed at pages 5-6 of the Report which are to be used in determining whether a claim was frivolous or unreasonable. As pointed out in Defendant's motion for attorney's fees, each of these factors supports the Defendant's position that the amended complaint was frivolous and unreasonable. The unreasonableness of this case is underscored by the fact that it has been undisputed since Defendant filed her first affidavit with her first motion to dismiss (i.e. prior to the amended complaint) that Defendant was not even involved in the distribution of the Hubbard Declaration at issue here. Nonetheless, Plaintiff maintained this suit against Defendant and did not seek to sue Defendant's employer. Finally, the Magistrate also asserts at page 9, n. 9 that Plaintiff presented argument and evidence that even if Defendant's actions were lawful, she "acted as an individual" because she personally profited from some of her alleged acts and that her "actions fell within the commercial activity exception to the FSIA." First, whether Defendant's actions fell in the commercial activity exception is totally irrelevant because the threshold issue for Defendant as an individual was whether she acted within her authority or official capacity. If she did, there can be no claim against her individually even if the commercial activity exception applied. Next, whether Plaintiff personally profited is also totally irrelevant if she otherwise acted within the scope of her authority because "the relevant inquiry in determining whether an individual was acting in an official capacity focuses on the nature of the individual's actions, rather than the alleged motive underlying them." *Junquist v. Sheikh Sultan Bin Khalifa Al Nahgan*, 115 F.3d 1020, 1028 (D.C. Cir. 1997); *Chuidian*, 912 F.2d at 1106-07 (Defendant, who was authorized in his official capacity to interfere with

a third party's contractual relations, was entitled to the sovereign immunity defense even if he was acting maliciously at the direction of a third party to whom he owed personal favors.).

### 3.    The Magistrate Erroneously Refused To Consider Scientology's Pattern of Harassing Conduct

Defendant included evidence of Scientology's pattern of harassing conduct towards critics of Scientology, including Defendant, which evidences bad faith and vexatious and unreasonable use of litigation to, as one court has put it, "bludgeon the opposition into submission." Moreover, the pattern of harassing conduct further reflects that the Defendant had specifically become a target of Scientology attack.  This also helps one to understand why Scientology sued Defendant rather than the State of Hamburg.   Defendant objects to the Magistrate's unsupported assertions that Scientology's conduct in "unrelated litigation" and the Defendant's state court deposition are irrelevant to whether Plaintiff's claims in this lawsuit are frivolous or asserted in bad faith.  Report, p. 2 n. 4.  First, Scientology's conduct is related in the sense that it is part of a pattern and involves the same methods by which Scientology abusively seeks to quiet and punish its critics.   In addition, the state court deposition is further related since it involved the same types of questions and occurred during Defendant's one and only visit to Florida when she was also served in the instant case.  The Magistrate cited no legal authority or analysis for her determination that such a pattern of conduct is irrelevant to Scientology bringing yet another sham lawsuit to harass yet another critic of Scientology.  Such evidence is clearly relevant and demonstrative of unreasonable, vexatious and bad faith litigation brought by Scientology through Plaintiff's attorney and Scientology straw-plaintiffs.  Such conduct clearly shows the intent, motive, plan, absence of mistake and *modus operandi* of Scientology and Plaintiff's attorney.  *Cf Davis v. Crush,*

11

*supra,* (in finding claim unreasonable, court considered plaintiff's actions (motions to disqualify) against defendant judge in prior litigation.).

WHEREFORE, Defendant objects to the Report and requests that attorney's fees and costs be awarded to Defendant as requested in her motion for fees and costs except that Defendant agrees that her motion for fees and costs under §501.2105, Fla. Stat. should be deferred pending appeal.

Respectfully submitted,

Robert W. Merkle
Florida Bar No.: 0138183
Ward A. Meythaler
Florida Bar No.: 0832723
Merkle & Magri, P.A.
5510 West LaSalle Street
Tampa, Florida 33607
TEL: (813) 281-9000
FAX: (813) 281-2223

## CERTIFICATE OF SERVICE

**I HEREBY** certify that a true and correct copy of the foregoing instrument has been furnished via U.S. Mail this ___21___ day of October 2002 to K. Moxon, 1100 Cleveland Street, Suite 900, Clearwater, Florida 33755.

