

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

———————————————————x

HUBERT HELLER,

            Plaintiff,

        vs.

URSULA CABERTA,

            Defendant.

———————————————————x

Case No. 8:00-CV-1528-T-27 EAS

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S SECOND MOTION
## FOR ATTORNEY'S FEES, EXPENSES AND COSTS PURSUANT TO FDUTPA

Kendrick Moxon
Helena Kobrin (FBN # 0259713)
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL 33755
Telephone: (727) 443-5620
Telefax: (727) 443-5640

F. Wallace Pope, Jr. (FBN # 124449)
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, FL 33757
Telephone: (727) 461-1818
Telefax: (727) 441-8617

*Attorneys for Plaintiff Hubert Heller*

189

## INTRODUCTION

Plaintiff Hubert Heller respectfully submits this memorandum of law in opposition to defendant Ursula Caberta's second motion for $108,810.00 in attorney's fees, and $2,946.53 in costs, sought solely under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.2105, where the case was decided on a jurisdictional dismissal under the Foreign Sovereign Immunities Act ("FSIA"). The Magistrate Judge rejected Caberta's first motion for attorney's fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927, and has already issued an award of costs of $1,416.22, and the district court affirmed, specifically finding that Caberta was not a prevailing party, that Heller's claims were not frivolous or in bad faith, that Heller did not engage in any unreasonable or vexatious conduct in this litigation, and reducing the requested costs by approximately one half. The Magistrate Judge deferred consideration of Caberta's premature motion for attorney's fees under Fla. Stat. § 501.2105 until after conclusion of appellate review.

In its brazen and misguided renewed motion, Caberta's counsel, Merkle & Magri, P.A., now attempts to obtain its entire fee claim – almost $110,000 – based solely upon a *discretionary* attorney's fees provision under FDUTPA, despite conceding that Merkle & Magri spent virtually *no time* on the FDUTPA claim, and despite *explicitly disclaiming* any right to an award of fees for the time Caberta's previous counsel spent on this claim. Caberta once again relies extensively for her fee claim on assertions of unsupported "facts" that go to the merits of the dispute, in the teeth of this Court's earlier determination that "this court expressly confirmed that it had not addressed the merits of Plaintiff's claims" in its order rejecting Caberta's first motion for attorney's fees. Dkt. 177 at 2; see Dkt. 165 at n.8.

Caberta's baseless claim for attorney's fees must be rejected for four independent

1

reasons. First, Caberta is not a prevailing party. This Court's dismissal for lack of jurisdiction does not constitute an adjudication on the merits, as required for an award of attorney's fees, discretionary in any event under the statute, and thus Caberta cannot meet the foundational requirement under Fla. Stat. § 501.2105.

Second, even if Caberta can be considered a "prevailing party," Merkle & Magri did virtually *no work* on the FDUTPA claim and specifically waived any right to fees associated with Caberta's prior counsel's work on the FDUTPA claim. Caberta's motion for 100% of all fees is not only baseless under Florida law, but is a blatantly improper attempt to end-run both this Court's prior rejection of her motion for attorney's fees under the federal attorney's fees statutes and the strictures of Fed. R. Civ. P. 11, which requires that any argument that a claim is frivolous or without foundation – baseless in any event – be raised at the commencement of litigation and not at this late stage.

Third, while conceding, as she must, that any award of fees under Fla. Stat. § 501.2105 is discretionary, Caberta makes no argument that an award of fees in the circumstances of this case would be appropriate or just. In this case, where this Court dismissed this action on grounds wholly unrelated to the FDUTPA claim, where Caberta's current counsel spent no time on the FDUTPA claim, and where this Court has already determined that plaintiff's claims were neither frivolous, unreasonable, or without foundation, even assuming a legal basis for an award of fees, there is no reason for this Court to exercise its discretion to award fees.

Fourth, defendant's claim for $108,810.00 in fees is grossly excessive, particularly as the vast majority of these fees were incurred in motion practice as a result of defendant's discovery abuses, *every single one of which defendant lost,* and which ultimately resulted in *sanctions against* Caberta, which were *affirmed* on appeal. Further, the amounts sought are

2

far in excess of what could be considered reasonably necessary for the work performed.

Finally, defendant improperly repeats its identical arguments for almost $3,000 in costs without disclosing that this Court has already considered that claim and has already issued a reduced cost award of $1,416.22.