Ward A. Meythaler

12

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUBERT HELLER,                    :
                                  :
        Plaintiff                 :
                                  :
vs.                               :        Case No.: 8:00-CV-1528-T-27C
                                  :
URSULA CABERTA,                   :
                                  :
        Defendant                 :
_____ :

### DEFENDANT'S MOTION FOR ATTORNEY'S FEES, EXPENSES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to 42 U.S.C. §1988, 28 U.S.C. §1927, Fla. Statutes 501.2105, F.R.Civ.P. 54,

Local Rule 4.18, and the court's supervisory power, Defendant, Ursula Caberta, moves this court

for an order requiring the Plaintiff and his attorneys to reimburse Defendant for attorney's fees,

expenses and costs incurred in defense of this action in the amount of $63,520.00 in fees and

$2,954.74 in costs.   An affidavit concerning the fees and costs is attached hereto as Exhibit 25. [1]

This amount is actually less than a reasonable amount because it only encompasses fees and

expenses associated with Merkle & Magri's involvement in the case.   Mr. John Merrett first

_____

[1] Exhibits 1-10 were previously submitted under the title Exhibits In Support of Defendant's Renewed Motion to Dismiss For Lack of Subject Matter Jurisdiction (FSIA) and Motion for Summary Judgment as to Liability.  Exhibits 11-19 were submitted with Defendant's Response to Plaintiff's Cross-Motion for Sanctions Regarding Subject Matter Jurisdiction.  Exhibits 20-26 are attached hereto.

represented Defendant in this case after it was filed on July 27, 2000. Merkle & Magri did not

become involved in the case until July 2001 when it was asked to file a motion for a protective

order concerning and shortly before Defendant's deposition in Germany. Merkle & Magri had no

involvement in the actual deposition in Germany and did not become substantively involved in this

case until after the deposition in Germany. Consequently, Mr. Merrett handled a substantial part

of the litigation here.

> The court in his May 9, 2002 order dismissing this case noted the following at page 3n.2:
>
> > Rather than pursue relevant limited discovery, the parties have intentionally, in the
> > Court's view, embroiled themselves in ostensible discovery disputes which were in
> > reality contentious philosophical skirmishes concerning matters not germane to the
> > question of subject matter jurisdiction. This is apparently a consequence of the
> > underlying and ongoing dispute between the Government of Hamburg and the
> > "Church of Scientology" which does not concern the limited jurisdictional issue
> > before the Court.

Defendant is also aware of criticism of Mr. Merrett in this case by Magistrate Judge Jenkins. To

avoid any issues concerning Mr. Merrett's conduct and fees, this motion does not request any fees

or expenses of Mr. Merrett.[2]

In addition, it should be noted that most of the fees requested involve time expended by

Ward Meythaler and charged at $250.00 an hour. Judge Jenkins has already approved an hourly

rate of $250.00 an hour for Plaintiff's attorney, Mr. Moxon, who has been practicing law since

1984 while Mr. Meythaler has been practicing since 1973. *See* Judge Jenkins' January 2, 2002

Order (Docket No. 146) at n.1; Plaintiff's Notice of Filing Declaration In Connection With Fees

---

[2] Defendant does not concede that any of Mr. Merrett's fees and expenses would not be reasonable
or that the court could not properly award them against Plaintiff, especially since Plaintiff brought
the case and only kept the case alive by amending the complaint without evidentiary support and

-2-

Determination.

## MEMORANDUM OF LAW

### BACKGROUND

On July 27, 2000, Plaintiff filed a two count complaint against Defendant alleging tortious interference with an advantageous business relationship and a claim under Florida's Unfair and Deceptive Trade Practices Act ("DTPA"), Fla. Stat. §501.201-13. In that complaint, Plaintiff asserted that Defendant was the head of an anti-cult task force for the government of Hamburg, Germany (Cpt., ¶7); that in her capacity as head of the anti-cult task force, she promulgated certain anti-Scientology measures (Cpt. ¶8); that among these measures promulgated by Defendant in connection with her office was a "sect filter" (Cpt. ¶9); and that Plaintiff was injured as a result of the promulgation of the "sect filter" (Cpt. ¶¶17-19 and 20-27). In short, the initial complaint pled a conclusive case that Defendant was acting within the scope of her authority as an employee of the Hamburg government and was therefore entitled to sovereign immunity under the Foreign Sovereign Immunity Act ("FSIA").[3] Consequently, Defendant filed a motion to dismiss the initial

---

contrary to his prior position.