### I – DEFENDANT IS NOT A PREVAILING PARTY

Section 501.2105(1) of FDUTPA provides that in any civil litigation under Section 501, "the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, *may* receive his or her reasonable attorney's fees and costs from the nonprevailing party." (Emphasis added). To even be eligible as a candidate for a discretionary fee award, therefore, a litigant must be a "prevailing party" on the FDUTPA claim. *See Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So.2d 266, 270 (1st DCA 1985) ("party must (1) recover judgment on the" FDUTPA claim).

Caberta fails to establish that she is a prevailing party under the statute. This Court's dismissal of this action for lack of jurisdiction under the FSIA does not operate as an adjudication of plaintiff's FDUTPA claim. Although no reported Florida case addresses the interpretation of "prevailing party" in a situation where the court dismisses for lack of jurisdiction, as this Court recognized in its earlier order rejecting Caberta's previous motion for attorney's fees, uniformly and without exception, federal courts interpreting the identical language in 42 U.S.C. § 1988 have held that a dismissal for lack of subject matter jurisdiction cannot sustain an award of attorney's fees under section 1988. *See* Dkt. 174, at 6-7; Dkt. 177, 1-2; *Keene Corp. v. Cass*, 908 F.2d 293, 298 (8th Cir. 1990); *DeShiro v. Branch*, 183 F.R.D. 281, 285-86 (M.D. Fla. 1998); *Daugherty v. The Westminster Schools, Inc.*, 174 F.R.D. 118, 120-22 (N.D.Ga. 1997); *Hidahl v. Gilpin County Department of Social Services*,

699 F.Supp. 846, 849 (D.Colo.1988); *Sellers v. Local 1598*, 614 F.Supp. 141, 143 (E.D. Pa. 1985); *aff'd,* 810 F.2d 1164 (3rd Cir. 1987).

In *Hidahl, supra,* as here, the defendants asserted the defense of sovereign immunity, a waivable species of a lack of subject matter jurisdiction under the 11th Amendment, *see Lapides v. Bd. of Regents of Univ. System of Georgia*, 122 S.Ct. 1640 (2002), or the FSIA, 28 U.S.C. § 1605(a)(1). In both *Hidahl* and here, the sovereign immunity issue was "central" to the case in the identical way – it provided defendants with complete relief from suit in the particular court – but in *both* cases the immunity issue was equally irrelevant to the *merits* of the underlying claim. *See Hidahl*, 699 F. Supp. at 849 in dismissal for lack of jurisdiction based on *sovereign immunity,* "'Defendant has not "prevailed" over the plaintiff on any issue central to the *merits* of the litigation.'") (quoting *Sellers*, 614 F. Supp. at 144) (emphasis added).

While the federal courts' interpretation of section 1988 is not binding upon this Court's interpretation of section 501.2105(1), plaintiff respectfully submits that this Court should adopt a similar construction. First, the language of section 1988 and 501.2105(1), in making a discretionary award of attorney's fees available only to a "prevailing party," is identical. Second, in a similar situation, the court in *Nolan v. Altman*, 449 So.2d 898 (Fla. 1st DCA 1984), held that a plaintiff's voluntary dismissal, which is not on the merits, did not render the defendant the prevailing party. *See also Marquart v. Lodge 837*, 26 F.3d 842, 852 (8th Cir. 1994) (defendant not "prevailing party" on Title VII claim where suit voluntarily withdrawn); *Easiley v. Norris*, 107 F. Supp.2d 1332 (N.D. Okla. 2000) (same).

Defendant cites no case to support her position that she is a "prevailing party," or that suggests rejection of the well-developed federal standard, as recognized by this Court. Defendant's reliance on *Big Tomato v. Tasty Concepts, Inc.*, 972 F. Supp. 662, 664 (S.D. Fla.