[3] Plaintiff's attorney had also previously claimed that Defendant's acts regarding the Scientology organization and its adherents were acts taken within her capacity as an officer of the government of Hamburg, Germany. On July 17, 2000, only ten days before filing the complaint, Plaintiff's attorney, Mr. Kendrick Moxon, wrote to Senator Hartmuth Wrocklage of the Hamburg Ministry of the Interior stating that he was "legal counsel to the Church of Scientology" and that he was aware that the Senator's "subordinate, Ursula Caberta, intends to come to the United States to the State of Florida and to there act in coordination with an anti-religious hate group named the Lisa McPherson Trust, Inc., and persons associated with that organization, to derogate and seek to damage the Church of Scientology and its members." Mr. Moxon threatened that Ms. Caberta's conduct would be "closely monitored" and that if "she is involved in the violation of the civil rights of any members of the Church, or if she acts in concert with others violating the rights of members of the Church, *we shall view her activities as being undertaken on behalf of the City of Hamburg...*" (emphases added). Exhibit 20. On the following day Mr. Moxon wrote to Senator

complaint under the FSIA since the Plaintiff had alleged that the Defendant had acted at all times in her capacity as an official of the government of Hamburg. The motion to dismiss specifically observed that the Plaintiff had pled a "conclusive case for sovereign immunity on behalf of Defendant" in light of the allegations that she was "an official of a foreign government who, acting in her official capacity, caused some injury to Plaintiff."

Rather than respond to the motion to dismiss, Plaintiff filed a First Amended Complaint. Obviously recognizing that his initial complaint lacked subject matter jurisdiction under the FSIA, Mr. Moxon completely changed the allegations and now asserted that Defendant was also being sued as an individual for acts "which were undertaken outside the scope of her official duties" and "entirely outside the scope of her lawful authority." First Amended Complaint, ¶¶2, 23. F.R.Civ.P. 11 states that by filing the complaint and the amended complaint, Mr. Moxon is certifying that "after an inquiry reasonable under the circumstances" the "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery..." No new facts were offered in the amended complaint to refute the plain allegation of the initial complaint that Defendant acted at all material times within the scope of her official duties. Moreover, the amended complaint does not identify the new allegations as likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Obviously, the new allegations were added to the amended complaint simply to plead

---

Wrockledge again "regarding the activities of *your employee*, Ursula Caberta." (emphasis added). Mr. Moxon wrote, "As noted in our prior correspondence, her [Ms. Caberta's] acts in the United States must be construed as *official acts of your government.*" (emphasis added). Exhibit 21.

around the factual deficiencies of the initial complaint to keep the litigation alive.[4]  Although the

clear contradiction between the initial and the amended complaints has been raised several times in

this case, the Plaintiff has never indicated any basis for changing his theory to assert, contrary to

Mr. Moxon's assertions in the initial complaint and letters to the Hamburg government, that

Defendant was acting outside the scope of her authority.  Further, he has never identified any

reasonable inquiry that he made between the filing of the initial and amended complaints that

would justify amending the complaint to assert that Defendant was acting outside the scope of her

authority.

On or about October 6, 2000, Defendant filed a Motion to Dismiss the Amended

Complaint which again argued that Defendant acted at all material times in her capacity as an

official of the government of Hamburg, Germany and was therefore immune from jurisdiction of

the court under the FSIA.  In support of this motion, Defendant submitted her affidavit which

pointed out that all of her activity concerning the Hubbard Declaration had been in her capacity as

an employee of the government of Hamburg.

In an order dated October 12, 2000, the court directed that the Defendant show cause why

the case should not be dismissed for lack of subject matter jurisdiction.  On or about November

20, 2000, Plaintiff filed his Memorandum in Opposition to the Motion to Dismiss Amended

---

[4] As shown below, the purpose of this litigation was to harass Defendant with depositions and to
cause her to incur legal expenses, a well-established Scientology tactic.  Even if Plaintiff amended
the complaint in the hope that subsequent discovery may reveal  facts which will keep the
litigation alive, that is something the Plaintiff is not entitled to do.  Geisinger Medical Center v.
Gough, 160 F.R.D. 467, 469 (D.C.N.D. Pa. 1994).