4

1997), is misplaced and misses the meaning of a dismissal for lack of jurisdiction. *Big Tomato* held only that the fee application was premature and dismissed it without prejudice. In dicta in a footnote, the court stated, "[a] defendant who prevails in a motion to dismiss based on lack of standing is a 'prevailing party' for the purposes of § 501.2105," citing only *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113 (11th Cir. 1994). *Id.* at 664 n.1. In both *M.G.B. Homes* and *Big Tomato*, however, the FDUTPA claim was not dismissed for lack of standing in any jurisdictional sense. Rather, both courts merely held that the claims failed to meet the statutory language, and hence were "legally insufficient," *i.e.*, they failed to state a claim under FDUTPA, which is clearly "on the merits." *M.G.B. Homes,* 903 F.2d at 1494; *Big Tomato*, 972 F.Supp. 662, 664 (quoting *Darrell Swanson Cons. Serv. v. Davis,* 433 So.2d 651, 652 (Fla. Dist. Ct. App. 1983); *see Rustic Village, Inc. v. Friedman*, 417 So.2d 305 (Fla. 3rd DCA 1982) (holding that defendant is prevailing party where plaintiff *fails to state a claim* under FDUTPA).

## II - DEFENDANT CANNOT RECOVER FEES ON THE FDUTPA CLAIM BECAUSE IT DID NO WORK ON THAT CLAIM

### A. Counsel Has Waived Any Entitlement to Fees

Defendant has estopped herself from recovering fees under FDUTPA. In her Memorandum, her new counsel specifically and expressly disclaimed any right to any fees prior to its involvement in the case. Caberta Br. at 2 (amount of fees and expenses sought "*only* includes fees and expenses *associated with Merkle & Magri's involvement* in the case") (emphasis added); *id.* at 3 ("this motion does not request any fees or expenses of Mr. Merrett"). It is undisputed that the *entirety* of litigation and adjudication of the FDUTPA claim in the district court concluded long before Merkle & Magri's involvement in this case

5

in July 2001.[1]  It is further undisputed that Merkle & Magri could not have spent any "reasonable" time on this claim, and the firm has not identified a single minute directed to that claim.[2]  Thus, its concession has barred defendant from any recovery under FDUTPA.

Despite spending virtually *no* time on the FDUTPA claim, Merkle & Magri now brazenly seek reimbursement for their *entire* fees spent on litigating this case – almost $110,000.  Defendant's reliance on one *pre-amendment* mandatory fee award case,[3] *Smith v. Bilgin,* 534 So.2d 852 (Fla. 1st DCA 1988), for the erroneous proposition that a defendant can recover for all time spent "on the case," rather than the FDUTPA count, Caberta Br. at 10-11, simply misses the point of her fee disclaimer, not to mention *Bilgin, see infra,* Point III.  Defendant obviously cannot disclaim 100% of the fees "associated" with work done by Mr. Merkle, and at the same time base 100% of its unrelated demand for fees on a claim handled 100% by Mr. Merkle.

---

1/   Plaintiff raised its FDUTPA claim in his First Amended Complaint, filed on September 15, 2000.  Dkt. 12.  Caberta's prior counsel, John Merrett, sought dismissal of this claim as well as plaintiff's other claims.  By order dated December 18, 2000, this Court held that plaintiff had failed to allege that the sect filter was a "thing of value" under FDUTPA, and dismissed plaintiff's FDUTPA claim.  Dkt. 36.  In its Second Amended Complaint, filed on January 8, 2001, plaintiff re-alleged the FDUTPA claim to allege explicitly that the sect filter was a "thing of value."  In its motion to dismiss the Second Amended Complaint, Caberta's prior counsel accordingly did not address plaintiff's FDUTPA claim, but confined its response solely to the question of Caberta's immunity under the FSIA.  Dkt. 42.  Caberta's new counsel, Merkle & Magri, appeared for the first time before this Court on July 20, 2001, and never addressed the FDUTPA claim in the district claim.  Dkt. 95.

2/   Merkle & Magri have made no effort to allocate the time spent on its 1-page response to plaintiff's 2-page argument regarding the FDUTPA claim in its appeal to the Eleventh Circuit.  Accordingly, they are not entitled to compensation for whatever minimal time they might have expended with respect to the FDUTPA claim on appeal.  See Point IV, *infra.*

3/   The statute was amended in 1994 to make the award of attorney's fees discretionary, instead of mandatory.  *See* Laws 1994, c. 94-298 § 4 (eff. July 1, 1994) (amending statute from "shall"to "may receive"); *see Hubbel v. Aetna Cas. & Sur. Co.,* 758 So.2d 94, 100 n.10 (Fla. 2000).