Complaint. In that document, the Plaintiff argued, *inter alia*, that he had expressly alleged in the amended complaint that the Defendant had acted "outside the scope of her official duties" and that she was therefore not immune from suit under the FSIA. See pp.4, 6 of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint. On December 16, 2000, the court entered an order granting the motion to dismiss in part, but refusing to dismiss the amended complaint on the grounds of sovereign immunity. The court noted that "sovereign immunity does not shield a sovereign's employee from suit for acts not committed in her official capacity." The court then specifically stated that the Plaintiff had alleged "that Defendant acted outside the scope of her lawful authority as an employee of the City of Hamburg, Germany when she 'persecuted members of the Scientology religion,' interfered with Defendant's established advantageous business relationships and utilized unfair trade practices." As a result of those specific allegations, the court concluded that at that stage of the case, the Defendant was not entitled to sovereign immunity under the FSIA.

Consequently, the new allegations added to the amended complaint that Defendant had acted outside the scope of her authority, which completely contradicted the allegations of the initial complaint, were the sole basis for this court continuing the lawsuit. However, since then, Defendant has proffered no evidence to contradict his initial complaint that Plaintiff was acting within the scope of her authority. Obviously, then, the new allegations added to the amended complaint that Defendant was acting outside the scope of her authority violated Rule 11 since Mr. Moxon had no evidentiary support at the time he made the new allegations. It appears that Mr. Moxon simply added the new allegations that Defendant was acting outside the scope of her authority (contrary to the initial complaint and his letters to the Hamburg government) to try to

plead around Defendant's motion to dismiss.  In short, if Mr. Moxon had not made those unsupported allegations, this case would have ended with the Defendant's motion to dismiss the initial complaint.  Indeed, if the plaintiff had conducted reasonable inquiry, researched the FSIA, and acted in good faith, this case would not have been filed in the first instance.[5]

## PATTERN OF HARASSING CONDUCT

Because of the standards for an award of attorney's fees under 42 U.S.C. §1988 and 28 U.S.C. §1927, it is necessary to again set forth some of the unfortunate history of the Scientology organization's and Mr. Moxon's involvement in sham and harassing lawsuits as well as other vexatious conduct toward the Defendant personally.  First, Scientology and Plaintiff's counsel and his firm have a track record of being involved in harassing, burdensome and frivolous lawsuits against Scientology's targets.  See Affidavit of Priscilla Coates (Ex. 9) concerning fifty lawsuits brought against her and Cult Awareness Network by the Scientology organization to destroy the Cult Awareness Network whose purpose was to educate the public about the harmful effects of mind control as practiced by destructive cults and about the unethical and illegal practices they employ; Hart v. Cult Awareness Network, 13 Cal. App 4th 777 (1993); Church of Scientology v. Wollersheim, 42 Cal. App. 4th 628, 648 (1996) (Court found that lawsuit involving Plaintiff's counsel and his firm was being pursued "to bludgeon the opposition into submission" for having prevailed in a prior lawsuit); See also Affidavit of Stacy Brooks (Ex. 10).  Ms. Brooks was formerly a Scientologist in Scientology's high-level Sea organization and worked in the Office of

---

[5] It would appear from the Plaintiff's decision not to respond to the motion to dismiss the initial complaint but rather to file an amended complaint with new allegations obviously crafted to

Special Affairs, which carried out Scientology's legal and intelligence gathering activities. She was personally aware of Scientology's effort to destroy Cult Awareness Network through a series of specious lawsuits brought by the Office of Special Affairs through nominal plaintiffs who were low-level Scientologists. She was also aware that Scientology had staff members whose entire job was to destroy the Cult Awareness Network and personally participated in operations directed against Patricia Coates and the Cult Awareness Network that were designed to undermine and destroy them.

In May 1994, Mr. Moxon's partner, Helena K. Kobrin, along with his firm (then known as "Bowles & Moxon"), was ordered to pay $17,775.00 in sanctions for the presentation and prosecution of a frivolous civil RICO claim on behalf of a Scientology entity. Religious Technology Center v. Gerbode, No. CV 93-2226 AWT, 1994 U.S. Dist. Lexis 6432 (D.C.C.D.Ca.).

In 1974 a criminal prosecution, United States v. Mary Sue Hubbard, Crim. No. 78-401, was brought against nine high-ranking officials of the Church of Scientology. "In that case, several defendants stipulated that the network of Scientology organizations had conducted a broad campaign against U.S. Government entities and officials, particularly the Internal Revenue Service. "This concerted campaign by the Scientology apparatus encompassed a wide range of illegal activities, including theft of government documents for use in litigation against the United States, falsification of government identification cards, wiretapping, infiltration, and perjury." Founding Church of Scientology v. Webster, 802 F.2d 1448, 1449-1450 (D.C. Cir. 1986).