6

### III - FLORIDA LAW PRECLUDES RECOVERY UNDER FDUTPA FOR MATTERS UNRELATED TO THE MERITS OF THE FDUTPA CLAIM

Defendant's assertion that it is entitled under FDUTPA to all its fees incurred in this case, including its appeal, even though it admittedly spent virtually no time on FDUTPA, is meritless, indeed absurd, and is rejected by the very case on which it relies. First, it should be noted that both cases cited were decided under the pre-amendment mandatory standard and thus the Court had no discretion to exercise on whether to award fees. *See Bilgin,* 534 So.2d 852; *Rustic Village*, 417 So.2d 305 (Fla. 3rd DCA 1982). Second, *Rustic* is completely silent on the issue of allocation and *Bilgin* stands for the opposite proposition. In *Bilgin*, where the case was decided *on the merits* of its FDUTPA claim, the court simply held there would be no fee award allocation when the other claims were "alternative theories of recovery" "based on the same consumer transaction" as the FDUTPA claim (there, fraud, breach of contract, and breach of warranty). *Bilgin*, 534 So.2d at 852, 854.

Here, of course, the FDUTPA claim is not based upon a "consumer transaction," but upon the post-1993 expansion of the statute to include protection of "legitimate business enterprises" from unconscionable acts in the conduct of trade (here Caberta's religiously discriminatory economic boycott in the Hamburg government's provision of goods and services). *See Tampa Bay Storm, Inc. v. Arena Football League*, 1998 WL 182418 (M.D. Fla. 1998). Moreover, the federal civil rights and Alien Tort Claims Act ("ATCA") (violations of human rights law of nations) claims are obviously not "alternative theories of recovery" such as fraud, breach of contract and warranty. As *Bilgin* makes clear, the issue is whether proving the *merits* of the FDUTPA claim also involves proving the merits of the "alternative theories," through the FDUTPA claim. 534 So.2d at 854 (proof of deceptive

trade practice also proves the fraud, breach of contract, misrepresentation claim). *See also La Ferney v. Scott Smith Oldsmobile, Inc.*, 410 So.2d 534 (Fla. 5th DCA 1982). Obviously, a jurisdictional dismissal under the FSIA says nothing about the merits of the FDUTPA or the federal civil rights or international human rights claims, and a decision on the merits of the FDUTPA claim says nothing about the merits of the civil rights and ATCA claims, as well as the FSIA defense, and vice versa. Thus, Caberta's meritless attempt to base 100% of her fees on a statute involving 0% of her work should be rejected.

**IV - THIS COURT SHOULD EXERCISE ITS DISCRETION AND REFUSE TO AWARD FEES UNDER SECTION 501.2105**

**A.    Neither This Action Nor Plaintiff's FDUTPA Claim Was Frivolous**

Even assuming that Caberta is a prevailing party and that she can seek fees for work unrelated to the FDUTPA claim, this Court should exercise its discretion under section 501.2105 and refuse to award attorney's fees to defendant, as this Court has already rejected any claim that plaintiff's claims are frivolous, baseless, or brought in bad faith, the proper legal standard for a fee award to a prevailing defendant. Caberta, in a mere footnote, asserts frivolousness almost exclusively by reference to the FSIA defense. Caberta Br. at 13 n.5. The Court, however, has already rejected the *exact argument* made in Caberta's prior motion for attorney's fees, and she is therefore precluded from reasserting it here.

> This court agrees that the allegations in the original complaint that Caberta acted in her official capacity is not inconsistent with Heller's allegations that Caberta was also being sued as an individual in the amended and second amended complaint.

Dkt. 174 at 7; *see* Dkt. 177 at 2 ("Plaintiff's claims were not frivolous, unreasonable or without foundation."); *see* Caberta Br. at 3-4 (making identical argument asserted here). Indeed this meritless argument was already rejected *twice* when raised by prior counsel.

8

(Dkt. 14, 15, 36, 42, 46). Thus, defendant's primary, recycled argument for sanctions cannot now support an award of fees.

In the same footnote, defendant repeats the identical baseless argument, again rejected in its prior fees motion, that there is no evidence to support the jurisdictional allegations in the Amended Complaint. Caberta Br. at 13 n.5. As the Magistrate Judge already found, plaintiff submitted, among other evidence, the declaration of Alexander Petz, but that the district court "credited instead the evidence submitted by Caberta." Dkt. 174 at 7.[4]  As the Magistrate Judge held, the fact that this Court did not accept this evidence does not mean there was *no* evidence or that the jurisdictional claim was frivolous. *Id.; see Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980).