According to Defendant's Response to Plaintiff's Motions to Stay Response and Motion to

---

circumvent the FSIA, that Mr. Moxon was not previously aware of the FSIA.

Strike (filed on or about October 17, 2000), the signers of the stipulation in the criminal case included United States Attorney Carl Rauh and attorney Michael Hertzberg. Mr. Hertzberg appeared as Mr. Moxon's co-counsel in two depositions in the instant case. According to Exhibit 24, the stipulation in the criminal case states that in response to a grand jury subpoena for handwriting exemplars of Mr. Meisner, Mr. Moxon submitted an affidavit with nine pages of handwritten materials; that Mr. Moxon's affidavit states that the nine pages of handwriting were those of Mr. Meisner; and that a defendant had stated to Mr. Meisner that Mr. Moxon had been directed to supply the government with fake handwriting samples. See also Defendant's Response to Plaintiff's Motions to Stay Response and Motion to Strike, pp.4-5.

Defendant, as the head of the Scientology Working Group in Germany, has also become a target of Scientology attack. For example, when she came to Florida for the first and only time in July, 2000, for a vacation and to see Ms. Brooks and Mr. Minton, she was greeted at the Tampa Airport by an organized group of Scientologists who yelled epithets at her, including that she was a "Nazi Criminal". Ex. 7. During that trip to Florida she was also served with the instant lawsuit as well as a subpoena to give a deposition in a state wrongful death lawsuit brought by the Estate of Lisa McPherson against the Scientology organization even though she had no involvement in and no knowledge of the facts of that lawsuit.

Mr. Moxon, who represents the Scientology organization as well as the Plaintiff here, took that deposition which has been filed as Exhibit B to Defendant's Response to Plaintiff's Motion to Compel. As is clearly reflected by that deposition, Defendant had no involvement in and no knowledge of the facts of that lawsuit. During the deposition, Mr. Moxon's questions to the Defendant included the following: "Oh, but part of your mission for the German government is

the genocide of Scientology, isn't it?"; "Would you like to see all Scientologists dead?"; and "Don't you consider yourself to be a Nazi?" Ex. 23, pp.83-86, 125. As Defendant was leaving the deposition, Mr. Moxon not once, but twice saluted Defendant with the "Hitler Salute" of Nazi Germany and said "Heil Hitler!" Ex. 22. Although he apparently denies it now; when this was made a matter of record, Mr. Moxon did not deny it then. Ex. 22; 23, pp. 129-130.

In addition to the events described above, the Scientology organization in Germany (through its President, Helmuth Bloebaum, and represented by its German attorney, Wilhelm Blumel), has made a false penal charge against the Defendant to authorities in Germany that she allegedly accepted a benefit (a loan from Mr. Minton) to carry out an official act ("vorteilsnahne"). In fact both these individuals assisted Mr. Moxon at Defendant's deposition in Germany, the primary goal of which appears to have been to harass Defendant with questions about matters which the Scientologists thought would be helpful in their attack on Defendant in Germany.

## III.    Defendant is Entitled to Attorney's Fees From Plaintiff Under 42 U.S.C. §1988

Plaintiff asserted a claim in Count III under 42 U.S.C. §1985(3). 42 U.S.C. §1988 provides in pertinent part:

> In any action or proceeding to enforce a provision of sections... 1985... the court, in its discretion, may allow the prevailing party... a reasonable attorney's fee as part of the cost.

Since Defendant obtained a judgment dismissing this case, she was the prevailing party. The standards for awarding attorney's fees under §1988 is different for defendants than it is for

plaintiffs. Pursuant to 42 U.S.C. §1988, Defendant is entitled to be reimbursed from the Plaintiff for her reasonable attorney's fees and costs only if the action was frivolous, unreasonable or without foundation, even though not brought in bad faith. Hughes v. Rowe, 449 U.S. 412, 98 S.Ct. 694, 178-179 (1978); Bruce v. City of Gainesville, Ga., 177 F.3d 949, 951 (11th Cir. 1999). The standards for awarding attorney's fees under 42 U.S.C. §1988 are the same as those under Title VII. Hughes, 98 S.Ct. at 178. Of course, "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." Chrstianburg Garment Co. v. E.E.O.C., 434 U.S. 412, 98 S.Ct. 694, 701 (1978). As the Eleventh Circuit noted in Popham v. City of Kenesaw, 820 F.2d 1570, 1583 (11th Cir. 1987):

> If a plaintiff brings a lawsuit for a vexatious purpose or in bad faith, i.e., not in the hope of winning but solely in order to put the defendant to the burden of defending himself, the prevailing defendant arguably is entitled to attorney's fees regardless of whether the plaintiff's claims technically were frivolous. [authority omitted].