Finally, briefly addressing the merits of the FDUTPA claim in the same footnote, defendant makes the *ipse dixit*, and clearly wrong, assertion that "the whole notion" that the sect filter "could somehow constitute a good, service, property or thing of value in trade or commerce in Florida is frivolous on its face." Caberta Br. at 13 n.5. Notably, defendant never even attempted to challenge the FDUTPA claim after it was amended to allege with specificity the services and things of value that Caberta provided. Certainly, plaintiff's unadjudicated claim that the sect filter constituted a "thing of value" was reasonable and not frivolous, given that the services and things of value provided by defendant included the benefit and professional opportunity to do business with the government of Hamburg and with other German businesses, and the avoidance of the severe economic sanctions imposed by her anti-Scientology boycott. (Dkt. 40, ¶ 37).

---

[4]  Plaintiff submitted substantial other evidence to overcome Caberta's FSIA defense, much of it undisputed. *See* Dkt. 160 at 12-18, and Exhibits thereto; *see also* Dkt. 172.

**B.    Defendant's Contention that the Frivolous/Bad Faith Standard is Inapplicable to FDUTPA Claims is Without Merit**

Without citation, Caberta asserts that fees may be awarded to a prevailing *defendant* without a showing of frivolousness or bad faith. Caberta Br. at 10. Yet while acknowledging that the standard under section 501.2105 is discretionary, Caberta never states what standard should guide this Court's discretionary award of fees to a defendant. Further, while disputing the application of a bad faith/frivolousness standard, she never explains why this Court should exercise its discretion to award fees in this case. Caberta Br. at 11-13. Instead, she continues to rely almost exclusively upon *pre-amendment* "shall" award cases, suggesting, *sotto voce*, that despite the Florida legislature's adoption of a discretionary standard, this Court should nevertheless award her fees automatically upon a holding that she is a prevailing party. *See* Caberta Br. at 10 (citing *General Motors Acceptance Corp. v. Laesser*, 791 So.2d 517, 519, 521 (Fla. 4th DCA 2001) (applying previous version of statute to conduct occurring before change in law); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113, 115 (11th Cir. 1994) (same); *B & L Motors, Inc. v. Bignotti*, 427 So.2d 1070, 1073 (Fla. 2nd DCA 1983) (same)). Here, of course, all the conduct at issue occurred long after the 1994 amendment.

In the absence of statutory or case law standards under section 501.2105, this federal court should be guided by and should apply the same interpretation of similar Florida statutory attorney's fees statutes as reached by the Florida courts, as well as similar federal statutes such as section 1988. These cases require a showing that a claim must be frivolous, unreasonable or without foundation, or brought in bad faith for an award of attorney's fees to a prevailing defendant. For example, in *National Union of Hosp. & Health Care Employees v. Southeast Volusia Hosp. Dist.*, 436 So.2d 294, 296 (1st DCA 1983), the court interpreted

the statutory fees provision in Fla. Stat. § 447.503(6)(c), which, like section 501.2105, is an "amorphous statutory grant of discretion," and "adopted the standard utilized by the United States Supreme Court regarding prevailing defendants in Title VII civil rights cases,"[5] that plaintiff's claim must be "frivolous, unreasonable or without foundation," or brought in bad faith for an award of attorney's fees to a prevailing defendant. *See Village of Palm Springs v. Retirement Builders, Inc.*, 396 So.2d 196 (4th DCA 1981) (same, interpreting Fla. Stat. § 180.191(5)).[6] There is no reason to apply a different standard here, a standard this Court has already held Caberta cannot meet. Dkt. 174, at 7; Dkt. 177, at 2.

_____

[5] Under these standards, a district court may award fees to a prevailing defendant *only* in the exceptional circumstance of a finding that the civil rights claim is "frivolous, unreasonable or without foundation," or brought in bad faith. *Hughes v. Rowe,* 449 U.S. 5, 14-15, 101 S.Ct. 173, 178 (1980); *Bruce v. City of Gainesville, Ga.*, 177 F.3d 949, 951 (11th Cir. 1999); *Sayers v. Stewart Sleep Ctr.,* 140 F.3d 1351, 1353 (11th Cir. 1998) ("[p]olicy concerns militate against awarding attorney's fees to defendants in civil rights cases because such practice may discourage plaintiffs from bringing civil rights lawsuits."); *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1188-89 (11th Cir. 1985); *DeShiro v. Branch*, 183 F.R.D. 281, 283-84 (M.D. Fla. 1998). The same policy arguments apply to FDUTPA claims to avoid discouraging plaintiffs from bringing unfair trade practice claims.