Although the determination of frivolity is made on a case-by-case basis, courts have recognized several factors to assist in answering the question: (1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. Bruce, 177 F.3d at 952; Head v. Medford, 62 F.3d 351 (11th Cir. 1995). Applying the first factor to the present case, the court did not specifically determine that Plaintiff had failed to establish a *prima facie* case of the lack of sovereign immunity, but "this concept was a necessary import of the district court's order." Head v. Medford, *supra* at 356. After initially alleging in the first complaint that

-11-

Defendant was acting at all times within the scope of her authority, the Plaintiff has offered no meritorious evidence to support his amended pleading asserting that she was really acting outside the scope of her authority.   In other words, Plaintiff simply amended his complaint without evidentiary support to plead around the FSIA when he knew and previously alleged that the Defendant was acting within the scope of her authority.  This is virtually the definition of a claim that is frivolous as well as being without foundation.  Indeed, especially in light of Scientology's track record and the targeting of Defendant, it amounts to bad faith, whether frivolous or not.  As to the second and third factors, there was never any offer to settle by the Defendant  and this case was disposed of prior to trial on a motion to dismiss.  Accordingly, Defendant is entitled to reimbursement of her attorney's fees from Plaintiff under 42 U.S.C. §1988.

Only one of the claims here involved a claim under a federal civil rights statute.  However, most of the work in this case focused on the issue of sovereign immunity, which, of course, applied to all the counts in this case.  Consequently, there is no reason to reduce the attorney's fees and costs since that work would have been required whether the non-civil rights claims had been filed or not.  See Carmichael v. Birmingham Saw Works, 738 F.2d 1226, 1137 (11ᵗʰ Cir. 1984) (court should not disallow time spent on unsuccessful claims if that time concerned "facts which were also probative" on the successful claim); York v. Alabama State Board of Educ., 631 F.Supp. 78, 84 (M.D. Ala. 1986) (work relating to unsuccessful claims "was so intertwined, both factually and legally, with the successful claims that the challenged hours must be deemed compensable."); George v. GTE Directories Corp., 114 F.Supp. 2d 1281, 1295 (M.D. Fla. 2000) (court must "identify unsuccessful 'claims that were unrelated to the claims on which [t]he [Plaintiff] succeeded' or whether the time spent on the unsuccessful claims may properly 'be

-12-

deemed to have been expended in pursuit of the ultimate result achieved.'").

There is some authority for the proposition that a person is not a "prevailing party" for purposes of 42 U.S.C. §1988 when a complaint is dismissed for lack of jurisdiction. See Sellers v. Local 1598, Dist. Counsel ABA, 614 F.Supp. 141, 144 (D.C. Pa. 1985), aff'd, 810 F.2d 1164 (3rd Cir. 1987); Hidahl v. Gilpin County Dept. of Social Services, 699 F.Supp. 846, 849 (D.Col. 1988). In these cases, one of which relied on the other, the court held that the defendant was not a prevailing party because he had not prevailed over the plaintiff "on any issue central to the merits of the litigation." Id. For example, in Hidahl, the defendant, a state agency, was successful in asserting that the claim against it was barred by the eleventh amendment. Here, however, the defendant prevailed on an issue that was central to the litigation – the issue of sovereign immunity and the concomitant issue of whether the defendant had acted within the scope of her authority.[6] The whole basis of the plaintiff's amended complaint here (and the reason for the amendment changing the theory of the case) was that the defendant had acted outside the scope of her employment. Consequently, this authority, which is not binding in any event on this court, is inapplicable.

## IV.    Defendant is Entitled to Attorney's Fees From Plaintiff's Counsel Under 28 U.S.C. §1927

Defendant is also entitled to be reimbursed from Plaintiff's counsel for her reasonable attorney's fees pursuant to 28 U.S.C. §1927 because of Mr. Moxon's unreasonable and vexatious amendment of the complaint to assert, contrary to his initial complaint and letters to the Hamburg

---

[6] The court in Hidahl awarded attorney's fees in any event, but relied on Rule 11 and 28 U.S.C. §1927.

government, that Defendant acted outside the scope of her authority.