[6] Caberta's argument that the frivolousness or bad faith standard should not apply is meritless. First, she argues that, without citation to any case in her favor, "in all the years that courts have applied § 501.2105, no Florida court (or federal court) has ever held or even remotely suggested that a different standard is to be applied to the award of attorney's fees as between plaintiffs and defendants in FUDTPA [sic] cases," blithely ignoring that, until 1994, an award of fees was *mandatory*, and therefore no standards were developed in the case law to guide the court's discretion. Second, specification of a standard in cases brought by an "enforcing authority" under section 501.2105(5) does not affect the appropriate standard under section 501.2105(1). Caberta Br. at 12. There are distinct reasons why the legislature would specify a standard for a fee award for or against a governmental authority. Indeed, defendant's argument would necessarily void the Florida cases cited above interpreting other fee statutes in *pari* with the federal standard.

C.    **Scurrilous Attacks on the Scientology Religion Do Not Entitle Defendant to Fees**

Unsubstantiated, irrelevant, and scurrilous attacks on plaintiff's counsel and his religion, once again trotted out, cannot meet Caberta's burden of establishing bad faith. This Court necessarily rejected these identical arguments when it denied her prior fee request. Defendant again devotes a substantial portion of her brief, at 7-9, to a repetition of these attacks on "Scientology" based on a handful of litigations over a thirty-year period, all but one of which has no relationship to this case and which concern events occurring 10-30 years ago.[7] Because this argument was made in the prior fees motion, and no bad faith was found, defendant cannot attempt to re-raise the issue here. In any event, defendant cites no law that would suggest that these unrelated matters have any relevance to a finding of bad faith in this case.[8] Further, in the only matter remotely related to this case, concerning the deposition of Caberta in an unrelated state court proceeding, the state court never made any finding of misconduct, and Mr. Moxon has denied these allegations in this case (Dkt. 130 at 11). Because these unrelated litigations are so obviously irrelevant here, plaintiff will not burden this Court with the hundreds, if not thousands of pages of evidence and documents that would put the lie to defendant's accusations.[9] However, if the Court were to consider these

_____

[7]/    Defendant cites a *1974* criminal proceeding, a 1993 case, *Hart v. Cult Awareness Network*, 13 Cal.App.4th 777 (Cal. 2nd Dist.1993) (which makes no mention of any litigation misconduct), a 1994 decision, and a 1996 decision concerning events from the 1980's.

[8]/    Among her bizarre allegations are that she is entitled to almost $110,000 in attorney's fees because an attorney who signed a stipulation in an unrelated case appeared at two depositions in this case. Caberta Br. at 8.

[9]/    One ready example that demonstrates the falsity of defendant's accusations is the fact that the Cult Awareness Network was forced into bankruptcy because of its participation in

(continued...)

unrelated matters, then plaintiff insists on his right to present evidence at an evidentiary hearing to rebut these calumnies.

**D.     No Other Factors Weigh in Favor of Granting Caberta Attorney's Fees**

The fact that plaintiff's FDUTPA claim (and this lawsuit) was neither frivolous nor raised in bad faith requires that this Court deny the renewed motion for attorney's fees under the applicable legal standard.  Assuming this Court determines to address other factors in exercising its discretion to award attorney's fees, all discretionary factors weigh against granting the motion.  First, as noted above, defendant's current counsel spent no time on the FDUTPA claim in the district court (and has not allocated the minimal time it spent in the appeals court).  Second, her current counsel has disclaimed any entitlement to fees based upon her prior counsel's work in moving to dismiss the FDUTPA claim.  Where all the time in a case is spent on issues unrelated to the FDUTPA claim, a court in its discretion should refuse to award fees.