      28 U.S.C. §1927 provides in pertinent part:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct.

      Sanctions are appropriate pursuant to 28 U.S.C. §1927 when the court determines that counsel vexatiously and unreasonably multiplied the proceedings. <u>Ruszala v. Walt Disney World Company</u>, 2000 WL 33223248 (M.D. Fla. 2000). An attorney engages in such conduct when his conduct, "from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" <u>Wilson-Simmons v. Lake County Sheriff's Dept.</u>, 207 F.3d 818, 824 (6th Cir. 2000). Such conduct is found when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims. <u>Id.</u> Bad faith is not required to support an award of fees under §1927. <u>Id.</u>

      Applying these principles to the present case, Plaintiff's attorney knew and asserted in letters to the Hamburg government and in the initial complaint that Defendant had acted within the scope of her authority. After learning about the FSIA from Defendant's motion to dismiss the initial complaint, he amended the complaint to assert, without evidentiary foundation, the exact opposite in order to plead around the FSIA and continue this litigation. Indeed, as pointed out above, this case was specifically not dismissed by the Court as a result of that amendment. See court's December 16, 2000 Order, pp.2-3. As discussed above, burdensome litigation is a well-

established tactic of Scientology.  The amended complaint was unreasonable, vexatious and requires that Plaintiff's counsel be personally liable.  See Hale v. Harney, 786 F.2d 688, 692 (5th Cir. 1986) (failure to make reasonable inquiry into the facts surrounding allegation warranted sanction under Rule 11 and 28 U.S.C. §1927).[7]

## V.    Defendant is Entitled to Attorney's Fees Under DTPA, Fla. Stat. Section 501.2105

Count II of the Plaintiff's complaints allege a claim under Florida's Unfair and Deceptive Trade Practices Act ("DTPA"), Fla.Stat. Section 501-201-13.  Section 501.2105(1) of that Act provides that the "prevailing party may receive his or her reasonable attorney's fees and costs from the non-prevailing party."  Unlike Rule 11, 42 U.S.C. §1988 and 27 U.S.C. §1927, the Defendant is entitled to fees and costs regardless of the strength of the plaintiff's case or the good faith of the plaintiff.  All a defendant must do is prevail.[8]  Moreover, a prevailing party would clearly include a party who prevails on an issue such as jurisdiction.  For example, in Big Tomato v. Tasty Concepts, Inc., 972 F.Supp. 662, 664 n.1 (S.D. Fla. 1997), the court held a defendant

---

[7] Actually, the filing of the lawsuit in the first instance was also unreasonable and vexatious. This is demonstrated by the facts that there was no basis for the initial complaint under the FSIA; that Scientology has a history of abusive litigation; and that Scientology has targeted Defendant here. The bad faith amending of the initial complaint here; the abusive and unnecessary questioning of Defendant at both the state and federal depositions, including Nazi salutes and outrageous questions; the use of a patently false translation in Plaintiff's cross-motion; and the presence at Defendant's deposition of the two Scientologists who are attempting to have Defendant prosecuted in Germany also confirm that the filing of the lawsuit in the first instance was vexatious.

[8] One ingenious plaintiff argued in his case that since the defendant showed that the DTPA was inapplicable in that case, the defendant could not take advantage of the provision entitling the prevailing party to attorney's fees. However, the Eleventh Circuit firmly rejected that contention and held that a plaintiff in such a situation is liable because he invoked the DTPA in the first instance and did not prevail. M.G.B. Homes, Inc. v. Ameron Homes, Inc., 30 F.3d 113, 115 (11th Cir. 1994).

-15-

who prevails in a motion to dismiss based on lack of standing is a prevailing party for purposes of the attorney's fees provision.

Further, in Smith v. Bilgin, 534 So.2d 852 (1st DCA 1988), the court held that the prevailing defendant in an action erroneously brought under the DTPA was entitled to fees reflecting the time spent by his attorneys "on the case" rather than merely on the DTPA count absent a showing that a portion of the attorneys' services were totally unrelated to the action since the DTPA count and the other counts in the complaint arose from the same transaction. The court stated that the language of the statute "contemplates recovery of attorney's fees for hours devoted to the entire litigation... and does not require allocation of attorney time between the [DTPA] count and other alternative counts based on the same consumer transaction unless the attorneys' services clearly were not related in any way to establishing or defending an alleged violation of Chapter 501." Id. at 854. See also, Rustic Village, Inc. v. Freidman, 417 So.2d 305 (3rd DCA 1982) (attorney's fee awarded to prevailing defendant even though trial judge held that cause of action was not one contemplated by the DTPA).