Third, an award of fees in this case would be contrary to federal policy as expressed in Fed. R. Civ. P. 11.  Defendant's assertion – however baseless – that plaintiff had no evidentiary basis for asserting FSIA jurisdiction and has *never* submitted *any* evidence in support of the claim, is an issue properly addressed in the federal courts under Rule 11, with the requirements of written notice and a 21-day safe harbor within which a plaintiff can withdraw a complaint.  To assert, *after* the conclusion of a case, that a complaint was frivolous and without evidentiary basis, and therefore that almost $110,000 in fees should be awarded, in reliance upon an unadjudicated state law claim, contravenes the clear federal

(...continued)
violent "deprogramming" kidnappings, resulting in a jury verdict of $4,875,000.  *Scott v. Ross, et al.*, 140 F.3d 1275, 1279-80 (9th Cir. 1998).

13

policy that such arguments should be presented at the beginning of a case. This Court should refuse defendant's invitation to use section 501.2105 as an end-run around the strictures of Rule 11.

## V.    THE AMOUNT OF DEFENDANT'S FEE APPLICATION IS UNREASONABLE

Assuming fees are to be awarded, a fee applicant has the burden of proving that his fee request is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). "Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* (internal quotations omitted). Defendant's application for $108,810.00 in fees (392.8 hours) and $2,946.53 in costs is grossly excessive and unreasonable, and lacks the requisite specificity. [10] First, as shown above, counsel can only claim fees for time spent on the FDUTPA claim. It is undisputed that new counsel spent *no* time on that claim in the district court, and counsel has failed to allocate any time to that claim in the Court of Appeals. Caberta's appellate brief devotes a total of *one* page to the argument (out of 85 pages of briefing), citing two cases. Appellee's Br. at 56-57, Ex. 31 to Def's Motion. Even a

_____

[10]    Like defendant, pursuant to Fed. R. Civ. P. 54(d)(2)(C), plaintiff reserves the right to submit additional evidence and analysis on the amount of fees claimed, in the event the Court determines that defendant is entitled to fees. In addition, in such event, plaintiff requests the opportunity to take discovery and conduct a hearing into the fee application. In this proceeding, plaintiff would present a detailed analysis of the fee application, further demonstrating the unreasonableness of the fees claimed. *See American Civil Liberties*, 168 F.3d at 427-29. On this record, even if the Court determines defendant is entitled to fees, almost all of her requested fees must be disallowed, for the reasons stated in the text.

14

generous fee award could not exceed three hours for the single page.

Second, Caberta is not entitled to the vast majority of the fees requested because they were for time spent on *unsuccessful* motions, including an unsuccessful appeal, unrelated to the merits, regarding sanctions, discovery and recusal, and which included the *imposition of sanctions on Caberta*, which were upheld on appeal.  Caberta cannot recover fees incurred in *unsuccessful* motions and appeals regarding discovery, *sanctions imposed against her*, and recusal, because this work "do[es] not contribute[] to any favorable result achieved by the litigation."  *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 619 (9th Cir. 1993) (internal citations omitted); *Duckworth v. Whisenant*, 97 F.3d 1393, 1398 (11th Cir. 1996) (deducting fees claimed for "issue[s]" on which "[p]laintiff did not prevail"); *Gilmere v. City of Altanta, Ga.*, 864 F.2d 734, 741-42 (11th Cir. 1989). [11]  Indeed, Caberta's attempt to obtain well over *$45,000* in fees for time spent on the motion that resulted in her being sanctioned for discovery abuses and for which *she* has been *ordered to pay fees to plaintiff* in the district court alone, and other meritless discovery motions detailed below, is stunningly improper and audacious and perverts the basic principle that fees must be limited to those reasonably necessary to achieve the successful result.  *See Hensley*, 461 U.S. at 434.

Third, defendant has failed to show that the amount of time spent on this case was reasonable, as is her burden.  In fact, the time spent was grossly excessive and fails to show "billing judgment."  *American Civil Liberties*, 168 F.3d at 428.  The time spent on particular

---

[11]/  Although numerous entries are unclear, and defendant has failed to prepare the requisite "summary, grouping the time entries by the nature of the activity or stage of the case," *American Civil Liberties*, 168 F.3d at 427, it appears that at most a mere *15 hours* was actually spent by new counsel on the motion to dismiss filed on August 31, 2001, and less than 45 hours opposing plaintiff's cross-motion to preclude the FSIA defense.