The only real issue here is that the DTPA statute provides that "the prevailing party after judgment in the trial court and exhaustion of all appeals, if any, may receive a reasonable attorney's fees and costs from the non-prevailing party." (emphasis added). In Big Tomato, supra, at 664, the court denied a motion for attorney's fees without prejudice "to reassert at the conclusion of the case" because, according to the court, before "attorney's fees may be awarded, judgment must be final and all appeals must be exhausted." Actually, the statute does not say that all appeals must be exhausted before attorney's fees "may be awarded," but only that the prevailing party may not "receive" reasonable attorney's fees until after exhaustion of all appeals.

-16-

Under F.R.Civ.P. 54(a), this court's order granting the renewed motion to dismiss and directing the Clerk to close this case constitutes an order from which an appeal lies and is therefore a "judgment" for the Defendant. However, of course, the appeal procedure here has not yet been exhausted. On the other hand, Local Rule 4.18 requires that all claims for costs or attorney's fees "shall be asserted by separate motion or petition filed not later than fourteen (14) days following the entry of judgment" and that the "pendency of an appeal from the judgment shall not postpone the filing of a timely application pursuant to this Rule." Consequently, this court's local rules would appear to require the application for attorney's fees under the provisions of the DTPA at this point.

**VI.    Costs**

Defendant is entitled to reimbursement of her costs in the amount of $2,954.74, because she was the prevailing party. 28 U.S.C. §1920 sets forth certain items of taxable costs to which a prevailing party is entitled to recover, and includes, *inter alia,* the following items: (1) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (2) fees for exemplification and copies of papers necessarily obtained for use in the case. However, in a civil rights case (and for the same reasons a DTPA case), a prevailing party is not limited to recovering those items of costs specified in 28 U.S.C. §1920. "[W]ith the exception of routine office overheard normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of the litigation... may be taxed as costs." Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983); George v. GTE Directories Corp., 114 F.Supp.2d 1281, 1298 (M.D. Fla. 2000). In this case, each of the items identified in

the defendant's bill of costs and affidavit filed by the undersigned are recoverable pursuant to applicable law.

## VII.    <u>Additional Submissions</u>

Pursuant to F.R.Civ.P. 54(d)(2)(c), Defendant will submit, if necessary, additional submissions bearing on the issues concerning evaluation of services following a determination of liability for fees.

WHEREFORE, Defendant respectfully requests that the court enter an order requiring Plaintiff and his counsel, jointly and severally, to reimburse the Defendant for her reasonable attorney's fees in the amount of $63,520.00 and requiring Plaintiff to reimburse Defendant for her taxable costs in the amount of $2,954.74 incurred in defense of this action.

## <u>RULE 3.01(g) CERTIFICATE OF COMPLIANCE</u>

Pursuant to local Rule 3.01(g), the undersigned attempted to resolve the issues in this motion by faxing and mailing three letters to Plaintiff's counsel on May 10 and May 13, 2002 asking if he had any objection to an award of attorney's fees to Defendant, inviting him to workout the dollar amount with the undersigned and requesting that he respond by May 15, 2002. Plaintiff's counsel never responded. The undersigned also called Mr. Moxon on May 22, 2002, but he was not in and has not called back. Moreover, Plaintiff has appealed this case thereby conclusively indicating that he does not and will not agree to this motion. Consequently, Defendant's counsel has "conferred" with counsel and has been unable to agree on a resolution of this matter.

Dated this ___23___ day of May, 2002.

Respectfully submitted,


ROBERT W. MERKLE
Florida Bar No.: 0138183
WARD A. MEYTHALER
Florida Bar No.: 0832723
MERKLE & MAGRI, P.A.
5510 West LaSalle Street
Tampa, Florida 33607
TEL: (813) 281-9000
FAX: (813) 281-2223
Counsel for Ursula Caberta

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing Defendant's Motion for Attorney's Fees, Expenses and Costs and Memorandum of Law In Support, has been furnished via U.S. Mail, postage prepaid, to Kendrick L. Moxon, 1100 Cleveland Street, Suite 900 Clearwater, Florida 33755, on this ____23____ day of May, 2002.

WARD A. MEYTHALER