unsuccessful discovery motions (for which defendant could not recover fees in any event) was grossly excessive. For example, defendant apparently requests approximately $4,100 (16.5 hours at $250/hr) for her unsuccessful last-minute (and repetitive) motion to block Caberta's deposition in Germany, which this Court had repeatedly ordered to go forth. Ex. 28 to Def. Mem. (July 20-24, 2001 entries); Dkt. 100. Defendant appears to seek at least *$11,500* (over *46 hours, almost 20%* of her entire application), including an astounding $5,000 (over 20 hours) to prepare for and to attend the hearing, for her unsuccessful opposition to plaintiff's post-deposition motion to compel and for sanctions. Ex. 28 to Def. Mem. (Sept. 27 to October 24, 2001 entries, limited to identified motion to compel hours); Dkt. 133. Counsel also appears to request an astounding additional *$12,500* (*50 hours*) for her frivolous motion to recuse, for her unsuccessful opposition to plaintiff's fee petition for her discovery misconduct, and for her unsuccessful appeal of the Magistrate's Order compelling discovery, sanctioning her misconduct, and denying the recusal motion. Def. Mem. Ex. 28 (Oct. 26 - Dec. 6, 2001 entries, *not including* numerous unspecified entries in that period).

Fourth, it appears that substantial time may have been spent duplicating the work of prior counsel (where the FSIA motion essentially relied on the filings by prior counsel, and there are numerous entries not identifying the nature of the work), which must be disallowed, *see Goodwin v. Metts*, 973 F.2d 378, 383-84 (4th Cir. 1992), and the use of multiple attorneys at the new firm must also be carefully scrutinized, *see Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 76 (4th Cir. 1995); *American Civil Liberties*, 168 F.3d at 432; *see* Ex. 28 to Def. Mem. In addition, defendant impermissibly claims thousands of dollars of fees, spread throughout the billing records, for which counsel completely fails to identify the nature of the work, and even *redacted* the description of the work undertaken, which must also be disallowed, as defendant

16

must prove the necessity of these fees. *Barnes,* 168 F.3d at 427.

Fifth, defendant's claim for over *$45,000* in appellate fees is also grossly excessive and unreasonable. As noted, only 1 of 85 pages of briefing was devoted to FDUTPA. Even as to its non FDUTPA claims, defendant has made no allocation between its opposition to plaintiff's appeal, and its own unsuccessful cross-appeal on discovery sanctions, for which it is not entitled to fees. Because by definition all of its reply brief fees were devoted solely to its cross-appeal, any appellate fees even for non-FDUTPA work related to plaintiff's appeal would have to be reduced by significantly more than half, even if the Court were to excuse the failure to allocate. Finally, the more than $45,000 (over 180 hours) is blatantly excessive, unreasonable and egregiously unexplained.

## VI.    THE COURT HAS ALREADY REDUCED CABERTA'S CLAIM FOR COSTS AND ISSUED A COST AWARD

Amazingly, defendant fails to disclose that this Court has already addressed and rejected her claim for $2,954.74 in costs, and has already awarded her $1,416.22 in costs. Dkt. 174 at 10-12; Dkt. 177 at 2. Caberta now makes the identical, almost verbatim argument for 100% of the fees, with *no* argument that she is entitled to a different result under FDUTPA.

Plaintiff suggests that an appropriate sanction for defendant's misconduct in re-raising the identical arguments without disclosing that the Court has already addressed them and has already ordered a more limited cost award, is to reduce the prior cost award from $1,416.22 to $0.00.

17

## CONCLUSION

For the reasons stated herein, and the prior proceedings had herein, this Court should

deny defendant's motion for attorney's fees, expenses, and costs.

Dated: August 11, 2003                    Respectfully submitted,

Kendrick Moxon
Helena Kobrin (FBN # 0259713)
MOXON & KOBRIN
1100 Cleveland Street, Suite 900
Clearwater, FL  33755
Telephone: (727) 443-5620
Telefax: (727) 443-5640

F. Wallace Pope, Jr. (FBN # 124449)
JOHNSON, POPE, BOKOR,
 RUPPEL & BURNS, P.A.
P.O. Box 1368
Clearwater, FL  33757
Telephone: (727) 461-1818
Telefax: (727) 441-8617

*Attorneys for Plaintiff Hubert Heller*

18

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have caused the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S SECOND MOTION FOR ATTORNEY'S FEES, EXPENSES AND COSTS PURSUANT TO FDUTPA** to be served on this 11th day of August, 2003, by U.S. Mail, to Ward Meythaler of Merkle & Magri, P.A., 550 North Reo Street, Suite 301, Tampa, Florida 33609.

_____
Attorney

19